UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 14-4776

BARBARA WALTERS,
Appellant
v.
COWPET BAY WEST CONDOMINIUM ASSOCIATION;
THE BOARD OF THE COWPET BAY WEST CONDOMINIUM
ASSOCIATION; MAX HARCOURT, in his personal capacity; ALFRED
FELICE; LANCRE TALKINGTON; ROBERT COCKAYNE; VINCENT
VERDIRAMO

(D.V.I. No. 3-12-cv-00024)

---

No. 14-4777

JUDITH KROMENHOEK,
Appellant
v.
COWPET BAY WEST CONDOMINIUM ASSOCIATION;
THE BOARD OF THE COWPET BAY WEST CONDOMINIUM
ASSOCIATION; MAX HARCOURT, in his personal capacity; ALFRED
FELICE; LANCE TALKINGTON; ROBERT COCKAYNE; VINCENT
VERDIRAMO

(D.V.I. No. 3-12-cv-00025)

---

**MOTION TO DISMISS**

Undersigned counsel for ALFRED FELICE ("Felice"), deceased, pursuant to the rules of procedure applicable herein, hereby moves to dismiss the purported

appeal against Felice on the grounds that this Court lacks jurisdiction.[1] In support of this Motion, Felice states:

## SUMMARY OF ARGUMENT

In their respective Notices of Appeal, Kromenhoek and Walters specified that the sole aim of their appeals was the District Court order granting summary judgment in favor of numerous defendants to this action, but not including Felice. That is the only order that Kromenhoek and Walters have ever appealed. Thereafter, the District Court entered separate memorandum opinions and judgments disposing of Kromenhoek and Walters' claims against Felice. Neither Walters nor Kromenhoek has taken an appeal from those opinions/judgments. The time to appeal in both cases has now long passed. Accordingly, this Court lacks appellate jurisdiction to review the District Court's opinions and judgments entered as to Felice.

## PROCEDURAL HISTORY

### The Lawsuits

1. On April 9, 2012, Kromenhoek and Walters filed separate lawsuits in the U.S. District Court of the Virgin Islands ("District Court") against Cowpet Bay West Condominium Association (the "Cowpet Association") and the Board of

[1] Undersigned respectfully requests that this motion be added to the agenda of matters to be considered by the Motions Panel, as provided in this Court's Orders of August 13, 2015 and August 20, 2015. *See*, Docs.: 003112045362 and 003112051423.

the Cowpet Bay West Condominium Association (the "Cowpet Board"), and various Cowpet residents, including Vincent Verdiramo, Robert Cokayne, Lance Talkington, Max Harcourt, and Felice.[2]

2. Kromenhoek and Walters then each filed a 22-count amended complaint on June 19, 2012.

3. In their complaints, Kromenhoek and Walters alleged claims under the Fair Housing Act, 42 U.S.C. § 3601, *et seq*., the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3604, and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*., and a variety of other claims under local law.

4. Kromenhoek and Walters' cases were later joined pursuant to Fed. R. Civ. P. 42, for the specific purpose of resolving the various dispositive motions filed by the defendants.

5. Felice died in 2012 while this action was pending before the District Court. No party was substituted into his stead prior to the entry of the District Court's final judgment.

6. Walters died on or about April 22, 2014 during the pendency of this action. [D.E. 191]

[2] Kromenhoek and Walters are owners of condominium units at Cowpet Bay West in St. Thomas, U.S. Virgin Islands. Cowpet policy prohibited both Kromenhoek and Walters from having an alleged "emotional support" dog on the premises.

Disposal of Kromenhoek's Claims

7. On November 18, 2014, the District Court entered a Memorandum Opinion granting judgment as a matter of law in favor of Defendants Verdiramo, Cokayne, Talkington, the Cowpet Association, and the Cowpet Board as to Kromenhoek's federal claims against them, and declining to exercise supplemental jurisdiction over the local law claims. *See*, District Court Memorandum Opinion dated November 18, 2014 [D.E. 223], a true copy of which is attached hereto and incorporated herein as Exhibit "A."

8. On November 18, 2014, the District Court also entered a separate judgment reflecting the conclusions reached in the November 18, 2014 Memorandum Opinion. *See*, District Court Judgment dated November 18, 2014 [D.E. 224], a true copy of which is attached hereto and incorporated herein as Exhibit "B."

9. On November 19, 2014, the District Court entered an Amended Memorandum Opinion that "correct[ed] inadvertent scrivener errors contained in the Memorandum Opinion docketed at ECF No. 223" and made "[n]o substantive changes" thereto. *See*, District Court Amended Memorandum Opinion dated November 19, 2014 [D.E. 225], a true copy of which is attached hereto and incorporated herein as Exhibit "C."

10.    On December 17, 2014, Kromenhoek filed a Notice of Appeal of the judgments as to the claims against Defendants Verdiramo, Cokayne, Talkington, the Cowpet Association, and the Cowpet Board.  *See*, Kromenhoek's Notice of Appeal, a true copy of which is attached hereto and incorporated herein as Exhibit "D."

11.    Kromenhoek's Notice of Appeal provides in full as follows:

> NOTICE IS HEREBY GIVEN that pursuant to 28 U.S.C. § 1291, Plaintiff, Judith Kromenhoek, hereby appeals to the United States Court of Appeals for the Third Circuit from **an order entered by the District Court of the United States Virgin Islands on November 18, 2014, (Docket No. 224)** granting Defendants their Motions for Summary Judgment.

Exhibit "D" (emphasis added).

12.    According to the express language of her Notice, the sole subject of Kromenhoek's appeal is the "order entered by the District Court of the United Stated Virgin Islands on November 18, 2014, (Docket No. 224) granting Defendants their Motions for Summary Judgment."

13.    This is the *only* order/opinion/judgment that Kromenhoek has ever appealed.

14.    Thereafter, on December 23, 2014, the District Court entered an Order vacating the memorandum opinions entered on November 18, 2014 [D.E. 223], and November 19, 2014 [D.E. 225], and the judgment entered on November 18,

2014 [D.E. 224], as being entered prematurely. *See*, District Court Docket Text Order dated December 23, 2014 [D.E. 232], a true copy of which is attached hereto and incorporated herein as Exhibit "E."

15.    On December 24, 2014, the District Court entered a Memorandum Opinion granting judgment as a matter of law in favor of Defendants Verdiramo, Cokayne, Talkington, the Cowpet Association, and the Cowpet Board as to the federal claims asserted against them, and declining to exercise supplemental jurisdiction over the local law claims. *See*, District Court Memorandum Opinion dated December 24, 2014 [D.E. 233], a true copy of which is attached hereto and incorporated herein as Exhibit "F."

16.    The District Court further noted in its December 24, 2014 Memorandum Opinion that "[t]he Court does not address any of the claims, federal or local, as against Harcourt or Felice in this Memorandum Opinion. Such claims are the subject of a separate, forthcoming opinion." *See*, Exhibit "F" at p. 42.

17.    On December 24, 2014, the District Court also entered a separate judgment reflecting the conclusions reached in the December 24, 2014 Memorandum Opinion regarding the claims against Defendants Verdiramo, Cokayne, Talkington, the Cowpet Association, and the Cowpet Board. *See*,

District Court Judgment dated December 24, 2014 [D.E. 234], a true copy of which is attached hereto and incorporated herein as Exhibit "G."

18.    On December 24, 2014, the District Court entered a separate Memorandum Opinion granting judgment as a matter of law in favor of Defendants Felice and Harcourt as to Kromenhoek's federal claims against them under 42, U.S.C. § 3617, and declining to exercise supplemental jurisdiction over Kromenhoek's local law claims. *See*, District Court Memorandum Opinion dated December 24, 2014 [D.E. 235], a true copy of which is attached hereto and incorporated herein as Exhibit "H."

19.    On December 24, 2014, the District Court also entered a separate judgment reflecting the conclusions reached in the December 24, 2014 Memorandum Opinion regarding Kromenhoek's claims against Felice and Harcourt. *See*, District Court Judgment dated December 24, 2014 [D.E. 236], a true copy of which is attached hereto and incorporated herein as Exhibit "I."

<u>Disposal of Walters' Claims</u>

20.    On November 18, 2014, the District Court entered a Memorandum Opinion granting judgment as a matter of law in favor of Defendants Verdiramo, Cokayne, Talkington, the Cowpet Association, and the Cowpet Board as to Walters' federal claims against them, and declining to exercise supplemental jurisdiction over the local law claims. *See*, Exhibit "A."

21. On November 18, 2014, the District Court also entered a separate judgment reflecting the conclusions reached in the November 18, 2014 Memorandum Opinion.[3] *See*, Exhibit "B."

22. On November 19, 2014, the District Court entered an Amended Memorandum Opinion that "correct[ed] inadvertent scrivener errors contained in the Memorandum Opinion docketed at ECF No. 223" and made "[n]o substantive changes" thereto. *See*, Exhibit "C."

23. On December 17, 2014, Walters filed a Notice of Appeal of the judgments as to the claims against Defendants Verdiramo, Cokayne, Talkington, the Cowpet Association, and the Cowpet Board. *See*, Walters' Notice of Appeal, a true copy of which is attached hereto and incorporated herein as Exhibit "J."

24. Walters' Notice of Appeal provides in full as follows:

> NOTICE IS HEREBY GIVEN that pursuant to 28 U.S.C. § 1291, Plaintiff, Barbara Walters, hereby appeals to the United States Court of Appeals for the Third Circuit from **an order entered by the District Court of the United Stated Virgin Islands on November 18, 2014, (Docket No. 224)** granting Defendants their Motions for Summary Judgment.

Exhibit "J" (emphasis added).

25. According to the express language of her Notice, the sole subject of Walters' appeal is the "order entered by the District Court of the United Stated

[3] The District Court's Judgment and Memorandum Opinion of November 18, 2014 as to Walters are identical to those entered in the Kromenhoek case.

Virgin Islands on November 18, 2014, (Docket No. 224) granting Defendants their Motions for Summary Judgment."

26.    This is the *only* order/opinion/judgment that Walters has ever appealed.

27.    Thereafter, on December 23, 2014, the District Court entered an Order vacating the memorandum opinions entered on November 18, 2014 [D.E. 223], and November 19, 2014 [D.E. 225], and the judgment entered on November 18, 2014 [D.E. 224], as being entered prematurely. *See*, Exhibit "E."

28.    On December 24, 2014, the District Court entered a Memorandum Opinion granting judgment as a matter of law in favor of Defendants Verdiramo, Cokayne, Talkington, the Cowpet Association, and the Cowpet Board as to the federal claims asserted against them, and declining to exercise supplemental jurisdiction over the local law claims. *See*, Exhibit "F."

29.    The District Court further noted in its December 24, 2014 Memorandum Opinion that "[t]he Court does not address any of the claims, federal or local, as against Harcourt or Felice in this Memorandum Opinion. Such claims are the subject of a separate, forthcoming opinion." *See*, Exhibit "F" at p. 42.

30.    On December 24, 2014, the District Court also entered a separate judgment reflecting the conclusions reached in the December 24, 2014

Memorandum Opinion regarding the claims against Defendants Verdiramo, Cokayne, Talkington, the Cowpet Association, and the Cowpet Board.[4] *See*, Exhibit "G."

31. On January 2, 2015, the District Court entered a Memorandum Opinion granting judgment as a matter of law in favor of Defendants Felice and Harcourt as to Walters' federal claims against them under 42, U.S.C. § 3617, finding that those claims did not survive Walters' death. The District Court declined to exercise supplemental jurisdiction over Walters' local law claims. *See*, District Court Memorandum Opinion dated January 2, 2015 [D.E. 217], a true copy of which is attached hereto and incorporated herein as Exhibit "K."

32. On January 2, 2015, the District Court also entered a separate judgment reflecting the conclusions reached in the January 2, 2015 Memorandum Opinion regarding Walters' claims against Felice and Harcourt. *See*, District Court Judgment dated January 2, 2015 [D.E. 218], a true copy of which is attached hereto and incorporated herein as Exhibit "L."

**MEMORANDUM OF LAW**

This Court may not review the District Court's Judgments and Opinions entered as to Felice since neither was specified in the Appellants' respective Notice of Appeal. Pursuant to federal rules, a notice of appeal "must ... designate the

[4] The District Court's Judgment and Memorandum Opinion of December 24, 2014 as to Walters are identical to those entered in the Kromenhoek case.

judgment, order, or part thereof being appealed." Fed.R.App.P. 3(c)(1)(B). While the Court construes this rule liberally, it will only exercise appellate jurisdiction over orders not specified in the notice of appeal where: "(1) there is a connection between the specified and unspecified orders; (2) the intention to appeal the unspecified order is apparent; and (3) the opposing party is not prejudiced and has a full opportunity to brief the issues." *Polonski v. Trump Taj Mahal Assocs.*, 137 F.3d 139, 144 (3d Cir.1998).

The Third Circuit's application of the foregoing test in its recent opinion of *Jacobs v. Heck* is instructive. 364 F. App'x 744 (3d Cir. 2010). There, the appellant specified only one order in his notice of appeal. *Id*. at 746. That order denied the appellant's motion for appointment of counsel. *Id*. This Court was called upon to determine whether it had appellate jurisdiction to review a number of other unspecified orders, including an order denying a second motion for counsel, an order denying a motion for new trial, an order denying prison official witnesses, an order dismissing certain defendants, and orders granting summary judgment for other defendants. *Id*.

The Third Circuit determined that it had jurisdiction over certain of the orders unspecified in the notice of appeal, but not others:

> We find that the requisite connection does not exist between the order specified in Jacobs' notice of appeal and the order dated January 15, 2004 dismissing defendants White and Sasway; the order dated February

> 27, 2004 granting summary judgment for defendants Tatum, Boyles, Johnson, Winstead, Buck and Cammeron; and the order dated June 3, 2003 granting Dr. Hamad summary judgment. *See Elfman Motors, Inc. v. Chrysler Corp.,* 567 F.2d 1252, 1254 (3d Cir.1977) (notice of appeal specifying orders entered in favor *747 of three defendants did not bring up for review unspecified earlier order granting summary judgment in favor of two other defendants; noting cases where the requisite connection exists).

*Id*. at 746-47. The Third Circuit further distinguished cases where the order specified in the notice of appeal was connected to the unspecified order in that the specified order caused the unspecified order to become appealable (which is not the case here):

> Significantly, the order denying Jacobs' motion for appointment of counsel was non-appealable when entered. It became appealable when the District Court entered judgment in favor of the remaining defendant following the jury trial, as that order finally disposed of the case as to all claims and all parties. *See Smith–Bey v. Petsock,* 741 F.2d 22, 26 (3d Cir.1984). Jacobs' notice of appeal is thus not like the one in *Shea v. Smith*, 966 F.2d 127, 129 (3d Cir.1992), which specified the *final* order in the case (entered in favor of the last two remaining defendants). In *Shea* and like cases, the Court held that a notice of appeal specifying a final order is sufficient to bring up an unspecified earlier order for review because, relevantly, the earlier order could not have been appealed until the final order was entered. *See, e.g., Murray v. Commercial Union Ins. Co.,* 782 F.2d 432, 434–35 (3d Cir.1986); *Gooding v. Warner–Lambert Co.,* 744 F.2d 354, 357 n. 4 (3d Cir.1984). In those cases, the specified order was connected to the unspecified order in that the specified order caused the unspecified order to become appealable. That connection does not exist where, as

> here, the specified order is not the final order in the case. *Cf. Chaka v. Lane,* 894 F.2d 923, 925 (7th Cir.1990) (notice of appeal that specifies order that was interlocutory and non-appealable when entered limits appeal to questions raised by that order).

*Id*. at 747. The Third Circuit ultimately found that the appellant—by noticing only the order denying his motion for appointment of counsel—demonstrated an intent to appeal only the orders denying the motion for counsel and motion for new trial, and that the intention to appeal the other unspecified orders was not apparent:

> Returning to the test we enunciated in *Polonski,* we find apparent Jacobs' intent to appeal the District Court's order denying his April 2004 motion for appointment of counsel. We note that this motion sought the assistance of counsel in conducting discovery. We thus find a connection to Jacobs' claims that problems he had in the course of discovery (following this denial) were due to the District Court's failure to appoint counsel. We also liberally construe the notice, which was filed after Jacobs lost at trial, to assert that the outcome of the trial would have been different if counsel had been appointed. Our decision to review these issues does not prejudice appellee Heck, as he has chosen to respond to all the issues that Jacobs briefed.

364 F. App'x 744, 746-47.

In this case, (1) there is no connection between the specified and unspecified orders; (2) Appellants did not make apparent any intention to appeal the unspecified orders disposing the claims against Felice; and (3) prejudice would result if this appeal is permitted to proceed as to Felice, who is deceased and for whom no proper party has been properly substituted to represent his interests.

First, there is no connection between the November 18, 2014 order that Appellants appealed and the order disposing of the claims against Felice. The November 18, 2014 order disposed of the federal claims against Defendants Talkington, the Cowpet Association, and the Cowpet Board, granting summary judgment on the merits of Appellants' claims for (i) violation of FHA 42 U.S.C. § 3604(f)(3)(b) against the Cowpet Association and Board; (ii) violation of 42 U.S.C. § 3617 against the Cowpet Association and Board; (iii) violation of 42 U.S.C. § 3617 against Talkington; and (iv) violation of Americans with Disabilities Act Against the Cowpet Association and Board. The District Court also dismissed the remaining local law claims against the Board, the Association, Verdiramo, Cockayne, and Talkington, as the Court chose not to exercise its supplemental jurisdiction over those claims.

Significantly, the November 18, 2014 opinion does not deal with *any* of the claims against Felice. In fact, that opinion *expressly provides* that "[t]he Court does not address any of the claims, federal or local, as against … Felice in this Memorandum Opinion. Such claims are the subject of a separate, forthcoming opinion." *See*, Exhibit "F," at p.42, fn. 10.

Further, there is no substantive connection between the orders that Appellants now seek to appeal and the November 18, 2014 opinion. As provided above, the November 18, 2014 opinion dealt with claims against other defendants

on their merits. In contrast, the decisions adjudicating the claims against Felice (that Kromenhoek and Walters belatedly try to insert into this appeal) concern separate *parties*, facts and circumstances. In fact, in Walters' case, the District Court does not even reach *the merits* of the dispute, instead dismissing her claims against Felice on the grounds that they do not survive her death. As for Kromenhoek's claims against Felice, they are based in facts distinct from her claims against the other defendants. For example, Kromenhoek complains of certain emails and online communications by Felice that the District Court found to be "arguably cruel and insensitive," but better characterized as a quarrel between neighbors or isolated acts of discrimination than conduct violating [42 U.S.C. § 3617]." *See*, Exhibit "H," [D.E. 235] at pp. 14-16. These emails/communications by Felice were not at issue in the November 18, 2014 opinion. There is simply no connection between the opinions disposing Appellants' claims against Felice and the order/opinion that they originally appealed from.

Second, for the same reasons, Appellants have not manifested any intention to appeal the opinions disposing Appellants' claims against Felice. Again, the issues decided in the opinion from which Appellants took their appeal do not involve the same claims, facts, or even parties as the issues in the opinion adjudicating the claims against Felice. And in the case of Walters, the District Court determined that her claims did not survive her death. There is nothing in the

respective Notices of Appeal that evidence any intent to take issue with that decision.

Third, but not least, prejudice would result if this appeal is permitted to proceed as to "Felice." First, there is no "appellee" here because Felice is deceased and Appellants did not succeed in substituting a proper party in his stead during the proceedings before the District Court. As such, Appellants' appeal—as a simple matter of procedure—may not proceed as to Felice. That Felice's insurer continues to spend money in defense of the improper claims against their deceased insured (including this exceedingly improper appeal) under such circumstances is prejudice enough.

Additionally, citing Fed.R.App.P. 42, Appellants now seek to deem Rosemary Felice, Felice's wife, to be his "personal representative" against her will. Ms. Felice, is 82 and suffers from diabetes and does not reside in St. Thomas (and is not otherwise subject to the long-arm jurisdiction of the District Court). She has not been appointed, nor ever volunteered to be, Felice's "personal representative" for this action, or for any other purpose, and has not been adjudicated by any court to be Felice's "personal representative" for any purpose. Appellants had sought to substitute Rosemary Felice into this action multiple times while this case was before the District Court, but were rebuffed each time. Appellants may not do so

now, and their efforts to do so—at this point—amount to harassment that is actionable.

In sum, each factor in the *Polonski* test supports a ruling that this Court should not exercise jurisdiction over the orders adjudicating the claims against Felice that were not specifically designated in Appellants' Notices of Appeal. Because there is no appellate jurisdiction over Felice, the purported appeal against him must be dismissed.

WHEREFORE, counsel for ALFRED FELICE, deceased, respectfully requests that this Honorable Court enter an order granting this Motion and dismissing this appeal as to Felice and/or any personal representative of Felice that may be properly substituted into this appeal, and award any other relief that the Court deems just and proper.

Respectfully submitted,

Quintairos, Prieto, Wood & Boyer, P.A.
9300 S. Dadeland Blvd., 4th Floor
Miami, FL 33156
Tel.:  (305) 670-1101

/s/ Kyle R. Waldner
Kyle R. Waldner, Esq.
kwaldner@qpwblaw.com
V.I. Bar No.:  1038
Ryan C. Meade, Esq.
rmeade@qpwblaw.com
V.I. Bar No.:  1033

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of Court *via* the CM/ECF system this 21st day of August, 2015, which will send a notice of electronic filing to:

Carl R. Williams, Esq.
Birch, deJongh, Hindels & PLLC
Poinsettia House At Bluebeard's
1330 Estate Taarnebjerg
St Thomas, VI 00802;

Karin A. Bentz, Esq.
Law Office of Karin Bentz, P.C.
18 Dronningens Gade, Suite 8
St. Thomas, VI 00802;

John H Benham, III, Esq.
Watts, Benham & Sprehn, P.C.
P.O. Box 11720
St Thomas, VI 00801.

/s/ Kyle R. Waldner
Kyle R. Waldner, Esq.

**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| **BARBARA WALTERS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**COWPET BAY WEST CONDOMINIUM ASSOCIATION; THE BOARD OF THE COWPET BAY WEST CONDOMINIUM ASSOCIATION; ED WARDWELL, MAX HARCOURT; BILL CANFIELD, ROSIE WELLS, SHARON KOEHLER, DOUG REBAK and HERB HORWITZ as Board members; MAX HARCOURT, in his personal capacity; LANCE TALKINGTON; ALFRED FELICE, ROBERT COKAYNE, and VINCENT VERDIRAMO,**<br><br>**Defendants.** | **Civil No. 2012-24** |
| **JUDITH KROMENHOEK,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**COWPET BAY WEST CONDOMINIUM ASSOCIATION; THE BOARD OF THE COWPET BAY WEST CONDOMINIUM ASSOCIATION; ED WARDWELL, MAX HARCOURT; BILL CANFIELD, ROSIE WELLS, SHARON KOEHLER, DOUG REBAK and HERB HORWITZ as Board members; MAX HARCOURT, in his personal capacity; LANCE TALKINGTON; ALFRED FELICE, ROBERT COKAYNE, and VINCENT VERDIRAMO,**<br><br>**Defendants.** | **Civil No. 2012-25** |

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 2

**ATTORNEYS:**

**Karin A. Bentz, Esq.**
Law Office of Karin Bentz, P.C.
St. Thomas, VI
*For Barbara Walters and Judith Kromenhoek,*

**Joseph G. Riopelle, Esq.**
Boyd Richards Parker & Colonnelli
Tampa, FL
**Carl R. Williams, Esq.**
**Richard P. Farrelly, Esq.**
Birch, Dejongh & Hindels
St. Thomas, VI
*For Cowpet Bay West Condominium Association, Ed Wardwell, Max Harcourt, Bill Canfield, Rosie Wells, Sharon Koehler, Doug Rebak, Robert Cokayne, Vincent Verdiramo, and Herb Horwitz,*

**John H. Benham, III, Esq.**
Watts, Benham & Sprehn, P.C.
St. Thomas, VI
*For Lance Talkington,*

**Ryan C. Meade, Esq.**
Quintairo, Prieto, Woo & Boyer, P.S.
Miami, FL
*For Alfred Felice.*

**MEMORANDUM OPINION**

**GÓMEZ, J.**

Before the Court are four motions for summary judgment filed by: Vincent Verdiramo, Robert Cokayne, Lance Talkington, and the Cowpet Bay West Condominium Association (the “Association”) and the Board of the Cowpet Bay West Condominium Association (the “Board”) (collectively, the “defendants”).

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 3

## I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Judith Kromenhoek ("Kromenhoek") owns a unit in the Cowpet Bay West Condominium complex ("Cowpet"), a condominium community located on St. Thomas, United States Virgin Islands.

The Cowpet Bay West Condominium Association ("the Association") was formed under the Condominium Act of the Virgin Islands (the "Condominium Act"), 28 V.I.C. §§ 901-927. (Bylaws at 1, Civil No. 2012-24, ECF No. 31-1.)[1] The Association is comprised of all of the unit owners in the Cowpet condominium community. Association members purchase their units subject to the Association's Declaration,[2] Bylaws, and its Rules and Regulations.[3]

---

[1] According to the Condominium Act,

> The administration of every property shall be governed by bylaws a true copy of which shall be annexed to the declaration and made a part thereof. No modification of or amendment to the bylaws shall be valid unless set forth in an amendment to the declaration and such amendment is duly recorded.

28 V.I.C. § 917.

[2] "'Declaration' means the instrument by which the property is submitted to the provisions of this chapter, as hereinafter provided, and such declaration as from time to time may be lawfully amended." 28 V.I.C. § 901.

[3] The Condominium Act also provides that,

> Each apartment owner shall comply strictly with the bylaws and the administrative rules and regulations adopted pursuant thereto, as either of the same may be lawfully amended from time to time, and with the covenants, conditions and restrictions set forth in the declaration or in the deed to his apartment. Failure to comply with any of the same shall be ground for an action to

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 4

Association members elect a Board of Directors ("the Board"). The Board is made up of seven Association members. The Bylaws provide that the Board has

> the powers and duties necessary for the administration of the affairs of the Condominium and may do all such acts and things except as by law, by the Declaration, or by [its] By-Laws may not be delegated to the Board of Directors by the unit owners.

(Bylaws at 2, Civil No. 2012-24, ECF 31-1.)

The Bylaws provide for the amendment and enforcement of Rules and Regulations by the Board. At all relevant times, the Rules and Regulations for Association members provide the following:

> Dogs and farm animals are prohibited. Owners will be fined as specified by the Board of Directors. The Association may require removal of any animal when it becomes bothersome to others or is deemed by the Association to be unacceptable.

(Rules and Regulations, Civil No. 2012-24, ECF No. 31-2.)

On or about December 15, 2010, Stansford S. Sutherland ("Sutherland"), "a licensed psychologist wrote a letter stating that he was treating Kromenhoek and that she was diagnosed with

---

> recover sums due, for damages or injunctive relief or both maintainable by the manager or Board of Directors on behalf of the Association of Apartment Owners or, in a proper case, by an aggrieved apartment owner.

28 V.I.C. § 906.

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 5

Anxiety Disorder . . . .” (Second Am. Compl. ¶ 30, Civil No. 2012-25, ECF No. 94.) In his letter, the psychologist stated “that he has prescribed the use of an emotional support animal, dog or other, to alleviate her symptoms and that such emotional support animal was necessary.” (*Id.*)

Kromenhoek owned a dog named Oliver. Kromenhoek submitted information about her dog’s qualification as an emotional support animal to Louanne Schechter (“Schechter”), Cowpet’s office manager, and included the letter from Sutherland.

Thereafter, members of the Board held a public meeting during which the issue of service dogs was discussed. Kromenhoek alleges that Max Harcourt, then President of the Association, shared the content of her documents with some of the Association members. (Second Am. Compl. at ¶ 53, Civil No. 2012-25, ECF No. 94.)

Subsequently, discussions on Kromenhoek’s pet ownership appeared on an Internet web log, the Cowpet Bay Blog (“the blog”). The blog was maintained by a member of the Association, Lance Talkington. (Second Am. Compl. at ¶ 44, Civil No. 2012-24.)

Kromenhoek alleges that, on or about October 28, 2011, Harcourt e-mailed a letter addressed to her e-mail address as

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 6

well as to Talkington's e-mail address. The letter stated that Kromenhoek had violated the "no dogs" policy contained in the Rules and Regulations. The letter also requested that Kromenhoek submit applications for reasonable accommodation.

On or about January 19, 2012, the Board met and voted to assess a fine of $50 per day against owners, including Kromenhoek, who were in violation of the "no dogs" policy. Thereafter, in February, 2012, the Association voted to add the "no dogs" policy to the Bylaws. The newly added bylaw contained no explicit exception for service animals.

Kromenhoek initiated this action against Cowpet on April 9, 2012. Her complaint has twice been amended. Kromenhoek's complaint contains the following claims: Count One alleges a violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(f)(3)(b) against the Association and Board; Count Two alleges a violation of the FHA, 42 U.S.C. § 3617 against Harcourt; Count Three alleges a violation of the FHA, 42 U.S.C. § 3617 against the Association & Board; Count Four alleges a violation of the FHA, 42 U.S.C. § 3617 against Alfred Felice; Count Five alleges a violation of the FHA, 42 U.S.C. § 3617 against Talkington; Count Six alleges a violation of Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12188 against the

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 7

Association & Board; Count Seven alleges the Board exceeded their authority; Count Eight alleges that the February 2012 Bylaws Amendment is void; Count Nine alleges negligence against the Association & Board; The next count, also labeled as "Count Nine" in the complaint, alleges intentional infliction of emotional distress against Felice; Count Ten alleges civil conspiracy against all Defendants; Count Eleven alleges *prima facie* tort against all Defendants; Count Twelve alleges defamation and slander *per se* against the Association, Board, Felice, Harcourt, and Talkington; Count Thirteen alleges Negligent Infliction of Emotional Distress and Intentional Infliction of Emotional Distress against all Defendants except Felice; Count Fourteen[4] alleges Invasion of Privacy – Public Disclosure of Private Facts against the Association & Board; Count Fifteen[5] alleges Invasion of Privacy – Public Disclosure of Private Facts against Harcourt & Talkington; Count Sixteen alleges Invasion of Privacy – False Light against all Defendants except Verdiramo & Cokayne; Count Seventeen alleges Invasion of Privacy against the Board, the Association, Harcourt, and

---

[4] This count is actually labeled, "Count IVX." Though the Roman numerals for this count do not, in fact, equate to "fourteen," it is clear they were intended to.
[5] Similarly, this count is actually labeled, "Count VX."

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 8

Talkington; and Count Eighteen alleges Negligence Per Se/Legal Malpractice against Vincent Verdiramo.

During the pendency of this litigation, Harcourt passed away. Barbara Walters, who had brought the same claims as Kromenhoek against the same defendants, also passed away during the course of litigation.

The Board, the Association, Robert Cokayne, and Verdiramo filed motions for summary judgment on Counts One, Three, Six, Seven, Eight, Thirteen, Fourteen, and Seventeen of the second amended complaint. Talkington filed a motion for summary judgment seeking judgment on Counts Five, Eleven, Thirteen, Fifteen, Sixteen, and Seventeen of the second amended complaint. Finally, a motion for summary judgment was filed by an attorney claiming to represent Harcourt.

The Court held a hearing on the Defendants' motions for summary judgment on Kromenhoek's on May 27, 2014. Following a lengthy hearing, at which evidence was presented and argument heard, the Court granted the Association and Board's motion for summary judgment, Verdiramo's motion for summary judgment, Cokayne's motion for summary judgment, and Talkington's motion for summary judgment on Kromenhoek's claims. The Court also dismissed the claims brought by Barbara Walters in the parallel

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 9

case. The Court took under advisement all of Kromenhoek's claims against Felice and Harcourt, as both defendants are deceased. Following the hearing, the Court indicated to the parties that a memorandum opinion documenting its rationale would be forthcoming.

## II. **DISCUSSION**

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy*, 762 F.2d 338, 342 (3d Cir. 1985). The non-moving party "may not rest upon mere allegations, general denials, or . . . vague statements . . . ." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 10

return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. In making this determination, this Court draws all reasonable inferences in favor of the non-moving party. *See Bd. of Educ. v. Earls*, 536 U.S. 822, 850 (2002); *see also Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

## III. ANALYSIS

In considering whether the Defendants have met their burden of showing there is no genuine issue of material fact and that they are entitled to judgment as a matter of law, the Court may consider the pleadings, the discovery and disclosure materials on file, and any affidavits. *See* Fed. R. Civ. P. 56(c). In support of their motions, the defendants have submitted affidavits, emails and other documents provided in discovery, declarations, and the pleadings.

### A. Count One: Violation of FHA 42 U.S.C. § 3604(f)(3)(b) against Association and Board

In Count One, Kromenhoek alleges that the Board and the Association violated the Fair Housing Act ("FHA") by refusing to make reasonable accommodations for her alleged disability. The

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 11

Fair Housing Act ("FHA"), passed by Congress as Title VIII of the Civil Rights Act of 1968, prohibits housing discrimination on the basis of, *inter alia*, race, gender, and national origin. 42 U.S.C. § 3601, *et seq*. Under the Fair Housing Act Amendment ("FHAA"), which Congress passed in 1988 to extend the coverage of the FHA to include people with disabilities, it is unlawful:

> To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, *because of a handicap* of-
>
> (A) that person; or
>
> (B) a person residing in or intending to reside in that dwelling after it is sold, rented, or made available; or
>
> (C) any person associated with that person.

42 U.S.C. § 3604(f)(2) (emphasis added). The FHAA does not, however, "extend a *preference* to handicapped residents," *United States v. California Mobile Home Park Management Co.*, 29 F.3d 1413, 1418 (9th Cir. 1994) (emphasis added). As such, accommodations that go beyond affording a disabled individual "an equal opportunity to use and enjoy a dwelling" are not mandated by the FHAA. *Bryant Woods Inn, Inc. v. Howard County*, 124 F.3d 597, 605 (4th Cir. 1997).

Under 42 U.S.C. § 3604(f)(3)(B), discrimination includes "a refusal to make reasonable accommodations in rules, policies,

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 12

practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.” 42 U.S.C. § 3604(f)(3)(B). “The reasonable accommodation inquiry is highly fact-specific, requiring case-by-case determination.” *United States v. California Mobile Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997) (citations omitted).

To prevail on a claim under 42 U.S.C. § 3604(f)(3)(b), a plaintiff must show each of the following elements:

> (1) he is disabled or handicapped within the meaning of the FHA, (2) he requested a reasonable accommodation, (3) such accommodation was necessary to afford him an opportunity to use and enjoy his dwelling, and (4) the defendants refused to make the requested accommodation.

42 U.S.C. § 3604(f)(3)(B); *Hawn v. Shoreline Towers Phase 1 Condominium Ass’n, Inc.*, 347 Fed. App’x 464, 467 (11th Cir. 2009) (citing *Schwarz v. City of Treasure Island,* 544 F.3d 1201, 1218-19 (11th Cir.2008)); *DuBois v. Ass’n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006); *HUD v. Riverbay Corp.*, HUDALJ 02-93-0320-1 (Sept. 8, 1994).

In order to make a claim under the FHA, a plaintiff “must actually request an accommodation and be refused in order to bring a reasonable accommodation claim under the FHA.” *United States v. Hialeah Hous. Auth.*, 418 F. App'x 872, 875 (11th Cir.

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 13

2011). "[F]or a demand to be specific enough to trigger the duty to provide a reasonable accommodation, the defendant must have enough information to know of both the disability and desire for an accommodation, or circumstances must at least be sufficient to cause a reasonable landlord to make appropriate inquiries about the possible need for an accommodation." *Id.* at 876 (internal quotations omitted).

Once an accommodation is formally requested, the plaintiff may only bring a claim under the FHA if that accommodation is denied. Denial can be explicit or constructive. "We acknowledge that injury may result when a housing provider unreasonably delays responding to a request for an accommodation and that such a delay may amount to a denial." *Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 622 (6th Cir. 2011). However, a delay in responding to a request for accommodations does not constitute denial where the denial does not deprive the disabled person of the accommodation. *Id.* at 623.

The Board and Association have moved for summary judgment on Count One. The Association and Board do not dispute that Kromenhoek is disabled or handicapped within the meaning of the FHA or that the accommodation sought was necessary to afford Kromenhoek an opportunity to use and enjoy her dwelling. Rather,

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 14

in support of their motion for summary judgment, the Board and Association assert that Kromenhoek did not request an accommodation within the meaning of the FHA until March, 2012, and that at no time was Kromenhoek denied the accommodation sought.

The Board and Association assert that Kromenhoek requested an accommodation for the first time in March of 2012. In support of that contention, the Board and Association have submitted a declaration by Sharon Koehler ("Koehler"), a member of the Board during the time at issue. The Board and Association also direct the Court to a copy of the report issued by the United States Department of Housing and Urban Development ("HUD"). Finally, the Board and Association have also provided a letter from the President of the Board in 2012, Ed Wardall, granting Kromenhoek's exemption.

Koehler declares that Kromenhoek provided documents, or "paperwork," to Louanne Schechter ("Schechter") in 2011. (Decl. Kohler.) Kohler does not state what this "paperwork" consisted of. The affidavit of Schechter sheds some light on what was contained in the "paperwork" filed in 2011. Schechter testifies that Kromenhoek gave Schechter a copy of a letter from Kromenhoek's doctor, prescribing an emotional support animal,

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 15

and certifications for Oliver. Kohler avers that Kromenhoek instructed Schechter not to share Kromenhoek’s paperwork with the Board. Kohler also declares that Kromenhoek told the Board not to access the paperwork. Koehler further states that the Board did not review or discuss the content of Kromenhoek’s paperwork or documentation at that time. Koehler states that the Board was unaware of any request for accommodation by Kromenhoek, and did not review any such request, until March of 2012. Koehler testifies that, in March, 2012, Kromenhoek provided the President of the Board, Ed Wardell, with a letter requesting an accommodation (the “March, 2012, request”). The letter is dated January 12, 2012. It was addressed to the previous President of the Board, Harcourt. The March, 2012, request also included a copy of the letter from Kromenhoek’s doctor, and the certifications for Oliver.

The Board and Association also direct the Court to a report issued by the United States Department of Housing and Urban Development (“HUD”). Following the filing of an administrative complaint by Kromenhoek, HUD conducted an investigation into Kromenhoek’s allegations of discrimination and issued a report. In its report, HUD stated that “[Kromenhoek] did not formally request a reasonable accommodation for her disability until

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 16

March 2012. In April 2012, upon review of those documents, the [Board] granted the request." (12-cv-25, ECF No. 188-1.)[6]

The Board also submitted a letter from the president of the Board which stated that

> [t]he Board of Directors convened a closed door meeting on March 26th, 2012 to confidentially review [the documents]. After review, the Board of Directors has agreed to provide you an exemption to the No Dog policy currently in place at Cowpet. Thus your request for accommodation to allow your service animal/emotion [sic] support animals to reside at Cowpet Bay West is granted. Furthermore, the Board has agreed to waive any fines assessed to your unit as a result of the perceived violation of the No Dog policy at Cowpet.

(12-cv-25, ECF No. 188-1, Ex. 13.)

In order to make a claim under the FHA, a plaintiff "must actually request an accommodation and be refused in order to bring a reasonable accommodation claim under the FHA." *United States v. Hialeah Hous. Auth.*, 418 F. App'x 872, 875 (11th Cir. 2011). "[F]or a demand to be specific enough to trigger the duty to provide a reasonable accommodation, the defendant must have enough information to know of both the disability and desire for

---

[6] "As a general proposition, administrative records may be a sufficient basis for the granting of a motion for summary judgment. *See, e. g.*[sic] *United States v. Lange*, 466 F.2d 1021, 1025 n. 5 (9th Cir. 1972); *Dredge Corp. v. Penny*, 338 F.2d 456, 460 (9th Cir. 1964)." *United States v. Pent-R-Books*, Inc., 538 F.2d 519, 527 (2d Cir. 1976). That said, the Court recognizes that it is not bound by any factual finding made by HUD.

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 17

an accommodation, or circumstances must at least be sufficient to cause a reasonable landlord to make appropriate inquiries about the possible need for an accommodation.” *Id.* at 876 (internal quotations omitted).

The evidence indicates that Harcourt and the Board were aware that documents had been filed with Schechter as early as 2011. (Koehler Decl.) The evidence also indicates that the Board did not know of the specific contents of those documents, because Kromenhoek had forbidden the Board from seeing them. (*Id*.) A request for an accommodation must be reasonably specific. “The duty to make a reasonable accommodation does not simply spring from the fact that the handicapped person wants such an accommodation made. Defendants must instead have ... the ability to conduct a meaningful review of the requested accommodation[.]” *Hialeah Hous. Auth.*, 418 F. App'x at 876. Kromenhoek’s initial filing of documents with an individual who was not a Board member, and concomitant refusal to allow the Board to see the documents, prevented the Board and Association from conducting a meaningful review of the accommodation sought. As such, Kromenhoek’s initial filing of her doctor’s letter and

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 18

Oliver’s certificates is not a specific request for accommodation, as is required by the FHA.[7]

Thus, the first request for accommodation came in March, 2012. (Koehler Decl.) That request was granted within one month. (12-cv-25, ECF No. 188-1, Ex. 13.)

Even assuming, *arguendo*, that Kromenhoek made a request for a reasonable accommodation in 2011, she must also show that she was denied the reasonable accommodation. *See* 42 U.S.C. § 3604(f)(3)(B).

“In most circumstances, waiving a no-pet rule to allow a disabled resident the assistance of a service animal is a reasonable accommodation.” *Prindable v. Ass'n of Apartment Owners of 2987 Kalakaua*, 304 F. Supp. 2d 1245, 1257 (D. Haw. 2003) *aff'd sub nom. DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175 (9th Cir. 2006); *Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995)(stating that allowing a deaf

---

[7] This was also the view taken by HUD, when it conducted its investigation into Kromenhoek’s FHA complaint. Specifically, HUD found that, “[w]hile the Complainant informed the Office Manager of the Respondent Association of her disability and need for an emotional support animal in July 2011, she did not formally request an accommodation at that time. In fact, she asked that the Office Manager keep this information confidential, i.e., that it not be shared with the Board of Directors of the Respondent Association.” (Determination of No Reasonable Cause, HUD, Case No. 01-12-0337-8.)

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 19

individual to keep a service dog despite a no-pets policy was *per se* reasonable).

At least one federal appellate court has acknowledged "that injury may result when a housing provider unreasonably delays responding to a request for an accommodation and that such a delay may amount to a denial." *Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 622 (6th Cir. 2011). However, a delay in responding to a request for accommodations does not constitute denial where the denial does not deprive the disabled person of the accommodation. *Id.* at 623.

In *Overlook Mutual Homes, Inc. v. Spencer*, the Sixth Circuit considered an FHA claim involving a request for a support animal. In that case, Overlook requested medical and counseling records pertaining to the resident's request for an accommodation. *Id.* at 619. When Overlook did not receive those records, it indicated to the requesting residents that Overlook would not review the request until all documentation had been provided. *Id.* During the delay in Overlook's response to the resident's request, the service dog "was allowed to stay with the family, and they were never required to leave their home or otherwise punished for [the dog's] presence." *Id.* at 623. Because the residents were able to use the requested

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 20

accommodation for the duration, the Sixth Circuit found that their request had not been constructively denied. *Id.*

An alternative approach to that taken in *Overlook* is evident in *Astralis Condominium Assoc. v. Secretary, U.S. Dept. of Housing and Urban Development*, 620 F.3d 62 (1st Cir. 2010). In *Astralis*, the residents requested handicapped parking spaces. *Id.* at 65. For over a year, the association did not take any action on the request. *Id.* While the dispute was ongoing, the residents parked in the desired handicapped spaces. *See id.* However, when they did so, the residents were cited. *Id.*

Here, as in *Overlook*, Kromenhoek had access to the accommodation for the duration of the alleged delay. (Kohler Decl.("The Board never prevented Plaintiff from accessing or using her unit at any time with the accompaniment of her dog.")) Kromenhoek was not evicted, or threatened with eviction, and Oliver was at no time forced to leave the premises. Though Kromenhoek received notice that she would be fined per day for having Oliver on premises, she was also informed that all fines would be held in abeyance until the resolution of her request for an accommodation. (*Id*. ("The Board held all dog violation fines against Plaintiff in abeyance and agreed to waive same in March 2012.")) The circumstances here are easily distinguishable

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 21

from "*Astralis*, in which a delay in responding to a request was found to be a denial. In th[at] case[], the delay had the effect of depriving disabled persons of the accommodation." *Id.* In the instant matter, Kromenhoek at all times had access to her emotional support dog and was not punished for the support dog's presence.  As such, it cannot be said that the alleged delay in processing her request constituted a refusal to grant her a reasonable accommodation.

The facts shown by the Association and Board, unless controverted, entitle the Association and Board to judgment as a matter of law. Therefore, the burden now shifts to Kromenhoek to show that there is a genuine dispute of material fact, such that the Association and Board are not entitled to summary judgment on Count One.

Kromenhoek claims that she requested an accommodation in 2011.  In support of that contention, she directs the Court to the affidavit of Louanne Schechter and a copy of a letter from Kromenhoek's doctor, prescribing her with an emotional support animal. Schechter states that she received a letter from Kromenhoek's doctor, prescribing a support animal, and certifications for Kromenhoek's dog Oliver in October, 2011. Schechter also avers that she "discussed" the paperwork with her

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 22

supervisor, and that her supervisor then "discussed" the
paperwork with Harcourt, then a member of the Board. Schechter
avers that Harcourt looked at the documentation. Schechter
states that following those events, she was instructed to place
the paperwork in Kromenhoek's file and take no further action.

On review of the documents provided by Kromenhoek to
Schechter in July, 2011, and the affidavit of Schechter, the
Court considers a few things to be noteworthy. First, the
letter from Kromenhoek's doctor that was submitted to Schechter
does not appear to request any action. It merely states that
Kromenhoek has been diagnosed with anxiety, for which the doctor
is prescribing an emotional support dog. Second, the Court notes
that Schechter "discussed" the documents with her supervisor,
who then purportedly "discussed" them with Harcourt. Kromenhoek
notably has not produced any evidence that the Board was
allowed, at any time, to access these documents. This is
particularly noteworthy, given Koehler's testimony that
Kromenhoek refused to let the Board look at the documentation.

It is axiomatic that "[t]he duty to make a reasonable
accommodation does not simply spring from the fact that the
handicapped person wants such an accommodation made. Defendants
must instead have ... the ability to conduct a meaningful review

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 23

of the requested accommodation[.]" *Hialeah Hous. Auth.*, 418 F.
App'x at 876. Yet, contrary to that axiom, Kromenhoek seems to
assert that by providing Schechter with *notice* of her condition,
and forbidding Schechter from sharing that notice, Kromenhoek
triggered an obligation on the part of the Board: (1) to absorb
that information by osmosis; (2) to cast that unshared
information as a request for an accommodation; and (3) to assess
that nonexistent request. In essence, Kromenhoek invites the
Court to find that providing notice of a condition is tantamount
to requesting an accommodation for that condition.  The Court
must decline that invitation as it is unsupported in law. The
circumstances presented by Kromenhoek's wishes and conduct
deprived the *Board and Association* of the opportunity to conduct
a meaningful review until March, 2012.  After that review, the
Board granted Kromenhoek the accommodation she sought.

Even if the documents Kromenhoek submitted in 2011 could be
considered a request for an accommodation, Kromenhoek still
would need to show that she was denied such accommodation.  On
this issue, Kromenhoek has adduced no additional record
evidence.  Instead, she argues that, as a matter of law, the
undue delay between her alleged request for accommodation, and

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 24

the Board’s consideration of the same, acted as a constructive denial of her request.

A delay in responding to a request for accommodations does not constitute denial where the denial does not deprive the disabled person of the accommodation. *See Overlook Mut. Homes*, 415 F. App'x at 623. As discussed above, Kromenhoek was not evicted, or threatened with eviction, and Oliver was at no time forced to leave the premises. Though Kromenhoek received notice that she would be fined per day for having Oliver on premises, she was also informed that all fines would be held in abeyance until the resolution of her request for an accommodation. On these facts, as previously stated, the Court does not find as a matter of law that Kromenhoek was at any time actually denied the accommodation sought.

Because Kromenhoek has failed to show there is any genuine dispute of material fact, such that the Board and Association are not entitled to judgment as a matter of law, summary judgment is appropriate as to Count One.

**B. Count Three: Violation of 42 U.S.C. § 3617 against Association and Board; Count Five: Violation of 42 U.S.C. § 3617 against Talkington**

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 25

Under the Fair Housing Act Amendment ("FHAA"), which Congress passed in 1988 to extend the coverage of the FHA to include people with disabilities, it is unlawful:

> to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617.

To prevail on a claim brought under Section 3617, a plaintiff must show that

> (1) she is a protected individual under the FHA, (2) she was engaged in the exercise or enjoyment of her fair housing rights, (3) the defendants coerced, threatened, intimidated, or interfered with the plaintiff on account of her protected activity under the FHA, and (4) the defendants were motivated by an intent to discriminate. *East-Miller*, 421 F.3d at 563. "Interference" is more than a "quarrel among neighbors" or an "isolated act of discrimination," but rather is a "pattern of harassment, invidiously motivated." *Halprihn*, 388 F.3d at 330; *cf*. *DiCenso*, 96 F.3d at 1006; *Honce v. Vigil*, 1 F.3d 1085, 1090 (10th Cir. 1993).

*Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009).

For purposes of their motions for summary judgment, the Defendants do not argue or adduce evidence refuting that Kromenhoek is a protected individual under the FHA, or that, in having her support dog on the premises, she was engaged in the

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 26

exercise or enjoyment of her fair housing rights. The Defendants, instead, contend that their behavior did not "coerce[], threaten[], intimidate[], or interfere[] with the plaintiff on account of her protected activity under the FHA." *Bloch*, 587 F.3d at 783.

1. **Count Three: Violation of 42 U.S.C. § 3617 against Association and Board**

In Count Three of the Second Amended Complaint, Kromenhoek alleges that the Board and Association unlawfully retaliated against her for exercising rights protected by the FHA when a resolution was introduced to add a "no pets" policy to the bylaws. Kromenhoek further alleges that the Board distributed confidential medical information to non-members, specifically Talkington, in order to intimidate her or retaliate against her. Finally, Kromenhoek claims that the imposition of a daily fine for having Oliver on the premises constituted impermissible interference. The Board and Association respond that there was no retaliatory action, and that Kromenhoek is trying to use the FHA to settle a "dispute between neighbors."

In support of its motion for summary judgment, the Board and Association submitted association rules and regulations that have forbidden dogs in general since 2007. The Board and Association submitted the 2007 version of its Bylaws, as well,

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 27

which incorporate by reference the rules and regulations. The Board and Association also rely on the declaration of Koehler, which states that the Board did not look at or review Kromenhoek's documentation as to her medical condition or Oliver until March 2012. According to the letter from her doctor that Kromenhoek submitted, Kromenhoek was not prescribed an emotional support dog until 2011.

As to Kromenhoek's claim that the Board and Association shared confidential information regarding her request with non-members, the Defendants rely on the affidavit of Talkington. Talkington avers that at no time did he receive any medical records or confidential information from the Board, or any member of the Board. He further states that he did not, at any time, post any of Kromenhoek's medical records or confidential information online.

The Board and Association have also submitted correspondence sent by the Board to Kromenhoek informing Kromenhoek that: she was in violation of the "no pets" policy, that a per day fine will be levied, and that such fine would be held in abeyance pending her filing of a request for an exemption from the "No Dogs policy," and the Board's review of such request. The Board also submitted a letter sent by the

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 28

Board to Kromenhoek informing her that her request was approved and that the fines were waived.

These facts, taken together, show that the Association and the Board did not undertake retaliatory action under Section 1367 based upon Kromenhoek's request for a service dog accommodation. "To establish a *prima facie* case of retaliation, a plaintiff must show that (1) he engaged in a protected activity; (2) the defendant subjected him to an adverse action; and (3) a causal link exists between the protected activity and the adverse action." *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001).

As the Board and Association make no argument as to whether Kromenhoek's request for an accommodation was a protected activity, the Court will, for purposes of their motion for summary judgment on Count Three, consider that issue conceded. The Court, thus, considers first if there was an "adverse action" to which Kromenhoek was subjected. The Board and Association have adduced evidence that neither party disclosed Kromenhoek's confidential information. They have also adduced competent evidence that Kromenhoek was never fined. As such, Kromenhoek's allegations that such activities constituted retaliation must fail as a matter of law.

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 29

Turning to the issue of whether the “No Dogs” policy itself constituted retaliation, the Court finds the dates of that activity to be dispositive. The Board and Association have submitted competent evidence that the rules and regulations that implemented the “No Dogs” policy were passed no later than 2007, as were the bylaws that incorporated those rules and regulations by reference. The protected activity that Kromenhoek engaged in, seeking an accommodation for her service animal, began no earlier than 2011. There is thus no causal link between beginning the protected activity and the alleged retaliatory action.

Thus, these facts, unless disputed, entitle the Association and Board to judgment as a matter of law. This showing satisfies the defendants’ burden under Rule 56, and the burden thus shifts to Kromenhoek.

Kromenhoek relies almost entirely on an unverified second amended complaint. Additionally, she directs the Court’s attention to a blog post written by Talkington stating that Kromenhoek was being fined for violations of the “No Dog” policy. Talkington indicates in his post that he received that information from the Board. The email or letter by which he

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 30

learned of this action is unknown. More importantly, the source of the email or letter is unknown.

Assuming, *arguendo*, that this disclosure may be considered an “adverse action”, there must still be some indication that the complained of action was done in response to the plaintiff’s exercise of her fair housing rights. *See Walker*, 272 F.3d at 1128. The record in this case is replete with complaints from Talkington, as well as other association members, to the Board complaining of violations of the “No Dog” policy and demanding the Board punish the individuals Talkington identified as violating the policy. (ECF No. 188-1.) The Board’s proof of action on the “No Dog” policy concerns appears to be nothing more than that. The letter itself states that though Kromenhoek was being fined, it would be held in abeyance pending her request for accommodation. There is nothing on the record which supports an inference that the letter’s disclosure was done in retaliation against Kromenhoek’s request for accommodation. In fact, at that time, she had not made such a request.[8]

The Court is thus unable to find proof on the issue of causation as to the purported disclosure. As to the other

---

[8] As discussed above, Kromenhoek did not actually request an accommodation until March 2012. The letter the Board allegedly disclosed predates that.

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 31

complained of "adverse actions," Kromenhoek has adduced no additional competent evidence and Kromenhoek relies entirely on her unverified complaint. Though the Court may consider pleadings in reviewing motions for summary judgment, in the face of competent evidence, a lone unverified pleading simply will not be enough.

As Kromenhoek has not shown there is a genuine dispute of material fact, the Court finds that summary judgment is appropriate as to Count Three.

**2. Count Five: Violation of 42 U.S.C. § 3617 against Talkington**

In Count Five, Kromenhoek also claims that Lance Talkington ("Talkington"), another resident of Cowpet Bay West, violated Section 3617. Specifically, she alleges that the blog kept by Talkington constituted harassment that intimidated, threatened, or interfered with her enjoyment of her property. Talkington disputes this characterization of his actions, and contends that Kromenhoek is elevating a simple dispute among neighbors.

In support of his motion, Talkington provided an affidavit, as well as several blog posts in which the issue of pets at Cowpet Bay West was discussed. The Court has carefully looked at and considered Talkington's affidavit and the blog posts attributable to Talkington. There are a number of posts, some of

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 32

which reference Kromenhoek by name. The content written by Talkington himself seems geared towards discussing whether dogs should be allowed in the community, and how to best draft a bylaw provision that would allow service animals for the disabled. Talkington proposed incorporating the language used in the Americans with Disabilities Act ("ADA").

Talkington did post a copy of the email sent by Harcourt to Kromenhoek in which Kromenhoek was informed that she was in violation of the "no pets" policy and would need to submit a request to the Board. Talkington also called Kromenhoek a "known violator" of the "no pets" policy. Finally, Talkington disclosed on his blog that he was a named party in Kromenhoek's administrative complaint to HUD.

> A wide range of conduct falls under Section 3617's umbrella. Indeed, Section 3617 is not limited to those who used some sort of "potent force or duress," but extends to other actors who are in a position directly to disrupt the exercise or enjoyment of a protected right and exercise their powers with a discriminatory animus. Under this standard, the language "interfere with" encompasses such overt acts as racially-motivated firebombings, sending threatening notes, and less obvious, but equally illegal, practices such as exclusionary zoning, deflating appraisals because of discriminatory animus, and insurance redlining[.]

*Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 347 (6th Cir. 1994).

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 33

Even a broad reading of Section 3617, in order to account for less obvious but still illegal discrimination, does not make unfortunate skirmishes between neighbors unlawful. *Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009). Even potentially discriminatory statements exchanged between neighbors do not necessarily violate Section 3617. *See Sheikh v. Rabin*, 565 F. App'x 512, 517-18 (7th Cir. 2014).

In *Sheikh v. Rabin*, 565 F. App'x 512 (7th Cir. 2014), the Seventh Circuit considered whether statements, including discriminatory statements, made in opposition to a zoning variance and in discussions between neighbors, violated Section 3617. In that case, the plaintiff was a Muslim from South Asia who sought to build a home and required various zoning variances. *Id*. at 514-15. He initially sought a variance from the zoning board. *Id*. at 515. Before a final decision on the variances was issued, he filed suit against various neighborhood residents, alleging, in part, violations of Section 3617. *Id*.

Those neighborhood residents had opposed the requested variances and made a number of potentially discriminatory statements. *See id*. at 517-18.

> [One neighbor] once told [the plaintiff] that the subdivision is “all white” and that he did not think [the plaintiff] would “fit in.” The neighbors sometimes referred to [the plaintiff]

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 34

> and his family at [public] meetings as “you people,” and [a neighbor] suggested he move somewhere else, closer to his “people.” At one meeting, [a neighbor] displayed pictures of narrow houses in poor countries, sarcastically suggesting that the pictures supported the conclusion that a narrow house should be enough for [the plaintiff]. Another time, some of the neighbors (he does not specify who) expressed worry that [the plaintiff] would allow more than one family to live in his house. (His two adult children will live in the house with him and his wife.) These neighbors talked about other areas in which one “colored family” moving in was a prelude to being “flooded by them” and about how some single-family homes rented by “latinos and blacks” ended up housing multiple families. [The plaintiff] also alleges that [a neighbor] said something threatening about the house burning down if it is built. (Though accepting as true that [that neighbor] said something threatening, [the judge] noted that the allegations are fuzzy. [The plaintiff]'s appellate brief hardly clarifies matters; he maintains that, whatever [the neighbor] said, it was threatening, but he explains that he “can merely speculate on that threat” since only [the neighbor] knows “his true intent.”)

*Id*. Based on these facts, the district court held that the plaintiff’s allegations described “a ‘quarrel among neighbors’ that involved, at most, ‘isolated acts of discrimination’” and did not violate 42 USC 3617. *See Sheikh v. Rabin*, No. 11-CV-425, 2012 WL 5471085, at *5 (N.D. Ill. Nov. 9, 2012). The Seventh Circuit affirmed, holding that “taken together, the[] allegations would establish only that different neighbors at different times made shameful statements, not that any

Case: 3:12-cv-00025-CVG-RM Document #: 223 Filed: 11/18/14 Page 35 of 45
*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 35

individual neighbor (or the neighbors as a group) interfered with [the plaintiff]'s rights under the Fair Housing Act." *Sheikh*, 565 F. App'x at 518.

The conduct at issue in this case pales in comparison to that seen in *Sheikh*. A review of Talkington's blog posts and comments attributable to Talkington does show that he was certainly not friendly with Kromenhoek. None of those comments or posts, however, rises to the level of interference and threatening behavior seen in *Sheikh*, where one of the plaintiff's neighbors "said something threatening about the house burning down if it is built." *See id*. at 517-18.

Talkington has shown competent evidence that the behavior complained of in this case does not rise to the level of "interference" with Kromenhoek's rights under the FHA. Such facts, if uncontroverted, entitle him to judgment as a matter of law and meet his burden under Rule 56.

Once a movant meets the burden of Rule 56, the burden shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans*, 762 F.2d at 342. The non-moving party "may not rest upon mere allegations, general denials, or . . . vague statements . . . ." *Quiroga*, 934 F.2d at 500. "[T]here is no issue for trial unless there is

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 36

sufficient evidence favoring the non-moving party for a jury to
return a verdict for that party." *Anderson*, 477 U.S. at 249.

Kromenhoek does not dispute any facts adduced by
Talkington. Instead, she argues that as a matter of law, these
posts amount to harassment that intimidates or interferes with
Kromenhoek's enjoyment of her property.

As discussed above, here the facts are less extreme even
than those in *Sheikh*. Though Talkington's blog may have bothered
Kromenhoek, there is no record evidence that she was forced to
see it. There were no threats made against Kromenhoek. There
is no allegation that she was followed or otherwise harassed in
person. This was a dispute over what the specific rules should
be regarding the keeping of dogs in Cowpet Bay West, with
discussions ongoing between neighbors who had no influence on
whether or not Kromenhoek could actually keep her dog at her
residence.

Though finding the line may at times be difficult, the
Court believes that what occurred in this instance as between
Kromenhoek and Talkington is more correctly characterized as a
dispute between neighbors, not unlawful discrimination.

Kromenhoek has, thus, failed to meet her burden. As such,
considering there is no genuine dispute of material fact and

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 37

Talkington is entitled to judgment as a matter of law, the Court finds summary judgment is appropriate as to Count Five.

**C. Count Six: Americans with Disabilities Act Against Association and Board**

In Count Six, Kromenhoek alleges that the Board and Association violated her rights under the Americans with Disabilities Act ("ADA") by improperly enforcing a "no dogs" policy against her.

> Under Title III of the ADA, it is unlawful for a public accommodation to discriminate against an individual on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. 12182(a). "Public accommodation" is defined in terms of 12 categories, which the legislative history indicates "should be construed liberally" to afford people with disabilities "equal access" to the wide variety of establishments available to the nondisabled. S.Rep. No. 101-116, p. 59 (1989); H.R.Rep. No. 101-485, pt. 2, p. 100 (1990), U.S.Code Cong. & Admin. News 1990, pt. 2, at pp. 303, 382-283. The ADA obligates a "public accommodation" only with respect to a "facility" that is "used as, or designed or constructed for use as," either a place of public accommodation or a commercial facility. 28 C.F.R. § 36.102(b)(3)(i)-(ii).

*Regents of Mercersburg College v. Republic Franklin Ins. Co.*, 458 F.3d 159, 164 (3d Cir. 2006).[9]

---

[9] The ADA provides that

> The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce--

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 38

The United States Court of Appeals for the Third Circuit has explained that

> The regulations under the statute provide that discrimination is prohibited by any private entity that owns, leases (or leases to) or operates a place of public accommodation, 28 C.F.R. § 36.201(a), and that "private entity" means a person or entity other than a public entity. 28 C.F.R. § 36.104.

*Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir. 2002).

"[C]ondominium buildings may be covered as places of public accommodation if they operate as places of lodging. Determining whether a particular condominium facility is a place of public accommodation would depend on the extent to which it shares characteristics normally associated with a hotel, motel or inn." Department of Justice Public Letter 202-PL-216 (Aug. 28, 1992);

---

> (A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;
>
> (B) a restaurant, bar, or other establishment serving food or drink;
>
> . . . .
>
> (J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;
>
> (K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and
>
> (L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181(7).

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 39

*see also Regents of Mercersburg College v. Republic Franklin Ins. Co.*, 458 F.3d 159, 165 (3d Cir. 2006) (finding that private-school dormitories are places of "public accommodation" under the ADA because they are more similar to "transient lodging" like "inns, hotels, and motels – which are covered" by the ADA, and less like "residential units such as apartments and condominiums – which are not covered by the ADA . . ."); *Access 4 All, Inc. v. Atlantic Hotel Condominium Ass'n, Inc.*, 2005 WL 5643878, *13 (S.D. Fla. Nov. 23, 2005) (finding that the hotel and condominium structure "was designed and intended for use as a public accommodation because individual unit owners who purchased a unit were likely to rent out the unit for public use," and was "virtually indistinguishable from a hotel.")

The Board and Association seek summary judgment on Count Six on the basis that Cowpet Bay West is not a "public accommodation," and that they are, therefore, exempt from the ADA. "[R]esidential units such as apartments and condominiums[,]" are generally exempt from the ADA. *See Regents of Mercersburg Coll.*, 458 F.3d at 165. In support of their contention that Cowpet Bay West is not a public accommodation within the ambit of the ADA, the Board and Association have submitted the bylaws of Cowpet Bay West. Those bylaws, in

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 40

Article V, Section 11, state that "[t]he apartment units shall be used for residences only."

Having provided competent evidence to meet their burden under Rule 56, the burden shifts to Kromenhoek. Kromenhoek directs the Court to a copy of a webpage on which a unit owner put their unit up for temporary rental. This single advertisement, Kromenhoek argues, shows that individual unit owners are likely to rent out their units, and that Cowpet Bay West is similar to a hotel. The Court is not persuaded by this argument. A single advertisement from one unit owner does not show that other owners are "likely to rent out the unit for public use," such that Cowpet Bay West is "virtually indistinguishable from a hotel." *Access 4 All, Inc.*, 2005 WL 5643878, *13.

Considering the evidence adduced, the Court finds that the Board and Association have shown that there is no dispute as to material fact and that they are entitled to judgment as a matter of law on Count Six.

**D. Remaining Counts against the Board, the Association, Verdiramo, Cokayne, and Talkington**

Counts Seven through Eighteen each allege claims arising under local laws (the "local claims"). Those claims are subject to different jurisdictional considerations, which may affect

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 41

their viability in this Court. In order to assess jurisdictional viability of the local claims, a brief overview of the subject-matter jurisdicition of this Court is in order.

Federal district courts are courts of limited jurisdiction. Ordinarily, a district court has original jurisdiction over “civil actions arising under the Constitution, laws, or treaties of the United States.” 28 U.S.C. § 1331 (“federal question jurisdiction”). District courts also have original jurisdicition over civil actions between citizens of different states with the amount in controversy exceeding the sum or value of $75,000. 28 U.S.C. § 1332 (“diversity jurisdiction”). The Supreme Court has “interpreted the diversity statute to require ‘complete diversity’ of citizenship.” *C.T. Carden v. Arkoma Assoc.*, 494 U.S. 185, 187 (1990). That means “every plaintiff must be of diverse state citizenship from every defendant.” *In re Briscoe*, 448 F.3d 201, 215.

Where a case is properly brought in the district court pursuant to the Court’s federal question jurisdiction or diversity jurisdiction, the Court may have jurisdicition over local claims that arise out of the same case or controversy as those underlying the federal claims (supplemental jurisdiction). 28 U.S.C. § 1367.

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 42

The complaint in this matter names a plaintiff that is a citizen of the Virgin Islands, Kromenhoek, and a defendant that is a citizen of the Virgin Islands, Cowpet Bay West. As such, the case could not be brought in this Court pursuant to the Court's diversity jurisdicition under 28 U.S.C. § 1332. Instead, Kromenhoek brought her complaint in this Court pursuant to its federal question jurisdicition under 28 U.S.C. § 1331, as the FHA and ADA claims arise under the laws of the United States. Those claims, as discussed above, have been disposed of as a result of the defendants' motions for summary judgment.

The local claims against the Board, the Association, Verdiramo, Cokayne, and Talkington may be heard only if the Court exercises its supplemental jurisdiction over those claims. That exercise is not a foregone conclusion.

Indeed, "district courts may decline to exercise supplemental jurisdiction over a claim . . . if--(1) the claim raises a novel or complex issue of State law,(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,(3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 43

other compelling reasons for declining jurisdiction.” 28 U.S.C. § 1367.

With the disposition of the federal claims in this case, the Court’s exercise of jurisdiction over the local claims is discretionary. Exercising that discretion, the Court will decline jurisdiction over the remaining local claims. See, e.g., Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995)(“It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of juridical economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them[.]”)

## V. **CONCLUSION**

For the reasons discussed herein, the Board, the Association, and Talkington are entitled to judgment as a matter of law on Counts One, Three, Five, and Six. The Court will decline to exercise its supplemental jurisdiction over local counts, Seven through Eighteen, as against the Board, the

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 44

Association, Talkington, Verdiramo, and Cokayne, as no federal counts remain as against any of said defendants.[10]

An appropriate Judgment follows.

S___________________________
**Curtis V. Gómez**
**District Judge**

---

[10] The Court does not address any of the claims, federal or local, as against Harcourt or Felice in this Memorandum Opinion. Such claims are the subject of a separate, forthcoming opinion.

**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

**BARBARA WALTERS,**

**Plaintiff,**

**v.** **Civil No. 2012-24**

**COWPET BAY WEST CONDOMINIUM ASSOCIATION; THE BOARD OF THE COWPET BAY WEST CONDOMINIUM ASSOCIATION; ED WARDWELL, MAX HARCOURT; BILL CANFIELD, ROSIE WELLS, SHARON KOEHLER, DOUG REBAK and HERB HORWITZ as Board members; MAX HARCOURT, in his personal capacity; LANCE TALKINGTON; ALFRED FELICE, ROBERT COKAYNE, and VINCENT VERDIRAMO,**

**Defendants.**

---

**JUDITH KROMENHOEK,**

**Plaintiff,**

**v.** **Civil No. 2012-25**

**COWPET BAY WEST CONDOMINIUM ASSOCIATION; THE BOARD OF THE COWPET BAY WEST CONDOMINIUM ASSOCIATION; ED WARDWELL, MAX HARCOURT; BILL CANFIELD, ROSIE WELLS, SHARON KOEHLER, DOUG REBAK and HERB HORWITZ as Board members; MAX HARCOURT, in his personal capacity; LANCE TALKINGTON; ALFRED FELICE, ROBERT COKAYNE, and VINCENT VERDIRAMO,**

**Defendants.**

---

Exhibit "B"

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Judgment
Page 2

**ATTORNEYS:**

**Karin A. Bentz, Esq.**
Law Office of Karin Bentz, P.C.
St. Thomas, VI
*For Barbara Walters and Judith Kromenhoek,*

**Joseph G. Riopelle, Esq.**
Boyd Richards Parker & Colonnelli
Tampa, FL
**Carl R. Williams, Esq.**
**Richard P. Farrelly, Esq.**
Birch, Dejongh & Hindels
St. Thomas, VI
*For Cowpet Bay West Condominium Association, Ed Wardwell, Max Harcourt, Bill Canfield, Rosie Wells, Sharon Koehler, Doug Rebak, Robert Cokayne, Vincent Verdiramo, and Herb Horwitz,*

**John H. Benham, III, Esq.**
Watts, Benham & Sprehn, P.C.
St. Thomas, VI
*For Lance Talkington,*

**Ryan C. Meade, Esq.**
Quintairo, Prieto, Woo & Boyer, P.S.
Miami, FL
*For Alfred Felice.*

## JUDGMENT

Before the Court are four motions for summary judgment filed by: Vincent Verdiramo, Robert Cokayne, Lance Talkington, and the Cowpet Bay West Condominium Association (the “Association”) and the Board of the Cowpet Bay West Condominium Association (the “Board”) (collectively, the “defendants”).

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Judgment
Page 3

For the reasons articulated in the Memorandum Opinion of even date, it is hereby

**ORDERED** that the motions of the Board, the Association, Verdiramo, and Cokayne for summary judgment on Counts One, Three, Six, Seven, Eight, Thirteen, Fourteen, and Seventeen of the second amended complaint are **GRANTED in part;** it is further

**ORDERED** that judgment be entered in favor of the Board and the Association as to Counts One, Three, and Six; it is further

**ORDERED** that Counts One, Three, and Six as against the Board and the Association are **DISMISSED**; it is further

**ORDERED** that Talkington’s motion for summary judgment on Counts Five, Eleven, Thirteen, Fifteen, Sixteen, and Seventeen is **GRANTED in part**; it is further

**ORDERED** that judgment be entered in favor of Talkington on Count Five; it is further

**ORDERED** that Count Five as against Talkington is **DISMISSED**; it is further

**ORDERED** that Counts Seven, Eight, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, Seventeen, and Eighteen as against the Board, the Association, Verdiramo,

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Judgment
Page 4

Cokayne, and Talkington are **DISMISSED** for want of jurisdiction; and it is further

**ORDERED** that the motions of the Board, the Association, Talkington, Cokayne, and Verdiamo for summary judgment on the claims brought by Barbara Walters are found as **MOOT**.

**S_______________________**
**Curtis V. Gómez**
**District Judge**

**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

**BARBARA WALTERS,**

**Plaintiff,**

**v.** — **Civil No. 2012-24**

**COWPET BAY WEST CONDOMINIUM ASSOCIATION; THE BOARD OF THE COWPET BAY WEST CONDOMINIUM ASSOCIATION; ED WARDWELL, MAX HARCOURT; BILL CANFIELD, ROSIE WELLS, SHARON KOEHLER, DOUG REBAK and HERB HORWITZ as Board members; MAX HARCOURT, in his personal capacity; LANCE TALKINGTON; ALFRED FELICE, ROBERT COKAYNE, and VINCENT VERDIRAMO,**

**Defendants.**

---

**JUDITH KROMENHOEK,**

**Plaintiff,**

**v.** — **Civil No. 2012-25**

**COWPET BAY WEST CONDOMINIUM ASSOCIATION; THE BOARD OF THE COWPET BAY WEST CONDOMINIUM ASSOCIATION; ED WARDWELL, MAX HARCOURT; BILL CANFIELD, ROSIE WELLS, SHARON KOEHLER, DOUG REBAK and HERB HORWITZ as Board members; MAX HARCOURT, in his personal capacity; LANCE TALKINGTON; ALFRED FELICE, ROBERT COKAYNE, and VINCENT VERDIRAMO,**

**Defendants.**

---

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 2

**ATTORNEYS:**

**Karin A. Bentz, Esq.**
Law Office of Karin Bentz, P.C.
St. Thomas, VI
*For Barbara Walters and Judith Kromenhoek,*

**Joseph G. Riopelle, Esq.**
Boyd Richards Parker & Colonnelli
Tampa, FL
**Carl R. Williams, Esq.**
**Richard P. Farrelly, Esq.**
Birch, Dejongh & Hindels
St. Thomas, VI
*For Cowpet Bay West Condominium Association, Ed Wardwell, Max Harcourt, Bill Canfield, Rosie Wells, Sharon Koehler, Doug Rebak, Robert Cokayne, Vincent Verdiramo, and Herb Horwitz,*

**John H. Benham, III, Esq.**
Watts, Benham & Sprehn, P.C.
St. Thomas, VI
*For Lance Talkington,*

**Ryan C. Meade, Esq.**
Quintairo, Prieto, Woo & Boyer, P.S.
Miami, FL
*For Alfred Felice.*

**AMENDED MEMORANDUM OPINION**[1]

**GÓMEZ, J.**

Before the Court are four motions for summary judgment filed by: Vincent Verdiramo, Robert Cokayne, Lance Talkington, and the Cowpet Bay West Condominium Association (the

---

[1] This Amended Memorandum Opinion corrects inadvertent scrivener errors contained in the Memorandum Opinion docketed at ECF No. 223. No substantive changes have been made.

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 3

"Association") and the Board of the Cowpet Bay West Condominium Association (the "Board") (collectively, the "Defendants").

## I. FACTUAL AND PROCEDURAL BACKGROUND

Judith Kromenhoek ("Kromenhoek") owns a unit in the Cowpet Bay West Condominium complex ("Cowpet"), a condominium community located on St. Thomas, United States Virgin Islands.

The Cowpet Bay West Condominium Association ("the Association") was formed under the Condominium Act of the Virgin Islands (the "Condominium Act"), 28 V.I.C. §§ 901-927. (Bylaws at 1, Civil No. 2012-24, ECF No. 31-1.)[2] The Association is comprised of all of the unit owners in the Cowpet condominium community. Association members purchase their units subject to the Association's Declaration,[3] Bylaws, and its Rules and Regulations.[4]

---

[2] According to the Condominium Act,

> The administration of every property shall be governed by bylaws a true copy of which shall be annexed to the declaration and made a part thereof. No modification of or amendment to the bylaws shall be valid unless set forth in an amendment to the declaration and such amendment is duly recorded.

28 V.I.C. § 917.

[3] "'Declaration' means the instrument by which the property is submitted to the provisions of this chapter, as hereinafter provided, and such declaration as from time to time may be lawfully amended." 28 V.I.C. § 901.

[4] The Condominium Act also provides that,

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 4

Association members elect a Board of Directors ("the Board"). The Board is made up of seven Association members. The Bylaws provide that the Board has

> the powers and duties necessary for the administration of the affairs of the Condominium and may do all such acts and things except as by law, by the Declaration, or by [its] By-Laws may not be delegated to the Board of Directors by the unit owners.

(Bylaws at 2, Civil No. 2012-24, ECF 31-1.)

The Bylaws provide for the amendment and enforcement of Rules and Regulations by the Board. At all relevant times, the Rules and Regulations for Association members provide the following:

> Dogs and farm animals are prohibited. Owners will be fined as specified by the Board of Directors. The Association may require removal of any animal when it becomes bothersome to others or is deemed by the Association to be unacceptable.

(Rules and Regulations, Civil No. 2012-24, ECF No. 31-2.)

---

> Each apartment owner shall comply strictly with the bylaws and the administrative rules and regulations adopted pursuant thereto, as either of the same may be lawfully amended from time to time, and with the covenants, conditions and restrictions set forth in the declaration or in the deed to his apartment. Failure to comply with any of the same shall be ground for an action to recover sums due, for damages or injunctive relief or both maintainable by the manager or Board of Directors on behalf of the Association of Apartment Owners or, in a proper case, by an aggrieved apartment owner.

28 V.I.C. § 906.

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 5

On or about December 15, 2010, Stansford S. Sutherland
("Sutherland"), "a licensed psychologist wrote a letter stating
that he was treating Kromenhoek and that she was diagnosed with
Anxiety Disorder . . . ." (Second Am. Compl. ¶ 30, Civil No.
2012-25, ECF No. 94.) In his letter, the psychologist stated
"that he has prescribed the use of an emotional support animal,
dog or other, to alleviate her symptoms and that such emotional
support animal was necessary." (*Id.*)

Kromenhoek owned a dog named Oliver. Kromenhoek submitted
information about her dog's qualification as an emotional
support animal to Louanne Schechter ("Schechter"), Cowpet's
office manager, and included the letter from Sutherland.

Thereafter, members of the Board held a public meeting
during which the issue of service dogs was discussed. Kromenhoek
alleges that Max Harcourt, then President of the Association,
shared the content of her documents with some of the Association
members. (Second Am. Compl. at ¶ 53, Civil No. 2012-25, ECF No.
94.)

Subsequently, discussions on Kromenhoek's pet ownership
appeared on an Internet web log, the Cowpet Bay Blog ("the
blog"). The blog was maintained by a member of the Association,

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 6

Lance Talkington. (Second Am. Compl. at ¶ 44, Civil No. 2012-24.)

Kromenhoek alleges that, on or about October 28, 2011, Harcourt e-mailed a letter addressed to her e-mail address as well as to Talkington's e-mail address. The letter stated that Kromenhoek had violated the "no dogs" policy contained in the Rules and Regulations. The letter also requested that Kromenhoek submit applications for reasonable accommodation.

On or about January 19, 2012, the Board met and voted to assess a fine of $50 per day against owners, including Kromenhoek, who were in violation of the "no dogs" policy. Thereafter, in February, 2012, the Association voted to add the "no dogs" policy to the Bylaws. The newly added bylaw contained no explicit exception for service animals.

Kromenhoek initiated this action against Cowpet on April 9, 2012. Her complaint has twice been amended. Kromenhoek's complaint contains the following claims: Count One alleges a violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(f)(3)(b) against the Association and the Board; Count Two alleges a violation of the FHA, 42 U.S.C. § 3617 against Harcourt; Count Three alleges a violation of the FHA, 42 U.S.C. § 3617 against the Association and the Board; Count Four alleges

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 7

a violation of the FHA, 42 U.S.C. § 3617 against Alfred Felice;

Count Five alleges a violation of the FHA, 42 U.S.C. § 3617

against Talkington; Count Six alleges a violation of Americans

with Disabilities Act ("ADA"), 42 U.S.C. § 12188 against the

Association and the Board; Count Seven alleges the Board

exceeded its authority; Count Eight alleges that the February

2012 Bylaws Amendment is void; Count Nine alleges negligence

against the Association and the Board; The next count, also

labeled as "Count Nine" in the complaint, alleges intentional

infliction of emotional distress against Felice; Count Ten

alleges civil conspiracy against all Defendants; Count Eleven

alleges *prima facie* tort against all Defendants; Count Twelve

alleges defamation and slander *per se* against the Association,

the Board, Felice, Harcourt, and Talkington; Count Thirteen

alleges Negligent Infliction of Emotional Distress and

Intentional Infliction of Emotional Distress against all

Defendants except Felice; Count Fourteen[5] alleges Invasion of

Privacy – Public Disclosure of Private Facts against the

Association and the Board; Count Fifteen[6] alleges Invasion of

---

[5] This count is actually labeled, "Count IVX." Though the Roman numerals for this count do not, in fact, equate to "fourteen," it is clear that they were intended to.
[6] Similarly, this count is actually labeled, "Count VX."

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 8

Privacy – Public Disclosure of Private Facts against Harcourt and Talkington; Count Sixteen alleges Invasion of Privacy – False Light against all Defendants except Verdiramo and Cokayne; Count Seventeen alleges Invasion of Privacy against the Board, the Association, Harcourt, and Talkington; and Count Eighteen alleges Negligence Per Se/Legal Malpractice against Vincent Verdiramo.

During the pendency of this litigation, Harcourt passed away. Barbara Walters, who had brought the same claims as Kromenhoek against the same defendants, also passed away during the course of litigation.

The Board, the Association, Robert Cokayne, and Verdiramo filed motions for summary judgment on Counts One, Three, Six, Seven, Eight, Thirteen, Fourteen, and Seventeen of the second amended complaint. Talkington filed a motion for summary judgment seeking judgment on Counts Five, Eleven, Thirteen, Fifteen, Sixteen, and Seventeen of the second amended complaint. Finally, a motion for summary judgment was filed by an attorney claiming to represent Harcourt.

The Court held a hearing on the Defendants’ motions for summary judgment on Kromenhoek’s on May 27, 2014. Following a lengthy hearing, at which evidence was presented and argument

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 9

heard, the Court granted the Association and Board's motion for summary judgment, Verdiramo's motion for summary judgment, Cokayne's motion for summary judgment, and Talkington's motion for summary judgment on Kromenhoek's claims. The Court also dismissed the claims brought by Barbara Walters in the parallel case. The Court took under advisement all of Kromenhoek's claims against Felice and Harcourt, as both defendants are deceased. Following the hearing, the Court indicated to the parties that a memorandum opinion documenting its rationale would be forthcoming.

## II. **DISCUSSION**

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy*, 762 F.2d 338, 342 (3d Cir. 1985). The non-moving party "may not rest

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 10

upon mere allegations, general denials, or . . . vague statements . . . .” *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). “[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.” *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

“[A]t the summary judgment stage the judge’s function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.” *Id*. In making this determination, this Court draws all reasonable inferences in favor of the non-moving party. *See Bd. of Educ. v. Earls*, 536 U.S. 822, 850 (2002); *see also Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

## III. ANALYSIS

In considering whether the Defendants have met their burden of showing there is no genuine issue of material fact and that they are entitled to judgment as a matter of law, the Court may consider the pleadings, the discovery and disclosure materials on file, and any affidavits. *See* Fed. R. Civ. P. 56(c). In support of their motions, the defendants have submitted affidavits, emails and other documents provided in discovery, declarations, and the pleadings.

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 11

**A. Count One: Violation of FHA 42 U.S.C. § 3604(f)(3)(b) against the Association and the Board**

In Count One, Kromenhoek alleges that the Board and the Association violated the Fair Housing Act ("FHA") by refusing to make reasonable accommodations for her alleged disability. The Fair Housing Act ("FHA"), passed by Congress as Title VIII of the Civil Rights Act of 1968, prohibits housing discrimination on the basis of, *inter alia*, race, gender, and national origin. 42 U.S.C. § 3601, *et seq*. Under the Fair Housing Act Amendment ("FHAA"), which Congress passed in 1988 to extend the coverage of the FHA to include people with disabilities, it is unlawful:

> To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, *because of a handicap* of-
>
> (A) that person; or
>
> (B) a person residing in or intending to reside in that dwelling after it is sold, rented, or made available; or
>
> (C) any person associated with that person.

42 U.S.C. § 3604(f)(2) (emphasis added). The FHAA does not, however, "extend a *preference* to handicapped residents," *United States v. California Mobile Home Park Management Co.*, 29 F.3d 1413, 1418 (9th Cir. 1994) (emphasis added). As such, accommodations that go beyond affording a disabled individual

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 12

"an equal opportunity to use and enjoy a dwelling" are not mandated by the FHAA. *Bryant Woods Inn, Inc. v. Howard County*, 124 F.3d 597, 605 (4th Cir. 1997).

Under 42 U.S.C. § 3604(f)(3)(B), discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). "The reasonable accommodation inquiry is highly fact-specific, requiring case-by-case determination." *United States v. California Mobile Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997) (citations omitted).

To prevail on a claim under 42 U.S.C. § 3604(f)(3)(b), a plaintiff must show each of the following elements:

> (1) he is disabled or handicapped within the meaning of the FHA, (2) he requested a reasonable accommodation, (3) such accommodation was necessary to afford him an opportunity to use and enjoy his dwelling, and (4) the defendants refused to make the requested accommodation.

42 U.S.C. § 3604(f)(3)(B); *Hawn v. Shoreline Towers Phase 1 Condominium Ass'n, Inc.*, 347 Fed. App'x 464, 467 (11th Cir. 2009) (citing *Schwarz v. City of Treasure Island,* 544 F.3d 1201, 1218-19 (11th Cir.2008)); *DuBois v. Ass'n of Apartment Owners of*

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 13

*2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006); *HUD v. Riverbay Corp.*, HUDALJ 02-93-0320-1 (Sept. 8, 1994).

In order to make a claim under the FHA, a plaintiff “must actually request an accommodation and be refused in order to bring a reasonable accommodation claim under the FHA.” *United States v. Hialeah Hous. Auth.*, 418 F. App'x 872, 875 (11th Cir. 2011). “[F]or a demand to be specific enough to trigger the duty to provide a reasonable accommodation, the defendant must have enough information to know of both the disability and desire for an accommodation, or circumstances must at least be sufficient to cause a reasonable landlord to make appropriate inquiries about the possible need for an accommodation.” *Id.* at 876 (internal quotations omitted).

Once an accommodation is formally requested, the plaintiff may only bring a claim under the FHA if that accommodation is denied.  Denial can be explicit or constructive. “We acknowledge that injury may result when a housing provider unreasonably delays responding to a request for an accommodation and that such a delay may amount to a denial.” *Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 622 (6th Cir. 2011). However, a delay in responding to a request for accommodations does not

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 14

constitute denial where the denial does not deprive the disabled person of the accommodation. *Id.* at 623.

The Board and the Association have moved for summary judgment on Count One. The Association and the Board do not dispute that Kromenhoek is disabled or handicapped within the meaning of the FHA or that the accommodation sought was necessary to afford Kromenhoek an opportunity to use and enjoy her dwelling. Rather, in support of their motion for summary judgment, the Board and the Association assert that Kromenhoek did not request an accommodation within the meaning of the FHA until March, 2012, and that at no time was Kromenhoek denied the accommodation sought.

The Board and the Association assert that Kromenhoek requested an accommodation for the first time in March of 2012. In support of that contention, the Board and the Association have submitted a declaration by Sharon Koehler ("Koehler"), a member of the Board during the time at issue. The Board and the Association also direct the Court to a copy of the report issued by the United States Department of Housing and Urban Development ("HUD"). Finally, the Board and the Association have also provided a letter from the President of the Board in 2012, Ed Wardall, granting Kromenhoek's exemption.

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 15

Koehler declares that Kromenhoek provided documents, or “paperwork,” to Louanne Schechter (“Schechter”) in 2011. (Decl. Kohler.) Kohler does not state what this “paperwork” consisted of. The affidavit of Schechter sheds some light on what was contained in the “paperwork” filed in 2011. Schechter testifies that Kromenhoek gave Schechter a copy of a letter from Kromenhoek’s doctor, prescribing an emotional support animal, and certifications for Oliver. Kohler avers that Kromenhoek instructed Schechter not to share Kromenhoek’s paperwork with the Board. Kohler also declares that Kromenhoek told the Board not to access the paperwork. Koehler further states that the Board did not review or discuss the content of Kromenhoek’s paperwork or documentation at that time. Koehler states that the Board was unaware of any request for accommodation by Kromenhoek, and did not review any such request, until March of 2012. Koehler testifies that, in March, 2012, Kromenhoek provided the President of the Board, Ed Wardell, with a letter requesting an accommodation (the “March, 2012, request”). The letter is dated January 12, 2012. It was addressed to the previous President of the Board, Harcourt. The March, 2012, request also included a copy of the letter from Kromenhoek’s doctor, and the certifications for Oliver.

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 16

The Board and the Association also direct the Court to a report issued by the United States Department of Housing and Urban Development ("HUD"). Following the filing of an administrative complaint by Kromenhoek, HUD conducted an investigation into Kromenhoek's allegations of discrimination and issued a report. In its report, HUD stated that "[Kromenhoek] did not formally request a reasonable accommodation for her disability until March 2012. In April 2012, upon review of those documents, the [Board] granted the request." (12-cv-25, ECF No. 188-1.)[7]

The Board also submitted a letter from the president of the Board which stated that

> [t]he Board of Directors convened a closed door meeting on March 26th, 2012 to confidentially review [the documents]. After review, the Board of Directors has agreed to provide you an exemption to the No Dog policy currently in place at Cowpet. Thus your request for accommodation to allow your service animal/emotion [sic] support animals to reside at Cowpet Bay West is granted. Furthermore, the Board has agreed to waive any fines assessed to your unit as a result of the perceived violation of the No Dog policy at Cowpet.

---

[7] "As a general proposition, administrative records may be a sufficient basis for the granting of a motion for summary judgment. *See, e. g.*[sic] *United States v. Lange*, 466 F.2d 1021, 1025 n. 5 (9th Cir. 1972); *Dredge Corp. v. Penny*, 338 F.2d 456, 460 (9th Cir. 1964)." *United States v. Pent-R-Books*, Inc., 538 F.2d 519, 527 (2d Cir. 1976). That said, the Court recognizes that it is not bound by any factual finding made by HUD.

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 17

(12-cv-25, ECF No. 188-1, Ex. 13.)

In order to make a claim under the FHA, a plaintiff "must actually request an accommodation and be refused in order to bring a reasonable accommodation claim under the FHA." *United States v. Hialeah Hous. Auth.*, 418 F. App'x 872, 875 (11th Cir. 2011). "[F]or a demand to be specific enough to trigger the duty to provide a reasonable accommodation, the defendant must have enough information to know of both the disability and desire for an accommodation, or circumstances must at least be sufficient to cause a reasonable landlord to make appropriate inquiries about the possible need for an accommodation." *Id.* at 876 (internal quotations omitted).

The evidence indicates that Harcourt and the Board were aware that documents had been filed with Schechter as early as 2011. (Koehler Decl.) The evidence also indicates that the Board did not know of the specific contents of those documents, because Kromenhoek had forbidden the Board from seeing them. (*Id*.) A request for an accommodation must be reasonably specific. "The duty to make a reasonable accommodation does not simply spring from the fact that the handicapped person wants such an accommodation made. Defendants must instead have ... the ability to conduct a meaningful review of the requested

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 18

accommodation[.]" *Hialeah Hous. Auth.*, 418 F. App'x at 876.
Kromenhoek's initial filing of documents with an individual who
was not a Board member, and concomitant refusal to allow the
Board to see the documents, prevented the Board and the
Association from conducting a meaningful review of the
accommodation sought. As such, Kromenhoek's initial filing of
her doctor's letter and Oliver's certificates is not a specific
request for accommodation, as is required by the FHA.[8]

Thus, the first request for accommodation came in March,
2012. (Koehler Decl.) That request was granted within one month.
(12-cv-25, ECF No. 188-1, Ex. 13.)

Even assuming, *arguendo*, that Kromenhoek made a request for
a reasonable accommodation in 2011, she must also show that she
was denied the reasonable accommodation. *See* 42 U.S.C. §
3604(f)(3)(B).

"In most circumstances, waiving a no-pet rule to allow a
disabled resident the assistance of a service animal is a

---

[8] This was also the view taken by HUD, when it conducted its investigation
into Kromenhoek's FHA complaint. Specifically, HUD found that, "[w]hile the
Complainant informed the Office Manager of the Respondent Association of her
disability and need for an emotional support animal in July 2011, she did not
formally request an accommodation at that time. In fact, she asked that the
Office Manager keep this information confidential, i.e., that it not be
shared with the Board of Directors of the Respondent Association."
(Determination of No Reasonable Cause, HUD, Case No. 01-12-0337-8.)

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 19

reasonable accommodation." *Prindable v. Ass'n of Apartment Owners of 2987 Kalakaua*, 304 F. Supp. 2d 1245, 1257 (D. Haw. 2003) *aff'd sub nom. DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175 (9th Cir. 2006); *Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995)(stating that allowing a deaf individual to keep a service dog despite a no-pets policy was *per se* reasonable).

At least one federal appellate court has acknowledged "that injury may result when a housing provider unreasonably delays responding to a request for an accommodation and that such a delay may amount to a denial." *Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 622 (6th Cir. 2011). However, a delay in responding to a request for accommodations does not constitute denial where the denial does not deprive the disabled person of the accommodation. *Id.* at 623.

In *Overlook Mutual Homes, Inc. v. Spencer*, the Sixth Circuit considered an FHA claim involving a request for a support animal. In that case, Overlook Mutual Homes ("Overlook") requested medical and counseling records pertaining to the resident's request for an accommodation. *Id.* at 619. When Overlook did not receive those records, it indicated to the requesting residents that Overlook would not review the request

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 20

until all documentation had been provided. *Id.* During the delay in Overlook's response to the resident's request, the service dog "was allowed to stay with the family, and they were never required to leave their home or otherwise punished for [the dog's] presence." *Id.* at 623. Because the residents were able to use the requested accommodation for the duration, the Sixth Circuit found that their request had not been constructively denied. *Id.*

An alternative approach to that taken in *Overlook* is evident in *Astralis Condominium Assoc. v. Secretary, U.S. Dept. of Housing and Urban Development*, 620 F.3d 62 (1st Cir. 2010). In *Astralis*, the residents requested handicapped parking spaces. *Id.* at 65. For over a year, the association did not take any action on the request. *Id.* While the dispute was ongoing, the residents parked in the desired handicapped spaces. *See id.* However, when they did so, the residents were cited. *Id.*

Here, as in *Overlook*, Kromenhoek had access to the accommodation for the duration of the alleged delay. (Kohler Decl.("The Board never prevented Plaintiff from accessing or using her unit at any time with the accompaniment of her dog.")) Kromenhoek was not evicted, or threatened with eviction, and Oliver was at no time forced to leave the premises. Though

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 21

Kromenhoek received notice that she would be fined per day for having Oliver on premises, she was also informed that all fines would be held in abeyance until the resolution of her request for an accommodation. (*Id*. ("The Board held all dog violation fines against Plaintiff in abeyance and agreed to waive same in March 2012.")) The circumstances here are easily distinguishable from "*Astralis*, in which a delay in responding to a request was found to be a denial. In th[at] case[], the delay had the effect of depriving disabled persons of the accommodation." *Id.* In the instant matter, Kromenhoek at all times had access to her emotional support dog and was not punished for the support dog's presence. As such, it cannot be said that the alleged delay in processing her request constituted a refusal to grant her a reasonable accommodation.

The facts shown by the Association and the Board, unless controverted, entitle the Association and the Board to judgment as a matter of law. Therefore, the burden now shifts to Kromenhoek to show that there is a genuine dispute of material fact, such that the Association and the Board are not entitled to summary judgment on Count One.

Kromenhoek claims that she requested an accommodation in 2011. In support of that contention, she directs the Court to

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 22

the affidavit of Louanne Schechter and a copy of a letter from Kromenhoek's doctor, prescribing her with an emotional support animal. Schechter states that she received a letter from Kromenhoek's doctor, prescribing a support animal, and certifications for Kromenhoek's dog Oliver in October, 2011. Schechter also avers that she "discussed" the paperwork with her supervisor, and that her supervisor then "discussed" the paperwork with Harcourt, then a member of the Board. Schechter avers that Harcourt looked at the documentation. Schechter states that following those events, she was instructed to place the paperwork in Kromenhoek's file and take no further action.

On review of the documents provided by Kromenhoek to Schechter in July, 2011, and the affidavit of Schechter, the Court considers a few things to be noteworthy. First, the letter from Kromenhoek's doctor that was submitted to Schechter does not appear to request any action. It merely states that Kromenhoek has been diagnosed with anxiety, for which the doctor is prescribing an emotional support dog. Second, the Court notes that Schechter "discussed" the documents with her supervisor, who then purportedly "discussed" them with Harcourt. Kromenhoek notably has not produced any evidence that the Board was allowed, at any time, to access these documents. This is

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 23

particularly noteworthy, given Koehler's testimony that Kromenhoek refused to let the Board look at the documentation.

It is axiomatic that "[t]he duty to make a reasonable accommodation does not simply spring from the fact that the handicapped person wants such an accommodation made. Defendants must instead have ... the ability to conduct a meaningful review of the requested accommodation[.]" *Hialeah Hous. Auth.*, 418 F. App'x at 876. Yet, contrary to that axiom, Kromenhoek seems to assert that by providing Schechter with *notice* of her condition, and forbidding Schechter from sharing that notice, Kromenhoek triggered an obligation on the part of the Board: (1) to absorb that information by osmosis; (2) to cast that unshared information as a request for an accommodation; and (3) to assess that nonexistent request. In essence, Kromenhoek invites the Court to find that providing notice of a condition is tantamount to requesting an accommodation for that condition. The Court must decline that invitation as it is unsupported in law. The circumstances presented by Kromenhoek's wishes and conduct deprived *the Board and the Association* of the opportunity to conduct a meaningful review until March, 2012. After that review, the Board granted Kromenhoek the accommodation she sought.

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 24

Even if the documents Kromenhoek submitted in 2011 could be considered a request for an accommodation, Kromenhoek still would need to show that she was denied such accommodation. On this issue, Kromenhoek has adduced no additional record evidence. Instead, she argues that, as a matter of law, the undue delay between her alleged request for accommodation, and the Board's consideration of the same, acted as a constructive denial of her request.

A delay in responding to a request for accommodations does not constitute denial where the denial does not deprive the disabled person of the accommodation. *See Overlook Mut. Homes*, 415 F. App'x at 623. As discussed above, Kromenhoek was not evicted, or threatened with eviction, and Oliver was at no time forced to leave the premises. Though Kromenhoek received notice that she would be fined per day for having Oliver on premises, she was also informed that all fines would be held in abeyance until the resolution of her request for an accommodation. On these facts, as previously stated, the Court does not find as a matter of law that Kromenhoek was at any time actually denied the accommodation sought.

Because Kromenhoek has failed to show there is any genuine dispute of material fact, such that the Board and Association

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 25

are not entitled to judgment as a matter of law, summary judgment is appropriate as to Count One.

**B. Count Three: Violation of 42 U.S.C. § 3617 against the Association and the Board; Count Five: Violation of 42 U.S.C. § 3617 against Talkington**

Under the Fair Housing Act Amendment ("FHAA"), which Congress passed in 1988 to extend the coverage of the FHA to include people with disabilities, it is unlawful:

> to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617.

To prevail on a claim brought under Section 3617, a plaintiff must show that

> (1) she is a protected individual under the FHA, (2) she was engaged in the exercise or enjoyment of her fair housing rights, (3) the defendants coerced, threatened, intimidated, or interfered with the plaintiff on account of her protected activity under the FHA, and (4) the defendants were motivated by an intent to discriminate. *East-Miller*, 421 F.3d at 563. "Interference" is more than a "quarrel among neighbors" or an "isolated act of discrimination," but rather is a "pattern of harassment, invidiously motivated." *Halprihn*, 388 F.3d at 330; *cf*. *DiCenso*, 96 F.3d at 1006; *Honce v. Vigil*, 1 F.3d 1085, 1090 (10th Cir. 1993).

*Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009).

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 26

For purposes of their motions for summary judgment, the
Defendants do not argue or adduce evidence refuting that
Kromenhoek is a protected individual under the FHA, or that, in
having her support dog on the premises, she was engaged in the
exercise or enjoyment of her fair housing rights. The
Defendants, instead, contend that their behavior did not
"coerce[], threaten[], intimidate[], or interfere[] with the
plaintiff on account of her protected activity under the FHA."
*Bloch*, 587 F.3d at 783.

1. **Count Three: Violation of 42 U.S.C. § 3617 against the
   Association and the Board**

In Count Three of the Second Amended Complaint, Kromenhoek
alleges that the Board and the Association unlawfully retaliated
against her for exercising rights protected by the FHA when a
resolution was introduced to add a "no pets" policy to the
bylaws. Kromenhoek further alleges that the Board distributed
confidential medical information to non-members, specifically
Talkington, in order to intimidate her or retaliate against her.
Finally, Kromenhoek claims that the imposition of a daily fine
for having Oliver on the premises constituted impermissible
interference. The Board and Association respond that there was
no retaliatory action, and that Kromenhoek is trying to use the
FHA to settle a "dispute between neighbors."

Case: 3:12-cv-00025-CVG-RM Document #: 225 Filed: 11/18/14 Page 27 of 45

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 27

In support of its motion for summary judgment, the Board and the Association submitted association rules and regulations that have forbidden dogs in general since 2007. The Board and Association submitted the 2007 version of its Bylaws, as well, which incorporate by reference the rules and regulations. The Board and the Association also rely on the declaration of Koehler, which states that the Board did not look at or review Kromenhoek's documentation as to her medical condition or Oliver until March 2012. According to the letter from her doctor that Kromenhoek submitted, Kromenhoek was not prescribed an emotional support dog until 2011.

As to Kromenhoek's claim that the Board and the Association shared confidential information regarding her request with non-members, the Defendants rely on the affidavit of Talkington. Talkington avers that at no time did he receive any medical records or confidential information from the Board, or any member of the Board. He further states that he did not, at any time, post any of Kromenhoek's medical records or confidential information online.

The Board and the Association have also submitted correspondence sent by the Board to Kromenhoek informing Kromenhoek that: she was in violation of the "no pets" policy,

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 28

that a per day fine will be levied, and that such fine would be held in abeyance pending her filing of a request for an exemption from the “No Dogs policy,” and the Board’s review of such request. The Board also submitted a letter sent by the Board to Kromenhoek informing her that her request was approved and that the fines were waived.

These facts, taken together, show that the Association and the Board did not undertake retaliatory action under Section 1367 based upon Kromenhoek’s request for a service dog accommodation. “To establish a *prima facie* case of retaliation, a plaintiff must show that (1) he engaged in a protected activity; (2) the defendant subjected him to an adverse action; and (3) a causal link exists between the protected activity and the adverse action.” *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001).

As the Board and the Association make no argument as to whether Kromenhoek’s request for an accommodation was a protected activity, the Court will, for purposes of their motion for summary judgment on Count Three, consider that issue conceded. The Court, thus, considers first if there was an “adverse action” to which Kromenhoek was subjected. The Board and the Association have adduced evidence that neither party

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 29

disclosed Kromenhoek's confidential information. They have also adduced competent evidence that Kromenhoek was never fined. As such, Kromenhoek's allegations that such activities constituted retaliation must fail as a matter of law.

Turning to the issue of whether the "No Dogs" policy itself constituted retaliation, the Court finds the dates of that activity to be dispositive. The Board and the Association have submitted competent evidence that the rules and regulations that implemented the "No Dogs" policy were passed no later than 2007, as were the bylaws that incorporated those rules and regulations by reference. The protected activity that Kromenhoek engaged in, seeking an accommodation for her service animal, began no earlier than 2011. There is thus no causal link between beginning the protected activity and the alleged retaliatory action.

Thus, these facts, unless disputed, entitle the Association and the Board to judgment as a matter of law. This showing satisfies the defendants' burden under Rule 56, and the burden thus shifts to Kromenhoek.

Kromenhoek relies almost entirely on an unverified second amended complaint. Additionally, she directs the Court's attention to a blog post written by Talkington stating that

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 30

Kromenhoek was being fined for violations of the “No Dog” policy. Talkington indicates in his post that he received that information from the Board. The email or letter by which he learned of this action is unknown. More importantly, the source of the email or letter is unknown.

Assuming, *arguendo*, that this disclosure may be considered an “adverse action”, there must still be some indication that the complained of action was done in response to the plaintiff’s exercise of her fair housing rights. *See Walker*, 272 F.3d at 1128. The record in this case is replete with complaints from Talkington, as well as other association members, to the Board complaining of violations of the “No Dog” policy and demanding the Board punish the individuals Talkington identified as violating the policy. (ECF No. 188-1.) The Board’s proof of action on the “No Dog” policy concerns appears to be nothing more than that. The letter itself states that though Kromenhoek was being fined, it would be held in abeyance pending her request for accommodation. There is nothing on the record which supports an inference that the letter’s disclosure was done in

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 31

retaliation against Kromenhoek's request for accommodation. In fact, at that time, she had not made such a request.[9]

The Court is thus unable to find proof on the issue of causation as to the purported disclosure. As to the other complained of "adverse actions," Kromenhoek has adduced no additional competent evidence and Kromenhoek relies entirely on her unverified complaint. Though the Court may consider pleadings in reviewing motions for summary judgment, in the face of competent evidence, a lone unverified pleading simply will not be enough.

As Kromenhoek has not shown there is a genuine dispute of material fact, the Court finds that summary judgment is appropriate as to Count Three.

**2. Count Five: Violation of 42 U.S.C. § 3617 against Talkington**

In Count Five, Kromenhoek also claims that Lance Talkington ("Talkington"), another resident of Cowpet Bay West, violated Section 3617. Specifically, she alleges that the blog kept by Talkington constituted harassment that intimidated, threatened, or interfered with her enjoyment of her property. Talkington

[9] As discussed above, Kromenhoek did not actually request an accommodation until March 2012. The letter the Board allegedly disclosed predates that.

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 32

disputes this characterization of his actions, and contends that Kromenhoek is elevating a simple dispute among neighbors.

In support of his motion, Talkington provided an affidavit, as well as several blog posts in which the issue of pets at Cowpet Bay West was discussed. The Court has carefully looked at and considered Talkington's affidavit and the blog posts attributable to Talkington. There are a number of posts, some of which reference Kromenhoek by name.  The content written by Talkington himself seems geared towards discussing whether dogs should be allowed in the community, and how to best draft a bylaw provision that would allow service animals for the disabled. Talkington proposed incorporating the language used in the Americans with Disabilities Act ("ADA").

Talkington did post a copy of the email sent by Harcourt to Kromenhoek in which Kromenhoek was informed that she was in violation of the "no pets" policy and would need to submit a request to the Board. Talkington also called Kromenhoek a "known violator" of the "no pets" policy.  Finally, Talkington disclosed on his blog that he was a named party in Kromenhoek's administrative complaint to HUD.

> A wide range of conduct falls under Section 3617's umbrella. Indeed, Section 3617 is not limited to those who used some sort of "potent force or duress," but extends to other actors

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 33

> who are in a position directly to disrupt the exercise or enjoyment of a protected right and exercise their powers with a discriminatory animus. Under this standard, the language "interfere with" encompasses such overt acts as racially-motivated firebombings, sending threatening notes, and less obvious, but equally illegal, practices such as exclusionary zoning, deflating appraisals because of discriminatory animus, and insurance redlining[.]

*Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 347 (6th Cir. 1994).

Even a broad reading of Section 3617, in order to account for less obvious but still illegal discrimination, does not make unfortunate skirmishes between neighbors unlawful. *Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009). Even potentially discriminatory statements exchanged between neighbors do not necessarily violate Section 3617. *See Sheikh v. Rabin*, 565 F. App'x 512, 517-18 (7th Cir. 2014).

In *Sheikh v. Rabin*, 565 F. App'x 512 (7th Cir. 2014), the Seventh Circuit considered whether statements, including discriminatory statements, made in opposition to a zoning variance and in discussions between neighbors, violated Section 3617. In that case, the plaintiff was a Muslim from South Asia who sought to build a home and required various zoning variances. *Id*. at 514-15. He initially sought a variance from the zoning board. *Id*. at 515. Before a final decision on the

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 34

variances was issued, he filed suit against various neighborhood residents, alleging, in part, violations of Section 3617. *Id*.

Those neighborhood residents had opposed the requested variances and made a number of potentially discriminatory statements. *See id*. at 517-18.

> [One neighbor] once told [the plaintiff] that the subdivision is "all white" and that he did not think [the plaintiff] would "fit in." The neighbors sometimes referred to [the plaintiff] and his family at [public] meetings as "you people," and [a neighbor] suggested he move somewhere else, closer to his "people." At one meeting, [a neighbor] displayed pictures of narrow houses in poor countries, sarcastically suggesting that the pictures supported the conclusion that a narrow house should be enough for [the plaintiff]. Another time, some of the neighbors (he does not specify who) expressed worry that [the plaintiff] would allow more than one family to live in his house. (His two adult children will live in the house with him and his wife.) These neighbors talked about other areas in which one "colored family" moving in was a prelude to being "flooded by them" and about how some single-family homes rented by "latinos and blacks" ended up housing multiple families. [The plaintiff] also alleges that [a neighbor] said something threatening about the house burning down if it is built. (Though accepting as true that [that neighbor] said something threatening, [the judge] noted that the allegations are fuzzy. [The plaintiff]'s appellate brief hardly clarifies matters; he maintains that, whatever [the neighbor] said, it was threatening, but he explains that he "can merely speculate on that threat" since only [the neighbor] knows "his true intent.")

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 35

*Id*. Based on these facts, the district court held that the plaintiff’s allegations described “a ‘quarrel among neighbors’ that involved, at most, ‘isolated acts of discrimination’” and did not violate 42 USC 3617. *See Sheikh v. Rabin*, No. 11-CV-425, 2012 WL 5471085, at *5 (N.D. Ill. Nov. 9, 2012). The Seventh Circuit affirmed, holding that “taken together, the[] allegations would establish only that different neighbors at different times made shameful statements, not that any individual neighbor (or the neighbors as a group) interfered with [the plaintiff]'s rights under the Fair Housing Act.” *Sheikh*, 565 F. App'x at 518.

The conduct at issue in this case pales in comparison to that seen in *Sheikh*. A review of Talkington’s blog posts and comments attributable to Talkington does show that he was certainly not friendly with Kromenhoek. None of those comments or posts, however, rises to the level of interference and threatening behavior seen in *Sheikh*, where one of the plaintiff’s neighbors “said something threatening about the house burning down if it is built.” *See id*. at 517-18.

Talkington has shown competent evidence that the behavior complained of in this case does not rise to the level of “interference” with Kromenhoek’s rights under the FHA. Such

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 36

facts, if uncontroverted, entitle him to judgment as a matter of law and meet his burden under Rule 56.

Once a movant meets the burden of Rule 56, the burden shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans*, 762 F.2d at 342. The non-moving party "may not rest upon mere allegations, general denials, or . . . vague statements . . . ." *Quiroga*, 934 F.2d at 500. "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249.

Kromenhoek does not dispute any facts adduced by Talkington. Instead, she argues that as a matter of law, these posts amount to harassment that intimidates or interferes with Kromenhoek's enjoyment of her property.

As discussed above, here the facts are less extreme even than those in *Sheikh*. Though Talkington's blog may have bothered Kromenhoek, there is no record evidence that she was forced to see it. There were no threats made against Kromenhoek. There is no allegation that she was followed or otherwise harassed in person. This was a dispute over what the specific rules should be regarding the keeping of dogs in Cowpet Bay West, with discussions ongoing between neighbors who had no influence on

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 37

whether or not Kromenhoek could actually keep her dog at her residence.

Though finding the line may at times be difficult, the Court believes that what occurred in this instance as between Kromenhoek and Talkington is more correctly characterized as a dispute between neighbors, not unlawful discrimination.

Kromenhoek has, thus, failed to meet her burden. As such, considering there is no genuine dispute of material fact and Talkington is entitled to judgment as a matter of law, the Court finds summary judgment is appropriate as to Count Five.

**C. Count Six: Americans with Disabilities Act Against the Association and the Board**

In Count Six, Kromenhoek alleges that the Board and the Association violated her rights under the Americans with Disabilities Act ("ADA") by improperly enforcing a "no dogs" policy against her.

> Under Title III of the ADA, it is unlawful for a public accommodation to discriminate against an individual on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. 12182(a). "Public accommodation" is defined in terms of 12 categories, which the legislative history indicates "should be construed liberally" to afford people with disabilities "equal access" to the wide variety of establishments available to the nondisabled. S.Rep. No. 101-116, p. 59 (1989); H.R.Rep. No. 101-485, pt. 2, p. 100 (1990), U.S.Code Cong. & Admin. News 1990, pt. 2, at pp. 303, 382-283.

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 38

> The ADA obligates a "public accommodation" only with respect to a "facility" that is "used as, or designed or constructed for use as," either a place of public accommodation or a commercial facility. 28 C.F.R. § 36.102(b)(3)(i)-(ii).

*Regents of Mercersburg College v. Republic Franklin Ins. Co.*, 458 F.3d 159, 164 (3d Cir. 2006).[10]

The United States Court of Appeals for the Third Circuit has explained that

> The regulations under the statute provide that discrimination is prohibited by any private entity that owns, leases (or leases to) or operates a place of public accommodation, 28 C.F.R. § 36.201(a), and that "private entity" means a person or entity other than a public entity. 28 C.F.R. § 36.104.

---

[10] The ADA provides that

> The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce--
>
> (A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;
>
> (B) a restaurant, bar, or other establishment serving food or drink;
>
> . . . .
>
> (J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;
>
> (K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and
>
> (L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181(7).

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 39

*Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir. 2002).

"[C]ondominium buildings may be covered as places of public accommodation if they operate as places of lodging. Determining whether a particular condominium facility is a place of public accommodation would depend on the extent to which it shares characteristics normally associated with a hotel, motel or inn." Department of Justice Public Letter 202-PL-216 (Aug. 28, 1992); *see also Regents of Mercersburg College v. Republic Franklin Ins. Co.*, 458 F.3d 159, 165 (3d Cir. 2006) (finding that private-school dormitories are places of "public accommodation" under the ADA because they are more similar to "transient lodging" like "inns, hotels, and motels – which are covered" by the ADA, and less like "residential units such as apartments and condominiums – which are not covered by the ADA . . ."); *Access 4 All, Inc. v. Atlantic Hotel Condominium Ass'n, Inc.*, 2005 WL 5643878, *13 (S.D. Fla. Nov. 23, 2005) (finding that the hotel and condominium structure "was designed and intended for use as a public accommodation because individual unit owners who purchased a unit were likely to rent out the unit for public use," and was "virtually indistinguishable from a hotel.")

The Board and the Association seek summary judgment on Count Six on the basis that Cowpet Bay West is not a "public

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 40

accommodation," and that they are, therefore, exempt from the ADA. "[R]esidential units such as apartments and condominiums[,]" are generally exempt from the ADA. *See Regents of Mercersburg Coll.*, 458 F.3d at 165. In support of their contention that Cowpet Bay West is not a public accommodation within the ambit of the ADA, the Board and the Association have submitted the bylaws of Cowpet Bay West. Those bylaws, in Article V, Section 11, state that "[t]he apartment units shall be used for residences only."

Having provided competent evidence to meet their burden under Rule 56, the burden shifts to Kromenhoek. Kromenhoek directs the Court to a copy of a webpage on which a unit owner put their unit up for temporary rental. This single advertisement, Kromenhoek argues, shows that individual unit owners are likely to rent out their units, and that Cowpet Bay West is similar to a hotel. The Court is not persuaded by this argument. A single advertisement from one unit owner does not show that other owners are "likely to rent out the unit for public use," such that Cowpet Bay West is "virtually indistinguishable from a hotel." *Access 4 All, Inc.*, 2005 WL 5643878, *13.

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 41

Considering the evidence adduced, the Court finds that the Board and the Association have shown that there is no dispute as to material fact and that they are entitled to judgment as a matter of law on Count Six.

**D. Remaining Counts against the Board, the Association, Verdiramo, Cokayne, and Talkington**

Counts Seven through Eighteen each allege claims arising under local laws (the "local claims"). Those claims are subject to different jurisdictional considerations, which may affect their viability in this Court. In order to assess jurisdictional viability of the local claims, a brief overview of the subject-matter jurisdiction of this Court is in order.

Federal district courts are courts of limited jurisdiction. Ordinarily, a district court has original jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 ("federal question jurisdiction"). District courts also have original jurisdiction over civil actions between citizens of different states with the amount in controversy exceeding the sum or value of $75,000. 28 U.S.C. § 1332 ("diversity jurisdiction"). The Supreme Court has "interpreted the diversity statute to require 'complete diversity' of citizenship." *C.T. Carden v. Arkoma Assoc.*, 494 U.S. 185, 187 (1990). That means "every plaintiff must be of

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 42

diverse state citizenship from every defendant.” *In re Briscoe*, 448 F.3d 201, 215.

Where a case is properly brought in the district court pursuant to the Court’s federal question jurisdiction or diversity jurisdiction, the Court may have jurisdiction over local claims that arise out of the same case or controversy as those underlying the federal claims (supplemental jurisdiction). 28 U.S.C. § 1367.

The complaint in this matter names a plaintiff that is a citizen of the Virgin Islands, Kromenhoek, and a defendant that is a citizen of the Virgin Islands, Cowpet Bay West. As such, the case could not be brought in this Court pursuant to the Court’s diversity jurisdiction under 28 U.S.C. § 1332. Instead, Kromenhoek brought her complaint in this Court pursuant to its federal question jurisdiction under 28 U.S.C. § 1331, as the FHA and ADA claims arise under the laws of the United States. Those claims, as discussed above, have been disposed of as a result of the Defendants’ motions for summary judgment.

The local claims against the Board, the Association, Verdiramo, Cokayne, and Talkington may be heard only if the Court exercises its supplemental jurisdiction over those claims. That exercise is not a foregone conclusion.

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 43

Indeed, “district courts may decline to exercise supplemental jurisdiction over a claim . . . if--(1) the claim raises a novel or complex issue of State law,(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,(3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.” 28 U.S.C. § 1367.

With the disposition of the federal claims in this case, the Court’s exercise of jurisdiction over the local claims is discretionary. Exercising that discretion, the Court will decline jurisdiction over the remaining local claims. *See, e.g.*, B*orough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)(“It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of juridical economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them[.]”)

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 44

## V. CONCLUSION

For the reasons discussed herein, the Board, the Association, and Talkington are entitled to judgment as a matter of law on Counts One, Three, Five, and Six. The Court will decline to exercise its supplemental jurisdiction over local counts, Seven through Eighteen, as against the Board, the Association, Talkington, Verdiramo, and Cokayne, as no federal counts remain as against any of said defendants.[11]

An appropriate Judgment follows.

**S_______________________**
**Curtis V. Gómez**
**District Judge**

---

[11] The Court does not address any of the claims, federal or local, as against Harcourt or Felice in this Memorandum Opinion. Such claims are the subject of a separate, forthcoming opinion.

Case 3:12-cv-00025-CVG-RM Document #: 228 Filed: 12/17/14 Page 1 of 2

**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**
*******************************

| | |
|---|---|
| **JUDITH KROMENHOEK,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **COWPET BAY WEST CONDOMINIUM ASSOCIATION; THE BOARD OF THE COWPET BAY WEST CONDOMINIUM ASSOCIATION; MAX HARCOURT, in his personal capacity; ALFRED FELICE; LANCE TALKINGTON; ROBERT COCKAYNE; VINCENT VERDIRAMO,** <br><br> **Defendants.** | **Case: 3:12-cv-25-CVG-RM** <br><br> **Action for: Housing Discrimination; Discrimination Based on Disability; Invasion of Privacy; Negligent Infliction of Emotional Distress Infliction of Emotional Distress; Punitive Damages; and Injunctive and Declaratory Judgment** <br><br> **JURY TRIAL DEMAND** |

**NOTICE OF APPEAL**

**NOTICE IS HEREBY GIVEN** that pursuant to 28 U.S.C. § 1291, Plaintiff, Judith Kromenhoek, hereby appeals to the United States Court of Appeals for the Third Circuit from an order entered by the District Court of the United States Virgin Islands on November 18, 2014, (Docket No. 224) granting Defendants their Motions for Summary Judgment.

Dated: December 17, 2014

Respectfully submitted,
**LAW OFFICES OF KARIN A. BENTZ, P.C.**

/s/ Karin A. Bentz

**Karin A. Bentz, Esq.,**VI Bar No. 413
**Gregory Adam Thorp, Esq.,**VI Bar No. 1117
5332 Raadets Gade, Ste. 3
St. Thomas, VI 00802
Tel: (340) 774-2669
Fax: (340) 774-2665
kbentz@virginlaw.com
athorp@virginlaw.com

Exhibit "D"

Case: 3:12-cv-00025-CVG-RM Document #: 229 Filed: 12/17/14 Page 2 of 2

**CERTIFICATE OF SERVICE**

**I Hereby Certify** that I caused the filing and service on the 17th day of December, 2014, of the foregoing with the Clerk of the District Court of the Virgin Islands using the CM/ECF system, which will provide electronic notice by e-mail to the following attorneys of record in this matter:

Benham & Chan
Attn: John H. Benham, III, Esq.
P.O. Box 11720
St. Thomas, Virgin Islands 00801
E-mail: benham@bclawvi.com

Birch de Jongh & Hindels, PLLC
Attn: Richard P. Farrelly, Esq.
1330 Taarneberg
St. Thomas, Virgin Islands 00802
E-mail: rfarrelly@bdhlwvi.com

Quintairos, Prieto, Wood & Boyer, P.A.
Attn: Ryan Meade, Esq.
9300 South Dadeland Blvd., 4th Floor
Miami, Florida 33156
Email: rmeade@qpwblaw.com

/s/ Karin A. Bentz

| | |
|---|---|
| **From:** | dcecf_nef@vid.uscourts.gov |
| **To:** | dcecf_nef@vid.uscourts.gov |
| **Subject:** | Activity in Case 3:12-cv-00025-CVG-RM Judith Kromenhoek v. Cowpet Bay West Condominium Association Order |
| **Date:** | Tuesday, December 23, 2014 4:06:02 PM |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

*****NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**District Court of the Virgin Islands**

**District of the Virgin Islands**

**Notice of Electronic Filing**

The following transaction was entered on 12/23/2014 at 5:05 PM AST and filed on 12/23/2014

| | |
|---|---|
| **Case Name:** | Judith Kromenhoek v. Cowpet Bay West Condominium Association |
| **Case Number:** | 3:12-cv-00025-CVG-RM |
| **Filer:** | |
| **Document Number:** | 232(No document attached) |

**Docket Text:**

**ORDER (CVG) the memorandum opinions entered on November 18, 2014 [223], and November 19, 2014 [225], and the judgment entered on November 18, 2014 [224], are hereby VACATED as being entered prematurely. (This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry.)(AFS)**

**3:12-cv-00025-CVG-RM Notice has been electronically mailed to:**

Richard P. Farrelly rfarrelly@bdhlawvi.com, cfrancis@bdhlawvi.com, cwilliams@bdhlawvi.com

John H Benham, III benham@bclawvi.com, walsh@bclawvi.com

Karin A. Bentz kbentz@virginlaw.com, legalstaff@virginlaw.com

Bennett Chan chan@bclawvi.com, meade@bclawvi.com, walsh@bclawvi.com

Carl R Williams    cwilliams@bdhlawvi.com, cfrancis@bdhlawvi.com,
rfarrelly@bdhlawvi.com

Ryan C Meade    rmeade@qpwblaw.com, jmena@qpwblaw.com,
john.farrish@qpwblaw.com, kwaldner@qpwblaw.com

JOSEPH G. RIOPELLE    jriopelle@boydlawgroup.com, Lsledge@boydlawgroup.com

James Knight Parker    jparker@boydlawgroup.com

**3:12-cv-00025-CVG-RM Notice will be delivered by other means to:**

**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | | |
|---|---|---|
| **JUDITH KROMENHOEK,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **COWPET BAY WEST CONDOMINIUM ASSOCIATION; THE BOARD OF THE COWPET BAY WEST CONDOMINIUM ASSOCIATION; MAX HARCOURT, in his personal capacity; ALFRED FELICE; LANCE TALKINGTON; ROBERT COCKAYNE; and VINCENT VERDIRAMO** <br><br> **Defendants.** | ) | **Civil No. 2012-25** |

**ATTORNEYS:**

**Karin A. Bentz, Esq.**
Law Office of Karin Bentz, P.C.
St. Thomas, VI
*For Judith Kromenhoek,*

**Joseph G. Riopelle, Esq.**
Boyd Richards Parker & Colonnelli
Tampa, FL
**Carl R. Williams, Esq.**
**Richard P. Farrelly, Esq.**
Birch, Dejongh & Hindels
St. Thomas, VI
*For Cowpet Bay West Condominium Association, Ed Wardwell, Max Harcourt, Bill Canfield, Rosie Wells, Sharon Koehler, Doug Rebak, Robert Cockayne, Vincent Verdiramo, and Herb Horwitz,*

**John H. Benham, III, Esq.**
Watts, Benham & Sprehn, P.C.
St. Thomas, VI
*For Lance Talkington,*

**Ryan C. Meade, Esq.**
Quintairo, Prieto, Woo & Boyer, P.S.

Miami, FL
*For Alfred Felice.*

**MEMORANDUM OPINION**

**GÓMEZ, J.**

Before the Court are four motions for summary judgment filed by: Vincent Verdiramo (“Verdiramo”), Robert Cockayne (“Cockayne”), Lance Talkington (“Talkington”), the Cowpet Bay West Condominium Association (the “Association”), and the Board of the Cowpet Bay West Condominium Association (the “Board”) (collectively, the “Defendants”).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Judith Kromenhoek (“Kromenhoek”) owns a unit in the Cowpet Bay West Condominium complex (“Cowpet”), a condominium community located on St. Thomas, United States Virgin Islands.

The Cowpet Bay West Condominium Association (“the Association”) was formed under the Condominium Act of the Virgin Islands (the “Condominium Act”), 28 V.I.C. §§ 901-927. (Bylaws at 1, Civil No. 2012-24, ECF No. 31-1.)[1] The Association is

---

[1] According to the Condominium Act,

> The administration of every property shall be governed by bylaws a true copy of which shall be annexed to the declaration and made a part thereof. No modification of or amendment to the bylaws shall be valid unless set forth in an amendment to the declaration and such amendment is duly recorded.

28 V.I.C. § 917.

comprised of all of the unit owners in the Cowpet condominium community. Association members purchase their units subject to the Association's Declaration,[2] Bylaws, and its Rules and Regulations.[3]

Association members elect a Board of Directors ("the Board"). The Board is made up of seven Association members. The Bylaws provide that the Board has

> the powers and duties necessary for the administration of the affairs of the Condominium and may do all such acts and things except as by law, by the Declaration, or by [its] By-Laws may not be delegated to the Board of Directors by the unit owners.

(Bylaws at 2, Civil No. 2012-24, ECF 31-1.)

The Bylaws provide for the amendment and enforcement of Rules and Regulations by the Board. At all relevant times, the

---

[2] "'Declaration' means the instrument by which the property is submitted to the provisions of this chapter, as hereinafter provided, and such declaration as from time to time may be lawfully amended." 28 V.I.C. § 901.

[3] The Condominium Act also provides that,

> Each apartment owner shall comply strictly with the bylaws and the administrative rules and regulations adopted pursuant thereto, as either of the same may be lawfully amended from time to time, and with the covenants, conditions and restrictions set forth in the declaration or in the deed to his apartment. Failure to comply with any of the same shall be ground for an action to recover sums due, for damages or injunctive relief or both maintainable by the manager or Board of Directors on behalf of the Association of Apartment Owners or, in a proper case, by an aggrieved apartment owner.

28 V.I.C. § 906.

Rules and Regulations for Association members provide the following:

> Dogs and farm animals are prohibited. Owners will be fined as specified by the Board of Directors. The Association may require removal of any animal when it becomes bothersome to others or is deemed by the Association to be unacceptable.

(Rules and Regulations, Civil No. 2012-24, ECF No. 31-2.)

On or about December 15, 2010, Stansford S. Sutherland ("Sutherland"), "a licensed psychologist wrote a letter stating that he was treating Kromenhoek and that she was diagnosed with Anxiety Disorder . . . ." (Second Am. Compl. ¶ 30, Civil No. 2012-25, ECF No. 94.) In his letter, the psychologist stated "that he has prescribed the use of an emotional support animal, dog or other, to alleviate her symptoms and that such emotional support animal was necessary." (*Id.*)

Kromenhoek owned a dog named Oliver. Kromenhoek submitted information about her dog's qualification as an emotional support animal to Louanne Schechter ("Schechter"), Cowpet's office manager, and included the letter from Sutherland.

Thereafter, members of the Board held a public meeting during which the issue of service dogs was discussed. Kromenhoek alleges that Max Harcourt ("Harcourt"), then President of the Association, shared the content of her documents with some of

the Association members. (Second Am. Compl. at ¶ 53, Civil No. 2012-25, ECF No. 94.)

Subsequently, discussions on Kromenhoek's pet ownership appeared on an Internet web log, the Cowpet Bay Blog ("the blog"). The blog was maintained by a member of the Association, Lance Talkington. (Second Am. Compl. at ¶ 44, Civil No. 2012-24.)

Kromenhoek alleges that, on or about October 28, 2011, Harcourt e-mailed a letter addressed to her e-mail address as well as to Talkington's e-mail address. The letter stated that Kromenhoek had violated the "no dogs" policy contained in the Rules and Regulations. The letter also requested that Kromenhoek submit an application for a reasonable accommodation.

On or about January 19, 2012, the Board met and voted to assess a fine of $50 per day against owners, including Kromenhoek, who were in violation of the "no dogs" policy. Thereafter, in February, 2012, the Association voted to add the "no dogs" policy to the Bylaws. The newly added bylaw contained no explicit exception for service animals.

Kromenhoek initiated this action against Cowpet on April 9, 2012. Her complaint has twice been amended. Kromenhoek's complaint contains the following claims: Count One alleges a violation of the Fair Housing Act ("FHA"), 42 U.S.C. §

3604(f)(3)(b) against the Association and the Board; Count Two
alleges a violation of the FHA, 42 U.S.C. § 3617 against
Harcourt; Count Three alleges a violation of the FHA, 42 U.S.C.
§ 3617 against the Association and the Board; Count Four alleges
a violation of the FHA, 42 U.S.C. § 3617 against Alfred Felice
("Felice"); Count Five alleges a violation of the FHA, 42 U.S.C.
§ 3617 against Talkington; Count Six alleges a violation of
Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12188
against the Association and the Board; Count Seven alleges the
Board exceeded its authority; Count Eight alleges that the
February 2012 Bylaws Amendment is void; Count Nine alleges
negligence against the Association and the Board; The next
count, also labeled as "Count Nine" in the complaint, alleges
intentional infliction of emotional distress against Felice;
Count Ten alleges civil conspiracy against all Defendants; Count
Eleven alleges *prima facie* tort against all Defendants; Count
Twelve alleges defamation and slander *per se* against the
Association, the Board, Felice, Harcourt, and Talkington; Count
Thirteen alleges Negligent Infliction of Emotional Distress and
Intentional Infliction of Emotional Distress against all
Defendants except Felice; Count Fourteen[4] alleges Invasion of

---

[4] This count is actually labeled, "Count IVX." Though the Roman numerals for
this count do not, in fact, equate to "fourteen," it is clear that they were

Privacy – Public Disclosure of Private Facts against the Association and the Board; Count Fifteen[5] alleges Invasion of Privacy – Public Disclosure of Private Facts against Harcourt and Talkington; Count Sixteen alleges Invasion of Privacy – False Light against all Defendants except Verdiramo and Cockayne; Count Seventeen alleges Invasion of Privacy against the Board, the Association, Harcourt, and Talkington; and Count Eighteen alleges Negligence Per Se/Legal Malpractice against Vincent Verdiramo.

During the pendency of this litigation, Harcourt passed away. Barbara Walters, who had brought the same claims as Kromenhoek against the same defendants, also passed away during the course of litigation.

The Board and the Association filed a motion for summary judgment seeking judgment on Counts One, Three, Six, Seven, Eight, Thirteen, Fourteen, and Seventeen of the second amended complaint. Cockayne and Verdiramo filed motions for summary judgment seeking judgment on Count Thirteen of the second amended complaint. Talkington filed a motion for summary judgment seeking judgment on Counts Five, Eleven, Thirteen, Fifteen, Sixteen, and Seventeen of the second amended complaint.

---

intended to.

[5] Similarly, this count is actually labeled, "Count VX."

Finally, a motion for summary judgment was filed by an attorney claiming to represent Harcourt.

The Court held a hearing on the Defendants' motions for summary judgment on Kromenhoek's claims on May 27, 2014. Following a lengthy hearing, at which evidence was presented and argument heard, the Court granted the Association and Board's motion for summary judgment and Talkington's motion for summary judgment on Kromenhoek's claims. The Court then dismissed for lack of jurisdiction all of Kromenhoek's remaining claims against the defendants, other than the claims pending against Felice and Harcourt. The Court took under advisement all of Kromenhoek's claims against Felice and Harcourt, as both defendants are deceased. The Court also dismissed the claims brought by Barbara Walters in the parallel case. Following the hearing, the Court indicated to the parties that a memorandum opinion documenting its rationale would be forthcoming.

## II. DISCUSSION

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy*, 762 F.2d 338, 342 (3d Cir. 1985). The non-moving party "may not rest upon mere allegations, general denials, or . . . vague statements . . . ." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. In making this determination, this Court draws all reasonable inferences in favor of the non-moving party. *See Bd. of Educ. v. Earls*, 536 U.S. 822, 850 (2002); *see also Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

## III. ANALYSIS

In considering whether the Defendants have met their burden of showing there is no genuine issue of material fact and that they are entitled to judgment as a matter of law, the Court may consider the pleadings, the discovery and disclosure materials

on file, and any affidavits. *See* Fed. R. Civ. P. 56(c). In support of their motions, the defendants have submitted affidavits, emails and other documents provided in discovery, declarations, and the pleadings.

**A. Count One: Violation of FHA 42 U.S.C. § 3604(f)(3)(b) against the Association and the Board**

In Count One, Kromenhoek alleges that the Board and the Association violated the Fair Housing Act ("FHA") by refusing to make reasonable accommodations for her alleged disability. The Fair Housing Act ("FHA"), passed by Congress as Title VIII of the Civil Rights Act of 1968, prohibits housing discrimination on the basis of, *inter alia*, race, gender, and national origin. 42 U.S.C. § 3601, *et seq*. Under the Fair Housing Act Amendment ("FHAA"), which Congress passed in 1988 to extend the coverage of the FHA to include people with disabilities, it is unlawful:

> To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, *because of a handicap* of-
>
> (A) that person; or
>
> (B) a person residing in or intending to reside in that dwelling after it is sold, rented, or made available; or
>
> (C) any person associated with that person.

42 U.S.C. § 3604(f)(2) (emphasis added). The FHAA does not, however, "extend a *preference* to handicapped residents," *United*

*States v. California Mobile Home Park Management Co.*, 29 F.3d 1413, 1418 (9th Cir. 1994) (emphasis added). As such, accommodations that go beyond affording a disabled individual "an equal opportunity to use and enjoy a dwelling" are not mandated by the FHAA. *Bryant Woods Inn, Inc. v. Howard County*, 124 F.3d 597, 605 (4th Cir. 1997).

Under 42 U.S.C. § 3604(f)(3)(B), discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). "The reasonable accommodation inquiry is highly fact-specific, requiring case-by-case determination." *United States v. California Mobile Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997) (citations omitted).

To prevail on a claim under 42 U.S.C. § 3604(f)(3)(b), a plaintiff must show each of the following elements:

> (1) he is disabled or handicapped within the meaning of the FHA, (2) he requested a reasonable accommodation, (3) such accommodation was necessary to afford him an opportunity to use and enjoy his dwelling, and (4) the defendants refused to make the requested accommodation.

42 U.S.C. § 3604(f)(3)(B); *Hawn v. Shoreline Towers Phase 1 Condominium Ass'n, Inc.*, 347 Fed. App'x 464, 467 (11th Cir. 2009) (citing *Schwarz v. City of Treasure Island,* 544 F.3d 1201,

1218-19 (11th Cir.2008)); *DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006); *HUD v. Riverbay Corp.*, HUDALJ 02-93-0320-1 (Sept. 8, 1994).

In order to make a claim under the FHA, a plaintiff "must actually request an accommodation and be refused in order to bring a reasonable accommodation claim under the FHA." *United States v. Hialeah Hous. Auth.*, 418 F. App'x 872, 875 (11th Cir. 2011). "[F]or a demand to be specific enough to trigger the duty to provide a reasonable accommodation, the defendant must have enough information to know of both the disability and desire for an accommodation, or circumstances must at least be sufficient to cause a reasonable landlord to make appropriate inquiries about the possible need for an accommodation." *Id.* at 876 (internal quotations omitted).

Once an accommodation is formally requested, the plaintiff may only bring a claim under the FHA if that accommodation is denied. Denial can be explicit or constructive. "We acknowledge that injury may result when a housing provider unreasonably delays responding to a request for an accommodation and that such a delay may amount to a denial." *Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 622 (6th Cir. 2011). However, a delay in responding to a request for accommodations does not

constitute denial where the denial does not deprive the disabled person of the accommodation. *Id.* at 623.

The Board and the Association have moved for summary judgment on Count One. The Association and the Board do not dispute that Kromenhoek is disabled or handicapped within the meaning of the FHA or that the accommodation sought was necessary to afford Kromenhoek an opportunity to use and enjoy her dwelling. Rather, in support of their motion for summary judgment, the Board and the Association assert that Kromenhoek did not request an accommodation within the meaning of the FHA until March, 2012, and that at no time was Kromenhoek denied the accommodation sought.

The Board and the Association assert that Kromenhoek requested an accommodation for the first time in March of 2012. In support of that contention, the Board and the Association have submitted a declaration by Sharon Koehler (“Koehler”), a member of the Board during the time at issue. The Board and the Association also direct the Court to a copy of the report issued by the United States Department of Housing and Urban Development (“HUD”). Finally, the Board and the Association have also provided a letter from the President of the Board in 2012, Ed Wardall, granting Kromenhoek’s exemption.

Koehler declares that Kromenhoek provided documents, or "paperwork," to Louanne Schechter ("Schechter") in 2011. (Decl. Kohler.) Kohler does not state what this "paperwork" consisted of. The affidavit of Schechter sheds some light on what was contained in the "paperwork" filed in 2011. Schechter testifies that Kromenhoek gave Schechter a copy of a letter from Kromenhoek's doctor, prescribing an emotional support animal, and certifications for Oliver. Kohler avers that Kromenhoek instructed Schechter not to share Kromenhoek's paperwork with the Board. Kohler also declares that Kromenhoek told the Board not to access the paperwork. Koehler further states that the Board did not review or discuss the content of Kromenhoek's paperwork or documentation at that time. Koehler states that the Board was unaware of any request for accommodation by Kromenhoek, and did not review any such request, until March of 2012. Koehler testifies that, in March, 2012, Kromenhoek provided the President of the Board, Ed Wardell, with a letter requesting an accommodation (the "March, 2012, request"). The letter is dated January 12, 2012. It was addressed to the previous President of the Board, Harcourt. The March, 2012, request also included a copy of the letter from Kromenhoek's doctor, and the certifications for Oliver.

The Board and the Association also direct the Court to a report issued by the United States Department of Housing and Urban Development ("HUD"). Following the filing of an administrative complaint by Kromenhoek, HUD conducted an investigation into Kromenhoek's allegations of discrimination and issued a report. In its report, HUD stated that "[Kromenhoek] did not formally request a reasonable accommodation for her disability until March 2012. In April 2012, upon review of those documents, the [Board] granted the request." (12-cv-25, ECF No. 188-1.)[6]

The Board also submitted a letter from the president of the Board which stated that

> [t]he Board of Directors convened a closed door meeting on March 26th, 2012 to confidentially review [the documents]. After review, the Board of Directors has agreed to provide you an exemption to the No Dog policy currently in place at Cowpet. Thus your request for accommodation to allow your service animal/emotion [sic] support animals to reside at Cowpet Bay West is granted. Furthermore, the Board has agreed to waive any fines assessed to your unit as a result of the perceived violation of the No Dog policy at Cowpet.

(12-cv-25, ECF No. 188-1, Ex. 13.)

---

[6] "As a general proposition, administrative records may be a sufficient basis for the granting of a motion for summary judgment. *See, e. g.*[sic] *United States v. Lange*, 466 F.2d 1021, 1025 n. 5 (9th Cir. 1972); *Dredge Corp. v. Penny*, 338 F.2d 456, 460 (9th Cir. 1964)." *United States v. Pent-R-Books*, Inc., 538 F.2d 519, 527 (2d Cir. 1976). That said, the Court recognizes that it is not bound by any factual finding made by HUD.

In order to make a claim under the FHA, a plaintiff "must actually request an accommodation and be refused in order to bring a reasonable accommodation claim under the FHA." *United States v. Hialeah Hous. Auth.*, 418 F. App'x 872, 875 (11th Cir. 2011). "[F]or a demand to be specific enough to trigger the duty to provide a reasonable accommodation, the defendant must have enough information to know of both the disability and desire for an accommodation, or circumstances must at least be sufficient to cause a reasonable landlord to make appropriate inquiries about the possible need for an accommodation." *Id.* at 876 (internal quotations omitted).

The evidence indicates that Harcourt and the Board were aware that documents had been filed with Schechter as early as 2011. (Koehler Decl.) The evidence also indicates that the Board did not know of the specific contents of those documents, because Kromenhoek had forbidden the Board from seeing them. (*Id*.) A request for an accommodation must be reasonably specific. "The duty to make a reasonable accommodation does not simply spring from the fact that the handicapped person wants such an accommodation made. Defendants must instead have ... the ability to conduct a meaningful review of the requested accommodation[.]" *Hialeah Hous. Auth.*, 418 F. App'x at 876. Kromenhoek's initial filing of documents with an individual who

was not a Board member, and concomitant refusal to allow the Board to see the documents, prevented the Board and the Association from conducting a meaningful review of the accommodation sought. As such, Kromenhoek's initial filing of her doctor's letter and Oliver's certificates is not a specific request for accommodation, as is required by the FHA.[7]

Thus, the first request for accommodation came in March, 2012. (Koehler Decl.) That request was granted within one month. (12-cv-25, ECF No. 188-1, Ex. 13.)

Even assuming, *arguendo*, that Kromenhoek made a request for a reasonable accommodation in 2011, she must also show that she was denied the reasonable accommodation. *See* 42 U.S.C. § 3604(f)(3)(B).

"In most circumstances, waiving a no-pet rule to allow a disabled resident the assistance of a service animal is a reasonable accommodation." *Prindable v. Ass'n of Apartment Owners of 2987 Kalakaua*, 304 F. Supp. 2d 1245, 1257 (D. Haw. 2003) *aff'd sub nom. DuBois v. Ass'n of Apartment Owners of 2987*

---

[7] This was also the view taken by HUD, when it conducted its investigation into Kromenhoek's FHA complaint. Specifically, HUD found that, "[w]hile the Complainant informed the Office Manager of the Respondent Association of her disability and need for an emotional support animal in July 2011, she did not formally request an accommodation at that time. In fact, she asked that the Office Manager keep this information confidential, i.e., that it not be shared with the Board of Directors of the Respondent Association." (Determination of No Reasonable Cause, HUD, Case No. 01-12-0337-8.)

*Kalakaua*, 453 F.3d 1175 (9th Cir. 2006); *Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995)(stating that allowing a deaf individual to keep a service dog despite a no-pets policy was *per se* reasonable).

At least one federal appellate court has acknowledged "that injury may result when a housing provider unreasonably delays responding to a request for an accommodation and that such a delay may amount to a denial." *Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 622 (6th Cir. 2011). However, a delay in responding to a request for accommodations does not constitute denial where the denial does not deprive the disabled person of the accommodation. *Id.* at 623.

In *Overlook Mutual Homes, Inc. v. Spencer*, the Sixth Circuit considered an FHA claim involving a request for a support animal. In that case, Overlook Mutual Homes ("Overlook") requested medical and counseling records pertaining to the resident's request for an accommodation. *Id.* at 619. When Overlook did not receive those records, it indicated to the requesting residents that Overlook would not review the request until all documentation had been provided. *Id.* During the delay in Overlook's response to the resident's request, the service dog "was allowed to stay with the family, and they were never required to leave their home or otherwise punished for [the

dog's] presence." *Id.* at 623. Because the residents were able to use the requested accommodation for the duration, the Sixth Circuit found that their request had not been constructively denied. *Id.*

An alternative approach to that taken in *Overlook* is evident in *Astralis Condominium Assoc. v. Secretary, U.S. Dept. of Housing and Urban Development*, 620 F.3d 62 (1st Cir. 2010). In *Astralis*, the residents requested handicapped parking spaces. *Id.* at 65. For over a year, the association did not take any action on the request. *Id.* While the dispute was ongoing, the residents parked in the desired handicapped spaces. *See id.* However, when they did so, the residents were cited. *Id.*

Here, as in *Overlook*, Kromenhoek had access to the accommodation for the duration of the alleged delay. (Kohler Decl.("The Board never prevented Plaintiff from accessing or using her unit at any time with the accompaniment of her dog.")) Kromenhoek was not evicted, or threatened with eviction, and Oliver was at no time forced to leave the premises. Though Kromenhoek received notice that she would be fined per day for having Oliver on premises, she was also informed that all fines would be held in abeyance until the resolution of her request for an accommodation. (*Id*. ("The Board held all dog violation fines against Plaintiff in abeyance and agreed to waive same in

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 20

March 2012.")) The circumstances here are easily distinguishable from "*Astralis*, in which a delay in responding to a request was found to be a denial. In th[at] case[], the delay had the effect of depriving disabled persons of the accommodation." *Id.* In the instant matter, Kromenhoek at all times had access to her emotional support dog and was not punished for the support dog's presence. As such, it cannot be said that the alleged delay in processing her request constituted a refusal to grant her a reasonable accommodation.

The facts shown by the Association and the Board, unless controverted, entitle the Association and the Board to judgment as a matter of law. Therefore, the burden now shifts to Kromenhoek to show that there is a genuine dispute of material fact, such that the Association and the Board are not entitled to summary judgment on Count One.

Kromenhoek claims that she requested an accommodation in 2011. In support of that contention, she directs the Court to the affidavit of Louanne Schechter and a copy of a letter from Kromenhoek's doctor, prescribing her with an emotional support animal. Schechter states that she received a letter from Kromenhoek's doctor, prescribing a support animal, and certifications for Kromenhoek's dog Oliver in October, 2011. Schechter also avers that she "discussed" the paperwork with her

supervisor, and that her supervisor then "discussed" the paperwork with Harcourt, then a member of the Board. Schechter avers that Harcourt looked at the documentation. Schechter states that following those events, she was instructed to place the paperwork in Kromenhoek's file and take no further action.

On review of the documents provided by Kromenhoek to Schechter in July, 2011, and the affidavit of Schechter, the Court considers a few things to be noteworthy. First, the letter from Kromenhoek's doctor that was submitted to Schechter does not appear to request any action. It merely states that Kromenhoek has been diagnosed with anxiety, for which the doctor is prescribing an emotional support dog. Second, the Court notes that Schechter "discussed" the documents with her supervisor, who then purportedly "discussed" them with Harcourt. Kromenhoek notably has not produced any evidence that the Board was allowed, at any time, to access these documents. This is particularly noteworthy, given Koehler's testimony that Kromenhoek refused to let the Board look at the documentation.

It is axiomatic that "[t]he duty to make a reasonable accommodation does not simply spring from the fact that the handicapped person wants such an accommodation made. Defendants must instead have ... the ability to conduct a meaningful review of the requested accommodation[.]" *Hialeah Hous. Auth.*, 418 F.

App'x at 876. Yet, contrary to that axiom, Kromenhoek seems to assert that by providing Schechter with *notice* of her condition, and forbidding Schechter from sharing that notice, Kromenhoek triggered an obligation on the part of the Board: (1) to absorb that information by osmosis; (2) to cast that unshared information as a request for an accommodation; and (3) to assess that nonexistent request. In essence, Kromenhoek invites the Court to find that providing notice of a condition is tantamount to requesting an accommodation for that condition. The Court must decline that invitation as it is unsupported in law. The circumstances presented by Kromenhoek's wishes and conduct deprived *the Board and the Association* of the opportunity to conduct a meaningful review until March, 2012. After that review, the Board granted Kromenhoek the accommodation she sought.

Even if the documents Kromenhoek submitted in 2011 could be considered a request for an accommodation, Kromenhoek still would need to show that she was denied such accommodation. On this issue, Kromenhoek has adduced no additional record evidence. Instead, she argues that, as a matter of law, the undue delay between her alleged request for accommodation, and the Board's consideration of the same, acted as a constructive denial of her request.

Case: 3:12-cv-00025-CVG-RM Document #: 232 Filed: 12/04/14 Page 23 of 42

A delay in responding to a request for accommodations does not constitute denial where the denial does not deprive the disabled person of the accommodation. *See Overlook Mut. Homes*, 415 F. App'x at 623. As discussed above, Kromenhoek was not evicted, or threatened with eviction, and Oliver was at no time forced to leave the premises. Though Kromenhoek received notice that she would be fined per day for having Oliver on premises, she was also informed that all fines would be held in abeyance until the resolution of her request for an accommodation. On these facts, as previously stated, the Court does not find as a matter of law that Kromenhoek was at any time actually denied the accommodation sought.

Because Kromenhoek has failed to show there is any genuine dispute of material fact, such that the Board and Association are not entitled to judgment as a matter of law, summary judgment is appropriate as to Count One.

**B. Count Three: Violation of 42 U.S.C. § 3617 against the Association and the Board; Count Five: Violation of 42 U.S.C. § 3617 against Talkington**

Under the Fair Housing Act Amendment ("FHAA"), which Congress passed in 1988 to extend the coverage of the FHA to include people with disabilities, it is unlawful:

> to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or

> encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617.

To prevail on a claim brought under Section 3617, a plaintiff must show that

> (1) she is a protected individual under the FHA, (2) she was engaged in the exercise or enjoyment of her fair housing rights, (3) the defendants coerced, threatened, intimidated, or interfered with the plaintiff on account of her protected activity under the FHA, and (4) the defendants were motivated by an intent to discriminate. *East-Miller*, 421 F.3d at 563. "Interference" is more than a "quarrel among neighbors" or an "isolated act of discrimination," but rather is a "pattern of harassment, invidiously motivated." *Halprihn*, 388 F.3d at 330; *cf.* *DiCenso*, 96 F.3d at 1006; *Honce v. Vigil*, 1 F.3d 1085, 1090 (10th Cir. 1993).

*Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009).

For purposes of their motions for summary judgment, the Defendants do not argue or adduce evidence refuting that Kromenhoek is a protected individual under the FHA, or that, in having her support dog on the premises, she was engaged in the exercise or enjoyment of her fair housing rights. The Defendants, instead, contend that their behavior did not "coerce[], threaten[], intimidate[], or interfere[] with the plaintiff on account of her protected activity under the FHA." *Bloch*, 587 F.3d at 783.

**1. Count Three: Violation of 42 U.S.C. § 3617 against the Association and the Board**

In Count Three of the Second Amended Complaint, Kromenhoek alleges that the Board and the Association unlawfully retaliated against her for exercising rights protected by the FHA when a resolution was introduced to add a "no pets" policy to the bylaws. Kromenhoek further alleges that the Board distributed confidential medical information to non-members, specifically Talkington, in order to intimidate her or retaliate against her. Finally, Kromenhoek claims that the imposition of a daily fine for having Oliver on the premises constituted impermissible interference. The Board and Association respond that there was no retaliatory action, and that Kromenhoek is trying to use the FHA to settle a "dispute between neighbors."

In support of its motion for summary judgment, the Board and the Association submitted association rules and regulations that have forbidden dogs in general since 2007. The Board and Association submitted the 2007 version of its Bylaws, as well, which incorporate by reference the rules and regulations. The Board and the Association also rely on the declaration of Koehler, which states that the Board did not look at or review Kromenhoek's documentation as to her medical condition or Oliver until March 2012. According to the letter from her doctor that

Kromenhoek submitted, Kromenhoek was not prescribed an emotional support dog until 2011.

As to Kromenhoek's claim that the Board and the Association shared confidential information regarding her request with non-members, the Defendants rely on the affidavit of Talkington. Talkington avers that at no time did he receive any medical records or confidential information from the Board, or any member of the Board. He further states that he did not, at any time, post any of Kromenhoek's medical records or confidential information online.

The Board and the Association have also submitted correspondence sent by the Board to Kromenhoek informing Kromenhoek that: she was in violation of the "no pets" policy, that a per day fine will be levied, and that such fine would be held in abeyance pending her filing of a request for an exemption from the "No Dogs policy," and the Board's review of such request. The Board also submitted a letter sent by the Board to Kromenhoek informing her that her request was approved and that the fines were waived.

These facts, taken together, show that the Association and the Board did not undertake retaliatory action under Section 1367 based upon Kromenhoek's request for a service dog accommodation. "To establish a *prima facie* case of retaliation,

a plaintiff must show that (1) he engaged in a protected activity; (2) the defendant subjected him to an adverse action; and (3) a causal link exists between the protected activity and the adverse action.” *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001).

As the Board and the Association make no argument as to whether Kromenhoek’s request for an accommodation was a protected activity, the Court will, for purposes of their motion for summary judgment on Count Three, consider that issue conceded. The Court, thus, considers first if there was an “adverse action” to which Kromenhoek was subjected. The Board and the Association have adduced evidence that neither party disclosed Kromenhoek’s confidential information. They have also adduced competent evidence that Kromenhoek was never fined. As such, Kromenhoek’s allegations that such activities constituted retaliation must fail as a matter of law.

Turning to the issue of whether the “No Dogs” policy itself constituted retaliation, the Court finds the dates of that activity to be dispositive. The Board and the Association have submitted competent evidence that the rules and regulations that implemented the “No Dogs” policy were passed no later than 2007, as were the bylaws that incorporated those rules and regulations by reference. The protected activity that Kromenhoek engaged in,

seeking an accommodation for her service animal, began no earlier than 2011. There is thus no causal link between beginning the protected activity and the alleged retaliatory action.

Thus, these facts, unless disputed, entitle the Association and the Board to judgment as a matter of law. This showing satisfies the defendants' burden under Rule 56, and the burden thus shifts to Kromenhoek.

Kromenhoek relies almost entirely on an unverified second amended complaint. Additionally, she directs the Court's attention to a blog post written by Talkington stating that Kromenhoek was being fined for violations of the "No Dog" policy. Talkington indicates in his post that he received that information from the Board. The email or letter by which he learned of this action is unknown. More importantly, the source of the email or letter is unknown.

Assuming, *arguendo*, that this disclosure may be considered an "adverse action", there must still be some indication that the complained of action was done in response to the plaintiff's exercise of her fair housing rights. *See Walker*, 272 F.3d at 1128. The record in this case is replete with complaints from Talkington, as well as other association members, to the Board complaining of violations of the "No Dog" policy and demanding

the Board punish the individuals Talkington identified as violating the policy. (ECF No. 188-1.) The Board's proof of action on the "No Dog" policy concerns appears to be nothing more than that. The letter itself states that though Kromenhoek was being fined, it would be held in abeyance pending her request for accommodation. There is nothing on the record which supports an inference that the letter's disclosure was done in retaliation against Kromenhoek's request for accommodation. In fact, at that time, she had not made such a request.[8]

The Court is thus unable to find proof on the issue of causation as to the purported disclosure. As to the other complained of "adverse actions," Kromenhoek has adduced no additional competent evidence and Kromenhoek relies entirely on her unverified complaint. Though the Court may consider pleadings in reviewing motions for summary judgment, in the face of competent evidence, a lone unverified pleading simply will not be enough.

As Kromenhoek has not shown there is a genuine dispute of material fact, the Court finds that summary judgment is appropriate as to Count Three.

**2. Count Five: Violation of 42 U.S.C. § 3617 against Talkington**

---

[8] As discussed above, Kromenhoek did not actually request an accommodation until March 2012. The letter the Board allegedly disclosed predates that.

In Count Five, Kromenhoek also claims that Lance Talkington
("Talkington"), another resident of Cowpet Bay West, violated
Section 3617. Specifically, she alleges that the blog kept by
Talkington constituted harassment that intimidated, threatened,
or interfered with her enjoyment of her property. Talkington
disputes this characterization of his actions, and contends that
Kromenhoek is elevating a simple dispute among neighbors.

In support of his motion, Talkington provided an affidavit,
as well as several blog posts in which the issue of pets at
Cowpet Bay West was discussed. The Court has carefully looked at
and considered Talkington's affidavit and the blog posts
attributable to Talkington. There are a number of posts, some of
which reference Kromenhoek by name.  The content written by
Talkington himself seems geared towards discussing whether dogs
should be allowed in the community, and how to best draft a
bylaw provision that would allow service animals for the
disabled. Talkington proposed incorporating the language used in
the Americans with Disabilities Act ("ADA").

Talkington did post a copy of the email sent by Harcourt to
Kromenhoek in which Kromenhoek was informed that she was in
violation of the "no pets" policy and would need to submit a
request to the Board. Talkington also called Kromenhoek a "known
violator" of the "no pets" policy.  Finally, Talkington

disclosed on his blog that he was a named party in Kromenhoek's administrative complaint to HUD.

A wide range of conduct falls under Section 3617's umbrella. Indeed,

> Section 3617 is not limited to those who used some sort of "potent force or duress," but extends to other actors who are in a position directly to disrupt the exercise or enjoyment of a protected right and exercise their powers with a discriminatory animus. Under this standard, the language "interfere with" encompasses such overt acts as racially-motivated firebombings, sending threatening notes, and less obvious, but equally illegal, practices such as exclusionary zoning, deflating appraisals because of discriminatory animus, and insurance redlining[.]

*Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 347 (6th Cir. 1994).

Even a broad reading of Section 3617, in order to account for less obvious but still illegal discrimination, does not make unfortunate skirmishes between neighbors unlawful. *Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009). Even potentially discriminatory statements exchanged between neighbors do not necessarily violate Section 3617. *See Sheikh v. Rabin*, 565 F. App'x 512, 517-18 (7th Cir. 2014).

In *Sheikh v. Rabin*, 565 F. App'x 512 (7th Cir. 2014), the Seventh Circuit considered whether statements, including discriminatory statements, made in opposition to a zoning

variance and in discussions between neighbors, violated Section 3617. In that case, the plaintiff was a Muslim from South Asia who sought to build a home and required various zoning variances. *Id*. at 514-15. He initially sought a variance from the zoning board. *Id*. at 515. Before a final decision on the variances was issued, he filed suit against various neighborhood residents, alleging, in part, violations of Section 3617. *Id*.

Those neighborhood residents had opposed the requested variances and made a number of potentially discriminatory statements. *See id*. at 517-18.

> [One neighbor] once told [the plaintiff] that the subdivision is "all white" and that he did not think [the plaintiff] would "fit in." The neighbors sometimes referred to [the plaintiff] and his family at [public] meetings as "you people," and [a neighbor] suggested he move somewhere else, closer to his "people." At one meeting, [a neighbor] displayed pictures of narrow houses in poor countries, sarcastically suggesting that the pictures supported the conclusion that a narrow house should be enough for [the plaintiff]. Another time, some of the neighbors (he does not specify who) expressed worry that [the plaintiff] would allow more than one family to live in his house. (His two adult children will live in the house with him and his wife.) These neighbors talked about other areas in which one "colored family" moving in was a prelude to being "flooded by them" and about how some single-family homes rented by "latinos and blacks" ended up housing multiple families. [The plaintiff] also alleges that [a neighbor] said something threatening about the house burning down if it is built. (Though accepting as true that [that neighbor] said something threatening, [the judge] noted that the allegations are

> fuzzy. [The plaintiff]'s appellate brief hardly clarifies matters; he maintains that, whatever [the neighbor] said, it was threatening, but he explains that he "can merely speculate on that threat" since only [the neighbor] knows "his true intent.")

*Id*. Based on these facts, the district court held that the plaintiff's allegations described "a 'quarrel among neighbors' that involved, at most, 'isolated acts of discrimination'" and did not violate 42 USC 3617. *See Sheikh v. Rabin*, No. 11-CV-425, 2012 WL 5471085, at *5 (N.D. Ill. Nov. 9, 2012). The Seventh Circuit affirmed, holding that "taken together, the[] allegations would establish only that different neighbors at different times made shameful statements, not that any individual neighbor (or the neighbors as a group) interfered with [the plaintiff]'s rights under the Fair Housing Act." *Sheikh*, 565 F. App'x at 518.

The conduct at issue in this case pales in comparison to that seen in *Sheikh*. A review of Talkington's blog posts and comments attributable to Talkington does show that he was certainly not friendly with Kromenhoek. None of those comments or posts, however, rises to the level of interference and threatening behavior seen in *Sheikh*, where one of the plaintiff's neighbors "said something threatening about the house burning down if it is built." *See id*. at 517-18.

Talkington has shown competent evidence that the behavior complained of in this case does not rise to the level of “interference” with Kromenhoek’s rights under the FHA. Such facts, if uncontroverted, entitle him to judgment as a matter of law and meet his burden under Rule 56.

Once a movant meets the burden of Rule 56, the burden shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans*, 762 F.2d at 342. The non-moving party “may not rest upon mere allegations, general denials, or . . . vague statements . . . .” *Quiroga*, 934 F.2d at 500. “[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.” *Anderson*, 477 U.S. at 249.

Kromenhoek does not dispute any facts adduced by Talkington. Instead, she argues that as a matter of law, these posts amount to harassment that intimidates or interferes with Kromenhoek’s enjoyment of her property.

As discussed above, here the facts are less extreme even than those in *Sheikh*. Though Talkington’s blog may have bothered Kromenhoek, there is no record evidence that she was forced to see it. There were no threats made against Kromenhoek. There is no allegation that she was followed or otherwise harassed in person. This was a dispute over what the specific rules should

be regarding the keeping of dogs in Cowpet Bay West, with discussions ongoing between neighbors who had no influence on whether or not Kromenhoek could actually keep her dog at her residence.

Though finding the line may at times be difficult, the Court believes that what occurred in this instance as between Kromenhoek and Talkington is more correctly characterized as a dispute between neighbors, not unlawful discrimination.

Kromenhoek has, thus, failed to meet her burden. As such, considering there is no genuine dispute of material fact and Talkington is entitled to judgment as a matter of law, the Court finds summary judgment is appropriate as to Count Five.

**C. Count Six: Americans with Disabilities Act Against the Association and the Board**

In Count Six, Kromenhoek alleges that the Board and the Association violated her rights under the Americans with Disabilities Act ("ADA") by improperly enforcing a "no dogs" policy against her.

> Under Title III of the ADA, it is unlawful for a public accommodation to discriminate against an individual on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. 12182(a). "Public accommodation" is defined in terms of 12 categories, which the legislative history indicates "should be construed liberally" to afford people with disabilities "equal access" to the wide variety of establishments available to the nondisabled. S.Rep. No. 101-116, p. 59 (1989);

> H.R.Rep. No. 101-485, pt. 2, p. 100 (1990), U.S.Code Cong. & Admin. News 1990, pt. 2, at pp. 303, 382-283. The ADA obligates a "public accommodation" only with respect to a "facility" that is "used as, or designed or constructed for use as," either a place of public accommodation or a commercial facility. 28 C.F.R. § 36.102(b)(3)(i)-(ii).

*Regents of Mercersburg College v. Republic Franklin Ins. Co.*, 458 F.3d 159, 164 (3d Cir. 2006).[9]

The United States Court of Appeals for the Third Circuit has explained that

> The regulations under the statute provide that discrimination is prohibited by any private entity that owns, leases (or leases to) or operates a place of public accommodation, 28 C.F.R. § 36.201(a), and that "private entity" means a person or entity other than a public entity. 28 C.F.R. § 36.104.

---

[9] The ADA provides that

> The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce--
>
> (A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;
>
> (B) a restaurant, bar, or other establishment serving food or drink;
>
> . . . .
>
> (J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;
>
> (K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and
>
> (L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181(7).

*Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir. 2002).

"[C]ondominium buildings may be covered as places of public accommodation if they operate as places of lodging. Determining whether a particular condominium facility is a place of public accommodation would depend on the extent to which it shares characteristics normally associated with a hotel, motel or inn." Department of Justice Public Letter 202-PL-216 (Aug. 28, 1992); *see also Regents of Mercersburg College v. Republic Franklin Ins. Co.*, 458 F.3d 159, 165 (3d Cir. 2006) (finding that private-school dormitories are places of "public accommodation" under the ADA because they are more similar to "transient lodging" like "inns, hotels, and motels – which are covered" by the ADA, and less like "residential units such as apartments and condominiums – which are not covered by the ADA . . ."); *Access 4 All, Inc. v. Atlantic Hotel Condominium Ass'n, Inc.*, 2005 WL 5643878, *13 (S.D. Fla. Nov. 23, 2005) (finding that the hotel and condominium structure "was designed and intended for use as a public accommodation because individual unit owners who purchased a unit were likely to rent out the unit for public use," and was "virtually indistinguishable from a hotel.")

The Board and the Association seek summary judgment on Count Six on the basis that Cowpet Bay West is not a "public accommodation," and that they are, therefore, exempt from the

ADA. "[R]esidential units such as apartments and condominiums[,]" are generally exempt from the ADA. *See Regents of Mercersburg Coll.*, 458 F.3d at 165. In support of their contention that Cowpet Bay West is not a public accommodation within the ambit of the ADA, the Board and the Association have submitted the bylaws of Cowpet Bay West. Those bylaws, in Article V, Section 11, state that "[t]he apartment units shall be used for residences only."

Having provided competent evidence to meet their burden under Rule 56, the burden shifts to Kromenhoek. Kromenhoek directs the Court to a copy of a webpage on which a unit owner put their unit up for temporary rental. This single advertisement, Kromenhoek argues, shows that individual unit owners are likely to rent out their units, and that Cowpet Bay West is similar to a hotel. The Court is not persuaded by this argument. A single advertisement from one unit owner does not show that other owners are "likely to rent out the unit for public use," such that Cowpet Bay West is "virtually indistinguishable from a hotel." *Access 4 All, Inc.*, 2005 WL 5643878, *13.

Considering the evidence adduced, the Court finds that the Board and the Association have shown that there is no dispute as

to material fact and that they are entitled to judgment as a matter of law on Count Six.

**D. Remaining Counts against the Board, the Association, Verdiramo, Cockayne, and Talkington**

Counts Seven through Eighteen each allege claims arising under local laws (the “local claims”). Those claims are subject to different jurisdictional considerations, which may affect their viability in this Court. In order to assess jurisdictional viability of the local claims, a brief overview of the subject-matter jurisdiction of this Court is in order.

Federal district courts are courts of limited jurisdiction. Ordinarily, a district court has original jurisdiction over “civil actions arising under the Constitution, laws, or treaties of the United States.” 28 U.S.C. § 1331 (“federal question jurisdiction”). District courts also have original jurisdiction over civil actions between citizens of different states with the amount in controversy exceeding the sum or value of $75,000. 28 U.S.C. § 1332 (“diversity jurisdiction”). The Supreme Court has “interpreted the diversity statute to require ‘complete diversity’ of citizenship.” *C.T. Carden v. Arkoma Assoc.*, 494 U.S. 185, 187 (1990). That means “every plaintiff must be of diverse state citizenship from every defendant.” *In re Briscoe*, 448 F.3d 201, 215.

Where a case is properly brought in the district court pursuant to the Court's federal question jurisdiction or diversity jurisdiction, the Court may have jurisdiction over local claims that arise out of the same case or controversy as those underlying the federal claims (supplemental jurisdiction). 28 U.S.C. § 1367.

The complaint in this matter names a plaintiff that is a citizen of the Virgin Islands, Kromenhoek, and a defendant that is a citizen of the Virgin Islands, Cowpet Bay West. As such, the case could not be brought in this Court pursuant to the Court's diversity jurisdiction under 28 U.S.C. § 1332. Instead, Kromenhoek brought her complaint in this Court pursuant to its federal question jurisdiction under 28 U.S.C. § 1331, as the FHA and ADA claims arise under the laws of the United States. Those claims, as discussed above, have been disposed of as a result of the Defendants' motions for summary judgment.

The local claims against the Board, the Association, Verdiramo, Cockayne, and Talkington may be heard only if the Court exercises its supplemental jurisdiction over those claims. That exercise is not a foregone conclusion.

Indeed, "district courts may decline to exercise supplemental jurisdiction over a claim . . . if--(1) the claim raises a novel or complex issue of State law,(2) the claim

substantially predominates over the claim or claims over which the district court has original jurisdiction,(3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.” 28 U.S.C. § 1367.

With the disposition of the federal claims in this case, the Court’s exercise of jurisdiction over the local claims is discretionary. Exercising that discretion, the Court will decline jurisdiction over the remaining local claims. *See, e.g.*, B*orough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)(“It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of juridical economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them[.]”)

## V. CONCLUSION

For the reasons discussed herein, the Board, the Association, and Talkington are entitled to judgment as a matter of law on Counts One, Three, Five, and Six. The Court will decline to exercise its supplemental jurisdiction over local

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 42

counts, Seven through Eighteen, as against the Board, the Association, Talkington, Verdiramo, and Cockayne, as no federal counts remain as against any of said defendants.[10]

An appropriate Judgment follows.

**S_______________________**
**Curtis V. Gómez**
**District Judge**

[10] The Court does not address any of the claims, federal or local, as against Harcourt or Felice in this Memorandum Opinion. Such claims are the subject of a separate, forthcoming opinion.

**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

**JUDITH KROMENHOEK,**

**Plaintiff,**

**v.**

**COWPET BAY WEST CONDOMINIUM ASSOCIATION; THE BOARD OF THE COWPET BAY WEST CONDOMINIUM ASSOCIATION; MAX HARCOURT, in his personal capacity; ALFRED FELICE; LANCE TALKINGTON; ROBERT COCKAYNE; and VINCENT VERDIRAMO,**

**Defendants.**

**Civil No. 2012-25**

**ATTORNEYS:**

**Karin A. Bentz, Esq.**
Law Office of Karin Bentz, P.C.
St. Thomas, VI
*For Judith Kromenhoek,*

**Joseph G. Riopelle, Esq.**
Boyd Richards Parker & Colonnelli
Tampa, FL
**Carl R. Williams, Esq.**
**Richard P. Farrelly, Esq.**
Birch, Dejongh & Hindels
St. Thomas, VI
*For Cowpet Bay West Condominium Association, Ed Wardwell, Max Harcourt, Bill Canfield, Rosie Wells, Sharon Koehler, Doug Rebak, Robert Cockayne, Vincent Verdiramo, and Herb Horwitz,*

**John H. Benham, III, Esq.**
Watts, Benham & Sprehn, P.C.
St. Thomas, VI
*For Lance Talkington,*

**Ryan C. Meade, Esq.**
Quintairo, Prieto, Woo & Boyer, P.S.

Miami, FL
*For Alfred Felice.*

**JUDGMENT**

Before the Court are four motions for summary judgment filed by: Vincent Verdiramo ("Verdiramo"), Robert Cockayne ("Cockayne"), Lance Talkington ("Talkington"), and the Cowpet Bay West Condominium Association (the "Association") and the Board of the Cowpet Bay West Condominium Association (the "Board") (collectively, the "defendants").

For the reasons articulated in the Amended Memorandum Opinion of even date, it is hereby

**ORDERED** that the motion of the Board and the Association, for summary judgment on Counts One, Three, Six, Seven, Eight, Thirteen, Fourteen, and Seventeen of the second amended complaint are **GRANTED in part;** it is further

**ORDERED** that judgment be entered in favor of the Board and the Association as to Counts One, Three, and Six; it is further

**ORDERED** that Counts One, Three, and Six as against the Board and the Association are **DISMISSED**; it is further

**ORDERED** that Talkington's motion for summary judgment on Counts Five, Eleven, Thirteen, Fifteen, Sixteen, and Seventeen is **GRANTED in part**; it is further

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Judgment
Page 3

**ORDERED** that judgment be entered in favor of Talkington on Count Five; it is further

**ORDERED** that Count Five as against Talkington is **DISMISSED**; it is further

**ORDERED** that Counts Seven, Eight, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, Seventeen, and Eighteen as against the Board, the Association, Verdiramo, Cockayne, and Talkington are **DISMISSED** for want of jurisdiction; it is further

**ORDERED** that the motions of Verdiramo and Cockayne for summary judgment on Count Thirteen of the second amended complaint are **DENIED** as **MOOT.**

**S_______________________**
**Curtis V. Gómez**
**District Judge**

**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

**JUDITH KROMENHOEK,**

**Plaintiff,**

**v.**

**COWPET BAY WEST CONDOMINIUM ASSOCIATION; THE BOARD OF THE COWPET BAY WEST CONDOMINIUM ASSOCIATION; MAX HARCOURT, in his personal capacity; ALFRED FELICE; LANCE TALKINGTON; ROBERT COCKAYNE; and VINCENT VERDIRAMO,**

**Defendants.**

**Civil No. 2012-25**

**ATTORNEYS:**

**Karin A. Bentz, Esq.**
Law Office of Karin Bentz, P.C.
St. Thomas, VI
*For Judith Kromenhoek,*

**Joseph G. Riopelle, Esq.**
Boyd Richards Parker & Colonnelli
Tampa, FL
**Carl R. Williams, Esq.**
**Richard P. Farrelly, Esq.**
Birch, Dejongh & Hindels
St. Thomas, VI
*For Cowpet Bay West Condominium Association, Ed Wardwell, Max Harcourt, Bill Canfield, Rosie Wells, Sharon Koehler, Doug Rebak, Robert Cockayne, Vincent Verdiramo, and Herb Horwitz,*

**John H. Benham, III, Esq.**
Watts, Benham & Sprehn, P.C.
St. Thomas, VI
*For Lance Talkington,*

Exhibit "H"

**Ryan C. Meade, Esq.**
Quintairo, Prieto, Woo & Boyer, P.S.
Miami, FL
*For Alfred Felice.*

**MEMORANDUM OPINION**

**GÓMEZ, J.**

Before the Court are the claims alleged by Judith Kromenhoek against the deceased defendants, Alfred Felice (“Felice”) and Max Harcourt (“Harcourt”).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Judith Kromenhoek (“Kromenhoek”) owns a unit in the Cowpet Bay West Condominium complex (“Cowpet”), a condominium community located on St Thomas, United States Virgin Islands.

The Cowpet Bay West Condominium Association (“the Association”) was formed under the Condominium Act of the Virgin Islands (the “Condominium Act”), 28 V.I.C. §§ 901-927. (Bylaws at 1, Civil No. 2012-24, ECF No. 31-1.)[1] The Association is comprised of all of the unit owners in the Cowpet condominium community. Association members purchase their units subject to

[1] According to the Condominium Act,

> The administration of every property shall be governed by bylaws a true copy of which shall be annexed to the declaration and made a part thereof. No modification of or amendment to the bylaws shall be valid unless set forth in an amendment to the declaration and such amendment is duly recorded.

28 V.I.C. § 917.

the Association's Declaration,[2] Bylaws, and its Rules and Regulations.[3]

Association members elect a Board of Directors ("the Board"). The Board is made up of seven Association members. The Bylaws provide that the Board has

> the powers and duties necessary for the administration of the affairs of the Condominium and may do all such acts and things except as by law, by the Declaration, or by [its] By-Laws may not be delegated to the Board of Directors by the unit owners.

(Bylaws at 2, Civil No. 2012-24, ECF 31-1.)

The Bylaws provide for the amendment and enforcement of Rules and Regulations by the Board. At all relevant times, the Rules and Regulations for Association members provide the following:

> Dogs and farm animals are prohibited. Owners will be fined as specified by the Board of Directors. The Association may require removal

[2] "'Declaration' means the instrument by which the property is submitted to the provisions of this chapter, as hereinafter provided, and such declaration as from time to time may be lawfully amended." 28 V.I.C. § 901.

[3] The Condominium Act also provides that,

> Each apartment owner shall comply strictly with the bylaws and the administrative rules and regulations adopted pursuant thereto, as either of the same may be lawfully amended from time to time, and with the covenants, conditions and restrictions set forth in the declaration or in the deed to his apartment. Failure to comply with any of the same shall be ground for an action to recover sums due, for damages or injunctive relief or both maintainable by the manager or Board of Directors on behalf of the Association of Apartment Owners or, in a proper case, by an aggrieved apartment owner.

28 V.I.C. § 906.

> of any animal when it becomes bothersome to others or is deemed by the Association to be unacceptable.

(Rules and Regulations, Civil No. 2012-24, ECF No. 31-2.)

On or about December 15, 2010, Stansford S. Sutherland (“Sutherland”)[4], “a licensed psychologist wrote a letter stating that he was treating Kromenhoek and that she was diagnosed with Anxiety Disorder . . . .” (Second Am. Compl. ¶ 30, Civil No. 2012-25, ECF No. 94.) In his letter, the psychologist stated “that he has prescribed the use of an emotional support animal, dog or other, to alleviate her symptoms and that such emotional support animal was necessary. (*Id.*)

Kromenhoek owned a dog named Oliver. Kromenhoek submitted information about her dog’s qualification as an emotional support animal to Louanne Schecter (“Schecter”), the Cowpet Office Manager, including the letter from Sutherland.

Thereafter, members of the Board held a public meeting during which the issue of service dogs was discussed. Kromenhoek alleges that Max Harcourt (“Harcourt”), then President of the Association, shared the content of her documents with some of the Association members. (Second Am. Compl. at ¶ 43, Civil No. 2012-25, ECF No. 94.)

---

[4] Although Kromenhoek’s Second Amended Complaint states that Stansford S. Sutherland wrote the December 15, 2010, letter, the letter attached to Kromenhoek’s Second Amended Complaint dated December 15, 2010, regarding a diagnosis of anxiety disorder, is signed by Timothy Livingood.

Subsequently, discussions on Kromenhoek’s pet ownership appeared on an Internet web log, the Cowpet Bay Blog (“the blog”). The blog was maintained by a member of the Association, Lance Talkington. (Second Am. Compl. at ¶ 44, Civil No. 2012-24.)

Kromenhoek alleges that, on or about October 28, 2011, Harcourt e-mailed a letter addressed to Kromenhoek’s e-mail address as well as to Talkington’s e-mail address. The letter stated that Kromenhoek had violated the “no dogs” policy contained in the Rules and Regulations. The letter also requested that Kromenhoek submit applications for reasonable accommodation.

On or about January 19, 2012, the Board met and voted to assess a fine of $50 per day against owners, including Kromenhoek, who were in violation of the “no dogs” policy. Thereafter, in February, 2012, the Association voted to add the “no dogs” policy to the Bylaws. The newly added bylaw contained no explicit exception for service animals permitted by the Fair Housing Act (“FHA”).

Based on this policy, fines were assessed against Kromenhoek. These fines were held in abeyance. Kromenhoek was subsequently granted an exemption from the “no dogs” policy and was not required to pay the fines.

On April 9, 2012, Kromenhoek initiated this action against the Association; the Board; the members of the Board, including Harcourt, in their capacity as Board members; Harcourt, in his personal capacity; Lance Talkington (“Talkington”); Felice; Robert Cockayne (“Cockayne”); and Vincent Verdiramo (“Verdiramo”). Thereafter, Kromenhoek amended her complaint once as a matter of right. After receiving leave of court, she then filed another amended complaint (the “Second Amended Complaint”). The second amended complaint includes as defendants the Association; the Board; Harcourt, in his personal capacity; Felice; Lance Talkington; Cockayne; and Verdiramo.

Subsequently, the Board, the Association, and Talkington filed motions seeking summary judgment on the federal law claims then-pending against those defendants. Cockayne and Verdiramo also filed motions seeking summary judgment on state law claims. At a May 27, 2014, hearing (the “May 27, 2014, hearing”), the Court granted summary judgment on all federal law claims asserted against all living defendants in the Second Amended Complaint, including the Board. The Court declined to exercise supplemental jurisdiction over the remaining state law claims pending against those defendants.

The Court also instructed the parties to submit any necessary additional information for the Court to resolve the

claims against the deceased defendants--Felice and Harcourt. The Court directed the parties to apprise the Court of any necessary procedural steps that the Court needed to take with regard to the deceased defendants, as well as the substantive effect of the Court's summary judgment rulings with regard to the deceased defendants.

On November 14, 2014, the Court held a status conference, which was attended by Kromenhoek's attorney and attorneys who had represented the deceased defendants prior to those defendants' deaths. At that status conference, the Court informed Kromenhoek's attorney that the Court was considering entering summary judgment *sua sponte* in favor of the deceased defendants. The Court then provided the plaintiff with an opportunity to respond or otherwise supplement the record in light of the Court's inclination to grant summary judgment. To date--more than thirty-nine days since the Court invited the plaintiff to respond--the plaintiff has not filed any briefs or supplemented the record.

## II. DISCUSSION

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c); *see also Hersh v. Allen Products Co.*, 789
F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no
genuine issue of material fact, but once this burden is met it
shifts to the non-moving party to establish specific facts
showing there is a genuine issue for trial. *Gans v. Mundy*, 762
F.2d 338, 342 (3d Cir. 1985). The non-moving party "may not rest
upon mere allegations, general denials, or . . . vague
statements . . . ." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500
(3d Cir. 1991). "[T]here is no issue for trial unless there is
sufficient evidence favoring the non-moving party for a jury to
return a verdict for that party." *Anderson v. Liberty Lobby,
Inc.*, 477 U.S. 242, 249 (1986).

"[A]t the summary judgment stage the judge's function is
not himself to weigh the evidence and determine the truth of the
matter but to determine whether there is a genuine issue for
trial." *Id*. In making this determination, this Court draws all
reasonable inferences in favor of the non-moving party. *See Bd.
of Educ. v. Earls*, 536 U.S. 822, 850 (2002); *see also Armbruster
v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

In considering whether there is a genuine issue of fact on
these issues, the Court may consider the pleadings, the

discovery and disclosure materials on file, and any affidavits. *See* Fed. R. Civ. P. 56(c).

## III. ANALYSIS

### 1. *Sua Sponte* Summary Judgment

"[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte,* so long as the losing party was on notice that she had to come forward with all of her evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 1986).

"Under [Third Circuit precedent], a district court may not grant summary judgment sua sponte unless the court gives notice and an opportunity to oppose summary judgment." *See Otis Elevator Co. v. George Washington Hotel Corp.* 27 F.3d 903 (3d Cir.1994) (citing *Davis Elliott Intern. v. Pan American Container,* 705 F.2d 705, 707–08 (3d Cir.1983)). Notice requires that "the targeted party had reason to believe the court might reach the issue and received a fair opportunity to put its best foot forward." *Gibson v. Mayor & Council of City of Wilmington*, 355 F.3d 215, 223 (3d Cir. 2004)(quoting *Leyva v. On the Beach, Inc.,* 171 F.3d 717, 720 (1st Cir.1999) (internal citations omitted)).

At the end of the May 27, 2014, hearing, the Court instructed the parties to submit any necessary information for

the Court to resolve the claims against Felice and Harcourt. The Court stated that it was interested in both any necessary procedural steps and the substantive effect of the Court's summary judgment rulings. Furthermore, on November 14, 2014, the Court expressly informed Kromenhoek's attorney that it was considering *sua sponte* granting summary judgment on behalf of the deceased defendants and provided Kromenhoek with an opportunity to respond. To date, Kromenhoek has not availed herself of that opportunity. As such, the Court may enter summary judgment *sua sponte* on these claims if the facts and the law support such an outcome. *See Gibson*, 355 F.3d at 223. The Court will assess whether summary judgment is appropriate as to each of these claims.

**2. 42 U.S.C. § 3617 Claims**

A. **Felice**

Pursuant to Title 42, U.S.C. § 3617 ("Section 3617"), it is unlawful to

> coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617. To prevail on a Section 3617 claim, a plaintiff must show that:

> (1) she is a protected individual under the FHA, (2) she was engaged in the exercise or enjoyment of her fair housing rights, (3) the defendants coerced, threatened, intimidated, or interfered with the plaintiff on account of her protected activity under the FHA, and (4) the defendants were motivated by an intent to discriminate. *East-Miller*, 421 F.3d at 563. "Interference" is more than a "quarrel among neighbors" or an "isolated act of discrimination," but rather is a "pattern of harassment, invidiously motivated." *Halprihn*, 388 F.3d at 330; *cf*. *DiCenso*, 96 F.3d at 1006; *Honce v. Vigil*, 1 F.3d 1085, 1090 (10th Cir. 1993).

*Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009).

A wide range of conduct falls under Section 3617's umbrella. Indeed,

> Section 3617 is not limited to those who used some sort of "potent force or duress," but extends to other actors who are in a position directly to disrupt the exercise or enjoyment of a protected right and exercise their powers with a discriminatory animus. Under this standard, the language "interfere with" encompasses such overt acts as racially-motivated firebombings, sending threatening notes, and less obvious, but equally illegal, practices such as exclusionary zoning, deflating appraisals because of discriminatory animus, and insurance redlining[.]

*Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 347 (6th Cir. 1994).

Even reading Section 3617 broadly, in order to account for less obvious but still illegal discrimination, unfortunate skirmishes between neighbors are not made unlawful. *Bloch*, 587 F.3d at 783. Even discriminatory statements exchanged between

neighbors do not necessarily violate Section 3617. *See Sheikh v. Rabin*, 565 F. App'x 512, 517-18 (7th Cir. 2014).

In *Sheikh v. Rabin*, the Seventh Circuit considered whether statements, including discriminatory statements, made in opposition to a zoning variance and in discussions between neighbors, violated Section 3617. In that case, the plaintiff was a Muslim from South Asia who sought to build a home and required various zoning variances. *Id.* at 514-15. He initially sought a variance from the zoning board. *Id.* at 515. Before a final decision on the variances was issued, he filed suit against various neighborhood residents, alleging, in part, violations of Section 3617. *Id.*

Those neighborhood residents had opposed the requested variances and made a number of discriminatory statements. *See id.* at 517-18.

> [One neighbor] once told [the plaintiff] that the subdivision is "all white" and that he did not think [the plaintiff] would "fit in." The neighbors sometimes referred to [the plaintiff] and his family at [public] meetings as "you people," and [a neighbor] suggested he move somewhere else, closer to his "people." At one meeting, [a neighbor] displayed pictures of narrow houses in poor countries, sarcastically suggesting that the pictures supported the conclusion that a narrow house should be enough for [the plaintiff]. Another time, some of the neighbors (he does not specify who) expressed worry that [the plaintiff] would allow more than one family to live in his house. (His two adult

> children will live in the house with him and his wife.) These neighbors talked about other areas in which one “colored family” moving in was a prelude to being “flooded by them” and about how some single-family homes rented by “latinos and blacks” ended up housing multiple families. [The plaintiff] also alleges that [a neighbor] said something threatening about the house burning down if it is built. (Though accepting as true that [that neighbor] said something threatening, [the judge] noted that the allegations are fuzzy. [The plaintiff]'s appellate brief hardly clarifies matters; he maintains that, whatever [the neighbor] said, it was threatening, but he explains that he “can merely speculate on that threat” since only [the neighbor] knows “his true intent.”)

*Id.* Based on these facts, the district court held that the plaintiff’s allegations described “a ‘quarrel among neighbors’ that involved, at most, ‘isolated acts of discrimination’” and did not violate 42 USC 3617. *See Sheikh v. Rabin*, No. 11-CV-425, 2012 WL 5471085, at *5 (N.D. Ill. Nov. 9, 2012). The Seventh Circuit affirmed, holding that “taken together, the[] allegations would establish only that different neighbors at different times made shameful statements, not that any individual neighbor (or the neighbors as a group) interfered with [the plaintiff]'s rights under the Fair Housing Act. *Sheikh*, 565 F. App'x at 518.

Here, Felice expressed his support for the no-dogs policy via email and stated that any need for service dogs should be proven. (Email Dated December 2, 2011, Civil No. 12-25, ECF No.

202-21, pg. 1.) He stated that he did not trust the word of residents or private physicians. *Id.* He also posted on the blog that individuals could game the system and acquire service dogs by finding a friendly physician or by paying a minimal fee on the internet and expressed his belief that the disability laws are abused. (Comment on October 13, 2011, Blog Entry, Civil No. 12-25, ECF No. 202-11, pg. 2.) In addition, Felice suggested more than once that violators of the no-dogs policy should be ostracized from the community and also suggested that their establishments should not be patronized. (*See, e.g.,* Email Dated January 16, 2012, Civil No. 12-25, ECF No. 205-8, pg. 1; *see also* Comment on March 17, 2012, Blog Entry, Civil No. 12-25, ECF No. 202-6, pg. 3; Comment on December 5, 2011, Blog Entry, Civil No. 12-25, ECF No. 205-6, pg. 11.)

Furthermore, Felice expressed his opposition to Kromenhoek's candidacy for the Board because she had a dog. Felice also opposed the candidacy of another candidate that he viewed as Kromenhoek's "shill." (*See, e.g.,* Comment on December 5, 2011, Blog Entry, Civil No. 12-25, ECF No. 202-6, pg. 5.) He also attempted to gain support for electing candidates that would enforce the no-dogs policy. (*See, e.g., id.*) The language Felice used was arguably cruel and insensitive, but cruel and

insensitive statements do not necessarily give rise to Section 3617 claims.

The Court will first address whether ostracizing a neighbor can violate Section 3617. Other courts have considered this issue. *See, e.g., Sporn v. Ocean Colony Condo. Ass'n,* 173 F. Supp. 2d 244, 247 (D.N.J. 2001). In *Sporn v. Ocean Colony Condo Association*, the "[d]efendants allegedly . . . engag[ed] in a campaign to discredit the plaintiffs with other unit owners and shunning and ostracizing [the p]laintiffs." *Id.* at 247. The court in *Sporn* held that Section 3617 does not "impose a code of civility on those dealing with individuals who have exercised their FHA rights." *Id.* at 251. Thus, the statute "does not require that neighbors smile, say hello or hold the door for each other." *Id.* Based on that reasoning, the court held that "'shunning' is not the kind of behavior that interferes with [42 U.S.C. 3617] rights." *Id. "*To hold otherwise would be to extend § 3617 to conduct it was never intended to address and would have the effect of demeaning the aims of the Act and the legitimate claims of plaintiffs who have been subjected to invidious and hurtful discrimination and retaliation in the housing market." *Id.* at 251-52.

The Court finds the *Sporn* decision to be persuasive. Although one might hope that neighbors would not ostracize each

other in this manner, it is obvious to the Court that Section
3617 does not place on neighbors an affirmative duty to interact
in a friendly manner with other neighbors with differing views
and needs. Accordingly, Felice's suggestion that the community
ostracize dog owners, including Kromenhoek, or boycott business
establishments, does not violate Section 3617.

As to Felice's other statements, the Court is guided by the
Seventh Circuit's opinion in *Sheikh v. Rabin*. In that case,
neighbors sought to deny the plaintiff zoning variances. Over
the course of the dispute those neighbors made shameful and
discriminatory comments. Similarly, here, the competent record
evidence shows that Felice sought a strictly enforced no-dog
policy and attempted to secure the election of Board members who
would support the policy he desired. Over the course of the
dispute, he expressed skepticism that Kromenhoek was truly
entitled to a service dog, opined that the FHA was a bad law,
and was generally insulting to Kromenhoek.

Like the comments in *Sheikh v. Rabin*, Felice's comments
were regrettable. Nevertheless, consistent with the Seventh
Circuit's decision in *Sheikh v. Rabin*, this Court holds that
Felice's conduct is better characterized as a quarrel between
neighbors or isolated acts of discrimination than conduct
violating Section 3617.

**B. Harcourt**

In Count Two of the Second Amended Complaint ("Count Two"), Kromenhoek alleges that Harcourt, in his personal capacity, unlawfully interfered with Kromenhoek's exercise of her FHA-protected rights when he ignored her request for a reasonable accommodation and pushed a resolution to add a "no pets" policy to the bylaws. Kromenhoek further alleges that Harcourt distributed confidential medical information to non-members, specifically Talkington, in order to intimidate her or retaliate against her. Finally, Kromenhoek claims that by accusing her of violating the "no dogs" policy and imposing a daily fine for having Oliver on the premises, Harcourt unlawfully retaliated against her.

Identical allegations were levelled against the Association and the Board in Count Three of the Second Amended Complaint ("Count Three"). Indeed, Harcourt was a member of the Board and the conduct alleged in Count Two was, in part, the basis for the Section 3617 claim alleged against the Board in Count Three.

In the Court's December 24, 2014, memorandum opinion the Court found that there was no genuine dispute as to facts material to Count Three. Accordingly, the Court held that the Association and the Board did not undertake retaliatory action

Case: 3:12-cv-00025-CVG-RM Document #: 235 Filed: 12/24/14 Page 18 of 19

under Section 3617, and granted the Board's motion for summary judgment on Count Three.

Despite the Court's invitation to do so, Kromenhoek has not supplemented the factual record. Thus the factual record before the Court is identical to the factual record that was before the Court when it granted summary judgment in favor of the Association and the Board on the Section 3617 claim against those organizations.

In Count Two, these allegations are levelled against Harcourt in his personal capacity rather than attributed to the Board as a whole. Nevertheless, because the factual record has not been supplemented, there remains no genuine dispute as to any material fact. Accordingly, for the reasons stated in the December 24, 2014, memorandum opinion, Harcourt is also entitled to summary judgment in his favor on the Section 3617 claim alleged against him in his personal capacity.

**3. State Law Claims Against Harcourt and Felice**

Only state law claims remain pending against Harcourt and Felice. For the reasons previously stated in the Court's December 24, 2014, memorandum opinion, the Court will decline to exercise supplemental jurisdiction over those claims. Accordingly, the state law claims asserted against Felice and Harcourt are dismissed.

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 19

**IV. CONCLUSION**

For the reasons discussed herein, Harcourt and Felice are entitled to judgment as a matter of law on Counts Two and Four. The Court will decline to exercise its supplemental jurisdiction over local counts pending against Harcourt and Felice, Counts Ten, Thirteen, Fifteen, Sixteen, and Seventeen, as no federal counts remain as against any of said defendants.

An appropriate Judgment follows.

**S_______________________**
**Curtis V. Gómez**
**District Judge**

**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | | |
|---|---|---|
| **JUDITH KROMENHOEK,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**COWPET BAY WEST CONDOMINIUM ASSOCIATION; THE BOARD OF THE COWPET BAY WEST CONDOMINIUM ASSOCIATION; MAX HARCOURT, in his personal capacity; ALFRED FELICE; LANCE TALKINGTON; ROBERT COCKAYNE; and VINCENT VERDIRAMO,**<br><br>**Defendants.** | ) | **Civil No. 2012-25** |

**ATTORNEYS:**

**Karin A. Bentz, Esq.**
Law Office of Karin Bentz, P.C.
St. Thomas, VI
*For Judith Kromenhoek,*

**Joseph G. Riopelle, Esq.**
Boyd Richards Parker & Colonnelli
Tampa, FL
**Carl R. Williams, Esq.**
**Richard P. Farrelly, Esq.**
Birch, Dejongh & Hindels
St. Thomas, VI
*For Cowpet Bay West Condominium Association, Ed Wardwell, Max Harcourt, Bill Canfield, Rosie Wells, Sharon Koehler, Doug Rebak, Robert Cockayne, Vincent Verdiramo, and Herb Horwitz,*

**John H. Benham, III, Esq.**
Watts, Benham & Sprehn, P.C.
St. Thomas, VI
*For Lance Talkington,*

**Ryan C. Meade, Esq.**
Quintairo, Prieto, Woo & Boyer, P.S.
Miami, FL
*For Alfred Felice.*

Exhibit "I"

**JUDGMENT**

Before the Court are the claims alleged by Judith Kromenhoek against the deceased defendants, Alfred Felice ("Felice") and Max Harcourt ("Harcourt").

For the reasons articulated in the Memorandum Opinion of even date, it is hereby

**ORDERED** that judgment be entered in favor of Harcourt as to Count Two; it is further

**ORDERED** that Count Two as against Harcourt is **DISMISSED**; it is further

**ORDERED** that judgment be entered in favor of Felice as to Count Four; it is further

**ORDERED** that Count Four as against Felice is **DISMISSED**; it is further

**ORDERED** that Counts Ten, Thirteen, Fifteen, Sixteen, and Seventeen, as against Harcourt and Felice, are **DISMISSED** for want of jurisdiction.

**S_______________________**
**Curtis V. Gómez**
**District Judge**

**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**
********************************

| | |
|---|---|
| **BARBARA WALTERS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**COWPET BAY WEST CONDOMINIUM ASSOCIATION; THE BOARD OF THE COWPET BAY WEST CONDOMINIUM ASSOCIATION; MAX HARCOURT, in his personal capacity; ALFRED FELICE; LANCE TALKINGTON; ROBERT COCKAYNE; VINCENT VERDIRAMO,**<br><br>**Defendants.** | **Case: 3:12-cv-24-CVG-RM**<br><br>**Action for: Housing Discrimination; Discrimination Based on Disability; Invasion of Privacy; Negligent Infliction of Emotional Distress Infliction of Emotional Distress; Punitive Damages; and Injunctive and Declaratory Judgment**<br><br>**JURY TRIAL DEMAND** |

## NOTICE OF APPEAL

**NOTICE IS HEREBY GIVEN** that pursuant to 28 U.S.C. § 1291, Plaintiff, Barbara Walters, hereby appeals to the United States Court of Appeals for the Third Circuit from an order entered by the District Court of the United Stated Virgin Islands on November 18, 2014, (Docket No. 224) granting Defendants their Motions for Summary Judgment.

Respectfully submitted,
**LAW OFFICES OF KARIN A. BENTZ, P.C.**

Dated: December 17, 2014

/s/ Karin A. Bentz

**Karin A. Bentz, Esq.,** VI Bar No. 413
**Gregory Adam Thorp, Esq.,** VI Bar No. 1117
5332 Raadets Gade, Ste. 3
St. Thomas, VI 00802
Tel: (340) 774-2669
Fax: (340) 774-2665
kbentz@virginlaw.com
athorp@virginlaw.com

Exhibit "J"

CERTIFICATE OF SERVICE

**I Hereby Certify** that I caused the filing and service on the 17th day of December, 2014, of the foregoing with the Clerk of the District Court of the Virgin Islands using the CM/ECF system, which will provide electronic notice by e-mail to the following attorneys of record in this matter:

Benham & Chan
Attn: John H. Benham, III, Esq.
P.O. Box 11720
St. Thomas, Virgin Islands 00801
E-mail: benham@bclawvi.com

Birch de Jongh & Hindels, PLLC
Attn: Richard P. Farrelly, Esq.
1330 Taarneberg
St. Thomas, Virgin Islands 00802
E-mail: rfarrelly@bdhlwvi.com

Quintairos, Prieto, Wood & Boyer, P.A.
Attn: Ryan Meade, Esq.
9300 South Dadeland Blvd., 4th Floor
Miami, Florida 33156
Email: rmeade@qpwblaw.com

/s/ Karin A. Bentz

**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | | |
|---|---|---|
| **BARBARA WALTERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 2012-24** |
| | ) | |
| **COWPET BAY WEST CONDOMINIUM ASSOCIATION; THE BOARD OF THE COWPET BAY WEST CONDOMINIUM ASSOCIATION; MAX HARCOURT, in his personal capacity; LANCE TALKINGTON; ALFRED FELICE, ROBERT COCKAYNE, and VINCENT VERDIRAMO,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ATTORNEYS:**

**Karin A. Bentz, Esq.**
Law Office of Karin Bentz, P.C.
St. Thomas, VI
*For Barbara Walters,*

**Joseph G. Riopelle, Esq.**
Boyd Richards Parker & Colonnelli
Tampa, FL
**Carl R. Williams, Esq.**
**Richard P. Farrelly, Esq.**
Birch, Dejongh & Hindels
St. Thomas, VI
*For Cowpet Bay West Condominium Association, Max Harcourt, Robert Cockayne, and Vincent Verdiramo,*

**John H. Benham, III, Esq.**
Watts, Benham & Sprehn, P.C.
St. Thomas, VI
*For Lance Talkington,*

**Ryan C. Meade, Esq.**
Quintairo, Prieto, Woo & Boyer, P.S.
Miami, FL
*For Alfred Felice.*

Exhibit "K"

**MEMORANDUM OPINION**

**GÓMEZ, J.**

Before the Court are four motions for summary judgment filed by: Vincent Verdiramo, Robert Cockayne, Lance Talkington, and the Cowpet Bay West Condominium Association (the "Association") and the Board of the Cowpet Bay West Condominium Association (the "Board") (collectively, the "Defendants").

## I. FACTUAL AND PROCEDURAL BACKGROUND

Barbara Walters ("Walters") owned a unit in the Cowpet Bay West Condominium complex ("Cowpet"), a condominium community located on St. Thomas, United States Virgin Islands.

The Cowpet Bay West Condominium Association ("the Association") was formed under the Condominium Act of the Virgin Islands (the "Condominium Act"), 28 V.I.C. §§ 901-927. (Bylaws at 1, Civil No. 2012-24, ECF No. 31-1.)[1] The Association is comprised of all of the unit owners in the Cowpet condominium community. Association members purchase their units subject to

---

[1] According to the Condominium Act,

> The administration of every property shall be governed by bylaws a true copy of which shall be annexed to the declaration and made a part thereof. No modification of or amendment to the bylaws shall be valid unless set forth in an amendment to the declaration and such amendment is duly recorded.

28 V.I.C. § 917.

the Association's Declaration,[2] Bylaws, and its Rules and Regulations.[3]

Association members elect a Board of Directors ("the Board"). The Board is made up of seven Association members. The Bylaws provide that the Board has

> the powers and duties necessary for the administration of the affairs of the Condominium and may do all such acts and things except as by law, by the Declaration, or by [its] By-Laws may not be delegated to the Board of Directors by the unit owners.

(Bylaws at 2, Civil No. 2012-24, ECF 31-1.)

The Bylaws provide for the amendment and enforcement of Rules and Regulations by the Board. At all relevant times, the Rules and Regulations for Association members provide the following:

> Dogs and farm animals are prohibited. Owners will be fined as specified by the Board of

---

[2] "'Declaration' means the instrument by which the property is submitted to the provisions of this chapter, as hereinafter provided, and such declaration as from time to time may be lawfully amended." 28 V.I.C. § 901.

[3] The Condominium Act also provides that,

> Each apartment owner shall comply strictly with the bylaws and the administrative rules and regulations adopted pursuant thereto, as either of the same may be lawfully amended from time to time, and with the covenants, conditions and restrictions set forth in the declaration or in the deed to his apartment. Failure to comply with any of the same shall be ground for an action to recover sums due, for damages or injunctive relief or both maintainable by the manager or Board of Directors on behalf of the Association of Apartment Owners or, in a proper case, by an aggrieved apartment owner.

28 V.I.C. § 906.

> Directors. The Association may require removal of any animal when it becomes bothersome to others or is deemed by the Association to be unacceptable.

(Rules and Regulations, Civil No. 2012-24, ECF No. 31-2.)

On or about January 21, 2011, Stansford S. Sutherland ("Sutherland"), "a licensed psychologist wrote a letter stating that he was treating Walters and that she was diagnosed with Anxiety Disorder . . . ." (Second Am. Compl. ¶ 30) In his letter, the psychologist stated "that he has prescribed the use of an emotional support animal, dog or other, to alleviate her symptoms and that such emotional support animal was necessary." (*Id.*)

Walters owned a dog named Happy. Walters submitted information about her dog's qualification as an emotional support animal to Louanne Schechter ("Schechter"), Cowpet's office manager, and included the letter from Sutherland.

Subsequently, discussions on Walters's pet ownership appeared on an Internet web log, the Cowpet Bay Blog ("the blog"). The blog was maintained by a member of the Association, Lance Talkington. (Second Am. Compl. at ¶ 44, Civil No. 2012-24.) Frequent commenters included Alfred Felice.

Walters alleged that, on or about October 28, 2011, Max Harcourt, then president of the Board, e-mailed a letter addressed to Walters's e-mail address as well as to Talkington's

e-mail address. The letter stated that Walters had violated the "no dogs" policy contained in the Rules and Regulations. The letter also requested that Walters submit applications for reasonable accommodation.

On or about January 19, 2012, the Board met and voted to assess a fine of $50 per day against owners, including Walters, who were in violation of the "no dogs" policy. Such fines were held in abeyance. Thereafter, in February, 2012, the Association voted to add the "no dogs" policy to the Bylaws. The newly added bylaw contained no explicit exception for service animals. Walters did request an exemption from the policy following the amendment. Ultimately, Walters was granted an exemption from the "no dogs" policy. All of the fines assessed against Walters were waived.

Walters initiated this action against Cowpet on April 9, 2012. Her complaint has twice been amended. Walters's complaint contains the following claims: Count One alleges a violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(f)(3)(b) against the Association and the Board; Count Two alleges a violation of the FHA, 42 U.S.C. § 3617 against Harcourt; Count Three alleges a violation of the FHA, 42 U.S.C. § 3617 against the Association and the Board; Count Four alleges a violation of the FHA, 42 U.S.C. § 3617 against Alfred Felice;

Count Five alleges a violation of the FHA, 42 U.S.C. § 3617 against Talkington; Count Six alleges a violation of Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12188 against the Association and the Board; Count Seven alleges the Board exceeded its authority; Count Eight alleges that the February 2012 Bylaws Amendment is void; Count Nine alleges negligence against the Association and the Board; The next count, also labeled as "Count Nine" in the complaint, alleges intentional infliction of emotional distress against Felice; Count Ten alleges civil conspiracy against all Defendants; Count Eleven alleges *prima facie* tort against all Defendants; Count Twelve alleges defamation and slander *per se* against the Association, the Board, Felice, Harcourt, and Talkington; Count Thirteen alleges Negligent Infliction of Emotional Distress and Intentional Infliction of Emotional Distress against all Defendants except Felice; Count Fourteen[4] alleges Invasion of Privacy – Public Disclosure of Private Facts against the Association and the Board; Count Fifteen[5] alleges Invasion of Privacy – Public Disclosure of Private Facts against Harcourt and Talkington; Count Sixteen alleges Invasion of Privacy –

[4] This count is actually labeled, "Count IVX." Though the Roman numerals for this count do not, in fact, equate to "fourteen," it is clear that they were intended to.

[5] Similarly, this count is actually labeled, "Count VX."

False Light against all Defendants except Verdiramo and

Cockayne; Count Seventeen alleges Invasion of Privacy against

the Board, the Association, Harcourt, and Talkington; and Count

Eighteen alleges Negligence *Per Se*/Legal Malpractice against

Vincent Verdiramo.

During the pendency of this litigation, defendants Harcourt

and Felice passed away. On or about April 22, 2014, Walters also

passed away.

The Board and the Association filed a motion for summary

judgment seeking judgment on Counts One, Three, Six, Seven,

Eight, Thirteen, Fourteen, and Seventeen of the second amended

complaint. Cockayne and Verdiramo filed motions for summary

judgment seeking judgment on Count Thirteen of the second

amended complaint. Talkington filed a motion for summary

judgment seeking judgment on Counts Five, Eleven, Thirteen,

Fifteen, Sixteen, and Seventeen of the second amended complaint.

Finally, a motion for summary judgment was filed by an attorney

claiming to represent Harcourt.

The Court held a hearing on the Defendants' motions for

summary judgment on Walters's complaint, as well as a parallel

complaint filed by Cowpet resident Judith Kromenhoek, on May 27,

2014. Following a lengthy hearing, at which evidence was

presented and argument heard, the Court granted the Association

and Board's motions for summary judgment, and Talkington's motion for summary judgment on Walters's federal claims. The federal claims as against Harcourt and Felice were dismissed. All local claims were thereafter dismissed. Following the hearing, the Court indicated to the parties that a memorandum opinion documenting its rationale would be forthcoming.

## II. DISCUSSION

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy*, 762 F.2d 338, 342 (3d Cir. 1985). The non-moving party "may not rest upon mere allegations, general denials, or . . . vague statements . . . ." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to

return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. In making this determination, this Court draws all reasonable inferences in favor of the non-moving party. *See Bd. of Educ. v. Earls*, 536 U.S. 822, 850 (2002); *see also Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

## III. ANALYSIS

In considering whether the Defendants have met their burden of showing there is no genuine issue of material fact and that they are entitled to judgment as a matter of law, the Court may consider the pleadings, the discovery and disclosure materials on file, and any affidavits. *See* Fed. R. Civ. P. 56(c). In support of their motions, the defendants have submitted affidavits, emails and other documents provided in discovery, declarations, and the pleadings.

Before the Court considers the merits of the counts in the second amended complaint, the Court must determine if the federal claims have survived Walters's death.

Walters alleges violation by the Association and the Board of the Fair Housing Act, the Fair Housing Act Amendment, and the

Americans with Disabilities Act. Walters also alleges that Lance Talkington ("Talkington"), Harcourt, and Felice violated the Fair Housing Act, as amended by the Fair Housing Act Amendment.

The Fair Housing Act ("FHA"), passed by Congress as Title VIII of the Civil Rights Act of 1968, prohibits housing discrimination on the basis of, *inter alia*, race, gender, and national origin. 42 U.S.C. § 3601, *et seq*. Under the Fair Housing Act Amendment ("FHAA"), which Congress passed in 1988 to extend the coverage of the FHA to include people with disabilities, it is unlawful:

> To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, *because of a handicap* of-
>
> (A) that person; or
>
> (B) a person residing in or intending to reside in that dwelling after it is sold, rented, or made available; or
>
> (C) any person associated with that person.

42 U.S.C. § 3604(f)(2) (emphasis added).

Under the Fair Housing Act Amendment ("FHAA"), which Congress passed in 1988 to extend the coverage of the FHA to include people with disabilities, it is also unlawful:

> to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or

> enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617.

The FHA's enforcement provision, allowing private individuals to bring suit based on violations of the FHA, is found in the United States Code in Title 42, Section 3613 ("Section 3613"). Section 3613 in pertinent part provides that, "[a]n aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . ." 42 U.S.C. § 3613. No provision of Section 3613 addresses whether an FHA claim may survive the aggrieved person's death. *See id.*

> Under Title III of the ADA, it is unlawful for a public accommodation to discriminate against an individual on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. 12182(a). "Public accommodation" is defined in terms of 12 categories, which the legislative history indicates "should be construed liberally" to afford people with disabilities "equal access" to the wide variety of establishments available to the nondisabled. S. Rep. No. 101-116, p. 59 (1989); H.R. Rep. No. 101-485, pt. 2, p. 100 (1990), U.S.Code Cong. & Admin. News 1990, pt. 2, at pp. 303, 382-283. The ADA obligates a "public accommodation" only with respect to a "facility" that is "used as, or designed or constructed for use as," either a place of public accommodation or a commercial facility. 28 C.F.R. § 36.102(b)(3)(i)-(ii).

*Regents of Mercersburg College v. Republic Franklin Ins. Co.*, 458 F.3d 159, 164 (3d Cir. 2006). Like the FHA, the enforcement provisions of the ADA do not provide whether or not such actions survive an aggrieved party's death. *See* 42 U.S.C. § 12117 (incorporating the enforcement provisions found at 42 U.S.C. § 2000e-5).

Where another civil rights statute failed to provide guidance on the survivability of actions, the Third Circuit has instructed "the federal courts [to] seek guidance from state survival acts provided they are not inconsistent with the policies underlying the federal statutes." *Scott v. Univ. of Delaware*, 601 F.2d 76, 81 n.8 (3d Cir. 1979) *abrogated on other grounds by EF Operating Corp. v. Am. Bldgs.*, 993 F.2d 1046 (3d Cir. 1993).

This comports with the "gap-filler" provision of Title 42, Section 1988 ("Section 1988"), which instructs that

> The jurisdiction in civil and criminal matters conferred on the district courts by the . . . Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having

> jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause . . . .

42 U.S.C. § 1988.

Indeed, the Supreme Court of the United States has counseled that though federal civil rights statutes failed, in most instances, to instruct on the survivability of actions

> [s]tate statutes governing the survival of state actions do exist, however. These statutes, which vary widely with regard to both the types of claims that survive and the parties as to whom survivorship is allowed, *see* W. Prosser, Law of Torts 900–901 (4th ed. 1971), were intended to modify the simple, if harsh, 19th-century common-law rule: "[A]n injured party's personal claim was [always] extinguished . . . upon the death of either the injured party himself or the alleged wrongdoer." *Moor v. County of Alameda, supra*, at 702 n. 14, 93 S. Ct. at 1792; *see Michigan Central R. Co. v. Vreeland*, 227 U.S. 59, 67, 33 S.Ct. 192, 194, 57 L.Ed.2d 417 (1913). Under § 1988, this state statutory law, modifying the common law, provides the principal reference point in determining survival of civil rights actions . . . .

*Robertson v. Wegmann*, 436 U.S. 584, 589-90 (1978). In accord with that guidance, the Court will first review the Virgin Islands statutory law that addresses the survival of actions.

The Virgin Islands Code contains a general survival statute and a survival statute for actions sounding in personal injury or tort. The general survival statute is found at Section 601

in Title 15 of the Virgin Islands Code ("Section 601"). Section 601 provides in pertinent part that,

> [s]ubject to the provisions of sections 76 and 77 of Title 5, causes of action by one person against another, whether arising on contract or otherwise, survive to the personal representatives of the former and against the personal representatives of the latter.

V.I. CODE ANN. tit. 15, § 601. This statute has been interpreted as codifying the general common law principle that claims sounding in contract or equity survive a party's death. *See, e.g.*, *Hall v. Hall*, No. CV 2011-54, 2013 WL 4128465, at *6 (D.V.I. Aug. 9, 2013)("Section[] 601 [] fall[s] squarely in line with the Restatement's explanation of the types of claims that survive a party's death at common law.")

The Virgin Islands survival statute for tort or personal injury actions is found in Title 5 of the Virgin Code at Sections 76 and 77 ("Section 76" and "Section 77", respectively). Section 77, provides in pertinent part that,

> [a] thing in action arising out of a wrong which results in physical injury to the person or out of a statute imposing liability for such injury shall not abate by reason of the death of the wrongdoer or any other person liable for damages for such injury, nor by reason of the death of the person injured or of any other person who owns any such thing in action.

V.I. CODE ANN. tit. 5, § 77. Section 76 allows for the survival of wrongful death actions. These statutes altered the more rigid

common law rule that claims for personal injury did not survive the injured party's death. *See Hall*, 2013 WL 4128465, at *6 ("[T]his Court has explained that the common law rule that death terminated all causes of action for personal tort has been statutorily altered in the Virgin Islands")(internal quotation omitted).

Given the survival provisions of the Virgin Islands Code, the Court is thus faced with determining whether a civil rights action would fall within the more permissive general survival statute -- Section 601 -- codifying common law norms of survivability, or within the more restrictive tort survival statute -- Sections 76 and 77. The Virgin Islands courts have not, to the Court's knowledge, ever opined on the application of the survival statutes to civil rights actions. As such, the Court must look elsewhere for guidance on the issue of whether a civil rights claim under the FHA or ADA can be characterized as something akin to a tort claim, or as some other type of claim.

Federal appellate courts applying state survival law to civil rights actions have treated, generally without explanation, civil rights actions in the same manner as torts. *See, e.g.*, *Robertson*, 436 U.S. at 594 (applying Louisiana tort survival statutes to a civil rights action); *Bentz v. City of Kendallville*, 577 F.3d 776, 779 (7th Cir. 2009)(characterizing a

civil rights claim as one sounding in tort, and applying Indiana
survival statutes); *Parkerson v. Carrouth*, 782 F.2d 1449, 1451
(8th Cir. 1986)(applying Arkansas tort law to a civil rights
claim); *Barrett v. United States*, 689 F.2d 324, 331 (2d Cir.
1982)(applying New York tort survival statute to a civil rights
action).

The widespread application of tort law to federal civil
rights may be founded on the differences between tort law and
other forms of common law.  A tort action "lie[s] from the
breach of duties imposed as a matter of social policy[.]"
*Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79,
104 (3d Cir. 2001)(differentiating between tort and contract
actions for purposes of determing the gist of a civil action).
By contrast, in a contract action, the action lies "for the
breach of duties imposed by mutual consensus." *Id.* Like tort
law, civil rights laws have enshrined a set of duties owed by
individuals to the public because as a nation we have determined
it is sound policy to impose such duties. Those parties on which
this duty is imposed – public places, landlords, public
accomodations, transportation companies, etc. – did not mutually
consent to the imposition of the duty.  Instead, society has set
the standard that the regulated entities must meet. Thus, the
imposition of a duty in the civil rights context is based on the

same principles that undergird imposition of a duty in tort law. That trait is not shared with claims that arise under contract law or equity.

It may also be that tort law has been used in civil rights cases due to tort law's focus on "personal injuries."  It is axiomatic that tort law is premised on the suffering by the claimant of a personal injury.  Personal injuries are defined as "any harm caused to a person, such as a broken bone, a cut, or a bruise; . . . . Any invasion of a personal right . . . ." Injury, *Black's Law Dictionary* (9th ed. 2009). Civil rights actions are premised on the suffering caused by the denial or invasion of a person's individual rights. This is something rather different from "loss," which is the foundation of actions sounding in contract or equity.

After due consideration of the issues raised herein, the Court is persuaded that tort law is the area of law most analogous to civil rights law in these circumstances.  Like actions sounding in tort, the duties breached in this case were those set by social policy and the injuries occasioned were personal injuries.  As such, the Court holds that the Virgin Islands survival statute for actions sounding in tort, Section 77, "provides the principal reference point in determining

survival of [the] civil rights actions," *Robertson*, 436 U.S. at
589-90, asserted in Walters's complaint.

The tort survival statute in the Virgin Islands states in
pertinent part that "[a] thing in action arising out of a wrong
which results in *physical injury* to the person or out of a
statute imposing liability for such injury shall not abate by
reason of the death of the wrongdoer or any other person liable
for damages for such injury, nor by reason of the death of the
person injured or of any other person who owns any such thing in
action." V.I. CODE ANN. tit. 5, § 77 (emphasis added).

No physical injury is alleged here. Walters confines her
complaint to alleging "emotional distress, embarrassment, and
humiliation." Indeed, based on the record evidence, no physical
injury can be proven.  As such, this action would fall outside
of the survivability statute codified at Section 77. *See id*.
Considering the Virgin Islands' law of survivability, as applied
to the federal civil rights claims in the complaint, the Court
finds that none of the federal claims in this matter have
survived Walters's death.

Counts Seven through Eighteen each allege claims arising
under local laws (the "local claims"). Those claims are subject
to different jurisdictional considerations, which may affect
their viability in this Court.  In order to assess

jurisdictional viability of the local claims, a brief overview
of the subject-matter jurisdiction of this Court is in order.

Federal district courts are courts of limited jurisdiction.
Ordinarily, a district court has original jurisdiction over
"civil actions arising under the Constitution, laws, or treaties
of the United States." 28 U.S.C. § 1331 ("federal question
jurisdiction").  District courts also have original jurisdiction
over civil actions between citizens of different states with the
amount in controversy exceeding the sum or value of $75,000. 28
U.S.C. § 1332 ("diversity jurisdiction"). The Supreme Court has
"interpreted the diversity statute to require 'complete
diversity' of citizenship." *C.T. Carden v. Arkoma Assoc.*, 494
U.S. 185, 187 (1990). That means "every plaintiff must be of
diverse state citizenship from every defendant." *In re Briscoe*,
448 F.3d 201, 215.

Where a case is properly brought in the district court
pursuant to the Court's federal question jurisdiction or
diversity jurisdiction, the Court may have jurisdiction over
local claims that arise out of the same case or controversy as
those underlying the federal claims (supplemental jurisdiction).
28 U.S.C. § 1367.

The complaint in this matter names a plaintiff that is a
citizen of the Virgin Islands, Walters, and a defendant that is

a citizen of the Virgin Islands, Cowpet Bay West. As such, the case could not be brought in this Court pursuant to the Court’s diversity jurisdiction under 28 U.S.C. § 1332. Instead, Walters brought her complaint in this Court pursuant to its federal question jurisdiction under 28 U.S.C. § 1331, as the FHA and ADA claims arise under the laws of the United States. Those claims, as discussed above, have been disposed of.

The local claims may be heard only if the Court exercises its supplemental jurisdiction over those claims. That exercise is not a foregone conclusion.

Indeed, “district courts may decline to exercise supplemental jurisdiction over a claim . . . if--(1) the claim raises a novel or complex issue of State law,(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,(3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.” 28 U.S.C. § 1367.

With the disposition of the federal claims in this case, the Court’s exercise of jurisdiction over the local claims is discretionary. Exercising that discretion, the Court will decline jurisdiction over the remaining local claims. *See, e.g.*,

B*orough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of juridical economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them[.]")

## V. CONCLUSION

For the reasons discussed herein, the Board, the Association, and Talkington are entitled to judgment as a matter of law on Counts One, Three, Five, and Six. The Court dismisses the federal claims against Harcourt and Felice as they do not survive Walters's death. Finally, the Court will decline to exercise its supplemental jurisdiction over the local counts, Seven through Eighteen, as no federal counts remain.

An appropriate Judgment follows.

**S_________________________**
**Curtis V. Gómez**
**District Judge**

**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | | |
|---|---|---|
| **BARBARA WALTERS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**COWPET BAY WEST CONDOMINIUM ASSOCIATION; THE BOARD OF THE COWPET BAY WEST CONDOMINIUM ASSOCIATION; MAX HARCOURT, in his personal capacity; LANCE TALKINGTON; ALFRED FELICE, ROBERT COCKAYNE, and VINCENT VERDIRAMO,**<br><br>**Defendants.** | ) | **Civil No. 2012-24** |

**ATTORNEYS:**

**Karin A. Bentz, Esq.**
Law Office of Karin Bentz, P.C.
St. Thomas, VI
*For Barbara Walters,*

**Joseph G. Riopelle, Esq.**
Boyd Richards Parker & Colonnelli
Tampa, FL
**Carl R. Williams, Esq.**
**Richard P. Farrelly, Esq.**
Birch, Dejongh & Hindels
St. Thomas, VI
*For Cowpet Bay West Condominium Association, Max Harcourt, Robert Cockayne, and Vincent Verdiramo,*

**John H. Benham, III, Esq.**
Watts, Benham & Sprehn, P.C.
St. Thomas, VI
*For Lance Talkington,*

**Ryan C. Meade, Esq.**
Quintairo, Prieto, Woo & Boyer, P.S.
Miami, FL
*For Alfred Felice.*

**JUDGMENT**

Before the Court are four motions for summary judgment filed by: Vincent Verdiramo ("Verdiramo"), Robert Cockayne ("Cockayne"), Lance Talkington ("Talkington"), and the Cowpet Bay West Condominium Association (the "Association") and the Board of the Cowpet Bay West Condominium Association (the "Board") (collectively, the "defendants").

For the reasons articulated in the Memorandum Opinion of even date, it is hereby

**ORDERED** that the motion of the Board and the Association, for summary judgment on Counts One, Three, Six, Seven, Eight, Thirteen, Fourteen, and Seventeen of the second amended complaint is **GRANTED in part;** it is further

**ORDERED** that judgment be entered in favor of the Board and the Association as to Counts One, Three, and Six; it is further

**ORDERED** that Counts One, Three, and Six as against the Board and the Association are **DISMISSED**; it is further

**ORDERED** that Talkington's motion for summary judgment on Counts Five, Eleven, Thirteen, Fifteen, Sixteen, and Seventeen is **GRANTED in part**; it is further

**ORDERED** that judgment be entered in favor of Talkington on Count Five; it is further

   **ORDERED** that Count Five as against Talkington is **DISMISSED**; it is further

**ORDERED** that Counts Two and Four are **DISMISSED**; it is further

**ORDERED** that Counts Seven, Eight, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, Seventeen, and Eighteen are **DISMISSED** for want of jurisdiction; it is further

**ORDERED** that the motions of Verdiramo and Cockayne for summary judgment on Count Thirteen of the second amended complaint are **DENIED** as **MOOT**.

**S_______________________**
**Curtis V. Gómez**
**District Judge**