**IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

**3d Cir. App. Nos. 14-4776 & 14-4777
D.C. Civ. No. 3:12-cv-24 & 3:12-cv-25**

**LIANA REVOCK, EXECUTRIX OF THE ESTATE OF BARBARA
WALTERS, and JUDITH KROMENHOECK,
Appellants,**

**v.**

**COWPET BAY WEST CONDOMINIUM ASSOCIATION; THE BOARD
OF THE COWPET BAY WEST CONDOMINIUM ASSOCIATION; MAX
HARCOURT; ALFRED FELICE; LANCE TALKINGTON; ROBERT
COCKAYNE; VINCENT VERDIRAMO,
Appellees**.

**On Appeal from the United States District Court
for the District of the Virgin Islands
Division of St. Thomas and St. John**

**BRIEF FOR APPELLANTS**

**The Law Offices of Karin A. Bentz, P.C.
Karin A. Bentz, Esq.**
5332 Raadets Gade, Suite 3
St. Thomas, VI 00802-6309
Tel: (340) 774-2669
Fax: (340) 774-2665
Email: kbentz@virginlaw.com
*Attorney for Appellants*

# TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................. ii

TABLE OF AUTHORITIES ..................................................................... iv

STATEMENT OF JURISDICTION.........................................................1

STATEMENT OF ISSUES PRESENTED FOR APPEAL .....................1

   1. Were the notices of appeal timely, as filed prior to the entry of final judgments and therefore effective upon entry of final judgment, thus conferring jurisdiction on this court? ......................................................................................1

   2. Did the trial Court err by applying Virgin Islands law instead of federal common law when it decided that the federal claims under the Fair Housing Act and Fair Housing Amendments Act filed by Ms. Walters did not survive her death? ...................................................................................................................2

   3. Was it error to hold that there was no genuine issue of material fact in connection with the claims made against Cowpet under 42 U.S.C. § 3604(f)(3)(b) with respect to 1) when Ms. Kromenhoek submitted a request for reasonable accommodation and 2) whether Cowpet's six-month delay in granting the request for an emotional support animal, while imposing fines in abeyance, was a denial of Ms. Kromenhoek's rights? ............................................................2

   4. Was it error to hold that there was no interference under 42 U.S.C. § 3617 when adopting by-laws specifically excluding emotional support animals from exemption, advocating retaliatory actions, and denying that Ms. Kromenhoek had even made a request.? ......................................................................................2

   5. Did the trial court err when it refused to retain supplemental jurisdiction over Ms. Kromenhoek's claims made under Virgin Islands law?.................................2

STATEMENT OF THE CASE.................................................................3

STATEMENT OF THE FACTS .............................................................4

STATEMENT OF RELATED PROCEEDINGS.....................................9

STANDARD OF REVIEW .......................................................................9

SUMMARY OF THE ARGUMENT ......................................................9

ARGUMENT .........................................................................................10

    I.    This Court Has Jurisdiction Over the Appeals of Walters and Kromenhoek Because the Notices of Appeal Were Not Effective Until a Final Order Disposing of All Parties and All Claims Was Entered by the Trial Court. ..........................10

    II.    Because the Admissions and Affidavits, Taken in the Light Most Favorable to Ms. Kromenhoek, Establish that She was Disabled and Her Emotional Support Animal Alleviated the Symptoms of Her Disability, the Six-Month Delay Was a Constructive Denial. ..........................................................................................11

    III.    Because Cowpet, Harcourt, Talkington, and Felice Directly Affected the Exercise of Ms. Kromenhoek's Rights Under the FHA by Successfully Campaigning to Exclude Emotional Support Animals from an Exemption and to Have Ms. Kromenhoek Fined, Their Conduct Violated 42 U.S.C. § 3617; and Summary Judgment was Improperly Granted. ....................................................17

    IV.    Because the Plain Language of 42 U.S.C. § 1988(a) Enumerates the Statutory Provisions to Which it Applies, the Trial Court Erred in Concluding that Ms. Walters' Federal Claims Did not Survive her Death............................22

    V.    Failure to Exercise Supplemental Jurisdiction Over State Law Claims .....27

CONCLUSION ......................................................................................27

CERTIFICATE OF BAR MEMBERSHIP..............................................a

CERTIFICATE OF SERVICE ................................................................a

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. 32.................b

CERTIFICATE OF IDENTICAL COMPLIACNE OF BRIEFS.............b

CERTIFICATE OF VIRUS CHECK ......................................................b

# TABLE OF AUTHORITIES

## Cases

*Acumed LLC v. Advanced Surgical Serv., Inc.*, 561 F.3d 199 (3d Cir. 2009) .............................. 11

*Aluminum Co. of Am. v. Beazer E., Inc.*, 124 F.3d 551 (3d Cir. 1997)........................................ 11

*Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277 (11th Cir. 2014) .......... passim

*Bloch v. Frischolz*, 587 F.3d 771 (7th Cir. 2009) ........................................................ 17

*Brazier v. Cherey*, 293 F.2d 401 (5th Cir. 1961) ........................................................ 29

*Broome v. United States*, 870 F.2d 95 (3d Cir. 1989)..................................................... 9

*Burnett v. Grattan*, 468 U.S. 42 (1984) ................................................ 24, 25, 26, 27

*Cacieri v. Salazar*, 555 U.S. 379 (2009)................................................................... 23

*Carlson v. Green*, 446 U.S. 14 (1980) ................................................................ 23, 26

*Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170 (3d Cir. 2005) .................. 9, 12, 15, 16

*Conaway v. Smith*, 853 F.2d 789 (10th Cir. 1988) ....................................................... 3

*DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175 (9th Cir. 2006).......... 12

*Elliott v. Archdiocese of N.Y.*, 682 F.3d 213 (3d Cir. 2012) ........................................... 10

*Ex parte Schreiber*, 110 U.S. 76 (1884)................................................................... 29

*Firestone v. Risjord*, 449 U.S. 368, 378 (1981)........................................................... 10

*Flemming v. U.S. Postal Serv. AMF O'Hare*, 27 F.3d 259 (7th Cir. 1994)................................. 27

*Groome Res. Ltd. v. Parish of Jefferson*, 234 F.3d 192 (5th Cir. 2000)...................................... 14

*Halprin v. Praire Single Family Homes of Dearborn Park Ass'n*, 388 F.3d 327 (7th Cir. 2004) 18

*Honce v. Vigil*, 1 F.3d 1085 (10th Cir. 2009) ........................................................... 17

*Hovsons, Inc. v. Tp. of Brick*, 89 F.3d 1096 (3d Cir. 1996).................................................. 9, 12

*Huntington v. Attrill*, 146 U.S. 657 (1892) ............................................................... 29

*Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454 (1975) ................................................. 25

*Kettner v. Compass Group USA, Inc.*, 570 F. Supp. 2d 1121 (D. Minn. 2008)............................ 24

*Kirk v. C.I. R.*, 179 F.2d 619 (1st Cir. 1950)................................................................ 29

*Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Tp. of Scotch Plains*, 284 F.3d 442 (3d Cir. 2002)................................................................................................................. 9, 11, 12

*Lew v. Kona Hospital*, 754 F.2d 1420 (9th Cir. 1985)....................................................... 3

*Mich. Protection and Advocacy Serv., Inc. v. Babin*, 18 F.3d 337 (6th Cir. 1994) ..................... 19

*Mt. Holly Gardens Citizens in Action, Inc. v. Tp. of Mount Holly*, 658 F.3d 375 (3d Cir. 2011)  30

*Neal v. Kelly*, 963 F.2d 453 (D.C. Cir. 1992) ................................................................. 3

*Overlook Mut. Homes, Inc. v. Spencer*, 415 Fed. App'x 617 (6th Cir. 2011) ............................. 14

*Pritchard v. Smith*, 289 F2d 153 (8th Cir. 1961) ........................................................... 29

*Robertson v. Wegmann*, 436 U.S. 584 (1978)................................................................ 25, 26, 27

*Scott v. Univ. of Del.*, 601 F.2d 76 (3d Cir. 1979) ........................................................ 28

*Sheinkopf v. Stone*, 927 F.2d 1259 (1st Cir. 1991) ........................................................ 3

*Slade for Estate of Slade v. U.S. Postal Serv.*, 952 F.2d 357 (10th Cir. 1991)............................ 26

*U. Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966) .................................................. 30

*United States v. Hialeah Hous. Auth.*, 418 Fed. App'x 872 (11th Cir. 2011) ........................ 13, 21

*Walker v. City of Lakewood*, 272 F.3d 1114, (9th Cir. 2001)........................................ 17, 18, 19

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000)................................................................ 19

*Wilson v. Garcia*, 471 U.S. 261 (1985)..................................................................... 25, 28

## Statutes

28 U.S.C. § 1332...................................................................................................... 1

28 U.S.C. § 1367...................................................................................................... 1

28 U.S.C. § 1291...................................................................................................... 1

28 U.S.C. § 1331...................................................................................................... 1

v

42 U.S.C. § 3604(f)(3)(B) ............................................................................................. 11

42 U.S.C. § 3617 ........................................................................................................... 17

## Other Authorities

Black's Law Dictionary, 620 (8th Ed. 2004) ............................................................... 24

## Rules

Fed. R. App. P. 4(a)(2) ................................................................................................. 10

## Regulations

28 C.F.R. § 35.104 .......................................................................................................... 1

## STATEMENT OF JURISDICTION

This is an appeal from judgments that were first announced at the hearing held on May 27, 2014. These judgments dismissed two pending actions in the trial court and Notices of Appeal were filed on December 17, 2014 (J.A. Vol. I at 1-3), respectively, for an appellate review of the dismissal. The claims below were brought pursuant to *inter alia* 42 U.S.C. §§ 3604(f)(3)(B) & 3617 and the trial court had jurisdiction under 28 U.S.C. §§ 1331, 1332, & 1367. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

For the Kromenhoek action, the final order disposing of all of the parties and claims was entered on December 24, 2014. (J.A. Vol. I at 121, 163, 166 & 185). In the Walters action, the final order was not entered until January 2, 2015 (*Id.* at 26), with an accompanying memorandum opinion (*Id.* at 5).

## STATEMENT OF ISSUES PRESENTED FOR APPEAL[1]

1. **Were the notices of appeal timely, as filed prior to the entry of final judgments and therefore effective upon entry of final judgment, thus conferring jurisdiction on this court?**

Yes. The court directed this be briefed.

---

[1] While claims were made under the ADA, emotional support animals are not within the ADA's definition of service animal. So, even assuming Cowpet is a place of public accommodation, the ADA claims in this appeal could not survive. 28 C.F.R. § 35.104.

1

2. Did **the trial Court err by applying Virgin Islands law instead of federal common law when it decided that the federal claims under the Fair Housing Act and Fair Housing Amendments Act filed by Ms. Walters** did **not survive her death?**

Yes.  Walters' position was that the claims survived.  (J.A. Vol. II at 22-23, 2411 & 2475-76).

3. **Was it error to hold that there was no genuine issue of material fact in connection with the claims made against Cowpet under 42 U.S.C. § 3604(f)(3)(b) with respect to 1) when Ms. Kromenhoek submitted a request for reasonable accommodation and 2) whether Cowpet's six-month delay in granting the request for an emotional support animal, while imposing fines in abeyance, was a denial of Ms. Kromenhoek's rights?**

Yes.  Oppositions to summary judgment were filed (*Id*. at 47-48).

4. **Was it error to hold that there was no interference under 42 U.S.C. § 3617 when adopting by-laws specifically excluding emotional support animals from exemption, advocating retaliatory actions, and denying that Ms. Kromenhoek had even made a request?**

Yes.  Oppositions to summary judgment were filed (*Id*. at 47-48).

5. **Did the trial court err when it refused to retain supplemental jurisdiction over Ms. Kromenhoek's claims made under Virgin Islands law?**

Yes.  Oppositions to summary judgment were filed (*Id*. at 47-48).

2

## STATEMENT OF THE CASE

On April 9, 2012, Ms. Walters (3:12-cv-24) and Ms. Kromenhoek (3:12-cv-25) each commenced an action, alleging claims under the Fair Housing Act and Fair Housing Amendments Act (jointly "FHA") as well as under Virgin Islands law. The amended and therefore operative complaints were filed March 11, 2013. (J.A. Vol. II, 175-264; J.A. Vol. II, 265-350) Alfred Felice ("Felice") answered the initial complaint on May 30, 2012[2] (J.A. Vol. II, 159-64), and the rest of the Defendants filed their respective answers on April 14, 2014 (J.A. Vol. II, 351-436).

In Walters' case, each of Defendants Cowpet Bay West Condominium Association ("Cowpet"), Robert Cockayne ("Cockayne"), Max Harcourt ("Harcourt"), and Vincent Verdiramo ("Verdiramo") (Docs. 187-190, respectively) filed motions for summary judgment, each of which were opposed (Docs. 203-206). The appeal filed on December 17, 2014, became effective January 2, 2015, upon entry of a final judgment disposing of all claims.

In Kromenhoek's case, Defendants also filed motions for summary judgment (Docs. 185-191), each of which was opposed (Docs. 198-209). The appeal filed on December 17, 2014, became effective December 24, 2014, upon the trial court's entry of judgments disposing of the claims against all Defendants.

---

[2] A notice of death was filed for Alfred Felice prior to the filing of a second amended complaint. (J.A. Vol. II, 159-64)

3

## STATEMENT OF THE FACTS

After years of harassment by Defendants followed by years of litigation, Ms. Walters took her own life. (J.A. Vol. II at 2221-23 & 2410.) The facts and circumstances surrounding this tragedy stem from the request for an emotional support animal. In February or March of 2011, Ms. Walters made a request to be allowed her emotional support animal at her Cowpet condominium. (J.A. Vol. II at 56-57.)[3] In response to the request, Cowpet held a board held a meeting that was open to Cowpet's entire membership. At that meeting, Ms. Walters' request, along with her private medical condition, were publicly discussed by Harcourt, the board president. (*Id*. at 58.) Cowpet's members began posting on the internet about Ms. Walters' request and medical condition on the "Cowpet Bay West Blog," which was a website owned and run by Talkington. (*Id*.) Felice, Talkington, and Harcourt subsequently went on a campaign among Cowpet's members to intimidate, discredit, and harass Ms. Walters because of her requested accommodation. (*Id*. at 58.) Cowpet's members attacked the request, questioning

---

[3] A verified complaint is the equivalent of an affidavit as to the facts within the party's personal knowledge. *Neal v. Kelly*, 963 F.2d 453, 458 (D.C. Cir. 1992); *Sheinkopf v. Stone*, 927 F.2d 1259, 1262 (1st Cir. 1991); *Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988); *Hooks v. Hooks*, 771 F.2d 935, 946 (6th Cir. 1985); *Lew v. Kona Hospital*, 754 F.2d 1420, 1423 (9th Cir. 1985).

4

the dog's "qualifications," and Harcourt later shared the content of Ms. Walters' application and her mental condition that supported it. (*Id*. at 110).

In May of 2011, Ms. Kromenhoek (like Ms. Walters) was also prescribed an emotional support animal. (J.A. Vol. II at 109) Ms. Kromenhoek was an owner and member of Cowpet who was therefore subject to its declaration, by-laws, and rules, and in July of 2011, the by-laws did not prohibit dogs on the premises. (*Id*. at 107-08) Although Cowpet's rules did prohibit dogs, there was no procedure in place for requesting an accommodation to this no-dogs rule; so, Ms. Kromenhoek submitted to Louanne Schecter, Cowpet's office manager, a request for such an accommodation along with her emotional support animal certification and her diagnosis of an anxiety disorder, thus requiring an emotional support animal. (*Id*. at 109, 347-50, & 2231-32) Although Harcourt reviewed Ms. Kromenhoek's submission (and sent another member of the board to review the submission), no one acted on the request until almost a year later, on March 26, 2012. (*Id*. at 350, 533, 606, 612-14, 879, 1856.)

Indeed, Cowpet admits (1) a majority of its members were opposed to having "dogs on the premises that were owned by non-handicapped members" and that its membership sent emails and commented on the blog asserting that Ms. Kromenhoek's dog was not medically necessary and asking that fines be

5

implemented; (2) Cowpet discussed amending the by-laws as a result; (3) the by-laws were subsequently amended by a member vote; and (4) it did not grant Ms. Kromenhoek's request for accommodation until March of 2012. (*Id*. at 413, 417, 431-32, 531, 574, & 612-14) Members posted comments on the blog asserting that the FHA is a "BAD LAW!!!!!" that allows a person with mental illness who "might go off his/her gourd" to have a "pet." (*Id*. at 2533) Further criticism was launched at Ms. Kromenhoek for "parading her dog around the property."[4] (*Id*. at 2539-40.)

For his part, Felice submitted hand-written answers to the verified complaints in May of 2012. (*Id*. at 159) Although Felice was, ironically, a medical doctor himself, and he admitted his email is [docfelice@gmail.com](mailto:docfelice@gmail.com), he gave his hurtful and ignorant opinions against emotional support animals in both emails and on the blog. Talkington admits to creating the Cowpet Bay West Blog and authenticates the blog posts. (*Id*. at 357 1900-01, 2532, 2535, & 2549-50.)

Talkington and Felice were the most vociferous objectors and made accusations questioning Ms. Kromenhoek's need and suggested she was lying. (*Id*. at 111; *e.g.*, *Id*. at 112, 416, 856, 2397, 2537, 2539, 2554-57) They engaged in continued harassment, accusing both Ms. Walters and Ms. Kromenhoek of being a

---

[4] The full chain of blog posts and comments are available at pages 1902-1954 of appendix Volume II.

coven of witches.  (*Id*. at 112)  In the September 27, 2011 blog entry, Talkington says that "it is time to do something in this regard to eliminate any confusion" over the no dogs rule.  He closes stating, "We need a bylaw that properly restricts use of animals for very specific and legitimate purposes."  (*Id*. at 2532 & 2549-50)

On October 13, 2011, Felice, in one of his many posts, stated that "'service' dogs for true needs are LEGAL" and implied that Ms. Kromenhoek's emotional support animal was a ruse facilitated by a "friendly physician."  He concluded that the "by-laws must be made to reflect the **majorities** rights," further suggesting that Ms. Kromenhoek would be happier elsewhere.  (*Id*. at 111 & 2551)

Harcourt, on October 20, 2011, emailed several members saying that the board was considering amending the by-laws to "allow exceptions for true service animals" and that Cowpet should levy fines against the "offenders" until they "submit appropriate ADA compliant paperwork."  (*Id*. at 531 & 575)  Talkington posted his October 26, 2011 letter to the board demanding that the rules and regulations be enforced.[5]  (*Id*. at 274, 1914, & 2534)   In response, Harcourt provided Talkington a copy of his October 28, 2011 email to Ms. Kromenhoek, which Talkington posted on the blog, noting that there had been two prior requests to the board that the no-dogs rule "be enforced" and that the board had responded

---

[5] Cowpet admits to receiving this email requesting that the ADA definition of a service dog be incorporated into the by-laws.  (*Id*. at 531 & 577.)

to these demands.  (*Id*. at 111, 158, 804-05, 2535, & 2552)  In the email, Harcourt readily acknowledges that Ms. Kromenhoek had already submitted a request, even though he terms it "some paperwork," and then directs her to submit another request for accommodation.   He also openly acknowledges that Cowpet was considering amending its by-laws to allow exceptions for "true" service animals "that are documented" and stating that "offenders" should be fined.  (*Id*. at 158, 274, 414, 532, 580 & 797-98)  Talkington closes the post saying, "Kudos to the board for doing the right thing by enforcing a rule to which we all agreed to abide…" (*Id*. at 2552)

In December of 2011, Ms. Kromenhoek spoke to Harcourt, who was Cowpet's president at the time, and asked that he review her application and grant the waiver.  (*Id*. at 110 & 801-02)  On January 11, 2012, in response to all the complaints, the board met and voted to fine Ms. Kromenhoek $50 a day for having her emotional support animal.  (*Id*. at 533, 585, & 832)  Then, in February, the board voted to incorporate the no-dogs rule into Cowpet's by-laws and to submit them to the membership for approval.  (*Id*. at 112)  The amended by-laws provide that an exception would be granted "should an owner require the assistance of a service animal (dog) as defined by the ADA."  (*Id*. at 416, 533, 585, & 706-25) Cowpet's actions denying Kromenhoek her accommodation began six months after

Walters had begun her long and painful process of her request for the accommodation.

## STATEMENT OF RELATED PROCEEDINGS

None.

## STANDARD OF REVIEW

There is plenary review over questions of law, *Broome v. United States*, 870 F.2d 95, 99 (3d Cir. 1989), statutory construction, *Hovsons, Inc. v. Tp. of Brick*, 89 F.3d 1096, 1101 (3d Cir. 1996), and a trial court's grant of summary judgment. *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005). This Court applies the same test as the trial court. *Id.* The court must be certain that no genuine issue of material fact exists when viewing the facts in the light most favorable to the non-moving party. The court is not to weigh the evidence; it is simply to determine whether there is a genuine issue for trial. *Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Tp. of Scotch Plains*, 284 F.3d 442, 449 n.4 (3d Cir. 2002).

## SUMMARY OF THE ARGUMENT

Because the notices of appeal were filed upon the orally announced decisions and prior to entry of final judgments, the notices of appeal became effective upon entry of final judgment in each respective case, thus conferring

jurisdiction.  The dismissal of the federal claims in Ms. Walters' matter was clear legal error because the court did not apply federal common law dictating that remedial statutes, like the FHA, survive death.  Instead, the trial court improperly relied upon Section 1988(a).

Affidavits of Ms. Kromenhoek and Ms. Schecter were submitted in support of the fact that Ms. Kromenhoek had requested an accommodation under the FHA in July of 2011.  To find otherwise, when determining a motion for summary judgment is reversible error.  Likewise, it was reversible error to hold that the six-month delay was not a constructive denial.  It was also reversible error to find that a six-month delay and harassment was not interference and coercion under the FHA.  Clearly, these are all fact-intensive issues that cannot be summarily dismissed as a matter of law; it was an abuse of discretion not to retain jurisdiction.

## ARGUMENT

### I.    This Court Has Jurisdiction Over the Appeals of Walters and Kromenhoek Because the Notices of Appeal Were Not Effective Until a Final Order Disposing of All Parties and All Claims Was Entered by the Trial Court.

This Court only has jurisdiction over final orders of the district courts within this Circuit.  *Elliott v. Archdiocese of N.Y.*, 682 F.3d 213, 219 (3d Cir. 2012).  If an order does not terminate all the claims pending against all parties, it is not final; and an appellate court would not have jurisdiction.  *Id.*  The filing of a notice of

10

appeal after a decision is announced orally but prior to entry of judgment "is treated as filed on the date of and after the entry" of judgment. Fed. R. App. P. 4(a)(2). A court cannot treat a non-final judgment as appealable simply because it would expedite resolution. *See Firestone v. Risjord*, 449 U.S. 368, 378 (1981).

In Walters' case, *no judgment was entered until January 2, 2015*, (J.A. Vol. I at 26-28), even though this decision was announced on May 27, 2014 (J.A. Vol. II at 2521-22). With no final judgment entered, the notice was timely and entered the day of entry of judgment, *in January of 2015*, disposing of the last party and claim; and this Court has jurisdiction.

Similarly, because no judgment disposing of all parties and all claims was entered, Ms. Kromenhoek's notice of appeal was not docketed until December 24, 2014; the date of entry of the judgment disposing of the last claim and party, making notice of appeal timely and conferring jurisdiction. *E.g.*, *Acumed LLC v. Advanced Surgical Serv., Inc.*, 561 F.3d 199, 210-11 (3d Cir. 2009); *Aluminum Co. of Am. v. Beazer E., Inc.*, 124 F.3d 551, 557 (3d Cir. 1997).

## II. Because the Admissions and Affidavits, Taken in the Light Most Favorable to Ms. Kromenhoek, Establish that She was Disabled and Her Emotional Support Animal Alleviated the Symptoms of Her Disability, the Six-Month Delay Was a Constructive Denial.

42 U.S.C. § 3604(f)(3)(B) was designed to end the exclusion of people with disabilities from mainstream society and give them the right to live in

neighborhoods of their choosing. *Lapid-Laurel*, 284 F.3d at 459. Under 3604(f)(3)(B), a condo association has an affirmative duty to make reasonable accommodations for disabled individuals. *Cmty. Servs.*, 421 F.3d at 176; *Hovsons*, 89 F.3d at 1104-05. In order to prove a claim for denial of reasonable accommodation under the FHA, a plaintiff must show that (1) she is disabled within the meaning of the FHA, (2) a reasonable accommodation was requested, (3) the accommodation was necessary for her to enjoy her home, and (4) the defendant refused to make such accommodation. *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014); *DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006).

Elements one and three are not disputed (J.A. Vol. I at 133), therefore, we turn first to the inquiry into whether a reasonable accommodation was requested. This inquiry is highly fact-specific and decided on a case-by-case basis. *Lapid-Laurel*, 284 F.3d at 462. Such an evaluation should be conducted with two concerns in mind. The first is bringing into effect the statute's purpose of assisting those who are disabled and the second is the need to impose reasonable boundaries in accomplishing this. *Id.* ; *Hovsons*, 89 F.3d at 1104. The critical inquiries for Cowpet were whether Ms. Kromenhoek was disabled within the meaning of the

12

FHA and whether the emotional support animal alleviated the effects of that disability. *Bhogaita*, 765 F.3d at 1287.

The crux of the trial court's judgment was that Ms. Kromenhoek did not make a **request for accommodation** until March of 2012. However, this conclusion is directly contradictory to the affidavits of Louanne Schecter and Ms. Kromenhoek (J.A. Vol. II at 106-32; 349). Ms. Kromenhoek stated under oath that in July 2011, she provided Cowpet's office manager information about her dog's qualification as an emotional support animal and a letter from her doctor. (J.A. Vol. II at 109) The certification explained that such an animal is necessary for the normal day-to-day functioning of its handler, who is identified in the document as Ms. Kromenhoek. (*Id*. at 2231) It further explains that, while an emotional support animal is not a service animal under the ADA, the FHA requires a reasonable accommodation for such an animal in the housing context. Ms. Schecter stated that there was no procedure in place for requesting an accommodation and that Ms. Kromenhoek provided her "a copy of a letter from her Doctor prescribing an emotional support dog for her condition." (*Id*. at 349) Harcourt, Cowpet's president, went to the office and reviewed the documents, effectively recognizing that these documents were in fact an application that was in need of a determination. Ms. Kromenhoek's submission contained (1) an

13

explanation of what an emotional support animal is, (2) the purpose it serves, (3) the legal basis for having one, (4) her diagnosis, and (5) how the emotional support animal alleviated her symptoms. Certainly, this submission should be deemed a request for accommodation under the law.

Having addressed the genuine issue of material fact as to the timing of submission of the request for accommodation, the next inquiry is whether there was a **constructive denial** of the request. An indeterminate delay in granting a request for an accommodation can be a constructive denial. *Bhogatia*, 765 F.3d at 1286; *Overlook Mut. Homes, Inc. v. Spencer*, 415 Fed. App'x 617, 622 (6th Cir. 2011); *Groome Res. Ltd. v. Parish of Jefferson*, 234 F.3d 192, 199 (5th Cir. 2000) (127-day delay was a constructive denial); Joint Statement on Reasonable Accommodations at 11 (May 17, 2004), *available at* www.hud. gov/offices/fheo/library/huddojstatement.pdf.

The facts of *Bhogatia*, 765 F.3d at 1280-83, are strikingly similar to Ms. Kromenhoek's. In that case, the plaintiff obtained an emotional support animal in 2008 and was living with it in his condo despite such actions being in violation of the association's rules. On May 4, 2010, the association demanded that the plaintiff remove his emotional support animal. A few days later, the plaintiff provided a letter from his doctor explaining that the dog was an emotional support

14

animal, that the plaintiff had a mental illness limiting his ability to deal with social interactions and cope with stress and anxiety, and that the emotional support animal was being prescribed to alleviate his symptoms.  In response, the association sent multiple requests for additional information, telling him that he must remove his "dog" and to govern himself accordingly.  And, even though the plaintiff therein never made a formal request and was never deprived of his emotional support animal (or fined), the Circuit Court found summary judgment to have been improperly granted.  The court explained that since the association had all the necessary information and delayed for six (6) months, such a delay could not have been the undertaking of a meaningful review.  *Id.* at 1286.

This Court also found summary judgment to be inappropriate in *Community Services*, as there were genuine issues of fact about whether a valid request for accommodation had been made. 421 F.3d at 171-73.  The Court found the "most striking factual dispute" to be "whether a valid request for accommodation was presented" or, if a valid request was presented, whether that request was responded to.  *Id.* at 184 n.12.  Here, whether a valid request for accommodation was presented or whether it was responded to, are precisely the issues in dispute.  Moreover, the affidavits submitted to the District Court should preclude the grant of summary judgment as a matter of law.

Taking the facts in the light most favorable to Ms. Kromenhoek, it is established that, as of July 2011, Cowpet's president (on behalf of Cowpet), reviewed the materials submitted, which contained all of the critical information for determining if an accommodation was necessary (diagnosis, prescription of the animal, and an explanation as to how the animal alleviated those symptoms). By virtue of his position as president of Cowpet, receipt and review of these documents by Harcourt and another board member was indeed notice to Cowpet. This notice created the affirmative duty on Cowpet's part to actively work to determine whether the accommodation should be granted, which duty includes informing the rest of the board and acting on the request. *Bhogaita*, 765 F.3d at 1287. Alarmingly, Cowpet did the exact opposite and instead demanded that Ms. Kromenhoek submit a *second* request for accommodation and instituted fines, albeit in abeyance; delaying the granting of the accommodation for 8 to 9 months. This choice to institute fines, even in abeyance, put enormous pressure on Ms. Kromenhoek when Defendants were fully aware she suffered from an anxiety disorder. These fines were continually accumulating at a rate of $50.00 a day. Kromenhoek's request came after Walters had paved the way by making her request first. Therefore, the delay was even more egregious in Kromenhoek's case.

16

As described above, a genuine issue of fact needs to be heard by a jury, and granting summary judgment was therefore, reversible error.

**III.**    **Because Cowpet, Harcourt, Talkington, and Felice Directly Affected the Exercise of Ms. Kromenhoek's Rights Under the FHA by Successfully Campaigning to Exclude Emotional Support Animals from an Exemption and to Have Ms. Kromenhoek Fined, Their Conduct Violated 42 U.S.C. § 3617 and Summary Judgment was Improperly Granted.**

42 U.S.C. § 3617 prohibits the interference with the exercise of rights under the FHA. To prevail on a claim under section 3617, it must be shown that (1) the plaintiff is within the class of people protected under the FHA; (2) the plaintiff was exercising her rights under the FHA;[6] (3) the defendants coerced, threatened, intimidated, or interfered with the exercise of a protected activity by the plaintiff; and (4) the defendants were motivated by discriminatory intent. *Bloch v. Frischolz*, 587 F.3d 771, 783 (7th Cir. 2009); *Honce v. Vigil*, 1 F.3d 1085, 1090 (10th Cir. 2009).[7] Likewise, the Supreme Court has admonished that the FHA is to be read broadly and in an inclusive manner, noting that the FHA does not define coercion or interference. *Walker*, 272 F.3d at 1128-29.

---

[6] Defendants do not challenge elements one and two. (J.A. Vol. I at 144)

[7] There is no practical distinction between these elements and those of "retaliation" as articulated in *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001). Element one of the *Walker* test pre-supposes a person is in a protected class. Element three of the *Walker* test is a different way of phrasing intent.

17

Coercion, delay, and interference can take many forms and when a court is determining the meaning of a statute, the court must first look to the plain language of the statute construing the entire law, including its policy objectives, in order to ascertain its intent. *Id.* Interference is the act of meddling in or hampering an activity or process. To coerce is to compel an act or choice by force, threat, or other pressure and includes applications of sanctions or force. *Id.* at 1129. From the FHA statute itself, it is clear that force and violence are *not* required to show a violation of Section 3617.

Only a few circuit courts appear to have addressed the coercion/interference element of a 3617 claim. As the Seventh Circuit explained in *Halprin v. Praire Single Family Homes of Dearborn Park Ass'n*, an improperly motivated pattern of harassment backed by the homeowners association was effectively "the neighbors' ganging up" on the plaintiffs is prohibited. 388 F.3d 327, 330 (7th Cir. 2004). The Sixth Circuit, in *Mich. Protection and Advocacy Serv., Inc. v. Babin*, recognized that 3617 is not limited to use of force and extends to people who are in a position to directly disrupt and enjoy a protected power with discriminatory intent. 18 F.3d 337, 348 (6th Cir. 1994). This holding is in line with *Halprin*, as the association was in the direct position to pass rules that interfered with the plaintiffs' enjoyment of their property. A case that further defined the boundary between a dispute

18

among neighbors and a violation of Section 3617 is *Walker*, 272 F.3d at 1228-29.

In *Walker*, it was found that the city's exclusionary conduct and withholding of a

certain payment was in violation of 3617, as those actions are akin to interference

and coercion. *Id.*

Here, Cowpet's actions can be analogized to those in *Halprin*, where the

president of the association used his position to hinder an investigation and the

association adopted rules to restrict lawful use of the property, and to *Walker*,

where the city engaged in investigation and delay tactics and refused to renew a

contract.   Cowpet admits that a majority of its members opposed allowing

emotional support animals and that the by-laws were amended to include only the

ADA definition of a service animal, despite having been apprised of the mandates

of the FHA.   Cowpet also admits that it did not grant the request for

accommodation until March of 2012.  Moreover, Cowpet's president: (1) shared

the private and confidential content of applications for reasonable accommodations

with people who were not members of the board of directors; (2) viewed Ms.

Kromenhoek's request, which clearly identified that her dog was an emotional

support animal under the FHA and that it was needed for her to cope with day to

day anxiety; and (3) sent a letter acknowledging receipt of the request but

demanding that "appropriate ADA compliant paperwork" be submitted.  These

actions alone clearly establish Cowpet's interference under the FHA.    The affidavits of Ms. Schecter and Ms. Kromenhoek stating that Cowpet assessed fines at $50 a day only further establishes Cowpet's interference.

Harcourt's actions can also be analogized to those in *Halprin*.  Harcourt was a member of the association and president of the  board.  He took direct action by: (1) refusing to consider Kromenhoek's application for accommodation because of its lack of formality (even though there was no formal procedure to follow), which is not a justification for denial under the FHA (*see, e.g.*, *Hialeah Hous. Auth.*, 418 Fed. App'x at 875; *Bhogaita*, 765 F.3d at 1286-87 (finding a request for accommodation was made when the plaintiff only provided information on his disability)); (2) sharing the letter assessing fines against Ms. Kromenhoek to the entire membership; (3) sharing the content of requests for reasonable accommodation; and (4) failing to bring to the attention of other board members the pending requests for accommodation.   Given his position as Cowpet's president, the timing and nature of his actions, and the pressure exerted on Ms. Kromenhoek to leave the community or get rid of her emotional support animal, this was direct action by Harcourt that delayed the approval the request for reasonable accommodation, which is actionable under Section 3617.

20

The claim against Talkington boils down to whether his conduct was a pattern of harassment, like in *Halprin*, where the association and its members were found to have violated 3617 by acting in concert to amend its rules to prohibit lawful use of the plaintiff's property.   Talkington led Cowpet's campaign to exclude emotional support animals from any exception to the no-dogs rule, accusing Ms. Kromenhoek of falsifying the documentation certifying her need for an emotional support animal.   Talkington, a volunteer with direct access to the medical records of Kromenhoek and member of Cowpet, was in a position to directly interfere with Ms. Kromenhoek's rights.   Talkington used his position to actively promote an amendment to Cowpet's by-laws that specifically excluded Ms. Kromenhoek from an accommodation - a campaign that was successful. These actions clearly constitute a pattern of harassment, which is actionable under 3617.   Consequently, the granting of summary judgment was in error.

Felice also played his part by actively opposing Ms. Kromenhoek's exercise of her right to an emotional support animal saying the FHA is a "bad law," asserting that Ms. Kromenhoek's mental illness will result in her harming others, and petitioning Cowpet to exclude emotional support animals from any exception to the no-dogs rule.   He also demanded that fines be imposed (which did indeed happen) and actively encouraged the ostracizing of Ms. Kromenhoek.   The emails

21

and blog comments combined with his membership in Cowpet clearly interfered with Ms. Kromenhoek's rights under the FHA. Furthermore, Felice's voting on a by-law amendment should be classified as a direct violation of Section 3617.

**IV.** **Because the Plain Language of 42 U.S.C. § 1988(a) Enumerates the Statutory Provisions to Which it Applies, the Trial Court Erred in Concluding that Ms. Walters' Federal Claims Did not Survive her Death.**

By its express language, 1988(a) does not apply to the claims under the FHA and it therefore must be determined whether the claims survive under federal common law. Penal actions abate upon death. *Ex parte Schreiber*, 110 U.S. 76, 80 (1884). However, if a cause of action is remedial, it *survives* the death of a party. *Kirk v. C.I. R.*, 179 F.2d 619, 620 (1st Cir. 1950). An action is penal when it imposes punishment for an offense committed against the state. *Huntington v. Attrill*, 146 U.S. 657, 667 (1892). Statutes that give rise to a private cause of action are not penal. *Id.* A cause of action is remedial where the wrong addressed is a wrong to the individual. *Id.* at 688 (indicating causes of actions for infringement of civil rights are remedial). This Court has already held the FHA to be remedial (*Mt. Holly Gardens Citizens in Action, Inc. v. Tp. of Mount Holly*, 658 F.3d 375, 385 (3d Cir. 2011)) and claims under the FHA should therefore survive the death of a party. Because 42 U.S.C. §§ 3604(f)(3) and 3617 are in fact remedial

22

(addressing wrongs to individuals) and Section 1988(a) is therefore inapplicable, these claims survived Ms. Walters' death.

When a party dies in a case involving a federally created cause of action, whether that cause of action survives the death of the party is a question of *federal* law. *Carlson v. Green*, 446 U.S. 14, 23 (1980). Where the language of a statute is plain and unambiguous, the statute must be applied according to its terms. *Cacieri v. Salazar*, 555 U.S. 379, 387 (2009). The plain language of Section 1988(a) states that it only applies to three specific sections of the Revised Statutes; none of those sections involves 42 U.S.C. §§ 3604(f)(3)(b) or 3617, which are at issue herein.

Further support for this interpretation is found in Congress' failure to change the language of Section 1988 when amending the statute. *Id.* at 1131. This is a clear indication of the Congressional intent for 1988(a) to apply *only* to those statutes listed in it. Therefore, federal common law should control when determining the survival of statutes not listed in 1988(a), and the trial court erred when holding otherwise.[8]

---

[8] The Supreme Court has reinforced this interpretation in *Burnett v. Grattan*, 468 U.S. 42, 43 (1984), addressing the appropriate limitations "for actions brought under Reconstruction-Era Civil Rights Acts . . ." The Court states, "The task before the courts in the present case was to identify a limitations period governing respondents' claims under 42 U.S.C. §§ 1981, 1983, 1985, and 1986." Then, in footnote 11, the Court notes that "Neither the District Court, the Court of Appeals, nor the parties have suggested that the statute of limitations inquiry would vary

*Robertson v. Wegmann*, 436 U.S. 584 (1978) has often been cited to support the application of Section 1988(a) to the FHA.  Even so, *Robertson* still lends further support for the interpretation that 1988(a) is limited in application to the statutes listed therein because it dealt with a claim under Section 1983.  *Id.* at 585. In fact, the Court made this point very clear when stating, "[o]ur holding today is a narrow one, limited to situations in which no claim is made that state law generally is inhospitable to survival of § 1983 actions and in which the particular application of state survivorship law, while it may cause abatement of the action, has no independent adverse effect on the policies underlying § 1983."  *Id.* at 594.  The Court also pointed out that state survival laws may be inhospitable where they do not provide for survival of any cause of action or significantly restricts the types of actions that survive, a statement that further limits the *Robertson* holding.  *Id.*

Furthermore, "[s]tate law is not 'appropriate' if it fails to take into account the particularities that are involved …" *Burnett*, 468 U.S. at 50.  Accordingly, any application of the Virgin Islands survival statute (5 V.I.C. §§ 76, 77) would be inherently incompatible with the remedial purpose of the FHA, as indicated in

---

depending on the particular federal civil rights statute under which a person claimed relief.  That issue is not presented to us."  This footnote is a clear indication that the Court saw variance in the application of Section 1988(a) and did not address modern civil rights laws, consequently leaving the issue to be addressed by federal common law.

*Robertson*, 436 U.S. at 594, and therefore inappropriate as a matter of law.  In light of the foregoing, a review of federal common law is the appropriate application herein.

It is true that very few federal courts of appeals have addressed survival of claims made under modern civil rights legislation, and those that have only did so in the most cursory fashion.  For example, in *Slade for Estate of Slade v. U.S. Postal Serv.*, 952 F.2d 357, 360 (10th Cir. 1991) (*citing Bennett v. Tucker*, 827 F.2d 63, 67 (7th Cir. 1987), a case with claims made under Section 1983 and applying Section 1988(a)), the sum total of the court's analysis was one sentence, "If federal law does not provide a rule of decision in a civil rights case, federal law will incorporate the appropriate state law, unless that law is 'inconsistent with the Constitution and laws of the United States.'"  So, while the Tenth Circuit applied Section 1988(a) to claims under Title VII, it did so without any consideration of the statutory language.  In *Flemming v. U.S. Postal Serv. AMF O'Hare*, 27 F.3d 259, 262 (7th Cir. 1994), the Seventh Circuit, rejecting the application of Section 1988(a) to Title VII, stated the following: "At all events, the present case was not brought under 42 U.S.C. § 1983 . . ., but under Title VII of the Civil Rights Act of 1965 . . . .  These statutes are not affected by 42 U.S.C. § 1988(a) . . . ."  The

Seventh Circuit's holding in *Flemming* also appears to be a frank recognition of the obvious limits of the application of Section 1988(a) to those statutes listed in it.[9]

In applying Section 1988(a) to Ms. Walters' claims, the trial court relied upon a footnote of this Court's opinion in *Scott v. Univ. of Del.*, 601 F.2d 76, 81 n.8 (3d Cir. 1979). Footnote 8 divides the survival discussion between the claims under Title VII of the Civil Rights Act of 1964 and the claims made under Sections 1981 and 1983. The *Scott* opinion could have addressed survival of claims for damages under both sets of legislation and then discussed why the claims for injunctive and declaratory relief do not survive, but it did not. Instead, that opinion separately discussed Title VII and found that the individual claims for back pay and damages (*i.e.*, remedial claims) survive death. Indeed, the Third Circuit simply stated, "We address the merits of Scott's individual claims because the claim for back pay and damages survives his death."[10] No reading of this footnote could possibly support the conclusion that Section 1988(a) applies to the FHA and

---

[9] Appellants have found no cases from any other circuit addressing this point, and the holding of the Tenth Circuit seems to be erroneous since the case upon which it relied was a case addressing a statute specifically listed in Section 1988(a).

[10] In contrast, when discussing the survival under Sections 1981 and 1983, the Court cited Brazier v. Cherey, 293 F.2d 401 (5th Cir. 1961) and Pritchard v. Smith, 289 F2d 153 (8th Cir. 1961), both cases decided prior to the enactment of modern civil rights statutes.

the trial court's decision holding otherwise is reversible error. The policy behind the FHA is to "right" the civil wrong behind housing discrimination. A cause of action that is remedial, such as the one in Walters' case, must survive death – any abrogation would undermine the intent of the policies behind the FHA and other civil rights statute. Consequently, the trial court's decision should be reversed as a matter of law.

## V.    Failure to Exercise Supplemental Jurisdiction Over State Law Claims

*U. Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) dictates dismissal of state claims when federal claims are dismissed. The federal claims were improperly dismissed making refusal to retain jurisdiction an abuse of discretion.

## CONCLUSION

The judgments ultimately dismissing the actions commenced by Kromenhoek and Walters should be reversed, vacated, or otherwise modified.

Respectfully submitted,
**THE LAW OFFICES OF KARIN A. BENTZ, P.C.**

/s/ Karin A. Bentz
**Karin A. Bentz, Esq.** (V.I. Bar No. 413)
5332 Raadets Gade, Suite 3; St. Thomas, VI 00802-6309
Tel: (340) 774-2669  Fax: (340) 774-2665
Email: kbentz@virginlaw.com

27

## <u>CERTIFICATE OF BAR MEMBERSHIP</u>

I, Karin A. Bentz, Esq., Hereby certify that I am a member in good standing of the Bar of the Third Circuit.

/s/ Karin A. Bentz

## <u>CERTIFICATE OF SERVICE</u>

I **Hereby Certify** that on this  16th day of November, 2015, I caused two true and correct copies of the foregoing Appellant's Brief and one true and correct copy of the Appendix to be hand-delivered  to:

Clerk, District Court of the Virgin Islands
5500 Veterans Drive
St. Thomas, VI 00802
(Hand Delivered)

I **Hereby Certify** that on this 15th day of November, 2015, I electronically filed the foregoing with the clerk using the CM/ECF system, and caused a true and correct copy of the foregoing to be hand-delivered or mailed on November 16th, 2015, first class, postage prepaid to:

John H. Benham III, Esq.
P.O. Box 11720
St. Thomas, Virgin Islands 00801
E-mail: benham@bclawvi.com


Birch de Jongh & Hindels, PLLC
Attn: Richard P. Farrelly, Esq. and Carl Williams, Esq.
1330 Taarneberg
St. Thomas, Virgin Islands 00802
E-mail: rfarrelly@bdhlwvi.com and cwilliams@bdhlwvi.com


Joseph G. Riopelle, Esquire
Boyd Richards Parker & Colonnelli, P.L.
Rivergate Tower Suite 1150
400 N. Ashley Drive

a

Tampa, FL 33602
(813) 223-6021
(813) 223-6024 (Fax)
*jriopelle@boydlawgroup.com*

Quintairos, Prieto, Wood & Boyer, P.A.
Attn: Ryan Meade, Esq. and Kyle Waldner, Esq.
9300 South Dadeland Blvd., 4th Floor
Miami, Florida 33156
Email: rmeade@qpwblaw.com and kwaldner@qpwblaw.com

/s/ Karin A. Bentz

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. 32

I, Karin A. Bentz, certify that the Appellant's Brief is in compliance with Fed. R. App. P. 32 in that it contains 7889 words and 773 lines of text in proportionally spaced fonts in 14 pt.

/s/ Karin A. Bentz

## CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS

I, Karin A. Bentz, certify that the Appellant's Brief as filed electronically and as delivered in paper copy are identical.

/s/ Karin A. Bentz

## CERTIFICATE OF VIRUS CHECK

I, Karin A. Bentz, certify that the Appellant's Brief was scanned by antivirus software and no viruses or other malware were detected.

/s/ Karin A. Bentz

b