IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

LIANA REVOCK, Executrix of the Estate of Barbara Walters,

Plaintiff-Appellant

v.

COWPET BAY WEST CONDOMINIUM ASSOCIATION, *et al.*,

Defendants-Appellees
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE VIRGIN ISLANDS
_____

BRIEF FOR THE UNITED STATES AS *AMICUS CURIAE*
IN SUPPORT OF PLAINTIFF-APPELLANT
_____

VANITA GUPTA
 Principal Deputy Assistant
 Attorney General

MARK L. GROSS
APRIL J. ANDERSON
 Attorneys
 Department of Justice
 Civil Rights Division
 Appellate Section
 Ben Franklin Station
 P.O. Box 14403
 Washington, DC 20044-4403
 (202) 616-9405

# TABLE OF CONTENTS

**PAGE**

INTEREST OF THE UNITED STATES ..................................................................1

STATEMENT OF THE ISSUES.........................................................................2

STATEMENT OF THE CASE............................................................................2

SUMMARY OF ARGUMENT ...........................................................................9

ARGUMENT

     I     THE DISTRICT COURT ERRED IN CONCLUDING
           THAT 42 U.S.C. 1988(a) GOVERNS FHA CLAIMS......................10

     II    APPLICATION OF FEDERAL COMMON LAW FULFILLS
           A NEED FOR NATIONAL UNIFORMITY, MEETS THE
           OBJECTIVES OF FEDERAL CIVIL RIGHTS STATUTES,
           AND AVOIDS DISRUPTING COMMERCIAL
           RELATIONSHIPS THAT RELY ON STATE LAW ........................17

     III   UNDER FEDERAL COMMON LAW, FHA CLAIMS
           SURVIVE A PLAINTIFF'S DEATH ................................................24

CONCLUSION ..................................................................................................28

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF BAR MEMBERSHIP

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**CASES:**                                                                   **PAGE**

*Ayers* v. *Philadelphia Hous. Auth.*, 908 F.2d 1184 (3d Cir. 1990) .........................24

*Bolden* v. *Southeast Pa. Transp. Auth.*, 21 F.3d 29 (3d Cir. 1994) .................. 19-20

*Brown* v. *United States*, 742 F.2d 1498 (D.C. Cir. 1984),
    cert. denied, 471 U.S. 1073 (1985).................................................................14

*Burlington Indus., Inc.* v. *Ellerth*, 524 U.S. 742 (1998) .........................................21

*Burnett* v. *Grattan*, 468 U.S. 42 (1984) .................................................................23

*Cabrera* v. *Jakabovitz*, 24 F.3d 372 (2d Cir. 1994)................................................22

*Chicago* v. *Matchmaker Real Estate Sales Ctr., Inc.*,
    982 F.2d 1086 (7th Cir. 1992), cert. denied, 508 U.S. 972 (1993) ...............22

*Clackamas Gastroenterology Assocs., P.C.* v. *Wells*, 538 U.S. 440 (2003) ...........21

*In re Columbia Gas Sys. Inc.*, 997 F.2d 1039 (3d Cir. 1993),
    cert. denied, 510 U.S. 1110 (1994)..........................................................*passim*

*Estate of Davis* v. *Wells Fargo Bank*, 633 F.3d 529 (7th Cir. 2011)......................16

*Eichenholtz* v. *Brennan*, 52 F.3d 478 (3d Cir. 1995)..............................................18

*F. D. Rich Co.* v. *United States for Use of Indus. Lumber Co.*,
    417 U.S. 116 (1974).......................................................................................19

*Faragher* v. *City of Boca Raton*, 524 U.S. 775 (1998)...........................................21

*Fleming* v. *United States Postal Serv. AMF O'Hare*,
    27 F.3d 259 (7th Cir. 1994), cert. denied, 513 U.S. 1085 (1995) ........... 15-16

*Gamewell Mfg., Inc.* v. *HVAC Supply, Inc.*, 715 F.2d 112 (4th Cir. 1983)............20

*Garrick* v. *City & Cnty. of Denver*, 652 F.2d 969 (10th Cir. 1981) .......................22

**CASES (continued):**                                                    **PAGE**

*Genty* v. *Resolution Trust Corp.*, 937 F.2d 899 (3d Cir. 1991) ......................... 25-26

*Harrow* v. *Prudential Ins. Co. of Am.*, 279 F.3d 244 (3d Cir. 2002) ......................24

*James* v. *Home Const. Co. of Mobile, Inc.*, 621 F.2d 727 (5th Cir. 1980) ..............11

*Kettner* v. *Compass Grp. USA, Inc.*, 570 F. Supp. 2d 1121 (D. Minn. 2008) .........12

*Kilgo* v. *Bowman Transp., Inc.*, 789 F.2d 859 (11th Cir. 1986) ..............................26

*Louisiana ACORN Fair Hous.* v. *LeBlanc*, 211 F.3d 298 (5th Cir. 2000),
    cert. denied, 532 U.S. 904 (2001) ..................................................................18

*Mallick* v. *International Bd. of Elec. Workers*,
    814 F.2d 674 (D.C. Cir. 1987) .......................................................................10

*Meritor Sa*v. *Bank, FSB* v. *Vinson*, 477 U.S. 57 (1986) ..........................................21

*Meyer* v. *Holley*, 537 U.S. 280 (2003) ....................................................................21

*Mike Smith Pontiac, GMC, Inc.* v. *Mercedes-Benz of N. Am., Inc.*,
    32 F.3d 528 (11th Cir. 1994), cert. denied, 516 U.S. 1044 (1996) ...............26

*Miller* v. *Apartments & Homes of N.J.*, 646 F.2d 101 (3d Cir. 1981) ..............14, 20

*Moor* v. *Alameda Cnty.*, 411 U.S. 693 (1973) .................................................. 12-13

*Mount Holly Gardens Citizens in Action, Inc.* v. *Township of Mount Holly*,
    658 F.3d 375 (3d Cir. 2011), cert. granted in part, 133 S. Ct. 2824,
    and cert. dismissed, 134 S. Ct. 636 (2013) ....................................................25

*Murphy* v. *Household Fin. Corp.*, 560 F.2d 206 (6th Cir. 1977) ...................... 25-27

*Northside Realty Assocs., Inc.* v. *United States*, 605 F.2d 1348
    (5th Cir. 1979), superseded by statute, 42 U.S.C. 3614(d)(1)(B),
    on other grounds, as recognized by *United States* v. *City of Jackson*,
    359 F. 3d 727 (5th Cir. 2004) ........................................................................22

**CASES (continued):** **PAGE**

*Occidental Life Ins. Co.* v. *EEOC*, 432 U.S. 355 (1977)..........................................23

*Oliver* v. *United States Army*, 758 F. Supp. 484 (E.D. Ark. 1990) ........................22

*Pierce* v. *Allen B. Du Mont Labs., Inc.*, 297 F.2d 323 (3d Cir. 1961),
        cert. denied, 371 U.S. 814 (1962).......................................... 10-11, 24

*Reo* v. *United States*, 98 F.3d 73 (3d Cir. 1996).......................................................24

*Robertson* v. *Wegmann*, 436 U.S. 584 (1978) ...........................................................8

*Savarese* v. *Agriss*, 883 F.2d 1194 (3d Cir. 1989)....................................................22

*Schreiber* v. *Sharpless*, 110 U.S. 76 (1884)..............................................................25

*Scott* v. *University of Del.*, 601 F.2d 76 (3d Cir. 1979), abrogated
        on other grounds by *EF Operating Corp.* v. *American Bldgs.*,
        993 F.2d 1046 (3d Cir. 1993) ...................................................... 7-8

*Slade* v. *United States Postal Serv.*, 952 F.2d 357 (10th Cir. 1991) .......................16

*Smith* v. *Department of Human Servs.*, 876 F.2d 832 (10th Cir. 1989) ..................16

*Smith* v. *Midland Brake, Inc.*, 180 F.3d 1154 (10th Cir. 1999)...............................16

*United States* v. *564.54 Acres of Land, More or Less, In Monroe &*
        *Pike Cntys., Pa.*, 506 F.2d 796 (3d Cir. 1974) ...............................................18

*United States* v. *General Battery Corp.*,
        423 F.3d 294 (3d Cir. 2005) ........................................ 17-18, 21, 24

*United States* v. *Kimbell Foods, Inc.*, 440 U.S. 715 (1979) ............................*passim*

*United States* v. *NEC Corp.*, 11 F.3d 136 (11th Cir. 1993),
        as amended (Jan. 12, 1994) ............................................... 11, 24-25

*United States* v. *Pisani*, 646 F.2d 83 (3d Cir. 1981)................................................18

**CASES (continued):**                                                    **PAGE**

*Vaello-Carmona* v. *Siemens Med. Solutions USA, Inc.*,
   781 F.3d 1 (1st Cir. 2015)...................................................................16

*Wilson* v. *Garcia*, 471 U.S. 261 (1985) ............................................14, 19

**STATUTES:**

Fair Housing Act (FHA), 42 U.S.C. 3601 ..............................................1
   42 U.S.C. 3604(f)(2) .......................................................................25
   42 U.S.C. 3612(a) .............................................................................1
   42 U.S.C. 3612(o) .............................................................................1
   42 U.S.C. 3613(a)(1)(A).................................................................26
   42 U.S.C. 3614(a)-(d) .......................................................................1

42 U.S.C. 1981 ..............................................................................7, 13, 23

42 U.S.C. 1982 ............................................................................. 7, 13-14

42 U.S.C. 1983 ......................................................................8, 13, 16, 22

42 U.S.C. 1988 ......................................................................................*passim*

42 U.S.C. 1988(a) ................................................................................*passim*

42 U.S.C. 1988(b) ............................................................................ 14-15

42 U.S.C. 1988(c) ...............................................................................15

28 U.S.C. 1658....................................................................................14

Act of Apr. 20, 1871, ch. 22, § 1, 17 Stat. 13 .........................................13

Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071..............15

Equal Access to Justice Act, Pub. L. No. 96-481, 94 Stat. 2321 (1980).................15

Federal Courts Improvement Act of 1996,
   Pub. L. No. 104-317, 110 Stat. 3847 ............................................15

**STATUTES (continued):** **PAGE**

Religious Freedom Restoration Act of 1993,
Pub. L. No. 103-141, 107 Stat 1488 ............................................................15

Religious Land Use and Institutionalized Persons Act of 2000,
Pub. L. No. 106-274, 114 Stat. 803 .............................................................15

Rev. Stat. 722 (1878) ...................................................................... 11-13

The Civil Rights Attorney's Fees Awards Act of 1976,
Pub. L. No. 94-559, 90 Stat. 2641 ...............................................................15

Violent Crime Control and Law Enforcement Act of 1994,
Pub. L. No. 103-322, 108 Stat. 1796 ...........................................................15

**RULES:**

Fed. R. App. P. 29(a) ...................................................................................1

**MISCELLANEOUS:**

7C Charles Alan Wright *et al.*, *Federal Practice and Procedure*
§ 1954 (3d ed. 2015).....................................................................................10

Owsley, Brian, *Survivorship Claims Under Employment Discrimination
Statutes,* 69 Miss. L.J. 423 (1999) .................................................................12

Table 2, Revised Statutes, U.S.C.A., available at http://uscode.house
gov/tables/ usctable2.htm ...........................................................................12

William Booth, *Survival Under the ADA: The Federal Common Law
Standard for Determining Survival Claims* 2 DePaul J. Health
Care L. 269 (1998)................................................................................. 26-27

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————————————

No. 14-4776

LIANA REVOCK, Executrix of the Estate of Barbara Walters,

Plaintiff-Appellant

v.

COWPET BAY WEST CONDOMINIUM ASSOCIATION, *et al.*,

Defendants-Appellees

—————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE VIRGIN ISLANDS

—————————————

BRIEF FOR THE UNITED STATES AS *AMICUS CURIAE*
IN SUPPORT OF PLAINTIFF-APPELLANT

—————————————

## INTEREST OF THE UNITED STATES

The Attorney General and Department of Housing and Urban Development (HUD) share enforcement authority under the Fair Housing Act (FHA), 42 U.S.C. 3601, 3614(a)-(d), 3612(a) and (o).  This Court's resolution of the question presented will likely affect the Justice Department's and HUD's enforcement responsibilities under the FHA.  The United States files this brief pursuant to Federal Rule of Appellate Procedure 29(a).

## STATEMENT OF THE ISSUES

1.  Whether, following plaintiff's death, the survivability of plaintiff's claims under the FHA is governed by 42 U.S.C. 1988(a), which directs a court to resolve procedural issues under some federal statutes according to relevant state law.

2.  If Section 1988 does not determine the choice-of-law issue, whether application of federal common law is appropriate considering a need for national uniformity, the objectives of the federal statutory scheme, and any potential disruption of commercial relationships predicated on state law.

3.  Whether, under federal common law, plaintiff's FHA claims seeking compensatory damages survive the plaintiff's death.[1]

## STATEMENT OF THE CASE

1.  This case concerns the application of 42 U.S.C. 1988(a).  Section 1988(a) requires federal courts to turn to state law for procedural rules when applying some federal civil rights laws.  If a court finds one of the laws covered under Section 1988 is "deficient in the provisions necessary to furnish suitable remedies and punish offenses against law," a court should employ "the common law, as modified and changed by the constitution and statutes of the State wherein the

---

[1]  The United States' participation is limited to the survival of plaintiff's claim for compensatory damages.  We take no position on other issues in this case.

- 3 -

court having jurisdiction of such civil or criminal cause is held." 42 U.S.C.

1988(a).

Section 1988(a) was originally passed in 1866, long before passage of the

FHA, and applies to "[t]he jurisdiction in civil and criminal matters conferred on

the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes

for the protection of all persons in the United States in their civil rights, and for

their vindication." 42 U.S.C. 1988(a). In 1926, these civil rights provisions were

re-codified into what is now Title 42 of the U.S. Code. Section 1988(a) was not

amended, however, to reflect the recodification.

2. Plaintiff Barbara Walters owned a unit in the Cowpet Bay West

Condominium complex (Cowpet), on St. Thomas, Virgin Islands. J.A. Vol. I at 6

(Jan. 2, 2015 Op.).[2] The Rules and Regulations of the Cowpet Bay West

Condominium Association (Association) prohibited dogs and provided that

offending owners would be fined. J.A. Vol. I at 6 (Jan. 2, 2015 Op.); J.A. Vol. II

at 179 (Am. Compl.). In January 2011 Walters' psychologist prescribed her an

"emotional support animal" for treatment of an anxiety disorder. J.A. Vol. I at 8

(Jan. 2, 2015 Op.); J.A. Vol. II at 180 (Am. Compl.), 263 (Schechter Aff.), 1131

(Clinical Summ.). In February, Walters, who was a member of the Association's

---

[2] "J.A." refers to the Joint Appendix filed with plaintiff's brief. "R." refers to filings in the district court by docket number. "Br." refers to plaintiff's opening brief.

- 4 -

Board of Directors, gave Cowpet's office manager papers explaining that her dog was an emotional support animal and a copy of the psychologist's supporting letter.  J.A. Vol. I at 8 (Jan. 2, 2015 Op.); J.A. Vol. II at 180-181 (Am. Compl.), 263 (Schechter Aff.), 955-956 (Ex.).

In October 2011 the Board president emailed Walters explaining that she had violated the pets policy.  J.A. Vol. II at 941 (Ex.).  He acknowledged that Walters "ha[d] 'papers in the office' regarding service dogs," but instructed her that she must apply to the Board in writing for an exemption.  J.A. Vol. II at 946 (Ex.); see J.A. Vol. I at 8-9 (Jan. 2, 2015 Op.).  The Board did not review the psychologist's letter as Walters had asked that her file not be shared with the Board or others.  J.A. Vol. II at 944, 955, 978-979 (Exs.).

Discussions of Walters' dog and another woman's service dog appeared in mass emails and on the Cowpet Bay Blog, an Internet web log maintained by a member of the Association.  J.A. Vol. II at 182-188 (Am. Compl.); 937-942, 1282-1303 (Exs.).  One writer questioned whether the women had "REAL needs or pets."  J.A. Vol. II at 190 (Am. Compl.).  When Walters and the other service dog owner ran for seats on the Board, another writer asked:  "How can you allow 2 admitted 'certified' mentally disabled persons on the ballot for election to our board?"  J.A. Vol. II at 190 (Am. Compl.).  He also suggested that they be "ostracized" at Cowpet Bay in the hopes that they would leave the community.

J.A. Vol. II at 184 (Am. Compl.), 937 (Ex.).  The Board president's email about Walters' violating the no pets policy was also posted on the blog.  J.A. Vol. II at 1294.

On January 12, 2012, Walters filed a complaint with HUD alleging discrimination based on disability.  J.A. Vol. II at 522, 954-956 (Exs.).  On January 17, 2012, Walters received a letter from the Board informing her that she would be fined for having a dog.  J.A. Vol. II at 190 (Am. Compl.).  The fines were held in abeyance until the no-dog rule was formally incorporated into the Association's bylaws in February 2012.  J.A. Vol. I at 9 (Jan. 2, 2015 Op.); J.A. Vol. II at 1410 (Ex.).  Walters then requested an exemption from the policy.  J.A. Vol. I at 9 (Jan. 2, 2015 Op.).  She was given an exemption in March or April 2012.  J.A. Vol. II at 192 (Am. Compl.), 971 (Ex.).  All of the fines that had been levied against her were waived.  J.A. Vol. I at 9 (Jan. 2, 2015 Op.); J.A. Vol. II at 971 (Ex.).

On April 16, 2012, HUD issued an investigative report in Walters' case finding that there was no reasonable cause to believe that discrimination occurred.  HUD concluded that, although she did suffer from a disability and was entitled to a reasonable accommodation for her dog under the FHA, Walters had not formally requested an accommodation until March 2012, and her request had been granted promptly.  J.A. Vol. II at 975-977 (Ex.).

3.  In April 2012 plaintiff filed suit in federal court, asserting claims under the FHA, the Americans with Disabilities Act (ADA), and Virgin Islands laws against the Association, its Board of Directors, some of the Board's members, and other neighbors.  J.A. Vol. I at 9-11 (Jan. 2, 2015 Op.).  She claimed that the information she gave Cowpet's office manager in February or March 2011, including the doctor's prescription for an emotional support animal, qualified as a request for a reasonable accommodation and that the Board ignored her request for over a year, in violation of the FHA.  J.A. Vol. II at 57-59 (Compl.), 955-956 (Ex.).

During the litigation, two defendants died.  J.A. Vol. I at 11 (Jan. 2, 2015 Op.).  Walters moved to substitute one of the defendants for his successor in interest.  R. 55 (Mot.).  The court held that under 42 U.S.C. 1988(a) and federal common law, a defendant's death did not extinguish Walters' FHA claims against him.  See R. 116 at 9-15 (Order).

On April 22, 2014, Walters died by suicide.  R. 201 at 1 (Mot. to Substitute); R. 191 (Suggestion of Death); J.A. Vol. II at 2410, 2415 (May 27, 2014 Tr.). Walters' estate filed a motion with the district court seeking to substitute Walters' daughter, who was Walters' executor, as plaintiff.  R. 201.  One defendant opposed the motion, arguing that 42 U.S.C. 1988(a) required that Virgin Islands law, not federal law, determine whether an FHA claim survived a plaintiff's death.  J.A.

- 7 -

Vol. II at 2565.  Under Virgin Islands law, defendant argued, FHA claims did not

survive.  J.A. Vol. II at 2426-2427 (May 27, 2014 Tr.).

4.  At the conclusion of a May 27, 2014 hearing, the court, based on Virgin

Islands' law, dismissed Walters' claims on account of her death.  J.A. Vol. II at

2496.  The court filed an opinion and judgment granting defendants' motions to

dismiss on November 18, 2014.  J.A. Vol. I at 29-72 (Op.), 73-76 (J.).[3]  Plaintiff

Walters appealed on December 17, 2014.  J.A. Vol. I at 1.

On December 23, 2014, the district court vacated the November 18 opinion

and, on January 2, 2015, issued a new opinion and order in Walters' case

addressing the survival issue.  J.A. Vol. I at 13.  The court pointed out that the

FHA and ADA did not specify whether claims survived a victim's death.  J.A. Vol.

I at 16.  The court then concluded that 42 U.S.C. 1988(a) applied to "civil rights

statute[s]" such as the ADA and FHA and that it requires courts to turn to state law

as a "gap-filler" where necessary.  J.A. Vol. I at 16.  The district court based this

decision on this Court's application of Section 1988(a) to claims brought under 42

U.S.C. 1981 and 1982.  See *Scott* v. *University of Del.*, 601 F.2d 76, 81 n.8 (3d Cir.

---

[3]  In its opinion, the court discussed co-plaintiff Judith Kromenhoek's
claims, stated that Walters had brought "the same claims," and noted Walters had
died.  J.A. Vol. I at 36.  Although the captions on the opinion and judgment listed
plaintiff and Kromenhoek and the relevant docket numbers for both cases, they
were not posted on the docket in plaintiff's case.  The opinion did not explicitly
address the survival of plaintiff's claim.

1979), abrogated on other grounds by *EF Operating Corp.* v. *American Bldgs.*, 993 F.2d 1046 (3d Cir. 1993). As the district court described *Scott*, "[w]here another civil rights statute failed to provide guidance on the survivability of actions, the Third Circuit has instructed 'the federal courts [to] seek guidance from state survival acts provided they are not inconsistent with the policies underlying the federal statutes.'" J.A. Vol. I at 16 (second alteration in original) (citing *Scott*, 601 F.2d 76 at 81 n.8). The district court also cited *Robertson* v. *Wegmann*, 436 U.S. 584, 588-590 (1978), in support of its holding. J.A. Vol. I at 17. In that case, the Supreme Court held that survivability of a plaintiff's Section 1983 action was, under Section 1988, governed by state law. J.A. Vol. I at 17.

The court then applied Virgin Islands law. The court explained that, although claims generally survive a plaintiff's death, the Virgin Islands applies a more restrictive rule to certain tort claims for emotional injuries. J.A. Vol. I at 18. The court applied this more restrictive rule, and dismissed plaintiff's federal claims. J.A. Vol. I at 18-19. It declined to exercise supplemental jurisdiction over her remaining claims. J.A. Vol. I at 24.

- 9 -

## SUMMARY OF ARGUMENT

1.  Federal law controls whether a cause of action filed under a federal statute, such as the FHA, survives a plaintiff's death.[4]  In this case, the district court inappropriately applied an exception to that rule under 42 U.S.C. 1988(a), which calls for state procedural rules to govern in specified Reconstruction-era civil rights statutes.  Neither the plain language nor the legislative history of Section 1988(a) permits a court to apply Section 1988(a) to modern civil rights statutes.  Indeed, courts of appeals that have considered the issue are in agreement that Section 1988(a) does not apply to the FHA or similar statutes enacted long after the Reconstruction-era civil rights acts.

2.  Even in cases where Section 1988 does not dictate the choice of law, a court should consider whether application of federal law would (a) meet a need for national uniformity, (b) advance the objectives of the federal statutory scheme, and (c) avoid disrupting commercial relationships predicated on state law.  *United States* v. *Kimbell Foods, Inc.*, 440 U.S. 715, 728-729 (1979).  In this case, it is important to apply federal common law to ensure that the opportunity to vindicate federally protected rights does not vary from State to State.  Application of state laws would bar relief for claimants in some States but not others and would

---

[4]  Although the district court dismissed plaintiff's ADA claims on account of her death, plaintiff has not pursued this claim on appeal.  Br. 1 n.1.  This brief will, therefore, address the survivability only of her FHA claim.

frustrate the FHA's goal of providing comprehensive relief for victims and deterring discriminatory behavior throughout the nation. The Supreme Court and other courts have routinely turned to federal common law, and not to state law, in applying modern civil rights statutes. Furthermore, application of federal common law to these civil rights statutes would not undermine any reliance in this case on Virgin Islands survival statutes.

3. Under federal common law, actions taken pursuant to "remedial" statutes survive while actions taken pursuant to "punitive" statutes do not. Because the FHA allows recovery for individual victims of discrimination, it is a remedial statute within the meaning of the survival rule. Therefore, plaintiff Walters' FHA claims survive her death.

## ARGUMENT

### I

### THE DISTRICT COURT ERRED IN CONCLUDING THAT 42 U.S.C. 1988(a) GOVERNS FHA CLAIMS

Generally, federal law controls the survival of an action brought under a federal statute. *Mallick* v. *International Bhd. of Elec. Workers*, 814 F.2d 674, 676 (D.C. Cir. 1987); 7C Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 1954 (3d ed. 2015). With some narrow exceptions, if the federal statute does not state whether a claim survives the plaintiff's death, courts turn to federal common law. *Mallick*, 814 F.2d at 676; see also *Pierce* v. *Allen B. Du Mont Labs., Inc.*, 297

- 11 -

F.2d 323, 324 (3d Cir. 1961), cert. denied, 371 U.S. 814 (1962); *United States* v. *NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1993), as amended (Jan. 12, 1994); *James* v. *Home Const. Co. of Mobile, Inc.*, 621 F.2d 727, 729 (5th Cir. 1980). Contrary to the district court's decision here, federal law should have controlled, permitting plaintiff Walters' claims to continue after her death.

Here, the district court erroneously applied Section 1988(a), which requires application of state law for specific Reconstruction-era civil rights statutes. The FHA, however, is not among the Reconstruction-era civil rights statutes Section 1988(a) governs.

In extending Section 1988(a)'s reach generally to civil rights statutes, the district court interpreted Section 1988(a)'s provision well beyond its plain language. Section 1988(a) applies to "[t]he jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights." 42 U.S.C. 1988(a).[5] When Section 1988(a) was first enacted in 1866, the FHA did not exist, and Title 42 had not been codified. The Revised Statutes, prior to codification of Title 42, provided that Section 1988(a) applied to "the provisions of this Title, and of Title 'Civil Rights,' and of title 'Crimes.'" Rev.

---

[5] Notably, the district court *omitted* the phrase "provisions of titles 13, 24, and 70" from its quotation of Section 1988(a). J.A. Vol. I at 16 (Jan. 2, 2015 Op.).

Stat. 722 (1878); see also *Moor* v. *Alameda Cnty.*, 411 U.S. 693, 704-706 & n.19

(1973) (noting that, with codification, Section 1988 was made "generally

applicable to, *inter alia*, the Civil Rights portion of the Revised Statutes").  The

civil rights laws referred to in the Revised Statutes of 1878 included much of what

are now Sections 1981 through 1991 of Title 42 of the United States Code.  See

Table 2, Revised Statutes, U.S.C.A., available at http://uscode.house.gov/tables/

usctable2.htm.[6]

When the FHA was enacted in 1968, it was immediately placed into Title

42.  Therefore, the FHA never fell under the plain language of Section 1988(a), as

it *never* existed as part of Titles 13, 24 or 70, the titles referenced in Section

1988(a).  It is error, therefore, to construe the FHA as covered by Section 1988(a)'s

requirement that courts apply state law.

The history of Section 1988(a) shows its close ties to the Reconstruction-era

civil rights statutes with which it was enacted.  The statute was enacted in 1866

and, as codified in the Revised Statutes of 1878, stated that:

> The jurisdiction in civil and criminal matters conferred on the district and
> circuit courts by the provisions of this Title, and of Title "CIVIL RIGHTS,"
> and of Title "CRIMES," for the protection of all persons in the United States
> in their civil rights, and for their vindication, shall be exercised and enforced

---

[6]  For a discussion of which statutes are included, see *Kettner* v. *Compass Group USA, Inc.*, 570 F. Supp. 2d 1121, 1127-1128 (D. Minn. 2008); Owsley, Brian, *Survivorship Claims Under Employment Discrimination Statutes*, 69 Miss. L.J. 423, 438 (1999).

- 13 -

in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause.

Rev. Stat. 722 (1878).

In *Moor* v. *Alameda County*, the Supreme Court explained that Section 1988 was "first enacted as a portion of [Section] 3 of the Civil Rights Act of April 9, 1866" and "was obviously intended to do nothing more than to explain the source of law to be applied in actions brought to enforce the substantive provisions of the Act, including [42 U.S.C. 1982]." 411 U.S. at 704-705. The Supreme Court further stated that when Congress added 42 U.S.C. 1981 in 1870, "Congress again directed merely that [Section] 1988 would guide courts in the enforcement of *a particular cause of action*, namely, that created in [Section] 1981." *Id*. at 705 n.19 (emphasis added). Shortly thereafter, Congress enacted 42 U.S.C. 1983 and made it subject to Section 1988(a). Act of Apr. 20, 1871, ch. 22, § 1, 17 Stat. 13. Section 1988 was then codified under Section 722 of the Revised Statutes in 1878, and "made generally applicable to, *inter alia*, the Civil Rights portion of the Revised Statutes." *Moor*, 411 U.S. at 705 n.19. Of course, the *Moor* Court was

- 14 -

referring to the "Civil Rights portion of the Revised Statutes" that existed in 1878, when Section 1988 was codified.

This history shows that Section 1988(a) was intended to provide rules of litigation specifically for the Reconstruction-era statutes, rather than to serve as a free-floating prescription for use of state law in any "civil rights"-type claim.  In *Wilson* v. *Garcia*, 471 U.S. 261, 266-267 (1985),[7] the Supreme Court said that Section 1988 allows application of state statutes of limitations "with respect to claims enforceable under the *Reconstruction Civil Rights Acts.*"  (emphasis added); see also *Brown* v. *United States*, 742 F.2d 1498, 1504 (D.C. Cir. 1984) (stating that Section 1988 applies to "Reconstruction Era civil rights statutes"), cert. denied, 471 U.S. 1073 (1985); cf. *Miller* v. *Apartments & Homes of N.J.*, 646 F.2d 101, 105-106, 110 (3d Cir. 1981) (assuming that Section 1988 applied to damages claim based on concurrent liability under the FHA and Section 1982).

The recent history of Section 1988 also supports this interpretation. Congress has amended Section 1988 in recent decades and yet has never expanded the language of Section 1988(a) to apply it to any additional statutes.  In 1976, Congress added what is now Section 1988(b), to provide for attorney's fees in specified civil rights actions.  Congress has periodically revisited Section 1988(b)

---

[7] The question in *Wilson* was later resolved by passage of a federal statute governing statutes of limitation.  28 U.S.C. 1658.

- 15 -

to add coverage for specific statutes.  Section 1988(b) now, by its terms, applies to "sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, the Religious Freedom Restoration Act of 1993, the Religious Land Use and Institutionalized Persons Act of 2000, title VI of the Civil Rights Act of 1964, or section 13981 of this title."  42 U.S.C. 1988(b).[8]  But Congress did not amend Section 1988(a) to include other modern civil rights statutes.

Congress also added Section 1988(c) in 1991 to provide for expert fees under certain listed statutes.  Equal Access to Justice Act, Pub. L. No. 96-481, 94 Stat. 2330 (1980).  Congress knows how to be specific when defining Section 1988's reach and it could have amended 1988(a) to cover the FHA.  It has not done so.

Other courts have, properly in our view, applied federal common law to determine the survivability of civil rights claims under modern civil rights statutes. The Seventh Circuit held that 42 U.S.C. 1988(a) does not cover claims under the Rehabilitation Act or under Title VII of the Civil Rights Act of 1964.  *Fleming* v.

---

[8]  Covered statutes were added over the course of several amendments.  The Civil Rights Attorney's Fees Awards Act of 1976, Pub. L. No. 94-559, 90 Stat. 2641; Equal Access to Justice Act, Pub. L. No. 96-481, 94 Stat. 2321 (1980); Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071; Religious Freedom Restoration Act of 1993, Pub. L. No. 103-141, 107 Stat 1488; Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796; Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, 110 Stat. 3847; Religious Land Use and Institutionalized Persons Act of 2000, Pub. L. No. 106-274, 114 Stat. 803.

*United States Postal Serv. AMF O'Hare*, 27 F.3d 259, 262 (1994), cert. denied,

513 U.S. 1085 (1995). The Tenth Circuit turned to federal common law in

assessing the survivability of an Age Discrimination in Employment Act claim.

*Smith* v. *Department of Human Servs.*, 876 F.2d 832, 834-835 (1989). But see

*Slade* v. *United States Postal Serv.*, 952 F.2d 357, 360 (10th Cir. 1991) (citing

precedent applying Section 1988(a) to a Section 1983 claim and deciding, without

analysis, that state law governed survival of Title VII claim for attorney's fees).

Some courts have allowed a successor to pursue a claim under the FHA or similar

post-reconstruction era statute without comment on the issue of survivability.

*Estate of Davis* v. *Wells Fargo Bank*, 633 F.3d 529, 532 (7th Cir. 2011) (FHA); see

also *Smith* v. *Midland Brake, Inc.*, 180 F.3d 1154, 1160 & n.2 (10th Cir. 1999)

(permitting pursuit of ADA claim).[9] This Court should, accordingly, hold Section

1988(a) inapplicable to the survival of FHA claims.

---

[9] Despite the general uniformity among courts of appeals that have analyzed the issue, district courts routinely err in applying Section 1988 to modern civil rights statutes. See *Vaello-Carmona* v. *Siemens Med. Solutions USA, Inc.*, 781 F.3d 1, 6 (1st Cir. 2015) (noting that that lower courts are split as to whether Section 1988(a) applies to ADA claims). Admittedly, in the Eastern District of Louisiana in 1994, the United States also made this mistake, arguing that Section 1988 applied to the ADA. United States' Br. at 1-2, *United States* v. *Morvant*, 843 F. Supp. 1092 (No. 2:93-cv-3251). But the United States also argued that, in the alternative, federal common law applied and a "ruling that looks to the federal common law in determining the survival of a claim for damages will likely foster a more uniform application of the statute, avoid differing results occasioned by the vagaries of state law, and thereby serve as a more effective deterrent to

(continued...)

- 17 -

**II**

**APPLICATION OF FEDERAL COMMON LAW FULFILLS A NEED FOR
NATIONAL UNIFORMITY, MEETS THE OBJECTIVES OF FEDERAL
CIVIL RIGHTS STATUTES, AND AVOIDS DISRUPTING COMMERCIAL
RELATIONSHIPS THAT RELY ON STATE LAW**

Where Section 1988(a) does not apply, "gaps in federal liability statutes
[are] filled not with the law of a particular state," this Court has explained, "but
with general common law principles." *United States* v. *General Battery Corp.*,
423 F.3d 294, 300 (3d Cir. 2005). The Supreme Court has urged some degree of
caution in developing federal common-law rules. In *United States* v. *Kimbell
Foods, Inc.*, 440 U.S. 715, 728-729 (1979), the Supreme Court described three
factors to consider in deciding whether to create a federal common-law rule or to
borrow a state rule. A court should (a) evaluate the federal interest in national
uniformity, (b) consider whether application of state law would frustrate the
purposes of the federal statute, and (c) assess any potential interference with
commercial arrangements formed in reliance on state law. *Ibid.* The inquiry boils
down to "the nature and importance of the government interest at issue and the
effect of applying state law." *In re Columbia Gas Sys. Inc.*, 997 F.2d 1039, 1055-

---

(...continued)
discriminatory conduct." *Id.* at 5. In retrospect, this second approach is correct.
Since *Morvant*, the Equal Employment Opportunity Commission, charged with
enforcing portions of the ADA, has argued that Section 1988(a) "does not apply to
modern-day employment discrimination statutes." EEOC Reply Memorandum at
4-6, *EEOC* v. *Maxim Healthcare Servs.*, No. 10-cv-3998 (D. Minn. May 26, 2011).

1056 (3d Cir. 1993) (citing *Kimbell*), cert. denied, 510 U.S. 1110 (1994).  In the

case of survival of a plaintiff's civil rights claim under the FHA, these factors

weigh heavily in favor of adoption of the federal common-law rule.

Under the first *Kimbell* factor, a court should consider "whether a need for

national uniformity exists."  *United States* v. *Pisani*, 646 F.2d 83, 86 (3d Cir.

1981).  This Circuit has recognized the value of uniformity under federal statutes.

*General Battery Corp.*, 423 F.3d at 304 ("In the case of federal liability statutes

enforced under a federal cause of action, the law is generally intended to have

uniform nationwide application."); see also *Eichenholtz* v. *Brennan*, 52 F.3d 478,

486 (3d Cir. 1995) (holding that "a nationwide federal rule is preferable" in federal

securities law).  In enacting a nationwide solution to persistent nationwide

problems, it is unlikely that "Congress intended to incorporate [state law]

variations under a comprehensive federal liability statute."  *General Battery Corp.*,

423 F.3d at 302.  Cf. *United States* v. *564.54 Acres of Land, More or Less, In

Monroe & Pike Cntys., Pa.*, 506 F.2d 796, 800 (3d Cir. 1974).

Nationwide consistency is particularly important in the enforcement of this

nation's civil rights laws.  "When applying civil rights statutes, federal common

law must be applied to effect uniformity."  *Louisiana ACORN Fair Hous.* v.

*LeBlanc*, 211 F.3d 298, 301 (5th Cir. 2000), cert. denied, 532 U.S. 904 (2001).  In

this context, unlike in commercial contexts, there often is no clearly analogous

state law or rule a court can easily adopt.  The parties and the courts are left to decide whether a civil rights claim best fits into a state rule developed for torts, contracts, or some other cause of action, and resolving this issue often may lead to protracted and inconsistent litigation.  Accordingly, application of a uniform federal rule "avoids many of the pitfalls" that come from "using state law referents."  *F. D. Rich Co.* v. *United States for Use of Indus. Lumber Co.*, 417 U.S. 116, 127 (1974); see also *Wilson* v. *Garcia*, 471 U.S. 261, 272 (1985) (observing that lower court's attempts to find the closest analogous state cause of action for statute of limitations purposes "breeds uncertainty and time-consuming litigation"). State survival rules would treat plaintiffs' identical claims differently in different states.  The federal common-law rule preserves consistent nationwide access to relief in civil rights matters in keeping with the purposes of the FHA.

The second *Kimbell* factor, "whether incorporation of state law would frustrate specific objectives of the federal program at issue," also weighs against adoption of restrictive and inconsistent state survival statutes.  *In re Columbia Gas Sys. Inc.*, 997 F.2d at 1055.

This Court has said that civil rights laws "are intended in part to provide broad, *consistent* recompense for violations" and "it is anomalous to apply a state policy restricting remedies . . . to a federal statute that is designed to augment them."  *Bolden* v. *Southeast Pa. Transp. Auth.*, 21 F.3d 29, 35 (3d Cir. 1994)

- 20 -

(alterations, citation, and internal quotations marks omitted; emphasis added).[10]

The federal civil rights laws are "federal statutory schemes  *  *  *  aimed at

rectifying historical inequalities in bargaining power between parties" and "reflect

[a] special solicitude for unequally positioned claimants." *Gamewell Mfg., Inc.* v.

*HVAC Supply, Inc.*, 715 F.2d 112, 114-116 (4th Cir. 1983).  Accordingly, courts

should be cautious about applying state rules that would restrict civil rights

claimants.  As the Fourth Circuit stated in analyzing choice-of-law cases, "these

decisions have as their unifying thread a concern that federal remedial legislation,

and individual rights thereunder, should not be subject to the vagaries of local

law." *Ibid.*

Use of the Virgin Islands' survival statutes here would contravene the

FHA's purpose to provide relief for victims of discrimination and deterrence for

future violations.  Congress passed the FHA to displace existing arrangements such

as sales agreements, condominium bylaws, leases, building codes, and zoning

restrictions, to name a few, that excluded people with disabilities.  "[T]he very

purpose of" the statute is "to supersede private contractual arrangements" and other

measures "that interfere with the federal objective" of nondiscrimination.  *In re*

---

[10]  But see *Miller* v. *Apartments & Homes of N.J.*, 646 F.2d 101, 108 (3d Cir.
1981) (noting, in dicta, that survival rules are "less related to the substance of the
federal rights" than are damages rules).

*Columbia Gas Sys. Inc.*, 997 F.2d at 1055-1056 (describing the federal purpose of the Natural Gas Act).

The Supreme Court has repeatedly turned to general common-law principles, rather than state law, in applying similar civil rights statutes such as the ADA and Title VII. For example, in *Clackamas Gastroenterology Associates, P.C.* v. *Wells*, 538 U.S. 440, 448 (2003), the Court applied the general common-law meaning of "servant" to define the ADA's use of the term "employee." Similarly, the Court turned to common-law principles of agency to describe vicarious liability under Title VII. *Faragher* v. *City of Boca Raton*, 524 U.S. 775, 785 (1998) (explaining courts should seek "guidance in the common law of agency" to apply Title VII); *Burlington Indus., Inc.* v. *Ellerth*, 524 U.S. 742, 754 (1998); *Meritor Sav. Bank, FSB* v. *Vinson*, 477 U.S. 57, 72 (1986). In *Meyer* v. *Holley*, 537 U.S. 280, 285 (2003), the Court extended this analysis, applying common-law agency principles to the FHA. The Court nowhere suggested that local state laws governing agency, employment, torts, or housing should apply. Citing some of these cases in applying the *Kimbell* factors, this Court has observed that "the ADA and Title VII require uniform federal definitions of the terms 'employee' and 'agent,' respectively." *General Battery Corp.*, 423 F.3d at 300.

Other courts have routinely turned to federal common law in enforcing civil rights statutes. For example, the Second Circuit applied federal common law on

agency, instead of state agency rules, "[i]n order to avoid predicating liability for

[FHA] violations on the vagaries of state law." *Cabrera* v. *Jakabovitz*, 24 F.3d

372, 386 n.13 (2d Cir. 1994); see also *Chicago* v. *Matchmaker Real Estate Sales*

*Crt., Inc.*, 982 F.2d 1086, 1097 (7th Cir. 1992), cert. denied, 508 U.S. 972 (1993);

*Northside Realty Assocs., Inc.* v. *United States*, 605 F.2d 1348, 1354 n.13 (5th Cir.

1979), superseded by statute, 42 U.S.C. 3614(d)(1)(B), on other grounds, as

recognized by *United States* v. *City of Jackson*, 359 F. 3d 727, 736-737 (5th Cir.

2004).  Similarly, "[f]ederal standards govern the determination of damages under

the federal civil rights statutes." *Garrick* v. *City & Cnty. of Denver*, 652 F.2d 969,

971 (10th Cir. 1981); cf. *Savarese* v. *Agriss*, 883 F.2d 1194, 1207 (3d Cir. 1989)

(reversing lower court's use of state law to determine damages in a Section 1983

case).

Even more than in other civil rights contexts, application of a state survival

statute can interfere with the purposes of the FHA.  Because people with some

disabilities may be in poor health, adopting restrictive state rules in this context is

particularly pernicious.  It may motivate defendants in certain jurisdictions to drag

out litigation or settlement in the hopes that a plaintiff with a terminal illness or a

life-threatening disability will die.  See *Oliver* v. *United States Army*, 758 F. Supp.

484, 485-488 & n.1 (E.D. Ark. 1990) (holding federal Rehabilitation Act claim

survived plaintiff's death and pointing out that "given the high mortality of AIDS

patients," potential defendants "may in fact feel free to discriminate against them, taking sanctuary in the knowledge that the[ir] cause of action will likely abate").

There are other situations where application of a state rule effectively precludes vindication of federal rights, and in these cases courts do not apply the state rule. For example, courts do not apply a state statute of limitations period where it is too short to allow a necessary investigation by a federal agency. *Occidental Life Ins. Co.* v. *EEOC*, 432 U.S. 355, 367-369 (1977). And a very short state statute of limitations period may be inconsistent with federal policy. The Supreme Court stated, in refusing to apply a six-month state statute of limitation to a Section 1981 claim, that such a restrictive state rule "is manifestly inconsistent with the central objective of the Reconstruction-Era civil rights statutes, which is to ensure that individuals whose federal constitutional or statutory rights are abridged may recover damages or secure injunctive relief." *Burnett* v. *Grattan*, 468 U.S. 42, 54-55 (1984).

The third *Kimbell* factor – whether the application of federal law will interfere with commercial arrangements made in reliance on state law – also weighs against the adoption of state law here. Unlike the parties in *Kimbell*, who had made business loans and were contesting the priority of federal over private liens, the parties here have not relied on Virgin Islands survival statutes in their commercial arrangements. Defendants did not rely on the survival of any future

FHA action when they created or applied the condominium policy.  Here,

application of a federal common-law rule would not "upset commercial

expectations that state law would govern."  *In re Columbia Gas Sys. Inc.*, 997 F.2d

at 1055; see also *Ayers* v. *Philadelphia Hous. Auth.*, 908 F.2d 1184, 1191 (3d Cir.

1990).

Indeed, civil rights is not an area where reliance on state law is generally

important.  This Court has explained that "[t]he displacement of state law is

particularly disfavored in the area of *corporate law*, because business decisions

typically proceed in reliance on the applicable state standards."  *General Battery*

*Corp.*, 423 F.3d at 299 (emphasis added).  In *Reo* v. *United States*, 98 F.3d 73, 76

(3d Cir. 1996), this Court explained that state-law standards have been adopted in

areas where state law is particularly dominant, "such as corporation law,

commercial law, and family law."  (citing *Kimbell*; other citations omitted).

## III

## UNDER FEDERAL COMMON LAW, FHA CLAIMS SURVIVE A PLAINTIFF'S DEATH

Under federal common law, plaintiff Walters' claim survives her death.  The

federal rule provides that a claim generally survives if it is remedial and does not

survive if it is punitive or penal.  *Harrow* v. *Prudential Ins. Co. of Am.*, 279 F.3d

244, 248 (3d Cir. 2002); *Pierce* v. *Allen B. Du Mont Labs., Inc.*, 297 F.2d 323, 325

(3d Cir. 1961), cert. denied, 371 U.S. 814 (1962); *United States* v. *NEC Corp.*, 11

F.3d 136, 137 (11th Cir. 1993), as amended (Jan. 12, 1994) (citing *Schreiber* v.

*Sharpless*, 110 U.S. 76, 80 (1884)).  A remedial action seeks compensation, while

a penal action seeks damages "for a general wrong to the public."  *NEC Corp.*, 11

F.3d at 137.  Factors in that determination include whether (a) the purpose of the

statute is to redress individual wrongs or general public wrongs, (b) the harmed

individual or the public may recover damages, and (c) the recovery authorized is

wholly disproportionate to the harm suffered.  *Murphy* v. *Household Fin. Corp.*,

560 F.2d 206, 209 (6th Cir. 1977); see also *Genty* v. *Resolution Trust Corp.*, 937

F.2d 899, 912 (3d Cir. 1991) (citing *Murphy*).

The FHA is a remedial statute.  This Court has characterized the FHA as a

"broadly remedial statute designed to prevent and remedy invidious

discrimination."  *Mount Holly Gardens Citizens in Action, Inc.* v. *Township of*

*Mount Holly*, 658 F.3d 375, 385 (3d Cir. 2011), cert. granted in part, 133 S. Ct.

2824, and cert. dismissed, 134 S. Ct. 636 (2013).

The FHA addresses individual wrongs.  It bars "discriminat[ion] against any

*person* in the terms, conditions, or privileges of sale or rental of a dwelling."  42

U.S.C. 3604(f)(2) (emphasis added); see also *Murphy*, 560 F.2d at 209-210; *Genty*,

937 F.2d at 912 (explaining that a remedial statute "primarily redresses individual

wrongs" rather than "more general wrongs to the public").  A statute may be

remedial even if it reaches "a wrong that betrays the public welfare" and even

"though in a broader context, the public is benefitted when a successful claim is brought." *Mike Smith Pontiac, GMC, Inc.* v. *Mercedes-Benz of N. Am., Inc.*, 32 F.3d 528, 534 n.3 (11th Cir. 1994), cert. denied, 516 U.S. 1044 (1996).

Under the FHA, individual victims, rather than the public, are entitled to relief and to recover damages. The statute provides a cause of action to "[a]n aggrieved person" as a victim of discrimination. 42 U.S.C. 3613(a)(1)(A). Furthermore, recovery is not "wholly disproportionate" to the harm victims suffer. *Murphy*, 560 F.2d at 209. Recovery of compensatory damages under the FHA is based on actual harm. Cf. *Genty*, 937 F.2d at 912 (holding that treble damages provision shows a statute is punitive, because it is a "civil remedy far in excess of the amount necessary to compensate an injured RICO victim").

The Eleventh Circuit has held that Title VII, which similarly compensates victims for discrimination, is a remedial statute for purposes of determining whether a claim survives the death of the plaintiff. In *Kilgo* v. *Bowman Transportation, Inc.*, 789 F.2d 859, 876-877 (11th Cir. 1986), the court said that Title VII's primary purpose is to "remedy individual wrongs," that "[r]ecovery under Title VII also runs to the individual, not the public at large," and that the "authorized recovery under Title VII is not disproportionate to the harm suffered since * * * Title VII is intended to make whole the victims of discrimination." See also William Booth, *Survival Under the ADA: The Federal Common Law*

*Standard for Determining Survival Claims*, 2 DePaul J. Health Care L. 269, 275-278 (1998).  The same reasoning applies to suits seeking compensatory damages under the FHA.

In this case, the district court has already opined that plaintiff's action is remedial.  R. 116 at 13-16 (Order).  The court conducted this assessment to determine whether the action survived the death of a *defendant*.  R. 116 at 13-16 (Order) (concluding that FHA claim against defendant Alfred Felice survives his death).  The court allowed the FHA claim to proceed, saying "[a]t its core, the Fair Housing Act protects an individual's civil rights."  R. 116 at 10 (Order); see also R. 116 at 11-12 (Order) (citing *Murphy*, 560 F.2d at 209).  Accordingly, if the district court here had correctly considered the issue of survivability under federal common law, it would have found the plaintiff's action survived her death.

## CONCLUSION

The Court should hold that plaintiff's FHA claim survived her death.

Respectfully submitted,

VANITA GUPTA
  Principal Deputy Assistant
    Attorney General

s/ April J. Anderson
MARK L. GROSS
APRIL J. ANDERSON
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, DC 20044-4403
  (202) 616-9405

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type volume limitation imposed by Federal Rule of Appellate Procedure 32(a)(7)(B) and 29(d). The brief was prepared using Microsoft Word 2007 and contains no more than 7000 words of proportionally spaced text. The type face is Times New Roman, 14-point font. I further certify that the electronic version of this brief, prepared for submission via ECF, has been scanned with Symantec Endpoint Protection (version 12.14112.4156) and is virus-free.

s/ April J. Anderson
APRIL J. ANDERSON
 Attorney

Date:  November 23, 2015

## CERTIFICATE OF BAR MEMBERSHIP

Pursuant to Local Rules 28.3(d) and 46.1(a), I hereby certify that I am exempt from the Third Circuit's bar admission requirement as counsel to the United States.

s/ April J. Anderson
APRIL J. ANDERSON
 Attorney

Date:  November 23, 2015

**CERTIFICATE OF SERVICE**

I hereby certify that on November 23, 2015, I electronically filed the foregoing BRIEF FOR THE UNITED STATES AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFF-APPELLANT with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system.

I further certify that on November 23, 2015, seven (7) paper copies, identical to the brief filed electronically, were sent to the Clerk of the Court by U.S. certified mail.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system

s/ April J. Anderson
APRIL J. ANDERSON
Attorney