**CASE NO.: 14-4776 & 14-4777**
**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**
_____

LIANA REVOCK, EXECUTRIX OF THE ESTATE OF BARBARA WALTERS,
and JUDITH KROMENHOECK,

Appellants,

v.

COWPET BAY WEST CONDOMINIUM ASSOCIATION, et al.,

Appellees.
_____

On Appeal from the United States District Court
for the District of the Virgin Islands
Division of St. Thomas and St. John
Case No. 3:12-cv-24 & 3:12-cv-25
_____

**BRIEF OF APPELLEES COWPET BAY WEST CONDOMINIUM
ASSOCIATION, INC., THE BOARD OF THE COWPET BAY WEST
CONDOMINIUM ASSOCIATION, ROBERT COCKAYNE, VINCENT
VERDIRAMO, AND MAX HARCOURT**
_____

W. TODD BOYD, Esq.
Florida Bar No. 770558
BOYD RICHARDS PARKER &
COLONNELLI, P.L.
100 SE 2nd Street, Suite 2600
Miami, Florida 33131
Telephone: (786) 425-1045
Facsimile: (786) 425-3905
ServiceMIA@boydlawgroup.com
tboyd@boydlawgroup.com
_Counsel for Cowpet Appellees and
Max Harcourt_

i

# **TABLE OF CONTENTS**

Cover Page………………………………………………………………… i

Table of Contents……………………………………………………….. ii

Table of Authorities…………………………………………………… iv

Statement Regarding Oral Argument………………………….……...1

Statement of Subject and Appellate Jurisdiction………………………….. 1

Statement of Issues Presented for Review………………………………… 1

Statement of Related Proceedings………………………………………… 2

Standard of Review………………………………………………..…… 2

Statement of the Case………………………………………………... 2

   A. FACTS………………………………………………………... 2

   B. PROCEDURAL BACKGROUND………………………………... 8

Summary of Argument……………………………………….………….. 11

Argument…………………………………………………………… 12

   I.    THIS COURT LACKS JURISDICTION OVER THE FINAL
        JUDGMENTS……………………………………………. 12

      A.  APPELLANTS' NOTICES OF APPEAL SOUGHT REVIEW OF
         THE DISTRICT COURT'S NON-FINAL ORDER………......... 12

      B. APPELLANTS' NOTICES OF APPEAL DO NOT COMPLY WITH
         FEDERAL RULES OF APPELLATE PROCEDURE 3 AND 4… 14

      C. THERE IS NO APPEAL PENDING AGAINST MAX HARCOURT
         – THIS COURT HAS NO JURISDICTION OVER MAX
         HARCOURT……………………………………………… 18

II.    THE RECORD IS DEVOID OF EVIDENCE SHOWING A
       CONSTRUCTIVE DENIAL…………………………………………….. 19

       A. THERE WAS NO DENIAL, CONSTRUCTIVE OR
          OTHERWISE..…………………………………………………... 24

       B. THERE IS NO EVIDENCE IN THE RECORD THAT CREATES
          AN ISSUE OF FACT PRECLUDING SUMMARY
          JUDGMENT………………………………………………………… 26

III.   THERE IS NO RECORD EVIDENCE THAT THE COWPET
       APPELLEES VIOLATED 42 U.S.C. § 3617…………………………. 30

IV.    STATE LAW, AND NOT FEDERAL COMMON LAW, GOVERNS
       THE SURVIVABILITY OF WALTERS'S CLAIM PURSUANT TO 42
       U.S.C. SECTION 1988………………………………...………………… 37

V.     THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION
       IN DISMISSING WALTERS' STATE LAW CLAIMS……………… 43

Conclusion…………………………………………………………….… 44

Certificate of Service……………………………………………………... 45

Certificate of Bar Membership…………………………………………... 46

Certificate of Compliance with Federal Rule of Appellate Procedure 32……….. 46

Certificate of Identical Compliance of Briefs…………………………… 46

Certificate of Virus Check………………………………………………. 47

# TABLE OF AUTHORITIES

## CASES

*Bhogaita v. Altomonte Heights Condominium Association, Inc.*, 765 F.3d 1277 at 1286 (11th Cir. 2014)…………………………………………………..… 25

*Bloch v. Frischholz*, 587 F.3d 771, 773-74 (7th Cir. 2009)………………………. 34

*Brazier v. Cherry*, 293 F.2d 401, 407 (5th Cir. 1961)……………………….... 39

*Broome v. United States*, 870 F.2d 95, 99 (3rd Cir. 1989)…………………………. 2

*Catlin v. United States*, 324 U.S. 229, 233 (1945)……………………….…… 13

*Cmty. House, Inc. v. City of Boise*, 2012 U.S. Dist. LEXIS 121412, at *4 (D. Idaho Aug. 24, 2012)………………………………………………………… 38, 39, 41

*Cmty. Servs, Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3rd Cir. 2005)…… 2

*Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988)…………………………. 28

*Crudup v. Barton*, No. 98 C 1498, U.S. Dist. LEXIS 16620 at *5 (N.D. Ill. Oct. 23, 2000)……………………………………………………………………..... 22, 27

*Cushing v. Moore*, 970 F. 2d 1103, 1110 (2d Cir. 1992)…………………… 43, 44

*Delgado v. Pawtucket Police Dep't*, 668 F. 3d 42, 46 (1st Cir. 2012)……… 43, 44

*DiCenso v. Cisneros*, 96 F. 3d 1004, 1006 (7th Cir. 1996)……………… 31, 35, 36

*DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006)……………………………………………………………..… 20

*East-Miller v. Lake County Highway Dep't*, 421 F.3d, 558, 563 (7th Cir. 2005)......................................................................................................... 30, 36

*EF Operating Corp. v. Am. Bldgs.*, 993 F.2d 1046 (3d Cir. 1993)……………… 37

*Eichenholtz v. Brennan*, 52 F.3d 478, 486 (3d Cir. 1995)…………………..…… 40

*Elfman Motors, Inc. v. Chrysler Corp.*, 567 F.2d 1252, 1254 (3d Cir. 1977)...14, 15

*Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 175 (3d Cir. 1999)...... 2, 43, 44

*Ford v. Wilson*, 90 F.3d 245, 247 (7th Cir. 1996)............................... 22, 27

*Gov't of the Virgin Islands v. Mills*, 634 F.3d 746, 752 (3d Cir. 2011)........ 14, 16

*Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F. 3d 327, 330 (7th Cir. 2004)............................................... 30, 31, 32, 34, 35, 36

*Hawn v. Shoreline Towers Phase 1 Condominium Ass'n, Inc.*, 347 Fed. App'x 464,467 (11th Cir. 2009)............................................................ 20

*Honce v. Vigil*, 1 F. 3d 1085, 1090 (10th Cir. 1993)........................ 31, 35, 36

*Hooks v. Hooks*, 771 F.2d 935, 945-46 (6th Cir. 1985)............................. 28

*Hovsons, Inc. v. Tp. Of Brick*, 89 F.3d 1096, 1101 (3rd Cir. 1996)................. 2

*Huckabay v. Moore*, 142 F.3d 233 (5th Cir. 1995)................................ 28

*Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 898 (7th Cir. 1997)............. 39

*In re Columbia Gas Sys.*, 997 F. 2d 1039, 1055 (3d Cir. 1993)..................... 38

*Lew v. Kona Hospital*, 754 F.2d 1420, 1423-24 (9th Cir. 1985)................. 28, 29

*Maher Terminals, LLC v. Port Auth. of N.Y. & N.J.*, 805 F.3d 98, 104 (3d Cir. 2015)................................................................................ 2

*Mertiage Homes Corp. v. Hancock*, 522 F. Supp. 2d 1203, 1218 at n. 5 (D. Ariz. 2007)............................................................................. 23, 27

*Miller v. Apts. & Homes*, 646 F.2d 101, 104 (3d Cir. 1981)................... 37, 39

*Morton Int'l, Inc. v. A.E. Staley Mfg. Co.*, 460 F.3d 470, 476 (3d Cir. 2006)...... 13

v

*Moyer v. Berks Heim Nursing Home*, No. 13-cv-4497, 2014 U.S. Dist. LEXIS 36600 at *6 (E.D. Penn. 2014)…………………………………………………………… 39

*Nordwall v. PHC-LAS Cruces, Inc.*, 960 F. Supp. 2d 1200 (D.N.M. 2013)…....... 39

*Overlook Mut. Homes, Inc. v. Spencer*, 415 Fed. Appx. 617, 623 (6th Cir. 2011)………………………………………………………………………. 20, 26

*Polonski v. Trump Taj Mahal Assocs.,* 137 F.3d 139, 144 (3d Cir.1998)………. 19

*Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985)………………………………… 28

*Reilly v. City of Atl. City*, 532 F.3d 216, 223 (3rd Cir. 2008)…………………….. 2

*Robertson v. Wegmann*, 436 U.S. 584 (1978)………………….. 37, 39, 40, 41, 42

*Rosenblum v. Colorado Dep't of Health*, 878 F. Supp. 1404, 1409 (D. Colo. 1994)………………………………………………………….…………………… 39

*Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1218-19 (11th Cir. 2008)… 20

*Scott v. Univ. of Delaware*, 601 F.2d 76, 81 n. 8 (3d Cir. 1979)…………..……… 37

*Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 160 (3d Cir. 2004)......................................................................................................... 13, 15

*Sheinkopf v. Stone*, 927 F.2d 1259, 1262 (1st Cir. 1991)…………..………….. 28

*Slade v. U.S. Postal Serv.*, 952 F.2d 357, 360 (10th Cir. 1991)…………..……… 39

*United States v. Gen. Battery Copr.*, 423 F.3d 294 (3d Cir. 2005)……………… 40

*United States v. Hialeah Housing Authority*, 418 F. App'x 872, 875 (11th Cir. 2011)……………………………….………………………………… 20, 21, 22, 25

*United States v. Kimbell Foods*, 440 U.S. 715 (1979)………………………….. 40

*United States v. Pisani*, 646 F.2d 83, 86 (3d Cir. 1981)…………..……………. 40

*Veater v. Brooklane Apts.*, 2014 U.S. Dist. LEXIS 44118, at *19-22 (D. Utah Mar. 31, 2014)……………………………………………………………………..… 38

*Walker v. City of Lakewood,* 272 F.3d 1114 (9th Cir. 2001)…………………… 34

## STATUTES AND OTHER AUTHORITIES

22 U.S.C. § 1331…………………………………………………………………… 1

28 U.S.C. § 1291…………………………………………………………………… 1

28 U.S.C. § 1294…………………………………………………………………… 1

28 U.S.C. §1367……………………………………………………………….…... 43

42 U.S.C. § 1983………………………………………………………………… 39

42 U.S.C. § 1988……………………………..…………… 12, 37, 38, 39, 40, 41, 42, 44

42 U.S.C. § 3303-3306……………………………………………………… 30, 36

42 U.S.C. § 3613………………………….....……………………………………. 37, 41

42 U.S.C. § 3617………………….…………………………. 1, 8, 30, 31, 32, 34, 35, 36

42 U.S.C. §3604(f)(3)(B)……………………………....………………….. 1, 12, 24

48 U.S.C. § 1612 (a)………………….……………………………………………… 1

Federal Rule of Appellate Procedure 3(c)(1)(B)……………………………..….. 19

Federal Rule of Appellate Procedure 4(a)(1)(A)………………………..………… 16

Federal Rule of Appellate Procedure 4(a)(2)………………………………………… 16

Federal Rule of Civil Procedure 54(b)……………………..…………………… 13

Federal Rule of Civil Procedure 56……………………………..………………. 28

Federal Rule of Civil Procedure 60(a)…………………………………………….. 16

Revised Organic Act of 1954…………………………………………………….. 1

Virgin Islands Code Annotated title 15, § 601………………………………….. 41

Virgin Islands Code Annotated title 5, § 76-77………………………………… 41

## STATEMENT REGARDING ORAL ARGUMENT

Appellees respectfully request oral argument as it would be beneficial to the Court's review of the matters contained in this Appeal.

## STATEMENT OF SUBJECT AND APPELLATE JURISDICTION

The District Court of the Virgin Islands exercised subject matter jurisdiction over both *Walters v. Cowpet Bay West Condominium Association* (Case No.: 3-12-cv-00024-CVG-RM) (the Walters action) and *Kromenhoek v. Cowpet Bay West Condominium Association et al.* (Case No.: 3:12-cv-00025-CVG-RM) (the Kromenhoek action) pursuant to 22 U.S.C. § 1331 (federal question) and section 22 of the Revised Organic Act of 1954. 48 U.S.C. § 1612 (a).

This Court's jurisdiction over Final Judgments of the District Court of the Virgin Islands arises pursuant to 28 U.S.C. §§'s 1291 and 1294. However, as discussed below, this Court does not have jurisdiction over the instant Appeal.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

I.  Whether Appellants' December 17, 2014 Notices Of Appeal Vested This Court With Jurisdiction Over The Judgments Later Entered December 24, 2014 And January 2, 2015.

II. Whether Appellants' Failed To File Record Evidence Contradicting Appellees' Submission Establishing That Appellees Did Not Constructively Deny Kromenhoek's Request For A Reasonable Accommodation Pursuant To 42 U.S.C. §3604(F)(3)(B).

III. Whether Appellants Failed To Submit Evidence That The Cowpet Appellees Violated 42 U.S.C. § 3617.

1

IV.    Whether Walters Claims Were Extinguished With Her Death.

V.    Whether The District Court Was Within Its Discretion In Declining To Exercise Supplemental Jurisdiction Over Appellants' State Law Claims.

## STATEMENT OF RELATED PROCEEDINGS

There are no related proceedings.

## STANDARD OF REVIEW

The appellate jurisdictional issue is reviewed *de novo. Reilly v. City of Atl. City*, 532 F.3d 216, 223 (3d Cir. 2008). Plenary review is afforded to the District Court's Order Granting Summary Judgment for Cowpet Appellees'. *See Broome v. United States*, 870 F.2d 95, 99 (3d Cir. 1989); *Hovsons, Inc. v. Tp. Of Brick*, 89 F.3d 1096, 1101 (3d Cir. 1996); *Cmty. Servs, Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005). The District Court's refusal to exercise supplemental jurisdiction over the state law claims is reviewed for abuse of discretion. *Maher Terminals, LLC v. Port Auth. of N.Y. & N.J.*, 805 F.3d 98, 104 (3d Cir. 2015); *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 175 (3d Cir. 1999).

## STATEMENT OF THE CASE

### A. FACTS

Cowpet Bay West ("CBW") has prohibited dogs since 2007. On December 20, 2007, the By-Laws of Cowpet Bay West Condominium Association were adopted. J.A., Vol. II, Pgs. 570; 552-571. Exhibit I of the By-Laws are Rules and Regulations for Cowpet Bay West. Included in these rules is Rule 6 which

2

provides that: "Dogs and farm animals are prohibited, and owners will be fined as specified by the Board of Directors."  J.A., Vol. II, Pg. 570.[1]

On March 11, 2010, Kromenhoek, as a board member of CPW, introduced a petition with supporting signatures of several owners seeking to permit dogs (subject to certain caveats) on CBW property.   There were no references to emotional support pets in the petition.  J.A., Vol. II, Pg. 572-73. No action was taken with respect to the petition.  On October 20, 2011, resident Susan Anderson emailed the Board complaining that she saw Kromenhoek with a large dog on the property and requested that the Board enforce Rule 6. Walters, a Board Member at the time (and also an owner of a service dog), forwarded Anderson's email to Kromenhoek, who was no longer on the Board, that same day. J.A., Vol. II, Pg. 574. Anderson's email was the first notice the Board received that there was a dog on CPW property.

Harcourt, then President of the CPW Board, responded to Anderson's email (copying – among others – fellow board member Walters) explaining that while the current rules prohibit dogs, the Board was considering formal changes to the By-Laws regarding service animals.   Harcourt further explained that any fines

---

[1] References to the Joint Appendix will be notated as follows: J.A., Vol. ___, Pg. ___. References to Appellants' Principal Brief will be notated as follows: P.B., Pg. ___. References to the United States Amicus Brief will be notated as follows: U.S., Pg.___.

could be mitigated if the offenders submitted appropriate paperwork verifying that the dogs were needed as service dogs. J.A., Vol. II, Pg. 575. Walters responded to Harcourt's email and blind copied Kromenhoek, stating "I don't think that would be a problem, but the information must be kept confidential, or else the board member who discloses any information should himself/herself be subjected to fine or suit or both." J.A., Vol. II, Pg. 575.  Kromenhoek did not respond to this email.

On October 27, 2011,  Walters, with  Kromenhoek again blind copied, sent an email to the Board indicating that there was undescribed paperwork on file in the property manager's office regarding Walters' own need for a service dog and that (for reasons of privacy) no one from the Board was to view the paperwork. J.A., Vol. II, Pg. 492. Kromenhoek did not respond to this email either and further failed to inform the Board that she had medical verifications in her file at the property manager's office supporting her need for a service dog. J.A., Vol. II, Pg. 578. Neither Walters nor Kromenhoek submitted any request for an accommodation with supporting documentation for review and approval by the Board at this time.  J.A., Vol. II, Pg. 612-613, ¶¶'s 5-9.

On October 28, 2011, Harcourt emailed Kromenhoek and Walters, stating that Louanne Schechter, a fellow board member, had informed him that both

4

Walters and Kromenhoek had "papers in the office" regarding service dogs,[2] but neither had formally applied for an exception to Rule 6. He provided Walters and Kromenhoek ten (10) days to submit a request with supporting documentation seeking an accommodation. J.A., Vol. II, Pg. 580. On that same day, Walters responded to Harcourt that she was notifying the Board that she had a "service dog", but despite the fact that she was expressly advised that she had ten (10) days to *request an accommodation*, she did not request an accommodation or provide any medical certifications to the board for review. J.A., Vol. II, Pg. 581 (emphasis added). In fact, Walters made clear that her "medical information is no one's business." J.A., Vol. II, Pg. 800.

Kromenhoek emailed Harcourt on October 30, 2011, indicating that she had submitted paperwork to Schechter at the property manager's office and that she trusts Ms. Schechter to protect her privacy. J.A., Vol. II, Pg. 583-584. Kromenhoek expressly stated that "this is not a request for you to consider, but this is informing you that I have a service dog and I am not in any violation." J.A., Vol. II, Pg. 583. Kromenhoek offered to meet with Harcourt (only) if he would execute a confidentiality agreement and assume personal liability for any disclosure of

---

[2] Louanne Schechter attested that Kromenhoek showed her a letter from her doctor prescribing an emotional support dog for her condition and a copy of her certification for her dog, Oliver. J.A., Vol. II, Pg. 756, ¶¶'s 5-6.

information related to her purported need for an accommodation.  J.A., Vol. II, Pg. 583-584.  Like Walters, Kromenhoek did not file a formal request for an accommodation.

While Appellants allege that Harcourt reviewed their documentation, there is no record evidence supporting this allegation.  Harcourt knew, through Schechter, that Kromenhoek provided Schechter paperwork, but the record also shows that Kromenhoek predicated Harcourt's review on the condition that he execute a confidentiality agreement, which was never tendered.  P.B., Pg. 13; J.A., Vol. II, Pg. 583-584. Neither Harcourt nor any member of the Board, consistent with the conditions imposed by Kromenhoek, ever reviewed the "paperwork" she gave Schechter in July of 2011. J.A., Vol. II, Pg. 612-613, ¶¶'s 6-7;756, ¶ 5; 879; 1255-56. Appellees Cockayne and Verdiramo filed Declarations supporting their respective summary judgment motions and attesting under oath, based on their own personal knowledge, that they never reviewed any paperwork in Kromenhoek's file at the Cowpet Bay West office. J.A., Vol. II, Pg. 879, 1855-56. Harcourt was deceased at the time the Cowpet Appellees moved for summary judgment.

On December 16, 2011, Walters' Counsel sent a letter to Harcourt indicating that Walters was disabled and qualified to keep her dog in her unit but did not provide  any documentation to support Walters' disability.  J.A., Vol. II, Pg. 585.

6

After receipt of the letter, the Board met in January 2012 and retained counsel for legal advice related to requests for exceptions to the dog rule. J.A., Vol. II, Pgs. 832-833. On January 12, 2012, Walters filed a Complaint with the Department of Housing and Urban Development ("HUD") alleging housing discrimination in violation of the Fair Housing Act. J.A., Vol. II, Pg. 499-518; 522. In the second week of March 2012, Walters submitted her request for accommodation and medical verifications to the Board.  J.A., Vol. II, Pg. 517; 592-605; 612 ¶ 6.   On March 26, 2012 the Board reviewed Walters' documents and agreed to her requested accommodation.  The Board also agreed to waive any fines assessed to Walters for violation of the "No Dog Policy" J.A., Vol. II, Pg. 519.

On March 1, 2012, Kromenhoek filed a Complaint with the Department of Housing and Urban Development alleging housing discrimination in violation of the Fair Housing Act. J.A., Vol. II, Pg. 604, 586-91. Kromenhoek then submitted her request for accommodation and medical verifications to newly elected Board President Ed Wardwell without conditions on reviewing those documents.  J.A., Vol. II, Pg. 592-605; 607-611; 612-614. On March 26, 2012 the Board reviewed Kromenhoek's documents and agreed to her requested "accommodation" and to withdraw any fines assessed against her.  J.A., Vol. II, Pg. 606; 592-605; 612-614.

On April 16, 2012, HUD dismissed Walters' Complaint finding that Walters only formally requested a reasonable accommodation in March 2012 and that in

7

April 2012, the Board granted the request. J.A., Vol. II, Pg. 522-525. Therefore, there was no reasonable cause to believe that the Appellees violated the Fair Housing Act. *Id.* On June 5, 2012, HUD dismissed Kromenhoek's Complaint finding that Kromenhoek only formally requested a reasonable accommodation in March 2012 and that in April 2012, the Board granted the request. Therefore, there was no reasonable cause to believe there was a violation of the Fair Housing Act. J.A., Vol. II, Pg. 607-611. The Board did not review or discuss the contents of Kromenhoek's medical verification and accommodation request, until March 2012, when Kromenhoek unconditionally submitted them to Wardwell. J.A., Vol. II, Pg. 613. The Board never prevented Walters or Kromenhoek from accessing or using their units or any common areas at any time with the accompaniment of their dogs and waived any fines related to Rule 6. J.A., Vol. II, Pg. 613, ¶¶'s 8-9.

**B. <u>PROCEDURAL BACKGROUND</u>**

Walters and Kromenhoek each filed virtually identical lawsuits against the Board, Association, and various others, alleging a plethora of federal and state causes of action, including violation of the FHA, violation of Section 3617 of the FHAA, violation of the ADA, improper imposition of By-Laws, negligent and intentional infliction of emotional distress, negligence, conspiracy, defamation, slander and invasion of privacy. Defendants filed a number of motions for Summary Judgment. By Memorandum and Order dated November 18, 2014, the

court, Gomez, J., granted the various motions for summary judgment on the federal causes of action (against all defendants except defendants Harcourt and Felice) and declined to exercise supplemental jurisdiction as to the non-federal causes of action.

The November 18, 2014 Memorandum and Opinion granted Summary Judgment for Appellees Vincent Verdiramo, Robert Cockayne, the Cowpet Bay West Condominium Association ("the Association"), and the Board of the Cowpet Bay West Condominium Association ("the Board")(collectively the "Cowpet Appellees") and Lance Talkington.[3] J.A., Vol. I, Pg. 29-72; 73-76. The counts against defendants Harcourt[4] and Felice remained pending as they were the subject of a separate motion, and as noted in footnote 10, were "the subject of a separate, forthcoming opinion." On November 19, 2014, the District Court issued an Amended Memorandum Opinion correcting a scrivener's error in the November 18, 2014 Memorandum and Opinion. J.A., Vol. I., Pg. 77-120.

---

[3] Appellee Lance Talkington is represented by separate counsel and filed a separate Brief in this Appeal.

[4] While named as an Appellee, Harcourt is deceased and not a proper Appellee. See Cowpet's Opposition to Appellants' Motion to Substitute Irene Harcourt filed in 14-4776 and 14-4777. Undersigned counsel represented Harcourt in the below litigation and in the instant Appeal to the extent motions/briefs were directed at Harcourt by Appellants.

9

On December 17, 2014, Kromenhoek and Walters ("Appellants" will be used when referring to them collectively)[5]  filed a Notice of Appeal in both the *Kromenhoek* and *Walters* matters appealing the November 18, 2014 Order and Judgment.  J.A., Vol. I, Pg. 1-2; 3-4. The November 18, 2014 Order is the only Order Appellants appealed.

On December 23, 2014, the District Court entered a text entry Order vacating the memorandum opinions entered on November 18, 2014 and November 19, 2014 and the judgment entered on November 18, 2014 as premature[6]. The following day the District Court issued a Memorandum Opinion and Judgment dismissing all of Kromenhoek's claims against the defendants and entered a separate Memorandum Opinion and Judgment in favor of Harcourt and Felice. J.A., Vol. I, Pg. 121-165.   On December 24, 2014, the instant Appeal was docketed.    No appeal was taken from the December 24th Order and Judgment (only from the November 18, 2014 order which was subsequently vacated).

---

[5] For the sake of simplicity, the name "Walters" is used in lieu of the name of her executrix in this Brief.

[6] The November 18, 2014 memorandum opinions and judgment was premature because it did not adjuidcate all claims against all of the Defendants, there was no adjudication of the  claims against the deceased Defendants claims (Harcourt and Felice) and the judgment did not separate and adjudicate Walters'  claims.

On January 2, 2015, the District Court issued a memorandum opinion and judgment in the *Walters* case (*Walters v. Cowpet Bay West Condominum Association, Inc. et al*.) holding that Walters' federal claims did not survive her death, and dismissed all of Walter's claims. J.A., Vol. I, Pg. 5-28. The District Court also declined to exercise supplemental jurisdiction over the local claims based on Virgin Islands Law. *Id*. at 25. No Appeal was taken from the January 2, 2015 Order and Judgment. There were no further notices of appeal filed by Walters or Kromenhoek subsequent to the December 17, 2014 Notice of Appeal.

## SUMMARY OF ARGUMENT

Appellants' failed to appeal the District Court's Final Judgments in both the *Walters* and *Kromenhoek* matters; therefore, this Court lacks jurisdiction to hear this appeal. Appellants' December 17, 2014 Notices of Appeal appealed only the November 18, 2014 non-final Order that was vacated by the District Court. The November 18, 2014 Order was not docketed in the *Walters* matter. Final Judgment was entered in both *Kromenhoek* (December 24, 2014) and *Walters* (January 2, 2015) subsequent to the December 17, 2014 Notices of Appeal. Appellants failed to appeal the Final Judgments.

Should this Court accept jurisdiction of this Appeal, the District Court's entry of Final Judgment on Kromenhoek's claims was proper as a matter of law because Kromenhoek presented no evidence supporting her claims. Kromenhoek

11

provided neither sworn testimony nor other evidence of any CWP conduct supporting a claim under the FHA.  There was no evidence of a constructive denial of a request for a reasonable accommodation constituting a violation of 42 U.S.C. § 3604 (f)(3)(b) and no evidence of harassment by the Cowpet Appellees.  Finally, Walters' claims did not survive her death pursuant to 42 U.S.C. § 1988 and Virgin Islands law. The District Court also properly exercised its discretion in declining to exercise supplemental jurisdiction over the Appellants state law claims.

## **ARGUMENT**

### I.    **THIS COURT LACKS JURISDICTION OVER THE FINAL JUDGMENTS.**

Appellants filed identical notices of appeal for both the *Kromenhoek* and *Walters* matters seeking review of the District Court's November 18, 2014 order. However, this order was non-final as it did not dispose of all parties and all claims (claims remained against Harcourt and Felice) and was vacated after the notices of appeal were filed – rendering the notices of appeal moot. Moreover, not only did the notices fail to identify the subsequently entered judgments Appellants ask this Court to reverse, but the filing of the notices was untimely. As such, this Court lacks jurisdiction over this Appeal.

### A. **APPELLANTS' NOTICES OF APPEAL SOUGHT REVIEW OF THE DISTRICT COURT'S NON-FINAL ORDER THAT WAS VACATED.**

12

This Court has jurisdiction over appeals from all final decisions of the District Court of the Virgin Islands. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Morton Int'l, Inc. v. A.E. Staley Mfg. Co.*, 460 F.3d 470, 476 (3d Cir. 2006) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945). Furthermore,

> . . . [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties *does not end the action* as to any of the claims or parties and *may be revised* at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b) (emphasis added). Notably, an order granting summary judgment that disposes of claims against less than all parties is not deemed final for purposes of appellate review. *Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 160 (3d Cir. 2004) (only an order granting summary judgment that fully disposes of all claims among all parties is a final order).

Appellants filed identical notices of appeal seeking review of "an order entered by the District Court of the United States Virgin Islands on November 18, 2014, (Docket No. 224) granting Defendants their motions for summary judgment." J.A., Vol. I, Pg. 1-4. This November 18, 2014 was only docketed in the *Kromenhoek* matter.  Additionally, that order granted summary judgment to some, but not all,

13

defendants in the *Kromenhoek* matter. Specifically, the order did not adjudicate the claims against board members Felice and Harcourt. J.A., Vol. I at 72-76. As such, the District Court's order was not final. In addition, the District Court subsequently vacated this non-final order, which rendered Appellants' notices of appeal moot. J.A., Vol. II, Pg. 51. As such, this Court lacks jurisdiction to review the Final Judgments dated December 24, 2014 and January 2, 2015.

### B. APPELLANTS' NOTICES OF APPEAL DO NOT COMPLY WITH FEDERAL RULES OF APPELLATE PROCEDURE 3 AND 4.

Additionally, Appellants' notices of appeal were fatally defective. Rule 3 of the Federal Rules of Appellate Procedure requires that a notice of appeal "designate the judgment, order or part thereof being appealed." Moreover, when a party appeals a specific judgment, the court of appeals does not acquire "jurisdiction to review other judgments or portions thereof not so specified or otherwise fairly to be inferred from the notice." *Elfman Motors, Inc. v. Chrysler Corp.*, 567 F.2d 1252, 1254 (3d Cir. 1977) (dismissing the appeal as the judgment sought for review was "nowhere referred to, directly or indirectly, in the notice of appeal"). A notice of appeal that fails to strictly comply with the judgment designation requirement may still be deemed adequate if in light of all the circumstances, "it is reasonably clear which judgment the party seeks to appeal." *Gov't of the Virgin Islands v. Mills*, 634 F.3d 746, 752 (3d Cir. 2011). This is surely not the case here.

14

Kromenhoek seeks review of the District Court's two final judgments entered on December 24, 2014 and Walters seeks review of the District Court's final judgment entered on January 2, 2015.[7] P.B., Pg. 3, 11. However, their Notices of Appeal in no way reference the final judgments they now challenge. To the contrary, the Notices of Appeal expressly request review of the non-final November 18, 2014 order. It cannot be fairly inferred from either notice that Appellants intended to include the December 24, 2014 and January 2, 2015 final judgments; judgments that did not even exist at the time the notices were filed.

Further, the *Elfman* court specifically addressed that liberal construction of Rule 3 is appropriate when the order or judgment identified in the notice of appeal *directly relates back* to the judgment or order actually sought to be reviewed. *Elfman*, 567 F.2d at 1254 (emphasis added). The opposite is true here as Appellants request the notices to apply to future judgments. As such, this is not the situation in which liberal construction of Rule 3 is appropriate. Moreover, allowing Appellants to utilize a notice to appeal orders that could not have even been contemplated at the time of filing would wholly frustrate the intent of Rule 3. *See*

---

[7] Because both the December 24, 2014 and January 2, 2015 judgments fully dispose of all claims against all parties, they are considered final. *Selkridge*, 360 F.3d at 160.

15

*Mills*, 634 F.3d at 751 (recognizing that the purpose of a notice of appeal is to notify the court and opposing parties as to the judgment or order being appealed).

In addition, the notices of appeal do not comply with Rule 4 of the Federal Rules of Appellate Procedure, which requires that a notice of appeal "must be filed with the district clerk within 30 days *after entry* of the judgment or order appealed from." Fed. R. App. P. 4(a)(1)(A) (emphasis added). Appellants seek review of the December 24, 2014 and January 2, 2015 final judgments; however, the notices of appeal were filed on December 17, 2014, well before the Court entered those judgments.

Appellants rely on Section (a)(2) of Rule 4, which provides that a notice of appeal filed after the court announces a decision or order, but before the entry of the corresponding judgment or order, is treated as filed on the date of and after the entry. However, this rule is inapplicable here where Kromenhoek and Walters filed Notices of Appeal of the November 18, 2014 Order, after the entry of same and the November 18, 2014 Order was subsequently vacated by the District Court after Kromenhoek and Walters filed their Notices of Appeal.[8] Appellants' attempt to use

---

[8] Pursuant to Rule 60 of the Federal Rules of Civil Procedure, "a court may correct . . . a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). However, "after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave." *Id.* Here, the

Rule 4 (a)(2) in a creative but improper way in an effort to legitimize what was likely an inadvertent mistake. Rule 4 (a)(2) applies in the instance where a court announces a ruling in open court and a Notice of Appeal is filed in the interim between the oral announcement of the ruling and the actual entry of the judgment or order corresponding to the oral announcement at hearing. If a notice of appeal is filed in an overabundance of caution, it locks the party filing the notice of appeal in as being filed when the Judgment or Order is eventually entered on the docket by the court. When the District Court vacated the November 18, 2014 Memorandum and Opinion and Judgment, Kromenhoek and Walters December 17, 2014 Notices of Appeal were mooted.

Once the District Court vacated the November 18, 2014 Order, any subsequent final order Appellants sought to appeal required an amended notice of appeal designating the new, specific order being appealed. Since Appellants failed to properly and timely amend the notices of appeal, their opportunity to appeal the

---

December 23, 2014 text only order entered by the District Court made clear that the District Court was vacating the November 18, 2014 order as being entered prematurely thus properly correcting an oversight. The District Court did so prior to the December 24, 2014 docketing of the instant appeal. Therefore, the District Court had full authority to vacate the order without first seeking leave of this appellate court.

17

later orders has long expired. As such, this Court does not have jurisdiction over the instant Appeal and it should be dismissed.

### C. There Is No Appeal Pending Against Max Harcourt-- This Court Has No Jurisdiction Over Max Harcourt

Max Harcourt passed away approximately two (2) years prior to entry of Judgement in his favor in both the *Kromenhoek* and *Walters* matters. On October 4, 2012, a Notice of Death of Defendant Max Harcourt was filed. J.A., Vol. II, Pg. 169. At no time was any party substituted into Harcourt's stead. Instead, on July 28, 2015, Appellants' filed an untimely and unsupported Motion to Substitute Irene Harcourt as the Real Party in Interest with *this* Court. The Cowpet Appellees' opposed the Motion outlining the legal impropriety of Appellants' Motion to Substitute and the fact that there is no Appeal pending against Max Harcourt.

Appellants' did not appeal the December 24, 2014 Memorandum Opinion and Judgment in favor of Harcourt entered in *Kromenhoek* or the January 2, 2015 Memorandum Opinion and Judgment entered in favor of Harcourt in *Walters*. Appellants' Notice of Appeal is addressed solely to the November 18, 2014 Order granting summary judgment in favor of Appellees' Cowpet Association, Cowpet Board, Verdiramo, Cockayne, and Talkington. To be clear, no Orders/Judgments concerning claims made and adjudicated in favor of Harcourt or Felice have been appealed by Appellants.

18

As noted above, a notice of appeal "must ... designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B). While the Court construes this rule liberally, it will only exercise appellate jurisdiction over orders not specified in the notice of appeal where: "(1) there is a connection between the specified and unspecified orders; (2) the intention to appeal the unspecified order is apparent; and (3) the opposing party is not prejudiced and has a full opportunity to brief the issues." *Polonski v. Trump Taj Mahal Assocs.,* 137 F.3d 139, 144 (3d Cir. 1998).

Because the November 18, 2014 Memorandum and Opinion and Judgment did not address any of the claims against Harcourt in either matter, the requisite connection between the order specified in the notice of appeal and unspecified later orders does not exist.  Therefore, the December 24, 2014 Memorandum Opinion and Judgment dismissing Harcourt's claims in the *Kromenhoek* matter and the January 2, 2015 Memorandum and Opinion and Judgment specifically dismissing his claims in the *Walters* matter are not before this Court in the instant Appeal.

## II.   THE RECORD IS DEVOID OF EVIDENCE SHOWING AN ACTUAL OR CONSTRUCTIVE DENIAL OF A PROPER REQUEST FOR AN ACCOMODATION.

To defeat summary judgment as to the Fair Housing Act (FHA) claim, Appellants were required to prove that:

**(1)** they suffer from a disability as defined under the FHA;

**(2)** they requested a reasonable accommodation;

**(3)** such accommodation was necessary to afford plaintiff an equal opportunity to use and enjoy his dwelling; and

**(4)** the defendant refused to make the requested accommodation.

*See Hawn v. Shoreline Towers Phase 1 Condo. Ass'n, Inc.*, 347 Fed. App'x 464 ,467 (11th Cir. 2009) (citing *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1218-19 (11th Cir. 2008)); *DuBois v. Ass'n of Apt. Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006).   Moreover, as stated in the District Court's December 24, 2014 Order:

> In order to make a claim under the FHA, a plaintiff "must actually request an accommodation and be refused in order to bring a reasonable accommodation claims under the FHA." *United States v. Hialeah Housing Authority*, 418 F. App'x 872, 875 (11th Cir. 2011). "[F]or a demand to be specific enough to trigger the duty to provide a reasonable accommodation, the defendant must have enough information to know both the disability and desire for an accommodation, or circumstances must at least be sufficient to cause a reasonable landlord to make appropriate inquiries about the possible need for accommodation."

 J.A., Vol. I, 132, 136. (internal quotations omitted).  Similarly, for Appellants to prove a constructive denial of their requests for an accommodation, they must demonstrate that the conduct of the defendant "had the effect of depriving [them] of the accommodation." *Overlook Mut. Homes, Inc. v. Spencer*, 415 Fed. Appx.

20

617, 623 (6th Cir. 2011).

There is no evidence that Kromenhoek or Walters made a request for an accommodation that was refused. There was no denial here, constructive or otherwise. Kromenhoek and Walters were never deprived of their accommodation *i.e.* their dogs. To the contrary, the evidence supports a finding that when they did finally make their requests and afforded the Board with the opportunity to review the support for the requests, the requests were promptly granted and that at no time were they ever deprived of the use of their service dogs.

Implicit in the requirement that a request for an accommodation be made is that the Board must have the "ability to conduct a meaningful review of the requested accommodation." *Hialeah Hous. Auth.*, 418 F. App'x at 876. Kromenhoek prevented the Board from reviewing her submission by specifically prohibiting the Board from reviewing it. Kromenhoek informed Harcourt that she "***would be willing to sit down with you and you alone and disclose my history and paperwork provided you sign a confidentiality agreement with a monetary penalty for disclosure, subject penalty would be born by you personally, not the Association***." J.A., Vol. II, Pg. 584. Walters also made clear that her "medical information is no one's business." J.A., Vol. II, Pg. 800.

The record shows that while Harcourt and the Board were aware Kromenhoek and Walters had "paperwork" in her file in the property manager's

21

office as early as 2011, the evidence establishes that the Board did not know of the contents of those documents, because Kromenhoek and Walters expressly prohibited the Board from reviewing them.  J.A., Vol. II, Pg. 583-584; 613, ¶ 7; J.A. Vol. II, Pg. 756-757; 800.  It was uncontroverted that Kromenhoek and Walters prevented the Board from conducting any meaningful review of their files and, hence, the conditional submission of "paperwork" did not constitute a proper request for an accommodation.  Accordingly, there was no duty on the part of the Board that was triggered. *Hialeah Hous. Auth.*, 418 F. App'x at 877 quoting *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F. 3d 1361, 1363 (11th Cir. 1999) (The "duty to make a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made.")

While Kromenhoek alleges in her unverified Second Amended Complaint that "Harcourt reviewed Ms. Kromenhoek's submission (and sent another member of the board to review the submission), no one acted on the request until almost a year later" there are no citations to any *evidence* to support this allegation and record evidence from Appellee Cockayne and Verdiramo actually refutes the allegation P.B., Pg. 5; J.A. Vol. II, Pg. 350, 533, 606, 612-614, 879, 1856. Furthermore, the court cannot take unverified allegations as true on summary judgment. *See Crudup v. Barton*, No. 98 C 1498, U.S. Dist. LEXIS 16620 at *5 (N.D. Ill. Oct. 23, 2000) citing *Ford v. Wilson*, 90 F.3d 245, 247 (7th Cir. 1996)

(finding that a party may not rely on allegations in an unverified complaint as true at the summary judgment stage); *Mertiage Homes Corp. v. Hancock*, 522 F. Supp. 2d 1203, 1218 at n. 5 (D. Ariz. 2007) (noting that allegations in an unverified complaint should not be taken as true). To be clear, there is no record evidence showing that either Kromenhoek or Walters had first-hand, personal knowledge that Harcourt or any other member of the Cowpet Board ever saw (much less read) the paperwork they allegedly gave to Louanne Schechter.[9] In fact, the Affidavit of Louanne Schechter, filed by Kromenhoek in support of her Opposition to the Cowpet Appellees motions for summary judgment, proves that Louanne Schechter never had any direct conversations or contact with Max Harcourt. J.A., Vol. II, Pgs. 756-757. Furthermore, Cockayne and Verdiramo filed Declarations supporting their summary judgment motions attesting under oath, based on their

---

[9] Kromenhoek argues that Harcourt went to the office and reviewed her paperwork, recognizing it was an application for accommodation. P.B., Pg. 13. There is no citation to the record for this statement. P.B., Pg. 13. The record evidence, even the citations in Kromenhoek's Principal Brief do not support this allegation. The record shows Kromenhoek and Walters handed paperwork to Louanne Schechter at the property manager's office. J.A., Vol. II, Pgs. 583-84; 492; 756 There is no record evidence that Kromenhoek or Walters have any first-hand knowledge of Harcourt or any other Board member reviewing the paperwork on file or, more importantly, any evidence that Kromenhoek or Walters ever let Harcourt or any other Board member review the paperwork. The record evidence shows that Kromenhoek and Walters prevented review. J.A., Vol. II, Pg. 583-584; 613, ¶ 7; 756-757; 800; 879; 1855-56.

own personal knowledge, that they never reviewed any paperwork in Kromenhoek's file at the Cowpet Bay West office. J.A., Vol. II, Pg. 879, 1855-56.

The record is clear that Kromenhoek and Walters failed to submit any paperwork that the board was permitted to review, supporting their alleged need for an emotional support animal, despite Harcourt's October 28, 2011 request for them to do so, until March 2012. J.A., Vol. II, Pg. 581, 583, 800 612. Rather than providing the requested supporting documentation, they filed HUD Complaints against the Cowpet Appellees. J.A., Vol. II, Pg. 586-611, 499-525.

The record evidence, including documentation filed by Kromenhoek in opposing the Cowpet Appellees summary judgment motions shows that Kromenhoek prevented the Board from reviewing the paperwork she had on file in the property manager's office. J.A., Vol. II, Pg. 584. The record also makes clear that Walters, like Kromenhoek, notified Harcourt that she had paperwork on file, but claimed her medical information was no one's business, preventing any meaningful review. J.A., Vol. II, Pg. 800. When Kromenhoek finally provided her medical documentation without conditions and requested an accommodation to Ed Wardwell in March of 2012; J.A., Vol. II, Pg. 612, ¶'s 5-6; the Board approved her request shortly thereafter. J.A., Vol. II, Pg. 606.

### A. There Was No Denial, Constructive Or Otherwise

Kromenhoek and Walters claims for violation of 42 U.S.C. § 3604(f)(3)(B) fail

because Cowpet granted the requested accommodation.  *See Hialeah Hous. Auth.*, 418 F. App'x at 875 (plaintiff must actually request an accommodation and be refused in order to bring a reasonable accommodation claim under the FHA). Neither Kromenhoek nor Walters was denied the company of their dog at any time and the fines were abated pending approval of the accommodation request. J.A., Vol. II, Pg. 606, 592-605, 612-614.  Appellants rely upon *Bhogaita v. Altomonte Heights Condominium Association, Inc.*, 765 F.3d 1277, 1286 (11th Cir. 2014) for the proposition that "an indeterminate delay in granting a request for an accommodation can be a constructive denial."  Their reliance is misplaced.

In *Bhogaita*, the inquiry was whether the Association "was still undertaking meaningful review."  Bhogaita's doctor submitted three letters and additional information establishing the need for an emotional support animal, including information about the dog and the nature and cause of the disability. *Id.* at 1281-82. Despite acknowledging receipt of this information, the Association made four (4) additional demands for clearly extraneous and unnecessary information and threatened arbitration. *Id.* at 1281-83.

The critical distinction with *Bhogaita* is the association there continued to request unnecessary information over an extended period of time and did not grant the requested accommodation.  Bhogaita had submitted extensive documentation establishing the basis for an accommodation and did not prohibit the Association

25

from reviewing that documentation. *Id.* at 1283.    Such is not the case here

Here, the Board was unconditionally provided with documentation supporting the requests in March of 2012, addressed both requests at the very next board meeting (during which time Walters and Kromenhoek continued to utilize their service dogs), promptly granted both requests, and waived any fines. J.A., Vol. II, Pg. 606; Pg. 613, ¶ 9. Moreover, after a comprehensive investigation, HUD also found that neither made a request for a reasonable accommodation until March of 2012, when their documentation was submitted without limiting its review.    J.A., Vol. II, Pg. 612, ¶¶'s 5-6; 583-584; 613, ¶ 7; 756-757; 610.

A constructive denial of an FHA reasonable accommodation must have "had the effect of depriving the disabled persons of the accommodation." *Overlook Mut. Homes, Inc. v. Spencer*, 415 Fed. App'x 617, 623 (6th Cir. 2011).    There is no evidence that either Walters or Kromenhoek were ever denied the use of their service dogs. Therefore, even if this Court were to find there was a delay in responding to their requests (there was not) there was no constructive denial because Kromenhoek and Walters were never deprived of their accommodation *i.e.* their dogs.

## B. There Is No  Evidence  In The Record That Creates An Issue Of Fact Precluding Summary Judgment

Kromenhoek contends that summary judgment should have been denied

because Schechter and Kromenhoek's "affidavits" are "directly contradictory" to Appellees contention that Kromenhoek failed to request an accommodation until March of 2012. P.B., Pg. 13.  Appellants allege in their Principal Brief that there is an "affidavit" of Kromenhoek in the record.[10] P.B., Pg. 4 (footnote 3), 13. There is no "affidavit."  Appellants are merely attempting to transform the allegations in the original verified complaint into an "affidavit." J.A., Vol. II, Pg. 175-209, 265-298.

Appellants urge this Court to rely on assertions in the inoperative, verified complaints in both matters (P.B., Pg. 4, footnote 3) and repeatedly reference those allegations in their Statement of the Facts on appeal. However, where facts in a verified complaint are controverted, they cannot be taken as true. *See Godwin v. Liddon*, No. 14-2749, 2015 U.S. Dist. LEXIS 26020 (W.D. La. Feb. 2, 2015) (determining that controverted allegations of a verified complaint cannot be assumed by the court as true); *Crudup v. Barton*, No. 98 C 1498, U.S. Dist. LEXIS 16620 at *5 (N.D. Ill. Oct. 23, 2000) citing *Ford v. Wilson*, 90 F.3d 245, 247 (7th Cir. 1996) (finding that a party may not rely on allegations in an unverified complaint as true at the summary judgment stage); *Mertiage Homes Corp. v.*

---

[10] Although Appellants' represent to this Court that there is verified testimony of both Kromenhoek and Walters in the record, the Second Amended Complaint is the operative pleading, which Appellants' acknowledge on Page 3 of their Prinicipal Brief and neither Kromenhoek nor Walters verified the Second Amended Complaint. P.B., Pg. 3.

*Hancock*, 522 F. Supp. 2d 1203, 1218 at n. 5 (D. Ariz. 2007) (noting that allegations in an unverified complaint should not be taken as true).

The mere existence of an earlier verified complaint does not per se warrant its consideration in a motion for summary judgment. *Lew v. Kona Hospital*, 754 F.2d 1420, 1423-24 (9th Cir. 1985). A verified complaint may only be considered as an affidavit for purposes of summary judgment if it satisfies Rule 56 of the Federal Rules of Civil Procedure. *Id.*; *Sheinkopf v. Stone*, 927 F.2d 1259, 1262 (1st Cir. 1991); *see Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985); *Huckabay v. Moore*, 142 F.3d 233 (5th Cir. 1995); *Hooks v. Hooks*, 771 F.2d 935, 945-46 (6th Cir. 1985); *Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988). As such, a verified complaint is treated as an affidavit only if it is "based on personal knowledge and sets forth facts admissible in evidence and to which the affiant is competent to testify." *Lew*, 754 F.2d at 1423; *see* Fed. R. Civ. P. 56. The allegations must be more than legal conclusions. *Lew*, 754 F.2d at 1424.

The allegations in the verified complaints do not satisfy the requirements of Rule 56. They are based on inadmissible hearsay statements with no evidentiary support. The verified complaints contain no allegations based upon personal knowledge and Kromenhoek and Walters assert countless legal conclusions. J.A., Vol. II, Pg. 54-105, 106-158. Kromenhoek and Walters repeatedly preface allegations with the phrase "on information and belief" reinforcing that such

28

allegations are not based upon personal knowledge. *Id.* These deficiencies preclude this Court from relying on the assertions in the verified complaints when reviewing this Appeal. *Lew*, 754 F.2d at 1424; *see* Fed. R. Civ. P. 56.

Even if this Court were to find that the earlier complaints served as affidavits, there is still nothing in those complaints that create an issue of fact. Appellants failed to properly preserve their testimony by providing sworn statements. Accordingly, even if the earlier complaints were properly considered as affidavits, they contain nothing to create an issue of fact precluding summary judgment in the Cowpet Appellees favor.

Furthermore, there is nothing in Louanne Schechter's Affidavit, the only affidavit filed in opposition to the Cowpet Appellees' motions for summary judgment, that creates an issue of fact. Schechter simply attested that "On or in July 2011, Judith Kromenhoek handed me a copy of a letter from her Doctor prescribing an emotional support dog for her condition. Judith Kromenhoek also handed me a copy of a certification for her dog, Oliver." J.A., Vol. II, Pg. 756, ¶¶'s 5-6. This testimony does not refute the fact that Kromenhoek refused to permit the Board to review those documents, specifically stating that Harcourt (and only Harcourt) could review the documents, and only after executing a confidentiality agreement and accepting personal liability for disclosure. J.A., Vol. II, Pg. 584. The only denial with respect to both Kromenhoek and Walters, is Kromenhoek and

Walters denial of the Board's right to review their submissions.

## III.    THERE IS NO RECORD EVIDENCE THAT THE COWPET APPELLEES  VIOLATED 42 U.S.C. § 3617

To support a violation of 42 U.S.C. § 3617, Kromenhoek and Walters were required to provide evidence that (among other things) the Cowpet Appellees coerced, threatened, intimidated, or interfered with Kromenhoek and Walters on account of their protected activity under the FHA.   Neither provided any such evidence.   There is not a single citation to any evidence in the record in Appellants' brief discussing Section 3617. Instead, Appellants improperly rely entirely upon the allegations in the unverified Second Amended Complaint, conjecture and supposition.   To prevail on a Section 3617 claim, a plaintiff must show:

> (1) She is a protected individual under the FHA, (2) she was engaged in the exercise or enjoyment of her fair housing rights, (3) the defendants coerced, threatened, intimidated, or interfered with the plaintiff on account of her protected activity under the FHA (§§ 3303-3306), and (4) the defendants were motivated by an intent to discriminate. *East-Miller v. Lake County Hgwy Dep't*, 421 F.3d 558, 563 (7th Cir. 2005).

"Interference" is more than a "quarrel among neighbors" or an "isolated act of discrimination," but rather is a "pattern of harassment, invidiously motivated."

*Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F. 3d 327,

330 (7th Cir. 2004); *cf. DiCenso v. Cisneros*, 96 F. 3d 1004, 1006 (7th Cir. 1996);

*Honce v. Vigil*, 1 F. 3d 1085, 1090 (10th Cir. 1993). Kromenhoek contends Cowpet

violated 42 U.S.C. § 3617 because:

> . . . , Cowpet's president: (1) shared the private and confidential content of application for reasonable accommodations with people who were not members of the board of directors; (2) viewed Ms. Kromenhoek's request, which clearly identified that her dog was an emotional support animal under the FHA and that it was needed for her to cope with day to day anxiety; and (3) sent a letter acknowledging receipt of the request but demanding the appropriate "ADA compliant paperwork" be submitted."

P.B., Pg. 19. In their efforts to support their claim of a purported violation of

Section 3617, Appellants rely extensively on *Halprin.* Appellants claim that

Harcourt's actions are akin to the actions taken by the president of the board in

*Halprin*, that Harcourt hindered an investigation and adopted rules to restrict the

lawful use of the property. P.B., Pg. 19-20. The record is devoid of any facts

substantiating these allegations. The president in *Halprin* hindered the

investigation by destroying meeting minutes and erasing audiotapes of meeting

minutes. The defendants in *Halprin* were also accused of expressly acting out

against the Halprins by spraying chemicals on Halprin's lawn against their wishes.

*Halprin*, 388 F. 3d at 329. Neither Harcourt nor any other member of the Board

took any action against Kromenhoek (or Walters), or erased meeting minutes

31

thwarting any alleged investigation. Quite the contrary, the record shows that Kromenhoek imposed conditions preventing Harcourt from viewing the "paperwork." As such, the evidence in the record establishes that Harcourt did not refuse to consider Kromenhoek's application, but that Kromenhoek prevented Harcourt from doing so. J.A., Vol. II, Pg. 584. Kromenhoek's request could not be properly considered without a review of her medical documentation.

Harcourt merely informed Kromenhoek that she was in violation of the "no pets" policy, requested that she provide a formal accommodation request, and that a fine would be levied but held in abeyance pending the filing of a request for an exception to the "no pets" rule and the Board's review of same. J.A., Vol. II, Pg. 580. The facts make clear there was no there was no retaliation against Kromenhoek based on her request for a service dog accommodation in violation of 42 U.S.C. § 3617. There is no evidence defendants coerced, threatened, intimidated, or interfered with her on account of her protected activity or that any conduct on the part of the defendants was motivated by an intent to discriminate. Accordingly, even if Appellants' unsubstantiated allegations were taken as true, they fail to establish a violation of 42 U.S.C. § 3617.

Kromenhoek also claims Harcourt's actions are akin to those in *Halprin* because Harcourt took direct action by (1) refusing to consider Kromenhoek's application for accommodation; (2) sharing the letter assessing fines against her

32

with to the membership; (3) sharing the contents of her request for reasonable accommodation; and (4) failing to bring to the attention to the other board members the pending requests for accommodation. P.B., Pg. 20. None of these assertions are supported by citations to the record and are internally inconsistent. On one hand Kromenhoek states Harcourt shared her information with others, while on the other hand, accuses him of failing to bring the requested accommodations to anyone's attention.

Kromenhoek and Walters rely on an October 30, 2011 blog post that included a copy of an October 28, 2011email from Harcourt to Kromenhoek and Walters, to imply that Harcourt circulated their medical information, knew of the paperwork and failed to review it. J.A., Vol. II, Pg. 806. However, the blog post is not written by Harcourt, actually gives "kudos to the board for doing the right thing" and the cited email does not in any way identify Kromenhoek or Walters medical condition, but simply requests that they submit a request for reasonable accommodation with supporting documents and that the Board would consider such request at the next Board meeting. J.A., Vol. II, Pg. 806, 495. The email actually corroborates Sharon Koehler's, CPW Board Treasurer in 2011 and 2012, Affidavit by confirming that, while Harcourt knew Kromenhoek and Walters had paperwork on file in October 2011, neither he nor the Board had reviewed the paperwork as of that time. J.A., Vol. II, Pg. 495, 526, 612-615.

33

There is no evidence supporting any of these allegations. Other than unsupported allegations, there is nothing in the record demonstrating Harcourt refused to consider her request, inappropriately shared the letter advising of the fine or her actual request, or failed to bring her request to the attention of the board. The evidence actually contradicts these allegations. There is no dispute that when the request was made and supporting documentation provided in March, it was immediately acted upon by the board at its next meeting.

As stated in both *Halprin* and *Bloch,* the behavior condemned by Section 3617 must be more than a "quarrel between neighbors" or an "isolated act of discrimination." It must be a "pattern of harassment, invidiously motivated." *Bloch*, 587 F.3d 771, 783 (7th Cir. 2009) quoting *Halprin*, 388 F.3d at 330. In both the *Bloch* and *Walker* cases cited by Appellants, there was (unlike here) an actual, adverse action taken against the plaintiff. *Bloch*, 587 F.3d at 773-74; *see also Walker v. City of Lakewood,* 272 F.3d 1114 (9th Cir. 2001). The Association in *Bloch* removed the Blochs mezuzah from their doorway for an entire year, verbally threatened Lynne Bloch, called her a racist and stated that if she did not like the rules she should get out. *Bloch*, 587 F.3d at 773-74. Similarly, in *Walker*, just like *Bloch*, a failure to renew a contract could form the basis for an FHA retaliation claim because it constituted an actual adverse action. *Walker,* 272 F.3d at 1126-1127.

34

Kromenhoek claims that the actions of the Cowpet Appellees interfered with the exercise of her rights under the FHA violating Section 3617. However, the only record evidence Kromenhoek and Walters rely upon to substantiate their claims are blog posts and emails. J.A., Vol., II, Pg. 670-862. The District Court correctly found that the conduct complained of was better characterized as a quarrel between neighbors or isolated acts of discrimination rather than conduct violating Section 3617. *Halprin*, 388 F. 3d at 330; *cf. DiCenso*, 96 F. 3d at 1006; *Honce*, 1 F. 3d at 1090. The District Court's conclusion is supported by ample case law. It is undisputed that no adverse action was taken against either Kromenhoek or Walters.

Additionally, there is no evidence of a "campaign" to exclude emotional support animals as Kromenhoek claims. P.B., Pg. 17. The Association had prohibited "dogs and farm animals" since 2007. J.A., Vol. II, Pg. 570. Rules 6 (Exhibit "I" to the 2007 By-laws) states that "Dogs and farm animals are prohibited, and owners will be fined as specified by the Board of Directors." *Id*. The "Association may require removal of any animal when it becomes bothersome to others or is deemed by the Association to be unacceptable." *Id*. Accordingly, because the By-Laws expressly incorporate the rules and regulations, the prohibition on dogs had been a requirement of the By-Laws in their 2007 form. Kromenhoek was fully aware of the rules prohibiting dogs as of at least 2010, when she, as a Board Member, at the March 11, 2010 board meeting, introduced a

petition to permit dogs (subject to certain caveats) on CBW property. J.A., Vol. II, Pg. 572-73.

Finally, the record contains absolutely no evidence of any intent to discriminate on the part of the Cowpet Appellees based on a disability. Kromenhoek and Walters fail to satisfy the requirements necessary to prevail on a claim for violation of Section 3617 against the Cowpet Appellees. There is no record evidence showing that there was any interference, coercion, intimidation, or threats made by any of the Cowpet Appellees or Harcourt towards Kromenhoek or Walters on account of their protected activity under the FHA (§§ 3303-3306). *East-Miller*, 421 F.3d at 563. There is not a scintilla of record evidence even hinting that the Cowpet Appellees or Harcourt were motivated by an intent to discriminate. *Id.* The evidence in the record by the District Court and this Court shows nothing more than a "quarrel among neighbors" or an "isolated act of discrimination." *Halprin*, 388 F. 3d at 330; *cf. DiCenso*, 96 F. 3d at 1006; *Honce*, 1 F. 3d at 1090. There is no evidence in the record evidencing a "pattern of harassment, invidiously motivated." *Id.*  Put simply, Kromenhoek and Walters failed to state a claim for violation of Section 3617 against the Cowpet Appellees or Harcourt.

## IV.    STATE LAW, AND NOT FEDERAL COMMON LAW, GOVERNS THE SURVIVABILITY OF WALTERS'S CLAIM PURSUANT TO 42 U.S.C. SECTION 1988.

Because the FHA's enforcement provision, Title 42, Section 3613, does not address whether an FHA claim survives death, the District Court properly relied upon Title 42, Section 1988(a) ("Section 1988") to resolve this question of law. This Court has articulated the procedure to determine survivability in statutes that do not address that issue. *Scott v. Univ. of Delaware*, 601 F.2d 76, 81 n. 8 (3d Cir. 1979) *abrogated on other grounds by EF Operating Corp. v. Am. Bldgs.*, 993 F.2d 1046 (3d Cir. 1993); *see Miller v. Apartments & Homes*, 646 F.2d 101, 104 (3d Cir. 1981) (concluding that pursuant to Section 1988, "Congress provided the courts some modest guidance for resolving the choice of law question in civil rights cases.") This Court has instructed "federal courts [to] seek guidance from state survival acts provided they are not inconsistent with the policies underlying the federal statutes." *Scott*, 601 F. 2d at 81 n. 8. This express instruction mirrors the language of Section 1988 which provides that:

> The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70[11] of the Revised

---

[11] With respect to the above quoted language from Section 1988, it is the Cowpet Appellees' position that while the Fair Housing Act, which was not enacted until 1968, is concededly not within the express language of Section 1988, federal courts have applied Section 1988 to civil rights claims and have not limited Section 1988's application to only those provisions of the old Revised Statutes. *See Miller v. Apts. & Homes*, 646 F.2d 101, 104 (3d Cir. 1981); s*ee Robertson v. Wegmann*,

Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause . . . .

42 U.S.C. § 1988(a).

Moreover, it is well settled in the Third Circuit that "[d]eveloping a federal common law rule is the *exception* rather than the rule" thus application of state law is favored. *In re Columbia Gas Sys.*, 997 F. 2d 1039, 1055 (3d Cir. 1993) (emphasis added). Neither Appellants nor the United States cite to a single decision from this Court addressing the survivability of FHA claims or that in any way indicates that survivability of FHA claims is governed by federal common law. In fact, this Court has expressly ruled against the use of federal common law, finding, as numerous other courts including the United States Supreme Court have, that when survivability is not specifically addressed in a *civil rights statute* itself, the

---

436 U.S. 584 (1978); *Cmty. House, Inc. v. City of Boise*, 2012 U.S. Dist. LEXIS 121412, at *4 (D. Idaho Aug. 24, 2012); *Veater v. Brooklane Apts.*, 2014 U.S. Dist. LEXIS 44118, at *19-22 (D. Utah Mar. 31, 2014).

courts should look to state survivability statutes. *Robertson v. Wegmann*, 436 U.S. 584 (1978); *Miller v. Apts. & Homes*, 646 F.2d 101, 104 (3d Cir. 1981); *Moyer v. Berks Heim Nursing Home*, No. 13-cv-4497, 2014 U.S. Dist. LEXIS 36600 at *6 (E.D. Penn. 2014); *Brazier v. Cherry*, 293 F.2d 401, 407 (5th Cir. 1961); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 898 (7th Cir. 1997); *Slade v. U.S. Postal Serv.*, 952 F.2d 357, 360 (10th Cir. 1991); *Cmty. House, Inc. v. City of Boise*, 2012 U.S. Dist. LEXIS 121412, at *4 (D. Idaho Aug. 24, 2012); *Nordwall v. PHC-LAS Cruces, Inc.*, 960 F. Supp. 2d 1200 (D.N.M. 2013); *Rosenblum v. Colorado Dep't of Health*, 878 F. Supp. 1404, 1409 (D. Colo. 1994).

In *Robertson v. Wegmann*, the United States Supreme Court addressed a question of the survivability of a civil rights action brought pursuant to Section 1983. 436 U.S. 584 (1978). According to the Supreme Court, when federal law does not address survivability of civil rights actions and applicable state statutory law exists, such state law will apply pursuant to Section 1988. *See Id.* at 589. Specifically, the Supreme Court held that under Section 1988, state statutory law "provides the *principal reference point* in determining survival of *civil rights actions*, subject to the important proviso that state law may not be applied when it is 'inconsistent with the Constitution and laws of the United States.'" *Id.* at 589-90 (emphasis added).

The *Robertson* Court noted that though application of federal jurisprudence has received scholarly and judicial support, such application was not appropriate because the state "has a survivorship statute that, under the terms of Section 1988, plainly governs this case." *Id.* at 590, n. 5. Therefore, the court instructed that Section 1988, and not federal common law, applied. *Id.* Further, the court noted the existence and diversity of state survival statutes and that states typically use statutes, as opposed to judicial declaration, to govern questions of survivability thus supporting the application of state law versus federal common law.[12] *Id.* at 589. The court ultimately held that through the application of state law by virtue of Section 1988, the civil rights cause of action abated. *Id.* at 594-95.

---

[12] The United States, in its *Amicus Curiae* Brief, asserts that courts should consider whether there is a federal interest in national uniformity of law when making a choice of law determination. U.S., Pg. 17 citing *United States v. Kimbell Foods*, 440 U.S. 715 (1979) (holding that state laws, not federal common law, govern the issue at bar). Yet based upon the *Robertson* court's recognition that the survivability of an action is generally governed by state law, there does not appear to be a federal interest in uniformity of law with regard to the survivability of civil rights actions. Nevertheless, the United States attempts to cite many cases to the contrary; however, each case cited deals with case specific issues outside the realm of civil rights cause of actions. *United States v. Pisani*, 646 F.2d 83, 86 (3d Cir. 1981) (finding that a uniform federal rule is appropriate because state law frustrates specific objectives of the Medicare program); *United States v. Gen. Battery Copr.*, 423 F.3d 294 (3d Cir. 2005) (determining that an undefined term in a federal liability statute warrants uniform, nationwide interpretation); *Eichenholtz v. Brennan*, 52 F.3d 478, 486 (3d Cir. 1995) (concluding that a nationwide federal rule is preferable in federal securities laws).

Here, Title 42, Section 3613 of the Fair Housing Act does address the survivability of an FHA claim. However, the Virgin Islands Code includes general survival statutes, as well as survival statutes for actions sounding in tort. V.I. Code Ann. tit. 15, § 601; V.I. Code Ann. tit. 5, § 76-77. As such, in accordance with the Supreme Court's instruction that state statutory law is the *principal reference point* in determining the survival of civil rights actions, the District Court properly analyzed and applied Virgin Island law, which calls for the abatement of Walters's cause of action. *Robertson*, 436 U.S. at 590 (emphasis added).

Pursuant to Section 1988, the application of Virgin Island law is appropriate here absent a showing that the result would be inconsistent with the Constitution and the laws of the United States. 42 U.S.C. § 1988. "A state statute cannot be considered 'inconsistent' with federal law merely because the statute causes the plaintiff to lose the litigation." *Robertson*, 436 U.S. at 593. Whether a local law is consistent with federal law is determined through review of the federal statute in question and the policy expressed in that statute.[13] *Id.* at 590.

The policy underlying the FHA is "to deter unlawful discriminatory conduct with respect to housing and provide compensation to *those injured*." *Cmty. House,*

---

[13] The United States similarly urges the Court to consider whether application of state law would frustrate the purpose of the federal statute, which warrants this same review. U.S., Pg. 1. As explained, this analysis bodes in favor of state law application.

41

*Inc. v. City of Boise*, 2012 U.S. Dist. LEXIS 121412, at *4 (D. Idaho Aug. 24, 2012) (emphasis added) (finding that plaintiff's FHA cause of action abated upon plaintiff's death pursuant to state law applied under Section 1988). "The goal of compensating those injured by the deprivation of rights provides no basis for requiring compensation of one who is merely suing as the executor of the deceased's estate." *Robertson*, 436 U.S. at 592. As such, the policy behind an FHA claim is not inconsistent with the result that the present cause of action abates as Walters, the person allegedly injured, would not be the individual compensated even if the action survived. Therefore, because the forum state law is not inconsistent with federal law, the District Court appropriately applied state law and properly determined that the action abated. Based on the foregoing, the District Court's decision should be affirmed.

Even if this Court were to find that Walters claims survived her death, her claims fail for the same reasons that Kromenhoek's claims failed. While there is evidence the Board knew Walters had some paperwork on file in October of 2011, there is no evidence the Board reviewed same. Instead, the evidence shows that Walters prevented the Board's review by expressly stating that her "medical information is no one's business" and by failing to provide any medical certifications to the Board until March of 2012. J.A., Vol. II, Pg. 800, 581. Walters' accommodation was granted shortly after the submission of the

documentation to the Board on March 26, 2012. J.A., Vol. II, Pg. 606, 592-605, 612-614.

## V. THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION IN DISMISSING WALTERS' STATE LAW CLAIMS.

Where a case is properly brought in the district court, the district court has supplemental jurisdiction over state claims that "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367. However, the court may decline to exercise jurisdiction over such claims if the "district court has dismissed all claims over which it has original jurisdiction." *Id.* The district court has "considerable discretion" over what state claims it will include within its supplemental jurisdiction. *Cushing v. Moore*, 970 F. 2d 1103, 1110 (2d Cir. 1992); *see Figueroa*, 188 F.3d at 182. This decision is "pragmatic and case-specific" and one reviewed only for abuse of discretion. *Delgado v. Pawtucket Police Dep't*, 668 F. 3d 42, 46 (1st Cir. 2012).

Here, after careful analysis, the District Court dismissed the federal claims which were the basis of the court's original jurisdiction. As such, based on its clear discretionary power pursuant to Section 1367, the District Court declined to exercise jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367;

43

*Figueroa*, 188 F.3d at 182; *Tripodi v. North Coventry Twp.*, 616 Fed. App'x 521, 524 (3d Cir. 2015); *Cushing*, 970 F. 2d at 1110; *Delgado*, 668 F. 3d at 46. The District Court did not abuse its discretion as it acted in perfect accordance with federal law. *Id.* Accordingly, the District Court's decision should be affirmed.

## CONCLUSION

For the foregoing reasons, the Cowpet Appellees respectfully request that this Court dismiss the instant Appeal for lack of jurisdiction. Should this Court retain jurisdiction, the Cowpet Appellees respectfully request that this Court affirm the District Court's December 24, 2014 and January 2, 2015 Orders Granting Final Judgment in favor of the Cowpet Appellees, affirm the District Court's finding that Walters' claims did not survive her death pursuant to 42 U.S.C. § 1988 and Virgin Islands law, and affirm the decision of the District Court to decline to exercise supplemental jurisdiction over the Appellants remaining state law claims.

**DATED: January 14, 2016**

By: /s/ W. Todd Boyd, Esq.

BOYD RICHARDS PARKER
COLONNELLI, P.L.
*Attorneys for Cowpet Appellees and Max Harcourt*
100 SE 2nd Street, Suite 2600
Miami, Florida 33131
Telephone: (786) 425-1045
Facsimile: (786) 425-3905
Service of Pleadings:

44

Servicemia@boydlawgroup.com
**W. TODD BOYD, ESQ.**
Florida Bar No. 770558
tboyd@boydlawgroup.com
**YVETTE R. LAVELLE, ESQ.**
Florida Bar No. 48107
ylavelle@boydlawgroup.com

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that a true and correct copy of the foregoing Brief for the Cowpet Appellees and Max Harcourt has been filed via Email and Electronic Filing generated by ECF and served via Email and U.S. Mail, first-class postage pre-paid, upon: John H. Benham, III, Esq., Attorney for Talkington, Behham & Chan, No. 1 Frederiksberg Gade, P.O. Box 11720, St. Thomas, VI 00801-4720, benham@bclawvi.com; Ryan S. Meade, Esq., Quintairos, Prieto, Wood & Boyer, P.A., 9300 South Dadeland Blvd; 4 Floor, Miami, Florida 333156, rmeade@qpwblaw.com; Richard P. Farrelly, Esq., Birch de Jongh & Hindels, PLLC, 1330 Taarneberg, St. Thomas, VI 00802, rfarrelly@bdhlawvi.com, cfrancis@bdhlawvi.com; Karin A. Bentz, Esq., 5332 Raadets Gade, Suite 3, St. Thomas, VI 00802, kbentz@virginlaw.com, athorp@virginlaw.com on January 14, 2016.

By: /s/ W. Todd Boyd, Esq.
**W. TODD BOYD, ESQ.**
Florida Bar No. 770558
tboyd@boydlawgroup.com

45

## CERTIFICATE OF BAR MEMBERSHIP

I, W. Todd Boyd, hereby certify that I am a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.

/s/ W. Todd Boyd

I, Yvette Lavelle, hereby certify that I am a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.

/s/ Yvette Lavelle

## CERTIFICATE OF COMPLAINCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32

I, W. Todd Boyd hereby certify that this Brief Appellees is in compliance with Federal Rule of Appellate Procedure 32 in that it contains 10,628 words (937 lines) of text in proportionally spaced font (Times New Roman) in 14 pt.

/s/ W. Todd Boyd

## CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS

I, W. Todd Boyd, hereby certify that this Brief of Appellees as filed electronically and as delivered to this Court in paper copy are identical.

/s/ W. Todd Boyd

46

## **<u>CERTIFICATE OF VIRUS CHECK</u>**

I, W. Todd Boyd, hereby certify that this Brief of Appellees was scanned by antivirus software using Microsoft Security Essentials and no viruses or other malware were detected.

<u>/s/ W. Todd Boyd</u>