# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

### 3d Cir. App. Nos. 14-4776 & 14-4777
### D.C. Civ. No. 3:12-cv-24 & 3:12-cv-25

## LIANA REVOCK, EXECUTRIX OF THE ESTATE OF BARBARA WALTERS, and JUDITH KROMENHOECK,
**Appellants,**

v.

## COWPET BAY WEST CONDOMINIUM ASSOCIATION; THE BOARD OF THE COWPET BAY WEST CONDOMINIUM ASSOCIATION; MAX HARCOURT; ALFRED FELICE; LANCE TALKINGTON; ROBERT COCKAYNE; VINCENT VERDIRAMO,
**Appellees**.

**On Appeal from the United States District Court
for the District of the Virgin Islands
Division of St. Thomas and St. John**

### APPELLANTS' REPLY BRIEF

**The Law Offices of Karin A. Bentz, P.C.**
**Karin A. Bentz, Esq.**
5332 Raadets Gade, Suite 3
St. Thomas, VI 00802-6309
Tel: (340) 774-2669
Fax: (340) 774-2665
Email: kbentz@virginlaw.com
*Attorney for Appellants*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................ ii

TABLE OF AUTHORITIES ................................................................................... iii

REPLY ......................................................................................................................1

   1.   The Court has jurisdiction to hear this appeal ...................................1

   2.   The Appellees' statements constitute violations of 42 U.S.C. § 3617 .............7

   3.   The lack of substitution of alternate parties as to Felice and Harcourt does not require dismissal ............................................................15

CERTIFICATE OF BAR MEMBERSHIP................................................................a

CERTIFICATE OF SERVICE ................................................................................a

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. 32.................................b

CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS............................b

CERTIFICATE OF VIRUS CHECK ......................................................................b

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Riga*, 208 F.3d 419 (3d Cir. 2000)......................................................16

*Bankers Trust v. Mallis*, 435 U.S. 381 (1978) ..................................................... 4 - 6

*Bass v. Attardi*, 868 F.2d 45 (3d Cir. 1989)..................................................... 16,17

*Becker v. Montgomery*, 532 U.S. 757 (2001) .............................................................5

*Bloch v. Frischolz*, 587 F.3d 771 (7th Cir. 2009) .......................................................9

*Boston Hous. Auth. v. Bridgewaters*, 452 Mass. 833, 898 N.E.2d 848 (2009) .......12

*Brooker v. Altoona Hous. Auth.*, 2013 WL 2896814 (W.D. Pa. June 12, 2013).....12

*Bryant Woods Ins., Inc. v. Howard Cnty. Md.*, 124 F.3d 597 (4th Cir. 1997) ........14

*California Acrylic Indus. Inc. v. Nat'l Labor Relations Bd.*, 150 F.3d 1095 (9th Cir. 1998) ........................................................................................................................10

*Castillo-Rodriguez v. INS*, 929 F.2d 181 (5th Cir. 1991).........................................5

*City of Lakewood v. Fair Hous. Found. of Long Beach*, 535 U.S. 1017 (2002).......9

*Conley v. Gibson*, 355 U.S. 41 (1957) .......................................................................4

*Drinkwater v. Union Carbide Corp.*, 904 F.2d 853 (1957).......................................4

*Dura Sys., Inc. v. Rothbury Invs. Ltd.*, 886 F.2d 551 (3d. Cir. 1989).......................4

*FirsTier Mortg. Co. v. Investors Mortg. Ins. Co.*, 498 U.S. 269 (1991) ................5,6

*Foman v. Davis,* 371 U.S. 178 (1962) ................................................................. 2 - 5

*Flieger v. Delo,* 12 F.3d 766 (8th Cir. 1993) .............................................................5

*Gov't of Virgin Islands v. Mills,* 634 F.3d 746 (3d Cir. 2011)............................. 4 - 6

*Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n,* 388 F.3d 327 (7th Cir. 2004)................................................................................................... 10,11

iii

*Havens Realty v. Coleman,* 455 U.S. 363 (2002) ......................................................16

*Honce v. Vigil*, 1 F.3d 1085 (10th Cir. 2009) .........................................................9

*Horner Equip. Int'l, Inc. v. Seascape Pool Ctr., Inc.*, 884 F.2d 89 (3d Cir. 1989)....3

*Jankowski Lee & Assocs. v. Cisneros*, 91 F.3d 891 (7th Cir. 1996)......................13

*Keller v. Petsock*, 849 F.2d 839 (3d Cir. 1988) ........................................................5

*Lapid-Laurel v. Zoning Bd. of Adjustment,* 284 F.3d 442839 (3d Cir. 2002) .........13

*Marshall v. Lancarte,* 632 F.2d 1196 (5th Cir. 1980) ..............................................5

*Matute v. Procast Navigation Ltd.,* 928 F.2d 627 (3d Cir. 1991)........................ 4 - 6

*Montano v. Bonnie Brae Convalescent Hosp., Inc.,* 79 F. Supp. 2d 627 (3d Cir. 1991) .......................................................................................................................12

*Ohana v. 180 Prospect Place Realty Corp.,* 996 F.Supp. 238 (E.D.N.Y.1998) .....11

*Phillips v. Postmaster Gen., U.S. Postal Serv.*, 430 F.App'x 105 (3d Cir. 2011) .....6

*Polonski v. Trump Taj Mahal Associates*, 137 F.3d 139 (3d Cir. 1998) ..................2

*Rende v. Kay*, 415 F.2d 983 (D.C. Cir. 1969).................................................. 16,17

*Sanabria v. United States*, 437 U.S. 54 (1978)........................................................5

*Scherer v. Kelley*, 584 F.2d 170 (7th Cir. 1978)......................................................5

*Schneider v. Colegio de Abogados de P.R.*, 917 F.2d 620 (1st Cir. 1990)...............5

*Smith v. Barry*, 502 U.S. 244 (1992) .................................................................4,6

*Torres v. Oakland Scavenger Co.*, 487 U.S. 312 (1988) .................................... 4 - 6

*Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205 (1972) ...............................9

*Walker v. City of Lakewood*, 272 F.3d 1114 (9th Cir. 2001)...............................9, 10

iv

**Statutes**

42 U.S.C. § 3617 ................................................................... 7,9,10,14

47 U.S.C. § 230 ...........................................................................8

**Other Authorities**

Webster's Third New Int'l Dict. (14th ed. 1961).......................................10

**Rules**

FED. R. APP. P. 3 .......................................................................... 3,4,6,15

FED. R. CIV. P. 1 ...............................................................................4

FED. R. CIV. P. 25 ......................................................................... 16, 17

## <u>REPLY</u>

### I.    THE COURT HAS JURISDICTION TO HEAR THIS APPEAL.

The Appellants filed notices of appeal from judgments entered by the District Court on November 18, 2014, and first announced at the hearing held on May 27, 2014. Appellant Barbara Walters filed her notice of appeal seeking to appeal an order "granting Defendants their Motions for Summary Judgment." J.A. Vol. I at 1. So too, Appellant Judith Kromenhoek filed notice seeking to appeal an order "granting Defendants their Motions for Summary Judgment." J.A. Vol. I at 3. Both notices were provided to counsel for all Defendants-Appellees. J.A. Vol. I at 2 and 4. All Defendants were included in the caption for both notices. J.A. Vol. I at 1 and 3.

All Appellees, including Harcourt and Felice, were represented by counsel at the May 27, 2014 hearing. At the hearing, counsel for Harcourt commented on the Court's ruling, and noted: "As far as the federal claims against Max Harcourt that were dismissed today with summary judgment, there are State Court claims that you're not exercising your supplemental jurisdiction." J.A. Vol. II at 2516. While the Court clarified that it did not dismiss the claims with respect to Harcourt and Felice, it also noted, "[f]or logistic purposes, with respect to the trial, ***there will be no trial.***" J.A. Vol. II at 2517 – 2518 (emphasis supplied).

1

The Appellees argue that this Court should not exercise its jurisdiction through implication of the same type of technicality that has been found to be "entirely contrary to the spirit of the Federal Rules of Civil Procedure[.]" *Foman v. Davis*, 371 U.S. 178, 181 (1962). The trajectory of the Federal Rules of Civil Procedure, the Federal Rules of Appellate Procedure, and case law provide a clear grounding that a technical error ought not foreclose an appellant from the opportunity to have her case reviewed. This is perhaps even clearer here when the Appellants manifested their intention to appeal at the earliest possible instance in a Notice of Appeal that was captioned for all Defendants, and referenced "the Defendants" in its body without redaction of any opposing party.[1]

"It is almost axiomatic that decisions on the merits are not to be avoided on grounds of technical violations of procedural rules." *Polonski v. Trump Taj Mahal Associates*, 137 F.3d 139, 144 (3d Cir. 1998) (citing *Foman v. Davis*, 371 U.S.

---

[1] Part of the argument challenging the Appellants' alleged defective notices implicates the convoluted series of actions of the District Court through issue of its November 18, 2014 Memorandum Opinion and Judgment (J.A. Vol. I at 29 – 76), and subsequently reissuing an Amended Memorandum Opinion the following day. J.A. Vol. I at 77 – 120 and 78, n. 1. Then, on December 23, 2014, the District Court entered a text order vacating those opinions and that judgment (J.A. Vol. II at 2598 – 2599), and then still later the District Court issued additional Memorandum opinions and orders, including ones addressing claims against Felice and Harcourt on December 24, 2014 (Kromenhoek matter) and January 2, 2015 (Walters matter). J.A. Vol. I at 121 – 186; J.A. Vol. I at 5 – 28.

178, 181-82.)  "[T]he rule [FED. R. APP. P. 3] makes it clear that dismissal of an appeal should not occur when it is otherwise clear from the notice that the party **_intended to appeal_**.  If a court determines it is objectively clear that a party intended to appeal, there are neither administrative concerns nor fairness concerns that should prevent the appeal from going forward."  FED. R. APP. P. 3, Advisory Committee Notes to 1993 Amendments (emphasis supplied).

"Dismissal of an appeal for failure to comply with procedural rules is not favored, although Rule 3(a) does authorize it in the exercise of a sound discretion. That discretion should be sparingly used unless the party who suffers it has had an opportunity to cure the default and failed to do so.  Moreover, before dismissing an appeal, we believe that a court should consider and weigh such factors as whether the defaulting party's action is willful or merely inadvertent, whether a lesser sanction can bring about compliance and the degree of prejudice the opposing party has suffered because of the default."  *Horner Equip. Int'l, Inc. v. Seascape Pool Ctr., Inc.*, 884 F.2d 89, 93 (3d Cir. 1989).

As the Supreme Court described in *Foman*:

> It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities. "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the

3

> principle that the purpose of pleading is to facilitate a
> proper decision on the merits." *Conley v. Gibson*, 355
> U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 [1957].  The
> Rules themselves provide that they are to be construed
> 'to secure the just, speedy, and inexpensive determination
> of every action.' Rule 1.

*Foman*, 371 U.S. at 181-82 (1962).

Because decisions on the merits are not to be avoided on grounds of

technical violations of procedural rules, courts therefore construe appeal notices

liberally.  *Smith v. Barry,* 502 U.S. 244, 247-249 (1992); *Torres v. Oakland*

*Scavenger Co.,* 487 U.S. 312, 316 (1988); *Drinkwater v. Union Carbide Corp.,*

904 F.2d 853, 858 (3d Cir.1990).

As this Circuit described:

> The purpose "of a notice of appeal, of course, is to notify
> the court of appeals and the opposing party that an appeal
> is being taken." *Torres,* 487 U.S. at 323–24, 108 S.Ct.
> 2405 (Brennan, J., dissenting).   Courts employ a
> commonsense, purposive approach to determine whether
> a notice of appeal complies with the rules. *See Bankers*
> *Trust Co. v. Mallis,* 435 U.S. 381, 387, 98 S.Ct. 1117, 55
> L.Ed.2d 357 (1978); *Matute v. Procoast Navigation Ltd.,*
> 928 F.2d 627, 629 (3d Cir.1991); *Dura Sys., Inc. v.*
> *Rothbury Invs., Ltd.,* 886 F.2d 551, 555 (3d Cir.1989);
> Fed. R. App. P. 3(c) advisory committee's note ("[S]o
> long as the function of notice is met by the filing of a
> paper indicating an intention to appeal, the substance of
> the rule has been complied with."). Thus, the Supreme
> Court has said that "imperfections in noticing an appeal
> should not be fatal where no genuine doubt exists about
> who is appealing, from what judgment, to which

4

appellate court." *Becker v. Montgomery,* 532 U.S. 757, 767, 121 S.Ct. 1801, 149 L.Ed.2d 983 (2001).

Under the purposive approach taken by the courts, a notice of appeal that fails to strictly comply with the judgment-designation requirement will nevertheless be deemed adequate if, "'in light of all the circumstances,' " *FirsTier [Mortg. Co. v. Investors Mortg. Ins. Co.,* 498 U.S. [269] at 276 n. 6, 111 S.Ct. 648 [(1991)](quoting *Torres,* 487 U.S. at 316, 108 S.Ct. 2405), it is reasonably clear which judgment the party seeks to appeal. *See Foman,* 371 U.S. at 181–82, 83 S.Ct. 227; *Torres,* 487 U.S. at 322–23, 108 S.Ct. 2405 (Brennan, J., dissenting); *Castillo–Rodriguez v. INS,* 929 F.2d 181, 183–84 (5th Cir.1991) ("[A] party does not forfeit the right to appeal by designating the wrong judgment as long as it is clear which judgment the party intends to appeal."). This means that as long as the judgment the party intends to appeal is fairly discernible, a notice of appeal will be deemed sufficient even though it references the wrong case number, *see Marshall v. Lancarte,* 632 F.2d 1196, 1197 (5th Cir.1980); *Scherer v. Kelley,* 584 F.2d 170, 174–75 (7th Cir.1978), or the wrong judgment date, *see Flieger v. Delo,* 12 F.3d 766, 770 (8th Cir.1993); *Schneider v. Colegio de Abogados de P.R.,* 917 F.2d 620, 630 (1st Cir.1990).

In assessing the adequacy of a flawed appeal notice, a court should also consider whether the opposing party was misled or prejudiced by the errors. *See Sanabria v. United States,* 437 U.S. 54, 67 n. 21, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); *Bankers Trust,* 435 U.S. at 387, 98 S.Ct. 1117; *Foman,* 371 U.S. at 181, 83 S.Ct. 227; *Matute,* 928 F.2d at 629 (a notice of appeal will generally be deemed sufficient "unless [it] is so inadequate as to prejudice the opposing party"); *Keller v. Petsock,* 849 F.2d 839, 842 (3d Cir.1988). While a lack of prejudice will not save a notice that totally fails to comply with the

> rules, *see Smith,* 502 U.S. at 248, 112 S.Ct. 678; *Torres,* 487 U.S. at 317, 108 S.Ct. 2405, courts understandably are more willing to overlook a notice's flaws in the absence of prejudice to the opposing party, *see Bankers Trust,* 435 U.S. at 387, 98 S.Ct. 1117; *FirsTier,* 498 U.S. at 276, 111 S.Ct. 648 (observing that, where the opposing party is not prejudiced by mistakes made in the process of noticing an appeal, "[l]ittle would be accomplished by prohibiting the court of appeals from reaching the merits"); *Matute,* 928 F.2d at 629.

*Gov't of Virgin Islands v. Mills*, 634 F.3d 746, 751-52 (3d Cir. 2011).

"[A]ppellate jurisdiction is permissible over orders that are not specified in the notice of appeal where: (1) there is a connection between the specified and unspecified orders; (2) the intention to appeal the unspecified order is apparent; and (3) the opposing party is not prejudiced and has a full opportunity to brief the issues." *Phillips v. Postmaster Gen., U.S. Postal Serv.*, 430 F. App'x 105, 108 (3d Cir. 2011) (internal citation and quotation marks omitted.) Also, the Rule states: "An appeal must not be dismissed for informality of form or title of the notice of appeal, or for failure to name a party whose intent to appeal is otherwise clear from the notice." FED. R. APP. P. 3.

There can be no question that the Appellants intended to appeal from the District Court's judgment.  In response to the Appellants' brief, the Appellees have also exercised the opportunity to be heard on all issues presented in that pleading, so there should not be a claim of prejudice.  Further, the Appellees were provided a

copy of the Notice of Appeal in each of the two cases, and the notices named every defendant in its caption. While Appellants likely ought to have filed subsequent renewed Notices of Appeal to foreclose this potential issue, there is nothing in the record to suggest that they sought any advantage by not doing so. At worst, it was an error; though not one that requires a disfavored and drastic result of this Court electing to foreclose review on the merits.

## II. THE APPELLEES' STATEMENTS CONSTITUTE VIOLATIONS OF 42 U.S.C. § 3617.

Appellants' opening brief provides a summary, at pages 4 to 9, of statements made by the Appellees. However, to obtain a true flavor for the environment of hostility that both Appellants encountered at the Cowpet Bay West condominium community, it is worthwhile to review not just their Second Amended Complaints and summary judgment pleadings, but the entirety of the documents, internet postings from the Cowpet Bay West Blog (under "Bylaws and Puppy Dogs"), and emails (*see, e.g*, J.A. Vol. II at 82, 374 – 381, 485 – 496, 758 – 765, 790 – 806, 815 – 816, 836 – 846, 852 – 856, 1282 – 1283, 1568 – 1569, 1861 – 1862, 1933 – 1941, and 1952 – 1954), and consider that these were the statements that the Appellees were willing to commit to writing, including statements they were willing to commit to writing *in a public forum* through publically accessible

weblogs.  The tenor of these postings reflects the general atmosphere of hostility towards the two Appellants.

Contrary to the assertion of Talkington, he was more than simply the individual running the Cowpet Bay West Blog, he also commented repeatedly, and was otherwise involved in interfering with the Appellants exercise of their rights under the FHA.  *See* BRIEF FOR APPELLANTS, pages 4, 6 – 7, 21; *e.g.* J.A. Vol. II at 82, 374 – 381, 485 – 487, 760 – 761, 763 – 764, 790 – 796, 799, 836, 1282 – 1283, 1896, 1900 – 1941, and 1952 – 1954).  The section of the Communications Decency Act cited by Talkington (47 U.S.C. § 230) was accurately summarized (BRIEF FOR APPELLEE LANCE TALKINGTON at page 13), but that section does not provide refuge for actions taken by Talkington himself.  Talkington did not just provide an online soapbox for other residents, among his other actions, he elected to get up on his soapbox repeatedly and use it as a vehicle to advance his shared interest in interfering with the Appellants' attempt to have service animals.

In reviewing the written comments, it is important to be mindful of the intention of the Fair Housing Act, the direction offered by the Supreme Court as to its interpretation, and common definitions of "interference, coercion, or threats." The reader ought be cognizant that both Appellants suffered from anxiety disorders (J.A. Vol. II, at 177 and 1668 – 1670 (Walters) and 267 and 1664 (Kromenhoek)),

8

and Appellees were aware that each claimed to have a disability.  It is also not inappropriate to consider that one of the Appellants, who sought approval of her service animal, elected to take her own life during the course of this litigation.  J.A. Vol. II, at 2410 and 2415.

As noted in Appellant's opening brief, to prevail on a claim under 42 U.S.C. § 3617, it must be shown that (1) the plaintiff is within the class of people protected under the FHA; (2) the plaintiff was exercising her rights under the FHA;[2] (3) the defendants coerced, threatened, intimidated, or interfered with the exercise of a protected activity by the plaintiff; and (4) the defendants were motivated by discriminatory intent.  *Bloch v. Frischolz*, 587 F.3d 771, 783 (7th Cir. 2009); *Honce v. Vigil*, 1 F.3d 1085, 1090 (10th Cir. 2009).

"The Supreme Court has instructed that [Courts] are to treat '[t]he language of the [FHA as] broad and inclusive.'" *Walker v. City of Lakewood*, 272 F.3d 1114, 1129 (9th Cir. 2001), *cert. denied City of Lakewood v. Fair Hous. Found. of Long Beach*, 535 U.S. 1017 (2002), citing *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209 (1972).  The "broad and inclusive" language of the FHA must be given "generous construction" in order to carry out a "policy that Congress considered to be of the highest priority." *Trafficante*, 409 U.S. at 211–212.

---

[2]  Defendants-Appellants did not challenge elements one and two.  (J.A. Vol. I at 144).

9

42 U.S.C. § 3617 "does not require a showing of force or violence for coercion, interference, intimidation, or threats to give rise to liability." *Walker*, 272 F.3d at 1128 (2001). The *Walker* opinion noted that 42 U.S.C. § 3617 does not define interference, coercion, or threats.[3] The Court noted that:

> "Interference" is "the act of meddling in or hampering an activity or process." *Webster's Third New Int'l Dict.* 1178 (14th ed.1961). To "coerce" is "to compel to an act or choice by force, threat, **or other pressure**." *Id.* at 439. And, more relevant for this case, "coercion" includes "the application of sanctions or force by a government [usually] accompanied by the suppression of constitutional liberties in order to compel dissenters to conform." *Id.* Finally, a "threat" is "an expression to inflict evil, injury, **or other damage** on another." *Id.* at 2382.

272 F.3d at 1129 (9th Cir. 2001) (emphasis in original).

Here, the Appellants described – and provided evidence (in print through email and blog postings) of – a pattern of harassment, invidiously motivated and backed by the condominium association. *Halprin v. Prairie Single Family Homes*

---

[3] In his *pro se* Answer, Appellee Felice noted that "They [Appellants] simply and arrogantly paraded their pets on the property." J.A. Vol. II, at 161. Other neighbors questioned the Appellants when walking with their service animals on public roads. J.A. Vol. II, at 488. *See California Acrylic Indus. Inc. v. Nat'l Labor Relations Bd.*, 150 F.3d 1095, 1099 (9th Cir.1998) (holding that surveillance can constitute "interference" in violation of the National Labor Relations Act ("NLRA"), which prohibits "interfer[ing] with, restrain[ing], or coercing employees in the exercise of the rights guaranteed" by the Act).

*of Dearborn Park Ass'n*, 388 F.3d 327, 330 (7th Cir. 2004) ("But what is alleged in this case (as in the factually similar case of *Ohana v. 180 Prospect Place Realty Corp.*, 996 F.Supp. 238, 239 (E.D.N.Y.1998)) is a pattern of harassment, invidiously motivated, and, because backed by the homeowners' association to which the plaintiffs belong, a matter of the neighbors' ganging up on them. We are far from a simple quarrel between two neighbors[.]")

Among the comments publicly posted, the Appellants were described as "sneaking around [the] rules" and as "perpetrators" and "dessenters [sic] [who perhaps] would be happier in another community rather than be ostracized at CBW [Cowpet Bay West], which would be another fine recourse, besides a significant $$ fine , [sic] with progressive amounts." J.A. Vol. II, at 376.  Anyone reading the Cowpet Bay West Blog, including all of the other residents of the community, could learn that "Barbara Walters" and "Judi Kromenhoek" "both have 'papers in the office' regarding service dogs" effectively making public their request for accommodations.  J.A. Vol. II, at 377.  The Appellants were also publicly labeled as "MISCREANTS" and "SELFISH, SPOILED BRATS" and were recommended to have their homes foreclosed upon.  J.A. Vol. II, at 761.  Further, the Appellants were also repeatedly described as being part of a "coven."  J.A. Vol. II, at 762 and 841.

Appellees collectively suggest that the determination to permit the Appellants to have service animals was a prompt determination by the board. However, this claim is belied by the fact that the requests for accommodation were public knowledge within the Association and the Cowpet Bay West community as evidenced by the above comments and the board meeting minutes. Further, the Appellees' claim of prompt action by the Association ignores the fact that, after Walters first sought approval for her emotional support animal in February or March 2011 (J.A. Vol. II at 56-57), and Kromenhock sought approval in July 2011 (J.A. Vol. II at 109, 347-50), the Appellees continued to fault the Appellants for not making their requests with the proper "magic words" though no such incantation is required before the Association was obligated to consider their requests for accommodations. *Montano v. Bonnie Brae Convalescent Hosp., Inc.*, 79 F. Supp. 3d 1120, 1128 (C.D. Cal. 2015); *Boston Hous. Auth. v. Bridgewaters*, 452 Mass. 833, 847-48, 898 N.E.2d 848, 859 (2009) ("To make a reasonable accommodation request [under the FHA], no 'magic' words are required."); *Brooker v. Altoona Hous. Auth.*, 2013 WL 2896814, at *10 (W.D. Pa. June 12, 2013) ("An individual seeking reasonable accommodations for a disability need not use 'magic' words.") If the Appellees found that the Appellants' concern for the privacy of their respective requests was unacceptable, it could have told them

or offered an alternative means to lodge their requests for accommodation.[4] Instead, the requests were simply ignored and the Association offered no exception to its "no dogs" policy nor any approved format to request an accommodation.

Both requests were subject to hostile and repeated comments before any action was taken. Subsequent to the requests, board minutes reflect that the Board, while failing to grant an accommodation, instead sought to add additional "NO DOGS ALLOWED" signage (J.A. Vol. II, at 1734), despite this not being recommended by the Association's security company. J.A. Vol. II, at 1742. Such signage appeared to be an issue of some interest for the board. *See, e.g.*, J.A. Vol. II 1747, 1751, 1778 – 1779, 1783, 1790.

It was not until April 11, 2012, that the Appellants' requests were approved. J.A. Vol. II at 519 (Walters) and 606 (Kromenhoeck). Obtaining such approval did not occur until after the Board received a letter from Appellants' counsel on behalf of Walters (J.A. Vol. II, at 949 – 950, 1776), until after complaints were filed with HUD (J.A. Vol. II at 951 -953 (Walters), 586-588 (Kromenhoek)), and until after

---

[4] Since requests for accommodation were submitted by both Appellants and ignored by the Association, this Court need not revisit its holding that no "interactive process" is required under the FHAA to find a constructive denial of the requests. *See Lapid-Laurel v. Zoning Bd. of Adjustment*, 284 F.3d 442, 455 - 456 (3d Cir. 2002). *Cf. Jankowski Lee & Assocs. v. Cisneros*, 91 F.3d 891, 895 (7th Cir. 1996).

13

the Board retained and obtained guidance from counsel (J.A. Vol. II, at 1762, 1768, 1772, 1777, 1780, 1784, 1795, 1797).   However, the proper time to determine whether there was a violation of the Fair Housing Act is assessed from the time the request was submitted, not from when it was finally acted upon. *Bryant Woods Inn, Inc. v. Howard Cnty., Md.*, 124 F.3d 597, 602 (4th Cir.1997) ("Under the Fair Housing Act, however, a violation occurs when the disabled resident is first denied a reasonable accommodation, irrespective of the remedies granted in subsequent proceedings.")

In this digital age, interference, coercion, or threats are as likely to come through blog postings (often pseudoanonymously) as they are through graffiti or verbal confrontation.   When such actions are paired with actors in a position of authority, as board members, who ignore requests for accommodation while supporting or initiating ridicule as to the exercise of a federally protected request for a service animal, a cause of action under 42 U.S.C. § 3617 ought be evident.   In exercising its *de novo* review, there is a sufficient basis for this Court to find a factual dispute precluding summary judgment, and such factual questions should be left for the jury.

14

## III.    THE LACK OF SUBSTITUTION OF ALTERNATE PARTIES AS TO FELICE AND HARCOURT DOES NOT REQUIRE DISMISSAL.

At the May 27, 2014 hearing, counsel for the Plaintiffs-Appellants noted that Harcourt had filed a deficient notice of death, and Felice, through counsel, continued to file motions following death.  J.A. Vol. II at 2519 - 2520. The Court advised that "[f]or logistic purposes, with respect to the trial, there will be no trial." J.A. Vol. II at 2517 – 2518.[5]  At the same hearing, the District Court also advised that "we have disposed of […] the Kromenhoek matter in its entirety [.]" J.A. Vol. II. at 2521.  After the Plaintiffs sought clarification, the Court advised that: "With Kromenhoek, I think I made my ruling with respect to everyone, as I said, who is alive or any that's here."  J.A. Vol. II at 2521 - 2522.  Toward the close of the hearing, the Court noted that, "So the only question is what do we do with Felice and Harcourt, to the extent they can't be or haven't already been addressed.  But I thought I would take a little more time with respect to those."  J.A. Vol. II at 2522. The Court dismissed the claims against Felice and Harcourt on December 24, 2014

---

[5] Harcourt and other Appellees assert that the subsequent orders "could not have even been contemplated at the time of filing [December 17, 2014]" the notice of appeal and allowing the use of such orders "would wholly frustrate the intent of [FED. R. APP. P.] 3."  BRIEF OF APPELLEES COWPET BAY WEST CONDOMINIUM ASSOCIATION, INC. ET. AL., at page 15.  Given that the Court advised that "there will be no trial" in the presence of all counsel, it is implausible to assert that the subsequent orders could not have "even been contemplated" as of December 17, 2014.

(Kromenhoek matter) and January 2, 2015 (Walters matter).  J.A. Vol. I at 121 – 186; J.A. Vol. I, at 5 – 28.

The Fair Housing Act was intended by Congress to have "broad remedial intent." *Alexander v. Riga*, 208 F.3d 419, 425 (3d Cir. 2000), citing *Havens Realty v. Coleman*, 455 U.S. 363, 380 (1982).  The claims against Felice and Harcourt survived their own deaths, though the Court found that they did not survive Walter's death.  J.A. Vol. I at 25.

Counsel for both Felice and Harcourt continued to participate in the proceedings.  While the attorney-client relationship terminates upon a defendant's death (*Bass v. Attardi*, 868 F.2d 45, 50 n. 12 (3d Cir. 1989)) in typical circumstances, that did not take place here.  Instead, both Felice and Harcourt continued to participate in the proceedings through counsel.  Further, while each filed a suggestion of death, neither did so properly.  FED. R. CIV. P. 25(a)(1); J.A. Vol. II, at 165-168 (Felice); J.A. Vol. II, at 169 – 174 (Harcourt).  Similarly, "[t]he suggestion of death in the cases of both Carr and Schmidt was deficient because the suggestion was not served on the decedents' successors or representatives as required by FED. R. CIV. P. 25(a)(1). *See Rende v. Kay*, 415 F.2d 983, 986 (D.C. Cir. 1969) (expressing concern that decedent's "counsel" would, as a tactical matter, file a suggestion of death and thus unfairly shift the burden to the plaintiffs

16

to locate the decedent's successor or representative in 90 days)." *Bass*, 868 F.2d at 50 n. 12. Here, the record shows the Notices of Death were filed with the Court and other counsel, but the same were not served upon the decedents' successors or representatives as required by FED. R. CIV. P. 25(a)(1). J.A. Vol. II, at 165-168 (Felice); J.A. Vol. II, at 169 – 174 (Harcourt). The Appellants were left to attempt to ascertain information that ought to have been readily apparent had counsel for Felice and Harcourt complied with FED. R. CIV. P. 25(a)(1) and provided the names of the decedents' successors or representatives as required by the Rule.

As detailed in the briefing previously submitted, the deceased Appellees' representatives continued to be represented through the District Court and appellate proceedings. Further, the Appellants have effectuated service upon the successors of Harcourt and Felice. *See* Documents 003112036333 and 003112036334. Appellees Harcourt and Felice ought not now be advantaged by the failure of their counsels to provide a proper suggestion of death with service upon the decedents' successors or representatives, contrary to FED. R. CIV. P. 25(a)(1), and the matter ought proceed on the merits with their successors. While the burden of locating the personal representatives was "unfairly shift[ed] […] to the plaintiffs" (*Bass*, 868 F.2d at 50 n. 10), the Appellants have nonetheless met that burden.

## CONCLUSION

For the reasons they explained previously and here, on reply, the judgments ultimately dismissing the actions commenced by Kromenhoek and Walters should be reversed, vacated, or otherwise modified.

Dated at St. Thomas, U.S. Virgin Islands, February 24, 2016.

Respectfully submitted,
**THE LAW OFFICES OF KARIN A. BENTZ, P.C.**

/s/ Karin A. Bentz
**Karin A. Bentz, Esq.** (V.I. Bar No. 413)
5332 Raadets Gade, Suite 3; St. Thomas, VI 00802-6309
Tel: (340) 774-2669  Fax: (340) 774-2665
Email: kbentz@virginlaw.com

18

## <u>CERTIFICATE OF BAR MEMBERSHIP</u>

I, Karin A. Bentz, Esq., Hereby certify that I am a member in good standing of the Bar of the Third Circuit.

/s/ Karin A. Bentz

## <u>CERTIFICATE OF SERVICE</u>

I **Hereby Certify** that on this 24th day of February, 2016, I electronically filed the foregoing with the clerk using the CM/ECF system, and caused a true and correct copy of the foregoing to be hand-delivered or mailed on 24th day of February, 2016, first class, postage prepaid to:

John H. Benham III, Esq.
P.O. Box 11720
St. Thomas, Virgin Islands 00801
E-mail: benham@bclawvi.com


Birch de Jongh & Hindels, PLLC
Attn: Richard P. Farrelly, Esq. and Carl Williams, Esq.
1330 Taarneberg
St. Thomas, Virgin Islands 00802
E-mail: rfarrelly@bdhlwvi.com and cwilliams@bdhlwvi.com


Joseph G. Riopelle, Esquire
W. Todd Boyd, Esq.
Boyd Richards Parker & Colonnelli, P.L.
Rivergate Tower Suite 1150
400 N. Ashley Drive
Tampa, FL 33602
(813) 223-6021
(813) 223-6024 (Fax)
jriopelle@boydlawgroup.com
tboyd@boydlawgroup.com

Quintairos, Prieto, Wood & Boyer, P.A.
Attn: Ryan Meade, Esq. and Kyle Waldner, Esq.
9300 South Dadeland Blvd., 4th Floor
Miami, Florida 33156
Email: rmeade@qpwblaw.com and kwaldner@qpwblaw.com


Mark J. Gross, Esq.
April J. Anderson, Esq.
United States Dept. of Justice
Civil Rights Division, Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
Mark.L.Gross@usdoj.gov
April.Anderson@usdoj.gov


/s/ Karin A. Bentz

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. 32

I, Karin A. Bentz, certify that the Appellants' Reply Brief is in compliance with FED. R. APP. P. 32 in that it contains 4,386 words in a proportionally spaced font in 14 pt.


/s/ Karin A. Bentz

## CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS

I, Karin A. Bentz, certify that the Appellants' Reply Brief as filed electronically and as delivered in paper copy are identical.


/s/ Karin A. Bentz

## CERTIFICATE OF VIRUS CHECK

I, Karin A. Bentz, certify that the Appellant's Reply Brief was scanned by antivirus software and no viruses or other malware were detected.


/s/ Karin A. Bentz

b